UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-32-DLF |
| v. : | |
| : | |
| GUY REFFITT, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO VACATE TRIAL DATE AND CONTINUE TRIAL,
AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America hereby moves this Court to vacate the trial currently set for November 15, 2021, to grant a 60-day continuance of the above-captioned proceeding, to exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (the "STA") on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv), and to set a status hearing to monitor the government's progress in meeting its discovery obligations.   As further explained below, it is the government's commitment to ensuring that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format that, in the main, underlies the government's request to toll the STA.

After conferring, counsel for the defendant informed the government the defendant opposes the relief requested in this motion.

In support of its motion, the government states as follows:

**FACTUAL BACKGROUND**

The defendant is charged in a second superseding indictment with five felony offenses arising out of his conduct in connection with the attack on the U.S. Capitol on January 6, 2021

(the "Capitol Breach"): 18 U.S.C. § 231(a)(2) – Civil Disorder (Transportation); 18 U.S.C. §§ 1512(c)(2), 2 – Obstruction of Official Proceeding and Aiding and Abetting; 18 U.S.C. § 1752(a)(1) and (b)(1)(A) – Restricted Building or Grounds While Armed; 18 U.S.C. § 231(a)(3) – Civil Disorder (Interference); and 18 U.S.C. § 1512(a)(2)(C) (Obstruction of Justice – Hindering Communication Through Physical Force or Threat of Physical Force). In brief, the government's evidence shows that the defendant travelled from his home in Wylie, Texas, to Washington, D.C., with an AR-15 rifle and a Smith & Wesson .40 caliber handgun, to participate in the riot and obstruction of Congress that occurred at the U.S. Capitol on January 6, 2021. While at the Capitol, the defendant, armed with his handgun in a holster on his waist, confronted U.S. Capitol Police officers on the west side stairs, just north of the temporary scaffolding. The defendant charged at the officers, who unsuccessfully tried to repel him with two different types of less-than-lethal projectiles before successfully halting his advances with pepper spray. Then, on January 11, 2021, the defendant threated his children if they reported him to law enforcement for his crimes related to the Capitol Breach.

The defendant was arrested eight months ago, on January 16, 2021, and has been detained since his arrest. The maximum statutory term of imprisonment for the charge crimes is 60 years: 20 years for each of the two obstruction counts, 18 U.S.C. §§ 1512(a)(3)(C), (c); 5 years for each of the two civil disorder counts, 18 U.S.C. § 231(a); and 10 years for the restricted building count, 18 U.S.C. § 1752(b)(1)(A).

The government has provided defense counsel with significant case-specific discovery, including clips of Capitol surveillance footage depicting the defendant outside the U.S. Capitol on January 6, 2021; nearly all of the Federal Bureau of Investigation's ("FBI") investigative case

2

file specific to the defendant and a witness who travelled with the defendant; grand jury materials including the transcripts and exhibits used to support the initial and first superseding indictments;[1] copies of arrest and search warrants with accompanying affidavits and returns; video clips from news sources, social media, and other defendants depicting the defendant at the Capitol; and the Capitol Police's radio runs from January 6.   We have also provided the defendant with the results from the searches of his digital devices pursuant to a warrant.   We have also arranged for defense counsel and an investigator to walk through the crime scene.

On August 26 and September 15, 2021, the government filed memoranda regarding the status of discovery (ECF Nos. 32 and 33), incorporated herein by reference and collectively referred to as our "Discovery Status Memoranda."   The Discovery Status Memoranda largely pertained to the production of discovery from voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider material or exculpatory.[2]

## ARGUMENT

For the reasons described below, the United States seeks to vacate the trial date and continue this matter to permit the government to continue its collection, review, cataloging, and

---

[1] The second superseding indictment, which modified count 4, was returned on September 15, 2021, and the transcript supporting that indictment will be disclosed upon receipt.

[2] The materials upon which the Status Memoranda focused include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage), and hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement.

production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady*[3] doctrine. Although we have been diligent in our efforts to comply with unprecedented discovery obligations, given the nature and volume of material, our plan will not be completed by the time of the currently scheduled trial. Accordingly, the government requests that the Court set a status hearing in sixty days to monitor the government's progress in complying with its discovery obligations. If, at that time, the government needs additional time to complete its discovery obligations or defense counsel needs additional time to complete its review of the discovery, the Court may then entertain any requests for an additional ends-of-justice continuance. If the parties' discovery obligations are nearly complete at that time, the Court can and should set a trial date.[4]

### I. The Government's Approach to Discovery is Intended to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.

The Capitol Breach involved thousands of individuals inside and outside of the Capitol, many of whom overwhelmed and assaulted law enforcement officers. According to a

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The ongoing pandemic may also serve as a basis to toll the STA. In recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47 on August 25, 2021, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021. Chief Judge Howell found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." As set forth in Standing Orders Nos. 20-9, 20-19, 20-29, 20-62, 20-68, 20-89, 20-93 and 21-10, the Court previously found that due to the exigent circumstances created by the COVID-19 pandemic, the period from March 17, 2020 through August 31, 2021, would be excluded in criminal cases under the STA.

Washington Post analysis of the events, the mob on the west side eventually grew to at least 9,400 people, outnumbering officers by more than 58 to one. *See* https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics.  As these individuals attacked the Capitol, members of Congress, including the Vice President in his capacity as President of the Senate, worked to certify the Electoral College vote of the 2020 Presidential Election until doing so became unsafe due to the breach of the Capitol.

While it may be tempting to view many of the charged cases as individual matters with straightforward discovery, the reality is that these cases are bound by interrelated facts and shared evidence.  Each defendant's conduct was enabled because of the collective efforts of the mob.  Thus, within the thousands of hours of video footage depicting the conduct of other rioters or law enforcement officials, or the hundreds of interviews with rioters and law enforcement officials, *inter alia*, there may be information that is also arguably relevant to potential defenses.  For example, some defendants have requested any information that arguably shows law enforcement officers authorized the entry of alleged rioters.  Other defendants have suggested that the crowd was peaceful and that acts of violence have been exaggerated or mischaracterized by the government.  Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[5] the government intends to provide all defendants with all data that may contain

---

[5] *United States v. Meek,* No. 19-cr-00378-JMS-MJD, 2021 WL 1049773 *5 (S.D. Ind. 2021). *See also United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849 *4 (S.D.N.Y. 2011) ("placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover

information that is arguably material to their defenses, and in a manner that will facilitate the search, retrieval, sorting, and management of that information.

Since January, the government has worked diligently to obtain, organize, review, and make accessible voluminous data. As elaborated in the Discovery Status Memoranda, performing the required tasks correctly and comprehensively takes time. We are using Relativity as a platform to manage, review, and share documents. Before documents are loaded to our Relativity workspace, we must ensure that we have the password for protected documents, that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. Once the documents are loaded, we must deduplicate them so that they are not analyzed or reproduced multiple times. We must also review documents to identify items that must be excluded or redacted. These processes are necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases, or a failure of the government to take adequate steps to prevent both victims' and defendants' private information from being shared with hundreds of defendants.[6]

---

exculpatory evidence, so if anything, the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client. This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located.")

[6] Under our plan, document productions from Relativity will be made on a rolling basis, and we are prioritizing the processing and production of documents that have been requested by Capitol Breach defendants. Ultimately, we will also make any documents we produce available to a defense Relativity workspace. This will allow Capitol Breach defense teams to leverage Relativity's search and analytics capabilities to search the voluminous documents for information they believe may be material to their individual cases.

The processing and production of thousands of hours of digital evidence is also complex and time-consuming. As elaborated in the Discovery Status Memoranda, we are using evidence.com as a platform to manage, review, and share digital media evidence. On Friday, September 3, 2021, the government amended its contract with Axon Enterprise, Inc. ("Axon"), to fund a defense environment or "instance" of evidence.com administered by the Federal Public Defender for the District of Columbia. Other than body-worn-camera footage, digital evidence must first be transmitted to our vendor from law enforcement for ingestion into our instance of evidence.com. The act of transmitting terabytes of digital information can take weeks. Such information may then require additional processing, e.g., conversion from a proprietary format, before it can be ingested into evidence.com.[7]

The government's approach to the production of voluminous discovery is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[8] It is also the generally accepted approach in cases involving voluminous information. Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has satisfied its *Brady* obligations. *See United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018)

---

[7] Under our plan, as such material is organized, we will share it to the defense instance of evidence.com on a rolling basis.

[8] *See* https://www.justice.gov/archives/dag/page/file/913236/download.

the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material.").[9] The rare cases where courts have required the government to identify *Brady* within previously produced discovery are the exceptions to this widely observed rule.  For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions that involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to

---

[9] *See also United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (same), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan*, 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires); *United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material.").

direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" *Id*. at 84 n.15 (quoting *Skilling*, 554 F.3d at 576).

### II. An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.

Given the due diligence the government has applied and continues to apply to meet its discovery obligations, as set forth above and as previously set forth in our Discovery Status Memoranda and elaborated upon in prior hearings, the government has established that the requested ends-of-justice continuance is warranted under the STA.

The STA requires the district court to "exclude" from "the time within which . . . the trial . . . must commence":

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel **or at the request of the attorney for the Government**, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(7)(A) (emphasis added).

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id.* at 508. And it knew "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id.*

9

Although the "substantive balancing underlying the decision" to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014), the requirement of express findings imposes "procedural strictness" on the court. *Zedner*, 547 U.S. at 509 (2006). Those findings "must indicate [the court] 'seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials.'" *Rice*, 746 F.3d at 1078 (quoting *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008)).

The need for reasonable time to address discovery obligations is among multiple pretrial preparation grounds that Courts of Appeals, including our circuit, have routinely held sufficient to grant continuances and exclude time under the STA – and in cases involving far less complexity in terms of the volume and nature of data, and far fewer individuals who were entitled to discoverable materials. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[10]

---

[10] *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds

10

While the defense opposes this motion, Section 3161(h)(7)(A) does not require defendant's consent for an ends-of-justice continuance, and this Court and should grant the continuance over a defense objection where, as here, the circumstances clearly warrant it. There is no requirement that a defendant personally consent to an ends-of-justice continuance; the only question is whether the district court has complied with the procedural requirements of section 3161(h)(7). *See United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009) ("By its terms, § 3161(h)([7])(A) does not require a defendant's consent to the continuance 'if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'"); *accord United States v. Jones*, 795 F.3d 791, 798 (8th Cir. 2015); *United States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014); *United States v. Lynch*, 726 F.3d 346, 355 (2d Cir. 2013); *United States v. Gates*, 709 F.3d 58, 65-66 (1st Cir. 2013) ("We hold . . . that in the ordinary course and within the confines of the STA exclusion provisions, defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent."); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("Herbst's opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial

---

and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

11

calculation."); *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010) ("[W]here an attorney seeks a continuance without the client's approval, this court has held that the Speedy Trial Act 'does not require a defendant's consent to the continuance' in order for a judge to be able to grant a motion in furtherance of the ends of justice."); *see also United States v. Stoddard*, 74 F. Supp. 3d 332, 341–42 (D.D.C. 2014) ("Even assuming *arguendo* that Stoddard was not advised of his statutory Speedy Trial rights by his counsel and that his counsel consented to the tolling of the time without Stoddard's consent, Stoddard was not prejudiced by this error. The Court tolled the time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv)(2004). None of those provisions require the consent of the defendant."); *cf. Zedner*, 547 U.S. at 500-01 (holding the STA cannot be tolled by virtue of a defendant's waiver of its application).[11]

Further, the STA expressly contemplates continuances that will delay the trials of detained defendants. Pursuant to 18 U.S.C. § 3164:

(a) The trial or other disposition of cases involving—

　　(1) a detained person who is being held in detention solely because he is awaiting trial, and

---

[11] District courts routinely grant STA continuances over defense objections. *E.g., United States v. Grant*, No. CR 3:21-MJ-00144-CHL, 2021 WL 1762102, at *3 (W.D. Ky. May 4, 2021); *United States v. Williams*, No. 8:19-CR-40, 2020 WL 2499749, at *2 (D. Neb. May 14, 2020); *United States v. Kingston*, No. 2-18-CR-00365JNPBCW, 2019 WL 1200254, at *4 (D. Utah Mar. 14, 2019), *aff'd sub nom. United States v. Dermen*, 779 F. App'x 497 (10th Cir. 2019); *United States v. Miller*, No. CR 16-40026-TSH, 2017 WL 11318728, at *2 (D. Mass. June 9, 2017); *United States v. Payne*, No. 2:16-CR-46-GMN-PAL, 2016 WL 7238921, at *3 (D. Nev. Dec. 12, 2016); *United States v. Cavalier*, No. 2:16-CR-046-GMN-PAL, 2016 WL 3381230, at *4 (D. Nev. June 13, 2016); *United States v. Villarreal*, No. CR 10-50082-JLV, 2011 WL 2182423, at *8 (D.S.D. June 3, 2011); *United States v. Leeper*, No. 08-CR-69S-5,12, 2009 WL 5171831, at *4 (W.D.N.Y. Dec. 23, 2009).

> (2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,
>
> shall be accorded priority.
>
> (b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. **The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.**

18 U.S.C. § 3164 (emphasis added). At the same time that the STA requires the trial of a detained person to commence within ninety days, it also *excludes* from this computation of time periods of delay enumerated in Section 3161(h). So long as this Court "seriously weigh[s] the benefits of granting the continuance against the strong public and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008), the excluded periods must be omitted from the computation of ninety-day time limitation for bringing a detained defendant to trial.[12]

## CONCLUSION

For the reasons described above, and any others that may be offered at a hearing on this matter, the government moves this Court to vacate the trial currently set for November 15, 2021, to grant a 60-day continuance of the above-captioned proceeding, and further to exclude the time

---

[12] *See also United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) ("Congress obviously contemplated some extension of the ninety-day limit on incarceration before trial when it incorporated the § 3161(h) exclusions into § 3164."); *United States v. Accetturo*, 623 F. Supp. 746, 765 (D.N.J. 1985) ("[T]he lengthy detention of a defendant under the Bail Reform Act due to a complex case is also specifically contemplated by the Speedy Trial Act."); *United States v. Babichenko*, No.: 1:18-cr-00258-BLW, 2019 WL 3558484, at *5 (D. Idaho Aug. 5, 2019) ("[A]pplication of the complex-case time frame under the Speedy Trial Act will sometimes lengthen the period of pretrial detention of a defendant.").

within which a trial must commence under the STA on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:        /s/ *Emily A. Miller*
EMILY A. MILLER
Capitol Breach Discovery Coordinator
D.C. Bar No. 462077
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6988
Email: Emily.Miller2@usdoj.gov

By:       /s/ *Risa Berkower*
JEFFREY S. NESTLER
Assistant United States Attorney
D.C. Bar No. 978296
RISA BERKOWER
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-803-1576
Email: risa.berkower@usdoj.gov