**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No. 1:21-CR-00032-DLF-1** |
| **Guy Wesley Reffitt** | * | |

**Motion for Change of Venue**

Defendant Guy Reffit moves for a change of venue to the Eastern District of Texas, Sherman Division. Fed. R. Crim. P. 21. He moves based on prejudice in the District of Columbia; and based on convenience of parties and witnesses, and the interests of justice. U.S. Const. amend. V, VI; Fed. R. Crim. P. 21.

I.     **The Court Should Transfer the Case to the Eastern District of Texas, Sherman Division, for Trial.**

A defendant has a due process right to a fair trial by impartial jurors, who are free from outside influences. *See Sheppard v. Maxwell,* 384 U.S. 333, 349–62 (1966) (due process violation based on press coverage); *Estes v. Texas,* 381 U.S. 532, 538 – 52 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 726 – 27 (1963); *but cf Patton v. Yount,* 467 U.S. 1025, 1031 – 40 (1984); *Murphy v. Florida,* 421 U.S. 794, 797 – 803 (1975).

A.     **Prejudicial Pretrial Publicity.**

The Federal Rules of Criminal Procedure require the Court to transfer the proceeding to another district, when prejudice against the defendant is so great in the transferring district that the defendant cannot obtain a fair and impartial trial there. Fed. R. Crim. P. 21(a). The Rule's "fair and impartial trial" requirements are like what is in the Due Process Clause. *United States v. Rewald,* 889 F.2d 836, 862

n.27 (9th Cir. 1989); *United States v. Faul,* 748 F.2d 1204, 1211 (8th Cir. 1984). Accordingly, constitutional standards govern Rule 21.  *Ibid.*

In order to show that prejudice prevents a fair trial and requires a change of venue, a defendant must show either presumed or actual prejudice.  *United States v. Campa,* 459 F.3d 1121, 1143 (11th Cir. 2006) (*en banc*).  Although generally reserved for extreme situations *(Ibid)*, courts have found pretrial publicity sufficient to presume prejudice and require a change of venue.  *See e.g., Daniels v. Woodford,* 428 F.3d 1181, 1210 – 12 (9th Cir. 2005); *United States v. McVeigh,* 918 F. Supp. 1467, 1469 – 74 (W.D. Ok. 1966); *United States v. Tokars,* 839 F. Supp. 1578, 1579 – 84 (N.D. Ga. 1993); *United States* v. *Ebens,* 654 F. Supp. 144, 145 – 46 (E.D. Mich. 1987); *United States v. Engleman,* 489 F. Supp. 48, 49 – 52 (E.D. Mo. 1980); *United States v. Abrahams,* 466 F. Supp. 552, 556 – 57 (D. Mass. 1978); *United States v. Mazzei,* 400 F. Supp. 17, 20 (W.D. Pa. 1975); *United States v. Holder,* 399 F. Supp. 220, 225 – 28 (D.S.D. 1975).

### 1.      Presumptive Prejudice.

Prejudice requiring a change of venue is presumed when widespread, pervasive prejudice against the defendant and/or extensive prejudicial pretrial publicity saturates the community where he or she is to be tried.  *Campa* at 1143; *United States v. Perez-Gonzalez,* 445 F.3d 39, 46 (1st Cir. 2006); *Goss v. Nelson,* 439 F.3d 621, 628 – 29 (10th Cir. 2006); *Daniels* at 1211; *United States v. Higgs,* 353 F.3d at 307 – 08 (4th Cir. 2003); *United States v. Nelson,* 347 F.3d 701, 707 (8th Cir. 2003); *Nevers v. Killinger,* 169 F.3d 352, 362 – 63, *abrogated on other grounds by Harris v. Stovall,*

212 F.3d 940, 942 – 43 (6th Cir. 2000); *United States v. O'Keefe.* 722 F.2d 1175, 1180 (5th Cir. 1983).

When evaluating whether to grant a venue change based upon prejudicial pretrial publicity, the Supreme Court has emphasized: i) the size and characteristics of the community, ii) the nature and extent of pretrial publicity, iii) the proximity between the publicity and the trial, and iv) evidence of juror partiality. *United States v. Skilling*, 561 U.S. 358, 378–381 (2010).

In some cases, a court can determine that the potential jury pool is irredeemably biased, when the alleged crime results in "effects . . . on [a] community [that] are so profound and pervasive that no detailed discussion of the [pretrial publicity and juror partiality] evidence is necessary." *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996) (summarily finding that a trial of Oklahoma City bombing suspects in federal court in Oklahoma City (Western District of Oklahoma) would be constitutionally unfair).

Determining whether prejudice should be presumed based on pretrial publicity also involves considering:

(1) whether the media accounts have been primarily dispassionate and factual or editorial and inflammatory in nature (*see e.g., Murphy* at 800 n.4; *Campa* at 1144; Goss, at 629; *White v. Mitchell*, 431 F.3d 517, 531 (6th Cir. 2005); *Daniels* at 1211; *Higgs* at 308; *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002); *Flamer v. Delaware*, 68 F.3d 736, 754 – 55 (3rd Cir. 1995); *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir. l990); *Grancorvitz v. Franklin*, 890 F.2d 34, 40 (7th Cir. 1989); *O'Keefe* at 1180);

3

(2) whether there is a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion (*see e.g., Patton* at 1032 – 33; *Henyard v. McDonough*, 459 F.3d 1217, 1242 (11th Cir. 2006); *Goss* at 629; *Daniels* at 1211;

(3) whether there has been a significant length of time between any inflammatory publicity and the trial (*see e.g., Hayes v. Ayers*, 632 F.3d 500, 511 – 12 (9th Cir. 2011); *United States v. Petters*, 663 F.3d 375, 385 – 86 (8th Cir. 2011); *Patton* at 1034; *Higgs* at 308; *Nelson* at 709; *Flamer* at 755; *United States v. Lehder-Rivas*, 955 F.2d 1510, 1524 – 25 (11th Cir. 1992); *Grancorvitz* at 40; *Willie v. Maggio*, 737 F.2d 1372, 1387 (5th Cir. 1984);

(4) whether media accounts contained inflammatory or prejudicial information that was not admissible at trial (*Daniels* at 1211);

(5) whether the defense is a significant source of the publicity (*United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991)); and

(6) whether a substantially better panel can be sworn in another place (*Bakker* at 733; *United States v. Chapin*, 515 F.2d 1274, 1289 (D.C. Cir. 1975).

The Census Bureau estimates the District's population to be around 705,000 people, *see* QuickFacts, District of Columbia, *available at* https://www.census.gov/quickfacts/DC (Last accessed July 29, 2021).  None of them lives more than 8 miles from the Capitol.

In the District of Columbia, media accounts have been constant for eight months.  On May 3, 2021, fourteen media organizations petitioned the Court for a Standing Order to provide "a uniform method of prompt access to all judicial records," in cases arising from the Capitol Cases.  DCD No. 1:21-mc-00046-BAH, Doc. 1.  There are so many stories that some are dispassionate and factual, but many others that are editorial and inflammatory.  *See Skilling, supra.*

District residents have been bombarded with constant coverage of the January 6th events, arrests, and criminal charges. *See, Id.* WTOP's almost daily coverage has included eight about the defendant so far, which even claim to quote him. https://wtop.com/search/?s=reffitt (Last accessed Sep. 12, 2021).

Likewise, the Washington Post has five. https://www.washingtonpost.com/newssearch/?query=reffitt&btn-search=&sort=Relevance&datefilter=All%20Since%202005 (Last accessed Sep. 12, 2021).

The Washington Times has four. https://www.washingtontimes.com/search/?cx=015385541671335030271%3Anfb7f1nj88q&cof=FORID%3A11&ie=UTF-8&q=reffitt&sa=GO (Last accessed Sep. 12, 2021).

During a hearing on May 13, 2021, the government contributed to the prejudicial pretrial publicity by proffering an article in support of it's argument for continued detention. https://www.propublica.org/article/in-exclusive-jailhouse-letter-capital-riot-defendant-explains-motives-remains-boastful (Last accessed Sep. 12, 2021).

At Attorney General Merrick Garland's confirmation hearing, he pledged to "supervise the prosecution of white supremacists and others who stormed the Capitol on 6 January." Martin Pengelly, *Merrick Garland Vows to Target White Supremacists as Attorney General,* The Guardian (Feb. 26, 2021).

The former Acting U.S. Attorney for D.C. Michael Sherwin's interview on CBS News' 60 Minutes included the following dialogue:

> **Scott Pelley**: I'm not a lawyer, but the way I read the sedition statute, it says that, "Sedition occurs when anyone opposes by force the authority of the United States, or by force hinders or delays the execution of any law of the United States." Seems like a very low bar, and I wonder why you're not charging that now?
>
> **Michael Sherwin**: Okay, so I don't think it's a low bar, Scott, but I will tell you this. *I personally believe the evidence is trending towards that*, and probably meets those elements.
>
> **Scott Pelley**: Do you anticipate sedition charges against some of these suspects?
>
> **Michael Sherwin**: *I believe the facts do support those charges*. And I think that, as we go forward, *more facts will support that*, Scott.

60 Minutes, Inside the Prosecution of the Capitol Rioters, Mar. 22, 2021 (Scott Pelley interview of former Acting U.S. Attorney Michael Sherwin).

For weeks, parts of the District of Columbia were closed.  The Capitol was surrounded by a metal fence, which blocked streets and sidewalks.  The Mayor declared a state of emergency and implemented a curfew.  National Guard troops, armed with rifles and using armored vehicles, provided security.  Prospective jurors have been seeing all of this, and they have been living with it.  *See, e.g., United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996); *United States v. Awadallah*, 457 F. Supp. 2d 246 (S.D.N.Y. 2006) (suggesting that had the defendant, who was charged with perjury, actually participated in the 9-11 attacks on New York, "the

effects that a massive, disastrous event has wrought on the jury pool" would require a change of venue).

On September 15, 2021, the metal fence surrounding the Capitol was reinstalled.   https://wtop.com/dc/2021/09/fencing-returns-to-capitol-wednesday-night-as-dc-preps-for-right-wing-rally/ (Last accessed Sep. 15, 2021).   Prospective jurors will be seeing this, and they will be living with blocked streets and sidewalks again.  *See, Id.*

### 2.    Actual Prejudice.

Actual prejudice of the venire members can require a change of venue, if *voir dire* reveals that an impartial jury cannot be impaneled.  *White v. Mitchell,* 431 F.3d 517, 532 (6th Cir. 2005); *Daniels* at 1211; *Higgs* at 308; *Nelson* at 708; *Hale v. Gibson,* 227 F.3d 1298, 1333 (10th Cir. 2000); *Mills v. Singletary,* 63 F.3d 999, 1009 (11th Cir. 1995); *O'Keefe* at 1180.

Actual prejudice may be shown when a large proportion of prospective jurors are dismissed for cause, because that demonstrates a pattern of prejudice that gives little weight to the remaining jurors' assurances of impartiality.  *Irvin v. Dowd,* 366 U.S. 717, 727 (1961) (prejudice when 62% of potential jurors dismissed for cause); *Cf Murphy* at 803 (no prejudice when 26% of potential jurors dismissed for cause); *Perez-Gonzalez* at 46 (no prejudice when less than 14% of potential jurors said they could not be impartial).

**B.     Convenience of Parties and Witnesses and the Interests of Justice.**

A change of venue may be based on "the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b).

Relevant factors are: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business if case not transferred; (6) expenses of the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each potential district; and (10) any other special elements which might affect the transfer. *Platt v. Minnesota Min. & Mfg. Co.,* 376 U.S. 240, 243 – 44 (1964); *In re United States,* 273 F.3d 380, 387 – 88 (3rd Cir. 2001); *United States v. Jordan,* 223 F.3d 676, 685 (7th Cir. 2000); *United States v. Maldonado-Rivera,* 922 F.2d 934, 966 (2nd Cir. 1990).

The burden is on the defendant to establish that transfer is justified under Rule 21(b). *In re: United States,* 273 F.3d 380, 388 (3rd Cir. 2001). The defendant is not required to show compelling circumstances for a change of venue. *Ibid.* Instead, considering everything, the case would be better off transferred to another district. *Id.* at 383; *In re Balsimo,* 68 F.3d 185, 187 (7th Cir. 1995).

Counts One, Two, and Five allege conduct "within the District of Columbia and elsewhere," which discovery indicates would have been in the Eastern District of Texas. Doc. 25.

Currently, defendant is detained in the District of Columbia.

Two or three witnesses are employed in the District of Columbia.  Five or more are in the Eastern District of Texas.

Events likely to be in issue as well as documents and records likely to be involved, would be in both Districts.

Expenses of the parties would likely be the same in both Districts.

Currently, counsel are in the District of Columbia, because that is where the Indictment was filed.  However, substitute counsel could be assigned, if the case were transferred.

Both Districts are relatively accessible.

Docket conditions in the District of Columbia are worse, because this District bears approximately 600 additional January 6th cases on top of its regular docket and pandemic backlog.

Potentially, this could disrupt of defendant's efforts to resume his business if the case is not transferred.

Considering everything, the case would be better off transferred to another district.  *In re: United States; Balsimo, supra.*

/s/ *William L. Welch,* III

---
William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

## Certificate of Service

I hereby certify that on this 17th day of September 2021, a copy of the foregoing Motion for Change of Venue was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch,* III

---
William L. Welch, III