## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 21-cr-00032 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **GUY WESLEY REFFITT,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS COUNT TWO

Defendant Guy Reffitt is properly charged in count 2 of the indictment with Obstruction of Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2.   The Court should reject his motion to dismiss (ECF 38 ("Motion")).

## I.    BACKGROUND

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots.   The defendant was aware of this proceeding, and he wanted to stop it.

He travelled from his home in Wylie, Texas, to Washington, D.C., with an AR-15 rifle and a Smith & Wesson .40 caliber handgun.   On the afternoon of January 6, the defendant went to the Capitol to participate in the riot and to obstruct Congress from meeting to certify the vote.   While at the Capitol, the defendant, armed with his handgun in a holster on his waist, confronted U.S. Capitol Police officers on the west side stairs, just north of the temporary scaffolding.   The defendant charged at the officers, who unsuccessfully tried to repel him with two different types of less-than-lethal projectiles before successfully halting his advances with pepper spray.   The defendant encouraged other rioters to charge forward at the officers, which they did.   The officers were forced to fall back, the Capitol was invaded, and for several hours Congress was prevented

from continuing with its constitutionally and statutorily required Joint Session.

On January 11, 2021, the defendant threatened his children if they reported him to law enforcement for his crimes on January 6.

On January 16, 2021, the FBI arrested the defendant at his home in Wylie, Texas.

On June 16, 2021, the grand jury returned a superseding indictment, charging the defendant with five felony counts:

> (1)     18 U.S.C. § 231(a)(2) – Civil Disorder (Transportation);
>
> (2)     18 U.S.C. §§ 1512(c)(2), 2 – Obstruction of Official Proceeding and Aiding and Abetting;
>
> (3)     18 U.S.C. § 1752(a)(1) and (b)(1)(A) – Restricted Building or Grounds While Armed;
>
> (4)     18 U.S.C. § 231(a)(3) – Civil Disorder (Interference)[1]; and
>
> (5)     18 U.S.C. § 1512(a)(2)(C) (Obstruction of Justice – Hindering Communication Through Physical Force or Threat of Physical Force).

The case is currently scheduled for trial on November 15, 2021.

## II.  ARGUMENT

### A. Legal Standard and Introduction

A defendant may move to dismiss an indictment or count prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B).   A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a

---

[1] On September 15, 2021, the grand jury returning a second superseding indictment, slightly modifying the charging language for this count.

trial on the merits."   *Id.*   Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances."   *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged.   *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).   The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.   *Id.*

The defendant's motion focuses on the definition of "official proceeding," claiming that Congress's constitutionally mandated process of counting the electoral college votes of the presidential election and certifying the next President and Vice President of the United States was somehow not an "official proceeding."   The motion also argues that the term "official proceeding" and "corruptly" are unconstitutionally vague, and that various legal doctrines (the rule of lenity, the novel-construction principle, and the First Amendment) support his position.   None of his arguments has any merit.

**B.  Congress's Joint Session on January 6 Was an "Official Proceeding."**

Contrary to the defendant's claim, Congress's Joint Session on January 6, 2021, to review, count, and certify the Electoral College constitutes an "official proceeding" under the definition in Section 1515(a)(1).

**1.     Background**

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote.   Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of

the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The defendant here is charged with violating Section 1512(c)(2) by corruptly obstructing, influencing, or impeding any official proceeding. An "official proceeding" for purposes of Section 1512(c)(2) is defined in Section 1515 as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent

4

or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1) (emphasis added).

> **2.      Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress."**

Congress's meeting to certify the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress" under Section 1515(a)(1)(B), and therefore an "official proceeding" for purposes of Section 1512(c)(2).   That conclusion flows principally from the obstruction statute's plain text.   Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import a "judicial in nature" requirement into the term "official proceeding."   That argument is incorrect, but even if somehow valid, would still not disqualify Congress's Joint Session on January 6.

> **a.      Congress's Joint Session satisfies the definition of "official proceeding."**

Section 1515(a)(1)(B) defines "official proceeding" as a "proceeding before the Congress." To determine the meaning of a statute, a court "look[s] first to its language, giving the words used their ordinary meaning."   *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted).   In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, or "a proceeding before the Congress."   Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete."   *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation omitted).

Congress's Joint Session to certify the Electoral College vote constitutes a "proceeding" under any interpretation of that term.   In its broadest and most "general sense," a "proceeding"

refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior."   *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).   The defendant does not meaningfully contend that Congress's Joint Session to certify the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that broad definition.

A narrower definition of the term "proceeding" would look to the "legal—rather than the lay—understanding" of the term.   *Ermoian*, 752 F.3d at 1170.   This narrower definition includes the "business conducted by a court or other official body; a hearing."   Black's Law Dictionary, "Proceeding" (11th ed. 2019).   Taken with its modifier "official," the term "proceeding" thus "connotes some type of formal hearing."   *Ermoian*, 752 F.3d at 1170.   Even under this narrower definition, Congress's Joint Session to certify the Electoral College vote—business conducted by an official body, in a formal session—would easily qualify.

The formality involved in the certification of the Electoral College vote places it well within the category of an official proceeding, even under the narrower legal definition of the term "proceeding."   Few events are as solemn and formal as a Joint Session of the Congress.   That is particularly true for Congress's certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute.   Required by law to begin at 1:00 pm on the January 6 following a presidential election, Congress's meeting to certify the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body."   *See* Black's Law Dictionary, "Proceeding."   The Vice President, as the President of the Senate, serves as the

"presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election.  3 U.S.C. § 15.  As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection.  *Id.*  And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall."  *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform").  Congress's certification of the Electoral College vote, moreover, must terminate with a decision: Congress may not recess until "the count of electoral votes" is "completed," and the "result declared."  *Id.* In short, Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress" under Section 1515(a)(1)(B).

### b. Section 1515(a)(1) imposes no quasi-judicial requirement.

The defendant argues that the phrase "official proceeding" in Section 1512 applies only to proceedings that are "judicial in nature" or that relate to the "administration of justice."  (Motion at 3-5.)  But the language of Section 1515(a)(1)(B) is clear, and the defendant's proffered reasons to support his argument—caselaw interpreting Section 1515(a)(1)(C), the outdated Criminal Resource Manual, and legislative history—fail.

7

### i.    Section 1515(a)(1)(B) has no limitation on the type of congressional proceeding.

Section 1515(a)(1)(B) defines an "official proceeding" broadly as a "proceeding before the Congress."   As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of the United States Congress that convenes once every four years.

Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to Section 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency.   And to the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (internal quotation omitted), Congress's certification of the Electoral College vote involves a "formal convocation" of Congress to assess the ballots and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

Congress's language choice in Section 1505 undermines the defendant's argument that "a proceeding before the Congress" in Section 1515(a)(1)(B) should encompass only a congressional investigation or an impeachment.   (Motion at 5.)   Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees.   18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020).   If Congress wished to limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B).   But it chose different terms, with different meanings.   *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in

8

the two subsections has the same meaning in each.   We would not presume to ascribe this difference to a simple mistake in draftsmanship.").   Here, Congress enacted broader language ("a proceeding before the Congress") to cover a broader range of proceedings than only the "inquir[ies] and investigation[s]" envisioned in Section 1505.   That broader definition in Section 1515(a)(1)(B) includes any "proceeding" conducted by "the Congress," including its formal meeting on January 6.

The defendant's narrowed reading of "proceeding before the Congress" in Section 1515(a)(1)(B)—in essence, importing an extra-textual "quasi-judicial" requirement—would undercut the broad statute that Congress enacted.   In the defendant's view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction under the statute.   Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes.   Indeed, other than vague references to congressional investigations,[2] the defendant's motion does not explain which congressional proceedings—short, perhaps, of impeachment—would fall within the ambit of his proffered narrowed definition.   That crabbed approach fails to recognize that Congress's meeting to certify the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only

---

[2] The defendant's motion does not grapple with the anomalous result that follows from his argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

delay [it] but increase the chances of false and unjust outcomes." *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019). Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, Congress's Joint Session to debate and certify the Electoral College vote falls well within them.

### ii. Caselaw interpreting Section 1515(a)(1)(C) is inapposite.

No court appears to have had occasion to interpret Section 1515(a)(1)(B)'s phrase "proceeding before the Congress," possibly because the phrase is unambiguous.

The defendant's reliance on cases interpreting subsection (a)(1)(C), (*see* Motion at 5-6), is misplaced, because those decisions hinge on the phrase "which is authorized by law" that is absent from subsection (a)(1)(B). In *Ermoian*, the question was whether an FBI investigation was an "official proceeding" that was "authorized by law" under subsection (a)(1)(C). 752 F.3d at 1170. The same question was addressed in *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008) (internal investigation conducted by Customs and Border Patrol); *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (preliminary SEC investigation); and *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (review panel within the Bureau of Prisons).

Moreover, in the context of Section 1515(a)(1)(C), courts typically analyze the degree of "formality" in a law enforcement investigation to determine if it is an "official proceeding." *See, e.g.*, *Sutherland*, 921 F.3d, at 426 (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"); *Ermoian*, 752 F.3d at 1170-72 (same); *Ramos*, 537 F.3d at 463 (term "official proceeding" "contemplates a formal environment"). There should be no question that Congress's constitutionally and statutorily required Joint Session was sufficiently "formal" to qualify as an "official proceeding."

### iii. An internal, out-of-date Department of Justice resource manual is irrelevant.

The Department of Justice's Criminal Resource Manual, (*cf.* Motion at 12), which was published *before* Congress enacted Section 1512(c)(2) in 2002, has no bearing on the Court's analysis of the phrase "official proceeding" in that statute.

According to an archived Department of Justice website, the Criminal Resource Manual was last published in 1997. *See* Department of Justice, United States Attorneys' Manual & Resource Manual Archives (hereinafter, "DOJ, Resource Manual Archives"), *at* https://www.justice.gov/archive/usao/usam/index.html ("1997 - Criminal Resource Manual"). The defendant cites to Section 1729 of the Manual,[3] (Motion at 12), but the text of that provision proves that it was published *before* Section 1512(c) was added. First, Section 1512(c) is not mentioned in any of the nine paragraphs. Second, the text references a pre-2002 version of the statute; as an example, it cites extraterritorial jurisdiction as subsection (g) but in 2002 that provision was moved to subsection (h). *See* Pub. L. 107-204, § 1102(1) (2002).

The Criminal Resource Manual was formerly appended to the Justice Manual, but it has been "superseded" and is now simply "archival material" with "no current application." DOJ, Resource Manual Archives. The Criminal Resource Manual was, as its name implies, merely a *resource* manual. And even the Justice Manual contains only "*internal* DOJ guidance." Justice Manual § 1-1.200 (emphasis added). It creates no rights. *United States v. Blackley*, 167 F.3d

---

3 Section 1729 is archived at https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or. The bottom of the page indicates that it was "updated January 17, 2020," but that appears to be the date it was archived.

543, 548 (D.C. Cir. 1999); *see also United States v. Caceres*, 440 U.S. 741, 754 (1979) (noting

that the IRS manual does not confer any rights but is instead only an internal statement of policy).

Finally, Criminal Resource Manual Section 1729's very generalized discussion and

summary of Section 1512 does not address the very specific question regarding the scope of the

obstructive conduct that Congress intended to criminalize by inserting Section 1512(c)(2) in 2002.[4]

### iv. Legislative history does not support incorporating a "judicial in nature" requirement into Section 1515(a)(1)(B).

The defendant suggests that legislative history shows that Congress intended the

obstruction statute to be interpreted narrowly because it was designed simply to close a loophole.

(*see* Motion at 8.)   Putting aside that the "best evidence of [a statute's purpose] is the statutory

text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps.,*

*Inc. v. Casey*, 499 U.S. 83, 98 (1991), the obstruction statute's legislative history in fact

underscores that Congress intended "official proceeding" to reach broadly.

The defense contends that Section 1512(c) is aimed at closing a loophole related to

document shredding, and therefore that its definition of "official proceeding" applies only to

proceeding that are "judicial in nature."   (Motion at 3, 9-10.)   But Section 1512(c), which was

enacted in 2002, did not modify the pre-existing definition of "official proceeding" in Section

1515(a)(1), which had been in place since 1982.

---

4 The defendant's motion also cites a memo written by former Attorney General William Barr.
(Motion at 9.)   But the memo was written by *private citizen* William Barr.   It was not issued
while Mr. Barr was the Attorney General of the United States, and the Department of Justice has
not adopted the memo or its reasoning.   The memo is simply one private citizen's take on a legal
issue.   It has no weight here.

Sections 1512 and 1515 were originally enacted as part of the Victim and Witness Protection Act (VWPA) of 1982. The Senate Judiciary Committee report that supported the VWPA justified the inclusion of a "broad residual clause"— in a provision that was ultimately omitted from the VWPA, but that resembles the current iteration of Section 1512(c)(2)—by noting that the "purpose of preventing an obstruction or miscarriage of justice cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses. There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice." S. Rep. 97-532, at 18 (1982). Contrary to the defense's argument that Section 1512 ought to be construed narrowly, Congress made clear its intent that the statute ought to be construed broadly. Who would have thought in 1982 that a mob would try to invade the Capitol to prevent Congress from physically meeting to perform its constitutional function? The defendant sought to thwart justice in an unprecedented and inventive manner: by literally driving Congress out of the chamber. His criminal actions fit squarely within the legislative history of the statute.

Moreover, even if the defendant was correct that the obstruction statute's application in this case was not expressly anticipated by Congress at the time of enactment, that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation and alterations omitted). In other words, a statute's application may "reach[] beyond the principal evil legislators may have intended or expected to address." *Id*. (internal quotation omitted).

13

> v. **Congress's certification of the Electoral College vote *is* "judicial in nature."**

The defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be "judicial in nature." (Motion at 3.) Far from a ministerial function, Congress's meeting to certify the Electoral College vote has features that resemble an adjudicative proceeding. It involves the convening of a Joint Session, a deliberative body over which a government officer, the President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election. As in an adjudicative setting, parties may lodge objections, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. *Id.* And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result." 3 U.S.C. § 16.

**C. Section 1512(c) is Not Unconstitutionally Vague.**

The defendant argues that Section 1512(c)(2), and specifically the phrases "official proceeding" and "corruptly," are unconstitutionally vague. He supports his argument by reference to the rule of lenity, the novel-construction principle, and the First Amendment. His arguments lack merit.

> **1. Background**

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law." An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct

it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

The void for vagueness doctrine is narrow. The challenger must overcome a strong presumption that duly enacted statutes are constitutional. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam). Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). This court has recognized a high bar for rendering a statute unconstitutionally vague and has advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask. Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395 (BAH),

2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 void-for-vagueness motion).

The defendant further posits that the obstruction statute is so vague that it allows arbitrary enforcement, and that the government here is engaged in "arbitrariness." (Motion at 15.) To evaluate whether a statute is so vague that it allows for arbitrary enforcement, a court looks to whether the statute has "establish[ed] minimal guidelines to govern law enforcement," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), because a statute may "require law enforcement officers to use their discretion without being unconstitutionally vague," *Agnew v. Dist. Of Columbia*, 920 F.3d 49, 55 (D.C. Cir. 2019). The statute here easily passes muster.

The D.C. Circuit's decision in *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017), well illustrates the distinction between laws that require some degree of interpretation and laws that are unconstitutionally vague. In *Bronstein*, the defendants were prosecuted for disturbing a Supreme Court argument under a law that prohibited, among other things, making a "harangue" or "oration" within the Supreme Court building. *Id.* at 1104 (citing 40 U.S.C. § 6134). The district court held that those terms were unconstitutionally vague, but the D.C. Circuit reversed. *Id.*

As the D.C. Circuit explained, vagueness is not evaluated in a vacuum. Instead, courts are required to exhaust all the available tools for statutory interpretation before declaring a statute void for vagueness. "The vagueness analysis . . . turns on the tools of statutory interpretation." *Id.* A law is not vague merely because it requires some interpretation, for "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 1107 (quoting *Rose*, 423

16

U.S. at 50).   Rather, "a statute is unconstitutionally vague if, *applying the rules for interpreting legal texts*, its meaning specifies no standard of conduct at all."   *Id.*   (internal citation, quotation, and alterations omitted) (emphasis added).   A court may strike a statute as unconstitutional only if "no construction can save" it.   *Id.* at 1106 (internal citation and quotation omitted).

Thus, the challenge in *Bronstein* failed because the disputed statutory terms "harangue" and "oration" could easily be construed using ordinary tools of statutory construction.   Because the court could discern a "core meaning" to the disputed terms by "[e]mploying the tools of statutory interpretation"—and because that core meaning "proscribes determinable conduct"—the statute was not unconstitutionally vague.   *Id.* at 1104.

### 2.   The term "official proceeding" is not unconstitutionally vague.

The defendant puts forth an argument that strains credulity: that it is unfair to prosecute him for obstruction of an official proceeding because he was not on fair notice that Congress's Joint Session on January 6 constituted an "official proceeding."   (Motion at 13-14.)   However, as described in detail above, the common sense reading of "a proceeding before the Congress" would include a Joint Session called to certify a presidential election result.   Further, no one could think that trying to force one's way into the Capitol to stop or delay Congress from meeting—and trying to intimidate Congress from formally certifying the Electoral College vote—was somehow legal.

### 3.   The word "corruptly" is not unconstitutionally vague.

Relying on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the defendant argues that the term "corruptly" as used in Section 1512(c)(2) is unconstitutionally vague. (Motion at 15-16).   That claim fails for three reasons.   First, the court in *Poindexter* did not hold

the term was vague *per se*; instead, it concluded the term was vague as applied to Poindexter's conduct of making false statements to Congress.   *See* 951 F.2d at 378-80.   Second, *Poindexter*'s analysis was confined to Section 1505, and other courts have "decline[d] to extend *Poindexter* to another section of the obstruction-of-justice statutes."   *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998); *see also United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) (rejecting vagueness challenge to "corruptly" under Section 1512(b) premised on rationale from *Poindexter*).   Finally, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), in which it "did not imply the term ["corruptly"] was too vague."   *Edwards*, 869 F.3d at 502.

In *United States v. Holloway*, No. CR-F-08-224 OWW, 2009 WL 4048748, at *16 (E.D. Cal. Nov. 20, 2009),[5]  a district judge rejected an identical *Poindexter*-based vagueness challenge to the word "corruptly" in Section 1512(c)(2).   The court found that *Poindexter* had been limited and statutorily remedied, and that "corruptly" was not unconstitutionally vague because it "means an act done with the intent to obstruct justice," and "applies to knowingly wrongful conduct."   *Id.*

Here, the defendant intended to obstruct, influence, or impede the congressional proceeding, and, in fact, did so.   The defendant's actions to obstruct the proceeding were not lawful acts of protest in support of a "sincerely held political belief," but rather were "wrongful, immoral, depraved, or evil" acts, *i.e.*, the unlawful and violent invasion of the Capitol grounds and interference with federal law enforcement deployed to protect the Capitol and its occupants on January 6.   *See United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United*

---

5 In *Ermoian*, 752 F.3d 1165, the Ninth Circuit reversed this decision on other grounds, namely that the FBI investigation was not an official proceeding.

*States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose and to engage in conduct knowingly and dishonestly with specific intent to subvert, impede, or obstruct") (internal quotation omitted); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").

The word "corruptly" therefore does not render Section 1512 unconstitutionally vague.[6]

### 4.      The rule of lenity does not apply.

Likewise, the defendant's rule of lenity argument (*see* Motion at 2) fails, as it is only a canon of "last resort."   *Guedes v. Bureau of Alcohol, Tobacco & Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019).   The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."   *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal citation and quotation omitted).   There is no grievous ambiguity here.

---

[6] The defendant separately asserts, without much argument, that count two should be dismissed because it "fails to define *corruptly*."   (Motion at 17 (capitalization altered).)   An indictment need not define each constituent term.   Regardless, the word "corruptly" has a common-sense definition, including as applied by courts and pattern jury instructions, and the government recently explained its interpretation in *United States v. Caldwell*, No. 21-cr-28-APM (D.D.C. Sept. 22, 2021) (ECF 437 (Gov't's Supp. Br. on 18 U.S.C. § 1512(c)(2))), which the government incorporates here by reference.

Here, the defendant took intentional and unlawful actions to disrupt a Joint Session of Congress.   Section 1512(c)(2) criminalizes "corruptly" obstructing an "official proceeding." Section 1515(a)(1)(B) defines that term to include a "proceeding before the Congress," which, as discussed above, encompasses Congress's certification of the Electoral College vote.

Unlike some statutes, which may require complicated compliance regimes, the defendant could have easily complied with the law on January 6.   He could have voiced his support for the candidate or cause in constitutionally protected free speech outside of the Capitol grounds.   Or he could have applied political pressure on enough legislators to object and not vote to certify in favor of the eventual winner.   No guess work was needed to comply with the law.

### 5.    The novel-construction principle does not apply

The defendant argues that because no court has construed Section 1512(c)(2) to apply to a Joint Session of Congress that such a "novel interpretation" of the statute violates the Due Process Clause of the Fifth Amendment.   (Motion at 13.)   This argument is meritless.

"[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).   Due process requires that a statute— or judicial interpretations of that statute—provide a "fair and clear" warning of the conduct that is criminalized.   *Id.* at 271.   Thus, a judge who sexually assaulted women in his chambers could be convicted of violating 18 U.S.C. § 242 by acting under the color of law to deprive the victims of their constitutional rights and privileges, even though the statutory language was capacious and the government had not previously prosecuted state officials for similar acts.   *Id.* at 272. Because "[t]he easiest cases don't even arise," there is no constitutional requirement that a

"fundamentally similar" prosecution must have previously been brought.   *Id.* at 270, 271 (internal quotation omitted).   In other words, the Constitution surely allows a first-of-its-kind prosecution.

The defendant makes much of the argument that the government has not previously prosecuted a person for obstructing a congressional proceeding that was not part of Congress's investigative power.   (Motion at 14.)   But just because the defendant's case is one of the first prosecutions does not make it novel—the attack on the Capitol on January 6 was the first time the Capitol had been breached since 1812 and the first time it was breached in a non-military conflict. Simply because Section 1512(c)(2) has never been applied to the unprecedented and brazen attack that the defendant and others carried out on the Capitol and law enforcement officers guarding the building does not mean that the defendant did not have a "fair and clear" warning that impeding or obstructing congressional proceedings encompassed his conduct.   *Lanier*, 520 U.S. at 271.

### 6.    The First Amendment does not protect the defendant's actions.

The defendant suggests that his actions on January 6 were simply an exercise of his First Amendment rights by petitioning the government for a redress of his grievances—and thus that Section 1512(c)(2) "criminalizes political speech" and "*per se* violate[s] the First Amendment." (Motion at 2.)   This argument is specious.

Notwithstanding the defendant's efforts to characterize his conduct as mere "political speech, he intentionally invaded the Capitol grounds and then tried to invade the Capitol building itself.   He refused commands from law enforcement and tried to push past officers.   These unlawful actions by the defendant plainly distinguish his conduct from lawful assembly.

In *Texas v. Johnson*, 491 U.S. 397, 403, (1989), the Supreme Court explained the procedure for determining whether a defendant may invoke the First Amendment to challenge a criminal

charge.   First, the court must determine whether the defendant's conduct "constituted expressive conduct."   *Id.*   If the conduct was not expressive, the challenge fails.   *Id.*   Second, if the conduct was expressive, the court must determine if the statute is "related to the suppression of free expression."   *Id.*   If the statute is not related to the suppression of free expression, the court applies the "less stringent standard" for noncommunicative conduct laid out in *United States v. O'Brien*, 391 U.S. 367, 377 (1968).   *Johnson*, 491 U.S. at 403.   If the statute *is* related to the suppression of free expression, the court must apply a "more demanding standard" to determine if the government's interest justifies imposition of criminal liability.   *Id.*

Under *O'Brien*, the statute is constitutional only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."   391 U.S. at 377.

The defendant's conduct was not "expressive," and thus his challenge fails before reaching the *O'Brien* factors.   Whatever he was doing at the Ellipse in the morning, or while walking to the Capitol midday, it is uncontroverted that once he entered the Capitol grounds it was his presence, not his "expressive conduct" (or his speech) that was unlawful.   As an example, say a person, believing an ongoing trial to be unjust, breaks into a courtroom in order to delay a judge from presiding over the trial, and accomplishes that delay by both his presence in the courtroom and his shouting at the judge.   The First Amendment does not protect the person from an obstruction of justice charge; his "expressive conduct" of shouting at the judge is not the conduct that the statute criminalizes.   To the contrary, it is the person's actus reus (presence and physical

disturbance in the courtroom) coupled with his mens rea (intending to prevent the trial from proceeding) that violates the obstruction statute.    The same is true here.

But even if the *O'Brien* factors apply, the defendant's argument still fails.   Here, the government interest in protecting the integrity and continuity of congressional proceedings is unrelated to any incidental impact that the application of the law may have on the ability to petition government for a redress of grievances.   Second, the statute goes no further than what is "essential" to prevent the obstruction of official proceedings of Congress.   The Supreme Court has upheld restrictions on demonstrations in Washington, D.C., with far less at stake than the integrity of the U.S. Presidential Election.   *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (upholding a ban on overnight camping on the National Mall and finding a "substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties").

## CONCLUSION

The government respectfully submits that the Court should not dismiss count 2 of the indictment.

23

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By: _____

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-252-7277
Email: Jeffrey.Nestler@usdoj.gov