**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No. 1:21-CR-00032-DLF-1** |
| **Guy Wesley Reffitt** | * | |

**Reply in Support of Motion for Change of Venue**

Defendant Guy Reffitt has moved for a change of venue to the Eastern District of Texas, Sherman Division (Fed. R. Crim. P. 21), because of prejudice in the District of Columbia, and because of parties' and witnesses' convenience, and in the interest of justice.  Doc. 37; *see* U.S. Const. amend. V, VI; Fed. R. Crim. P. 21.  The government has responded in opposition.  Doc. 39.

**I.     The Court Should Not Ignore the Effects that a Massive, Disastrous Event Has Wrought on the Jury Pool.**

The Census Bureau estimates the District's population to be around 705,000 people,  *see*  QuickFacts,  District  of  Columbia,  *available at* https://www.census.gov/quickfacts/DC (Last accessed July 29, 2021).  None of them lives more than 8 miles from the Capitol.

In the District of Columbia, media accounts have been constant for eight months.  On May 3, 2021, fourteen media organizations petitioned the Court for a Standing Order to provide "a uniform method of prompt access to all judicial records," in cases arising from the Capitol Cases.  DCD No. 1:21-mc-00046-BAH, Doc. 1.  There are so many stories that some are dispassionate and factual, but many others that

are editorial and inflammatory. *See United States v. Skilling*, 561 U.S. 358, 378 – 381 (2010).

District residents have been bombarded with constant coverage of the January 6th events, arrests, and criminal charges. *See, Id.* WTOP's almost daily coverage has included eight naming the defendant so far, which even claim to quote him. https://wtop.com/search/?s=reffitt (Last accessed Sep. 12, 2021).

Likewise, the Washington Post has five. https://www.washingtonpost.com/newssearch/?query=reffitt&btn-search=&sort=Relevance&datefilter=All%20Since%202005 (Last accessed Sep. 12, 2021).

The Washington Times has four. https://www.washingtontimes.com/search/?cx=015385541671335030271%3Anfb7f1nj88q&cof=FORID%3A11&ie=UTF-8&q=reffitt&sa=GO (Last accessed Sep. 12, 2021).

During a hearing on May 13, 2021, the government contributed to the prejudicial pretrial publicity by proffering an article in support of it's argument for continued detention. https://www.propublica.org/article/in-exclusive-jailhouse-letter-capital-riot-defendant-explains-motives-remains-boastful (Last accessed Sep. 12, 2021).

At Attorney General Merrick Garland's confirmation hearing, he pledged to "supervise the prosecution of white supremacists and others who stormed the Capitol

on 6 January." Martin Pengelly, *Merrick Garland Vows to Target White Supremacists as Attorney General,* The Guardian (Feb. 26, 2021).

The former Acting U.S. Attorney for D.C. Michael Sherwin's interview on CBS News' 60 Minutes included the following dialogue:

> **Scott Pelley**: I'm not a lawyer, but the way I read the sedition statute, it says that, "Sedition occurs when anyone opposes by force the authority of the United States, or by force hinders or delays the execution of any law of the United States." Seems like a very low bar, and I wonder why you're not charging that now?
>
> **Michael Sherwin**: Okay, so I don't think it's a low bar, Scott, but I will tell you this. *I personally believe the evidence is trending towards that*, and probably meets those elements.
>
> **Scott Pelley**: Do you anticipate sedition charges against some of these suspects?
>
> **Michael Sherwin**: *I believe the facts do support those charges*. And I think that, as we go forward, *more facts will support that*, Scott.

60 Minutes, Inside the Prosecution of the Capitol Rioters, Mar. 22, 2021 (Scott Pelley interview of former Acting U.S. Attorney Michael Sherwin).

For weeks, parts of the District of Columbia were closed. The Capitol was surrounded by a metal fence, which blocked streets and sidewalks. The Mayor declared a state of emergency and implemented a curfew. National Guard troops, armed with rifles and using armored vehicles, provided security. Prospective jurors have been seeing all of this, and they have been living with it. *See, e.g., United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996); *United States v. Awadallah*, 457 F. Supp. 2d 246 (S.D.N.Y. 2006) (suggesting that had the defendant, who was

charged with perjury, actually participated in the 9-11 attacks on New York, "the effects that a massive, disastrous event has wrought on the jury pool" would require a change of venue).

On September 15, 2021, the metal fence surrounding the Capitol was reinstalled. https://wtop.com/dc/2021/09/fencing-returns-to-capitol-wednesday-night-as-dc-preps-for-right-wing-rally/ (Last accessed Sep. 15, 2021). Prospective jurors will be seeing this, and they will be living with blocked streets and sidewalks again. *See, Id.*

The court can determine in this case that the potential jury pool is irredeemably biased, because the alleged crime has resulted in effects on the community so profound and pervasive that no detailed discussion of the pretrial publicity and juror partiality evidence is necessary. *See United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996) (summarily finding that a trial of Oklahoma City bombing suspects in federal court in Oklahoma City (Western District of Oklahoma) would be constitutionally unfair).

In the District of Columbia, media accounts have been constant for eight months. There have been so many stories that although some are dispassionate and factual, many others are editorial and inflammatory. *See e.g., Murphy v. Florida,* 421 U.S. 794, 800 n.4 (1975); *United States v. Campa,* 459 F.3d 1121, 1144 (11th Cir. 2006) (*en banc*); *Goss v. Nelson,* 439 F.3d 621, 629 (10th Cir. 2006); *White v. Mitchell*, 431 F.3d 517, 531 (6th Cir. 2005); *Daniels v. Woodford,* 428 F.3d 1181, 1211 (9th Cir. 2005);

*United States v. Higgs,* 353 F.3d 281, 308 (4th Cir. 2003); *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002); *Flamer v. Delaware*, 68 F.3d 736, 754 − 55 (3rd Cir. 1995); *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir. l990); *Grancorvitz v. Franklin*, 890 F.2d 34, 40 (7th Cir. 1989); *United States v. O'Keefe.* 722 F.2d 1175, 1180 (5th Cir. 1983); *see also Skilling*, 561 U.S. at 378 − 381.

This constant coverage has continued for nine months and currently trial is scheduled for next month, effectively a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion (*see e.g., Patton v. Yount,* 467 U.S. 1025, 1032 − 33 (1984); *Henyard v. McDonough,* 459 F.3d 1217, 1242 (11th Cir. 2006); *Goss,* 439 F.3d at 629; *Daniels,* 428 F.3d at 1211.

There has not been a significant length of time between any inflammatory publicity and the trial, because the coverage has not abated (*see e.g., Hayes v. Ayers*, 632 F.3d 500, 511 − 12 (9th Cir. 2011); *United States v. Petters*, 663 F.3d 375, 385 − 86 (8th Cir. 2011); *Patton* at 1034; *Higgs* at 308; *Nelson,* 439 F.3d at 709; *Flamer* at 755; *United States v. Lehder-Rivas*, 955 F.2d 1510, 1524 − 25 (11th Cir. 1992); *Grancorvitz* at 40; *Willie v. Maggio*, 737 F.2d 1372, 1387 (5th Cir. 1984).

The media accounts contain inflammatory and prejudicial information that would not be admissible at trial. *Daniels* at 1211.

The defense has not provided information to the media. *See United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991).

A substantially better panel can be sworn in another place, specifically the Eastern District of Texas, Sherman Division, because jurors there have not lived with blocked streets and sidewalks, a state of emergency and curfew, and National Guard troops, armed with rifles and using armored vehicles for weeks. (*Bakker*, 925 F.2d at 733; *United States v. Chapin*, 515 F.2d 1274, 1289 (D.C. Cir. 1975).

Waiting until *voir dire* confirms this would just further delay trial. Mr. Reffitt has not waived the requirements of the Speedy Trial Act (18 U.S.C. § 3161, *et seq.*) or Local Criminal Rule 45.1. In fact, he has asserted his right to a speedy trial. The government is seeking a postponement. Doc. 36. Cases arising from January 6th have added to this District's docket more than double the total number of new criminal cases filed here all of last year. [https://wtop.com/dc/2021/09/jan-6-trials-slowed-by-mounting-evidence-in-us-capitol-riot/](https://wtop.com/dc/2021/09/jan-6-trials-slowed-by-mounting-evidence-in-us-capitol-riot/) (Last accessed Oct. 8, 2021). The Court's ability to try cases is further constrained by limitations the Court has put on trials because of the coronavirus pandemic. *See* Stdg. Ord. 21-47.

Mayor Bowser has extended the Public Emergency ([https://wtop.com/dc/2021/10/mayor-extends-dcs-covid-19-public-emergency-to-2022/](https://wtop.com/dc/2021/10/mayor-extends-dcs-covid-19-public-emergency-to-2022/) (Last accessed Oct. 8, 2021). Considering that the Court has relied in part for the limitations that it has put on trials because of the coronavirus pandemic (Stdg. Ord. 21-47), the Court's ability to try cases is likely to remain constrained. The Court has continued the limitations eight times. Stdg. Ords. 20-9, 20-19, 20-29, 20-62, 20-68, 20-89, 20-93, 21-10, and 21-47.

## II.   Nor Should The Court Ignore That More of the Witnesses Are in Texas, and the Docket Conditions.

Counts One, Two, and Five allege conduct "within the District of Columbia and elsewhere," which discovery indicates would have been in the Eastern District of Texas.  Doc. 25.

Currently, defendant is detained in the District of Columbia.

Which party might call a witness is not a relevant factor.   *See, Platt v. Minnesota Min. & Mfg. Co.,* 376 U.S. 240, 243 – 44 (1964); *In re United States,* 273 F.3d 380, 387 – 88 (3rd Cir. 2001); *United States v. Jordan,* 223 F.3d 676, 685 (7th Cir. 2000); *United States v. Maldonado-Rivera,* 922 F.2d 934, 966 (2nd Cir. 1990). Discovery indicates that two or three witnesses are employed in the District of Columbia, and five or more are in the Eastern District of Texas.

Events likely to be in issue as well as documents and records likely to be involved, would be in both Districts.

Expenses of the parties would likely be the same in both Districts.

Currently, counsel are in the District of Columbia, because that is where the Indictment was filed.  However, substitute counsel could be assigned, if the case were transferred.

Both Districts are relatively accessible.

Docket conditions in the District of Columbia are worse.  Cases arising from January 6th have added to this District's docket more than double the total number

of new criminal cases filed here all of last year.   https://wtop.com/dc/2021/09/jan-6-trials-slowed-by-mounting-evidence-in-us-capitol-riot/ (Last accessed Oct. 8, 2021. This Court's ability to try cases is further constrained by limitations the court has put on trials because of the coronavirus pandemic.  *See* Stdg. Ord. 21-47.

However, the Eastern District of Texas is not so constrained.  After continuing all jury trials from March 16 through May 1, 2020, the Eastern District of Texas terminated that constraint on May 31, 2020.  *Compare* Gen'l Ord. 20-03 with Gen'l Ord. 20-09.   https://txed.uscourts.gov/?q=covid19-general-orders (Last accessed Oct. 8, 2021).

Potentially, this could disrupt of defendant's efforts to resume his business if the case is not transferred.

The defendant is not required to show compelling circumstances for a change of venue.  *In re: United States,* 273 F.3d 380, 388 (3rd Cir. 2001).  Instead, considering everything, the case would be better off transferred to another district.  *Id.* at 383; *In re Balsimo,* 68 F.3d 185, 187 (7th Cir. 1995).

## III.   The Government's Citations Are Distinguishable.

In *United States v. Caldwell*, transfer was sought based on Rule 21(a), but not also on Rule 21(b).  1:21-Cr-00028-APM, Doc. 273.  Among other things, *Caldwell* claimed that District of Columbia residents would be prejudiced by politics, based on how the District had voted.  Id. at 12 – 20.

While Watergate, Iran-Contra, Jeffrey Skilling, and Roger Stone were all high profile cases, they did not result in jurors living with blocked streets and sidewalks, a state of emergency and curfew, and National Guard troops, armed with rifles and using armored vehicles for weeks. *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990); *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991); *United States v. Libby*, 498 F. Supp. 2d 1 (D.D.C. 2007); *United States v. Stone*, DCD No. 19-CR-0018-ABJ (Apr. 16, 2020).

While Dzhokhar Tsarnaev's case was high profile and the manhunt locked down the Boston area until he was apprehended, the impact on the District of Columbia jury pool as a result of living with blocked streets and sidewalks, a state of emergency and curfew, and National Guard troops, armed with rifles and using armored vehicles for weeks is more like Timothy McVeigh's case. *Compare In re Tsarnaev*, 780 F.3d 14 (1st Cir. 2015) (*per curiam*) *with McVeigh*, 918 F. Supp. 1467.

## IV. Conclusion: The Court Should Transfer the Case to the Eastern District of Texas, Sherman Division, for Trial.

A defendant has a due process right to a fair trial by impartial jurors, who are free from outside influences. *See Sheppard v. Maxwell,* 384 U.S. 333, 349–62 (1966) (due process violation based on press coverage); *Estes v. Texas,* 381 U.S. 532, 538 – 52 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 726 – 27 (1963); *but cf Patton* 467 U.S. at 1031 – 40; *Murphy,* 421 U.S. at 797 – 803.

The Federal Rules of Criminal Procedure require the Court to transfer the proceeding to another district, when prejudice against the defendant is so great in

the transferring district that the defendant cannot obtain a fair and impartial trial there.  Fed. R. Crim. P. 21(a).  The Rule's "fair and impartial trial" requirements are like what is in the Due Process Clause.  *United States v. Rewald,* 889 F.2d 836, 862 n.27 (9th Cir. 1989); *United States v. Faul,* 748 F.2d 1204, 1211 (8th Cir. 1984). Accordingly, constitutional standards govern Rule 21.  *Ibid.*

Although generally reserved for extreme situations (*Campa,* 459 F.3d at 1143), courts have found pretrial publicity sufficient to presume prejudice and require a change of venue.  *See e.g., Daniels,* 428 F.3d at 1210 – 12; *McVeigh,* 918 F. Supp. at 1469 – 74; *United States v. Tokars,* 839 F. Supp. 1578, 1579 – 84 (N.D. Ga. 1993); *United States* v. *Ebens,* 654 F. Supp. 144, 145 – 46 (E.D. Mich. 1987); *United States v. Engleman,* 489 F. Supp. 48, 49 – 52 (E.D. Mo. 1980); *United States v. Abrahams,* 466 F. Supp. 552, 556 – 57 (D. Mass. 1978); *United States v. Mazzei,* 400 F. Supp. 17, 20 (W.D. Pa. 1975); *United States v. Holder,* 399 F. Supp. 220, 225 – 28 (D.S.D. 1975).

Prejudice requiring a change of venue is presumed when widespread, pervasive prejudice against the defendant and/or extensive prejudicial pretrial publicity saturates the community where he or she is to be tried.  *Campa,* 459 F.3d at 1143; *United States v. Perez-Gonzalez,* 445 F.3d 39, 46 (1st Cir. 2006); *Goss,* 439 F.3d at 628 – 29; *Daniels,* 428 F.3d at 1211; *Higgs,* 353 F.3d at 307 – 08; *Nelson,* 347 F.3d at 707; *Nevers v. Killinger,* 169 F.3d 352, 362 – 63, *abrogated on other grounds by Harris v. Stovall,* 212 F.3d 940, 942 – 43 (6th Cir. 2000); *O'Keefe.* 722 F.2d at 1180.

*/s/ William L. Welch, III*

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

## Certificate of Service

I hereby certify that on this 8th day of October 2021, a copy of the foregoing Reply in Support of Motion for Change of Venue was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

*/s/ William L. Welch, III*

William L. Welch, III