**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| v. | * | No. 1:21-CR-00032-DLF-1 |
| **Guy Wesley Reffitt** | * | |

**Reply in Support of Motion to Dismiss Count Two of the Second Superseding Indictment**

Defendant Guy Reffitt has moved to dismiss Count Two of the Second Superseding Indictment, because it fails to state an offense (Fed. R. Crim. P. 12(b)(3)(B)(v), and because the term corruptly is vague and unconstitutional (*See United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991)). Doc. 38. The government has responded in opposition. Doc. 40.

Mr. Reffitt maintains that Title 18 United States Code, Section 1512(c) only prohibits the obstruction of proceedings related to the *administration of justice* that take place before a tribunal. *See United States v. Ermoian*, 752 F.3d 1165, 1171 – 1172 (9th Cir. 2013). It does not prohibit the obstruction of any and every governmental function, such as the obstruction of legislative action by Congress. *Ibid*. Alleged obstruction of the Electoral College vote certification is not what Section 1512 regulates.

Likewise, legislative history supports that Section 1512(c) only applies to proceedings that are judicial in nature. When Congress enacted Section 1512(c), it was addressing the cover up of crimes relating to Enron. The Senate Judiciary Committee Report on Section 1512(c)(2) affirms its applicability to acts undertaken

to obstruct a congressional committee investigating potential federal crimes. S. Rep. No. 107-146, at 2; 4; 6 – 7 (2002).

Even the Department of Justice's own Manual reflects this interpretation. *See* Criminal Resource Manual, CRM 1729 (Updated Jan. 17, 2020), Department of Justice https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or (Last accessed Oct. 7, 2021).

In addition, *corruptly* as used in Section 1512(c)(2) is not defined. Such vagueness as applied to Mr. Reffitt violates the Due Process Clause (U.S. Const. amend V), particularly in the context of political speech, assembly, and petitioning the government for redress of grievances. *See* U.S. Const. amend I.

Even if the statute were not vague, the rule of lenity, and the novel construction principle, require any ambiguity to be resolved in the defendant's favor.

Finally, charges that criminalize political speech and the nonviolent protest of Congress *per se* violate the First Amendment, as applied.

I.   **Two Wrongs Do Not Make a Right.**

As serious as the allegation of disrupting Congress is, it does not justify misapplying the law. The Court should not ignore the statutory context, case law, legislative history, and the Department of Justice's own interpretation.

### A. Statutory Context.

Section 1512 is titled: "Tampering with a witness, victim, or an informant." 18 U.S.C. § 1512. Section 1512 is part of Chapter 73 in Title 18, which deals with "Obstruction of Justice." *See generally* 18 U.S.C. §§ 1501–1521.

Each of the statutes in Chapter 73 proscribes obstructive conduct for specific subjects and settings related to the administration of justice. Ibid. For instance, Section 1510 deals with obstruction of criminal investigations. *See* 18 U.S.C. § 1510. Sections 1516 through 1518 criminalize obstruction of specific types of other investigations. *See* 18 U.S.C. §§ 1516 (obstruction of a federal audit); *See* 1517 (obstruction of examination of financial institution); *See* 1518 (obstruction of investigations of health care offenses). Section 1519 prohibits the destruction, alteration, or falsification of records during a *federal investigation*. *See* 18 U.S.C. § 1519.

Other provisions in Chapter 73 explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (influencing or injuring a juror); *see* 1513 (retaliating against a witness, victim, or informant); *see* 1521 (retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute that prohibits "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstruction, or impeding *the administration of justice*." 18 U.S.C. § 1507.

Considering all these laws relate to obstructing the administration of justice and protecting participants in the administration of justice, it follows that, in order to violate Section 1512(c), there must be some allegation that the "official proceeding" obstructed related to the administration of justice. *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020) *quoting Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321, 134 S. Ct. 2427, 189 L. Ed. 2d 372 (2014) ("statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

**B.  Courts Have Defined "Official Proceeding" as One that Is Judicial in Nature.**

When addressing the scope of Section 1512, courts have concluded that obstructive conduct is proscribed if it affects a proceeding that is judicial in nature. *See Arthur Andersen, LLP v. United States*, 544 U.S. 696, 708, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005); *United States v. Burge,* 711 F.3d 803, 809 (7th Cir. 2013).

Congress' actions pursuant to its legislative power have different legal characteristics from those actions pursuant to Congress' implied and auxiliary power of investigation. *See, e.g.*, *Trump v. Mazars United States*, 940 F.3d 710, 719 – 23 (D.C. Cir. 2019) (outlining history of Congress' power to investigate in aid of legislation).

The Supreme Court has drawn a formal distinction between Congress' legislative and investigative powers. *Kilbourn v. Thompson*, 103 U.S. 168 (1881)

4

(House of Representatives exceeded its investigatory authority by opening an inquiry into the bankruptcy proceedings of a firm in which the United States had invested money). Congress had to "resort to a court of justice" (*Id.* at 183), because the House's investigation "could result in no valid legislation." *Id.* at 195.

Later, in *McGrain v. Daugherty*, the Court held that Congress properly issued a subpoena for bank records relevant to the Senate's investigation into the Department of Justice, because "the subject to be investigated was . . . [p]lainly [a] subject . . . on which legislation could be had." 273 U.S. 136, 176 (1927).

Cases involving attempts to interfere with Congress' auxiliary investigative power have involved: refusal to answer Congressional Committees' requests (*United States v. Rumley*, 345 U.S. 41, 42 (1953)), refusal to testify at Congressional hearings (*Barenblatt v. United States*, 360 U.S. 109 (1959)), and obstructing proceedings by making false statements to a Congressional inquiry (*Poindexter,* 951 F.2d at 369).

C.   *Ermoian* **Defined "Official Proceeding" in Section 1512(c).**

In *Ermoian,* the Court specifically considered the meaning of "official proceeding" as that term is used in Section 1512(c) and defined in Section 1515. 752 F.3d at 1168. The government was claiming a criminal investigation by the FBI was an "official proceeding."

The Court noted, "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding[.]'" 752 F.3d at

5

1169. The Court also noted "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id.*

When reviewing the plain language of Section 1515, the Court explained, "[s]everal aspects of the definition for 'official proceeding' suggest that the legal — rather than the lay — understanding of the term 'proceeding' is implicated in the statute." *Id.* at 1170.

First, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings." *Id.*

Second, the word "proceeding" in Section 1515(a)(1) is "surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'federal grand jury' 'Congress,' and 'federal government agency.'" *Id.*

Third, legal dictionaries define "proceeding" as "'a word much used to express the *business done in courts*.'" *Id.* (*quoting* Black's Law Dictionary 1241 (8th ed. 2004)) (emphasis in original).

Fourth, the Ninth Circuit considered the Fifth Circuit's interpretation of the phrase "official proceeding" and noted "'use [of] the preposition 'before' in connection with the term 'Federal Government agency' ... implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear." *Id.* at 1171*, quoting United States v. Ramos*, 537 F.3d 439, 462 – 63 (5th Cir. 2008)).

Fifth, "'use of the terms 'attendance', 'testimony', 'production', and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Ermoian,* 752 F.3d at 1172. After considering "the plain meaning of the term 'proceeding,' its use in the grammatical context of the 'official proceeding' definition, and the broader statutory context[,]" the Court held that a criminal investigation is not an "official proceeding" under Section 1512(c). *Id.*

Likewise, all of these factors and analysis applies to the phrase "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). As the Indictment itself alleges, there was no hearing before a tribunal on January 6th, but instead "Congress's certification of the Electoral College vote…." Doc. 34 at 2. The joint session on January 6th was not an exercise of Congress' investigatory power. 167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021).

This is also consistent with other case law addressing the meaning of the statutory language at issue here. *See e.g. Arthur Andersen LLP,* 544 U.S. at 708 (interpreting Section 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding" in order to have the "requisite intent to obstruct"); *Burge,* 711 F.3d at 809 (considering application of Section 1512 and noting "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries"); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018) (noting Section 1512 "broadly criminalizes various forms of witness tampering"); *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), *cert. denied*, 140 S. Ct. 113, 205 L. Ed. 2d 33 (2019).

### D. The Legislative Record Supports that the "Official Proceeding" in Section 1512(c) Must Relate to the Administration of Justice.

Section 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes–Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745. The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146 at 2 (2002).

The legislation was due in part to the collapse of Enron. The Attorney General said Sarbanes-Oxley "was prompted by Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, had systematically destroyed potentially incriminating documents." Mem. of William P. Barr, June 8, 2018 ("Barr Memo."), p. 5, https://int.nyt.com/data/documenthelper/549-june-2018-barr-memo-to-doj-mue/b4c05e39318dd2d136b3/optimized/full.pdf (Last accessed Sep. 16, 2021). Section 1512(c)(2) was a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly." Ibid.

The Senate Judiciary Committee noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." S. Rep. No. 107-146 at 4. The Act's

8

preamble and the legislative history make clear that the purpose of Section 1512(c) was to prevent corporations from destroying records relevant to federal securities investigations. It is not intended to apply in all circumstances when a government function might have been impeded. The Report states that the Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146 at 14 – 15.

Section 1512(c) did not exist as part of the original proposal. S. 2010, 107th Cong. (2002). Instead, Senator Trent Lott introduced it as an amendment. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). Senator Lott explained the purpose of adding Section 1512(c):

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

148 Cong. Rec. S6542 (daily ed. July 10, 2002).

Senator Orin Hatch explained that Section 1512(c) would "close [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. 148 Cong. Rec. S6542 (daily ed. July 10, 2002).

The Attorney General summarized:

9

> The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence."

Barr Memo., p. 6.

Section 1505 also supports that Attorney General Barr's interpretation of Congress' intent in Section 1512(c). Section 1505 concerns obstruction of congressional proceedings "by threats or force." It provides criminal penalties for:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of ***the power of inquiry*** under which ***any inquiry or investigation*** is being had by either House, or any committee of either House or any joint committee of the Congress— (italics added)

18 U.S.C. § 1505. The italics show that Congress specifically limited the obstruction offense to Congress' "power of inquiry," which are "inquir[ies] or investigation[s]." Ibid.

The legislative history of Section 1505 shows that it was designed to prevent obstruction of only those proceedings held pursuant to Congress' investigative power. *Poindexter,* 951 F.2d at 380 – 81 *quoting* H.R. Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S. Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939) ("Senate and House Reports and the floor debates concerning [Section 1505's predecessor] . . . state that the 'proposed legislation simply extends the protection now provided by law for witnesses

in Court proceedings to witnesses in proceedings before either House of Congress or committees of either House (or joint committees).'")

### E. The Department of Justice Says Section 1512(c) Prohibits Tampering with a Witness, Victim or Informant.

Despite the government's claim that The Department of Justice's Criminal Resource Manual is out of date (Doc. 40 at 11), it still states:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. *It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.* (italics added)

Criminal Resource Manual, CRM 1729 (Updated Jan. 17, 2020), Department of Justice https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or (Last accessed Oct. 7, 2021). In addition, despite the government's claim that the Manual has not been published since 1997, CRM 1729, which is currently available on the Department's public website states it "Updated Jan. 17, 2020." *See* Appendix.

On January 6th Congress did not review evidence and find facts. In another case, the government has said Congress "formalized the result of the 2020 U.S. Presidential Election." DCD No. 1:21-CR-00028-APM, Doc. 196 at 2. Congress was not exercising its implied power of investigation.

**II.  The Court Should Not Ignore the Statutory Context, Case Law, Legislative History, and the Department of Justice's Own Interpretation of Section 1512(c).**

Applying Section 1512(c) to alleged obstruction of Congress certifying the Electoral College vote would not only be novel, but require a vague an unconstitutional interpretation. A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (*quoting Johnson v. United States*, 576 U.S. 591, 595 (2015)); *see also Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.2d 1, 23 (D.C. Cir. 2009) (noting a criminal statute must "'provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal'") (*quoting Buckley v. Valeo*, 424 U.S. 1, 77 (1976)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 67 (1997).

The void for vagueness doctrine guarantees that people have 'fair notice' of what conduct the law prohibits. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (*citing Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). It also protects "against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries and judges." *Id*.

In addition, if a law "interferes with the right of free speech or of association, a more stringent vagueness test [] appl[ies]." *Hoffman Estates v. Flipside, Hoffman*

*Estates*, 455 U.S. 489, 500 (1982) (*citing Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)).

### A. Section 1512(c) Does Not Provide Fair Notice That "Official Proceedings" Include Proceedings Unrelated to the Administration of Justice.

It does not appear that Section 1512(c)(2) has been used to prosecute the obstruction of an "official proceeding" that does not involve hearing evidence and making factual findings. There is no notice in Section 1512(c)(2) or in Chapter 73 that a person may be held criminally liable for interference with a proceeding that does not resemble a legal tribunal. *See* 18 U.S.C. §§ 1501–1521.

"Vague laws invite arbitrary power[,] … leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up." *Sessions v. Dimaya,* 584 US __, 138 S. Ct. 1204, 1223 – 1224, 200 L. Ed. 2d 549 (2018) (Justice Gorsuch concurring).

Count Two exemplifies arbitrary enforcement. Generally, the government's enforcement of Section 1512(c)(2) against Mr. Reffitt is arbitrary. It does not appear that the government has ever alleged obstruction of a congressional proceeding that was not held pursuant to Congress' investigatory power before doing so in cases that arose on January 6, 2021. The government's new interpretation of the statute for this group of cases raises questions about discriminatory law enforcement. The political nature of the circumstances and the implication of rights to political speech, assembly, and to petition the government for a redress of grievances make it even

13

more likely that prosecutors are making up what the law demands.  U.S. Const. amend I; *Hoffman Estates v. Flipside,* 455 U.S. at 500 (1982) (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment); *see also Dimaya,* 138 S. Ct. at 1223 – 1224.

Specifically, the government has charged more than 500 people related to protests on January 6th.  Although many defendants allegedly entered the Capitol Building, not all alleged to have done so have been charged with violating Section 1512(c)(2), even though the government alleges they had the objective of stopping "Congress's certification of the Electoral College vote."  Doc. 34 at 2.

> In Mr. Reffitt's case, the government has claimed:
>
> that it believes "the Texas Freedom Force is a militia extremist group[]" (Doc. 1-1 at 9),
>
> that "Militia extremists sometimes call themselves three percenters ("III%ers" or "threepers") based on the myth that only three percent of American colonists took up arms against the British during the American Revolution[]" (Doc. 10 at 4 n1), and
>
> that "While many independent or multi-state militia groups incorporate III% in their unit names, the term is less indicative of membership in a single overarching group than it is representative of a common belief in the notion that a small force with a just cause can overthrow a government if armed and prepared[]" (Ibid.).

This suggests that the government has chosen to prosecute Mr. Reffitt for political reasons.  Allegations about affiliations and beliefs have nothing to do with Section 1512(c)(2).  However, the government's reliance on its beliefs about someone else's affiliations and beliefs show the danger of arbitrariness inherent in a vague interpretation of Section 1512(c)(2).

## B. Nor Should the Court Ignore Precedent.

Corruptly as used in Section 1512(c) fails the *Poindexter* Test. 951 F.2d 369. *Corruptly* as used in Section 1512(c)(2) is not defined. Likewise, this invites arbitrary and discriminatory law enforcement. *See Bronstein* 849 F.3d at 1106.

Section 1515 defines the term corruptly, but only for obstruction offenses charged "in section 1505." 18 U.S.C. § 1515(b). Congress amended Section 1515 to provide:

> As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

18 U.S.C. § 1515(b).

Before this definition was added, the D.C. Circuit had determined that *corruptly* as used in Section 1505 was vague and unconstitutional. *Poindexter, supra*. In *Poindexter*, a former national security advisor was charged with violating Section 1505 by obstructing a congressional investigation into the Iran/Contra Affair. *Id.* at 371. The obstruction consisted of lying to or misleading Members of the House and Senate Intelligence Committees about U.S. shipments of missiles to Iran. 951 F.2d at 372.

The relevant part of Section 1505 provided:

Whoever corruptly influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House . . .shall be [punished].

18 U.S.C. § 1505 (1982—Pub. L. 97–291).

Likewise, such vagueness as applied to Mr. Reffitt violates the Due Process Clause (U.S. Const. amend V), particularly in the context of political speech, assembly and petitioning of the government for a redress of grievances. *See* U.S. Const. amend I.

## III. There Is No Authority for the Assertion that Certifying the Electoral College Vote Is Judicial in Nature.

The government cites Title 3 United States Code, Sections 15 and 16. Section 15 provides when and how Congress shall count the votes. 3 U.S.C. § 15. Section 16 specifies seating and who must do what. 3 U.S.C. § 16. Neither even suggests a judicial nature, and the government cited no other authority to support its claim.

## IV. Conclusion: The Court Should Dismiss Count Two.

The "official proceeding" in Count Two must relate to the administration of justice, because Section 1512(c) only applies to an "official proceeding" related to the administration of justice, such as a congressional committee investigating a violation of the law when witnesses are subpoenaed to appear and give testimony or to provide relevant evidence. This is necessary to ensure that the alleged conduct falls within the scope conduct proscribed by the statute. *See Russell v. United States*, 369 U.S. 749, 766, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962).

Section 1512(c)(2) does not prohibit the obstruction of a proceeding before Congress like the certification of the Electoral College vote, a proceeding wholly

16

unrelated to the administration of justice. Obstruction of certifying the Electoral College vote is not a crime under Section 1512(c). Accordingly, Count Two violates the Due Process Clause. U.S. Const. amend. V.

/s/ *William L. Welch, III*

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

### Certificate of Service

I hereby certify that on this 8th day of October 2021, a copy of the foregoing Reply in Support of Motion to Dismiss was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch, III*

William L. Welch, III