IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.  Case No.: 21-cr-32-DLF

GUY WESLEY REFFITT,

Defendant.

## MOTION IN LIMINE TO LIMIT CROSS-EXAMINATION
## OF SECRET SERVICE AGENCY WITNESSES

The United States of America moves to limit the cross-examination of witnesses with the Secret Service Agency, pursuant to Fed. R. Evid. 401, 403, and 611(b).

## INTRODUCTION

In Count Four of the indictment, Defendant Reffitt is charged with obstructing, impeding, and interfering with, or attempting to obstruct, impede, or interfere with, law enforcement officers during the breach of the United States Capitol on January 6, 2021, in violation of 18 U.S.C. § 231(c)(3). Count Three charges Reffitt with violating 18 U.S.C. § 1752(a)(1) and (b)(1)(A), by knowingly entering or remaining in a restricted building or grounds without lawful authority while using or carrying a semi-automatic handgun. That statute defines "restricted buildings or grounds" to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B).

To meet its burden of proof at trial, the government will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret

Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. These officials will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, in this case protecting the Vice President and his family. The government further requests that such order preclude cross-examination that would elicit information that is not directly related to whether the Secret Service was performing that function at the Capitol on January 6, 2021. Defendant Reffitt should be specifically foreclosed from questioning the witnesses about the following:

1. Information related to the location within the Capitol or its grounds to which the Vice President and his family, or their motorcade, were taken once the riot began on January 6, 2021;

2. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;

3. Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

## ARGUMENT

I. This Court Has the Discretion to Limit Cross-Examination of Witnesses at Trial

It is well-established that a district court has the discretion to limit cross examination. *See Alford v. United States,* 282 U.S. 687 (1931)("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting a defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense

3

should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct exam). Preventing the defendant from exploring the topics identified above will not infringe his Confrontation Clause right because those topics are not relevant to an element at issue in the case, provide no basis for impeaching the Secret Service witness, and do not implicate any affirmative defense.

    II.    Cross-Examination of Secret Service Witnesses Should Be Limited to Whether the Capitol Breach Interfered with a Federally Protected Function and Whether the Capitol was Restricted on January 6, 2021

To prove Counts Three and Four, the government intends to offer limited testimony about the Secret Service's protection of certain officials on January 6, 2021. First, to establish a violation of 18 U.S.C. § 231(c)(3), the government must prove, among other things, that a civil disorder interfered with a federally protected function. 18 U.S.C. § 231(c)(3); *United States v. Red Feather,* 392 F. Supp. 916, 918-19 (D. S.D. 1975). A "federally protected function" includes any lawful function, operation, or action by a federal agency or officer. 18 U.S.C. § 232(3). Thus, the government must prove that the

January 6 breach interfered with a federal agency's or federal officer's performance of lawful duties. To meet this element, the government intends to offer the testimony that pursuant to authority under 18 U.S.C. § 3056(a)(1), on January 6, 2021, Secret Service agents were at the Capitol to protect Vice President Mike Pence and two members of his immediate family. A Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family.

Likewise, as it relates to Count Three, similar testimony will be offered to establish that the Capitol and its grounds were "restricted," for purposes of § 1752(a) because the Vice President and his family were present there and being protected by the Secret Service. [1] *See* 18 U.S.C. § 1752(c)(1)(B)(defining restricted buildings and grounds).

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial. The fact that the Vice President, his family, and their motorcade had to be moved for safety is relevant to whether the civil disorder adversely affected the Secret Service's ability to protect those individuals. But the location to which they were moved, or the Secret Service's general protocols about relocation for safety, should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective details is not relevant in this case. The number or

---

[1] The Secret Service is authorized to protect the Vice President and his immediate family. 18 U.S.C. §§ 3056(1) and (2).

type of assigned agents on a protective detail does not alter the probability that the disorder interfered with the Secret Service's duties to protectees in this case, or that the Capitol and its grounds were restricted at the time. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

    III.    The Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence

If this court determines that a hearing is necessary to determine the admissibility of testimony by Secret Service witnesses, the government requests the hearing be conducted *in camera* and ex parte. As noted, in this case, disclosure of certain information could prove detrimental to the Secret Service's ability to protect high-level government officials and affect our national security. Courts have found such considerations justify ex parte, *in camera* proceedings. *See Gilmore v. Palestinian Interim Self-Gov't Auth.,* 843 F.3d 958, 968 (D.C. Cir. 2016) (finding that while ex parte proceedings should be employed to resolve discovery disputes only in extraordinary

circumstances, they are appropriate where disclosure could lead to substantial adverse consequences, such as where a party sought intelligence materials generated in the midst of a geopolitical conflict); *United States v. Nixon,* 418 U.S. 683, 714 (1974) (affirming district court's order for *in camera* inspection of subpoenaed presidential materials); *United States v. Kampiles,* 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera ex parte proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that *in camera* proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown,* 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same).

CONCLUSION

For these reasons, the United States requests that this court enter an order, as described above, limiting cross-examination of any witness with the Secret Service. If this court determines an evidentiary hearing is necessary to rule on this motion, the government asks that the hearing be held *in camera* and ex parte.

Dated October 21, 2021.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By: */s/ Risa Berkower*
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-803-1576
Email: risa.berkower@usdoj.gov