**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No. 1:21-CR-00032-DLF-1** |
| **Guy Wesley Reffitt** | * | |

**Supplemental Memorandum in Support of Motion to Dismiss Count Two of the Second Superseding Indictment**

During the motions hearing on October 15, 2021, there was discussion about whether Congress' Electoral College vote certification is like a court, and whether Congress is "like a jury."  Mr. Reffitt maintains that it is neither, because Congress' certification is ministerial, and because applying Section 1512(c)(2) to conduct unrelated to the availability or integrity of evidence would render as surplusage: i) "otherwise obstructs" in Section 1512(c)(2); ii) the rest of Section 1512; and iii) much of Chapter 73.  18 U.S.C. §§ 1501 *et seq*.

Currently, the Court has the defendant's Motion to Dismiss Count Two (Doc. 38) under advisement.[1]  Min. Ord., Oct. 15, 2021.

I. **Congress' Certification of the Electoral College Vote Is Ministerial.**

Electoral College vote certification is not an "adjudicatory proceeding." Congress does not possess the "adjudicative" power to reject certified Lists.  Vice President Mike Pence, the presiding officer of the electoral count, stated on January

---

[1] Currently, this issue is also before the Court in *United States v. Caldwell et al.*, 1:21-CR-00028-APM; *United States v. Aaron Mostofsky*, 1:21-CR-00138-JEB; and *United States v. Brady Knowlton*, 1:21-CR-00046-RDM.

6th, that his duties were "largely ceremonial," not "adjudicative."   Ltr. of Vice President Mike Pence, Jan. 6, 2021, available at: https://bit.ly/2WVy9s0 (Last accessed Oct. 19, 2021).

The Constitution does not give Congress "adjudicative" powers to reject certified Electoral College Lists.   The Constitution provides that Electors of the Electoral College shall send certified Lists of their Votes to the "Seat of Government of the United States," where the President of the Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."   U.S. Const. art. II, § 1, cl. 3; *see also* U.S. Const. art. II, § 1, cl. 1 – 2, 4.

In addition, the Twelfth Amendment provides that once the President of the Senate has opened all of the Certificates, "the votes shall ***then*** be counted."   U.S. Const. amend. XII (emphasis added).   In the case of electoral deadlock, the House of Representatives is to "***immediately***" choose the next president from those on the list. Ibid. (emphasis added).   At the Convention, James Wilson said,

> If the election be made as it ought as soon as the votes of the electors are opened & it is known that no one has a majority of the whole, there can be little danger of corruption.

Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. Rev. 1653, 1715 (2002), *citing* 2 The Records of the Federal Convention of 1787 at 502 (Max Farrand ed., 1911).   The immediacy principle implies that the count may not be

delayed, which tends to show that it is ministerial, because adjudication would involve deliberation.

The consensus view among legal scholars is that "counting" is a ministerial, not a judicial act. *See*, *e.g.*, Kesavan, 80 N.C. L. Rev. at 1712 (2002); Akhil Reed Amar, *Presidents, Vice Presidents, and Death: Closing the Constitution's Succession Gap*, 48 Ark. L. Rev. 215, 229 (1995) ("In counting votes, Congress performs in effect a ministerial function, registering the will of the voters in the electoral college."); *Congress Sowed the Seeds of Jan. 6 in 1887: the Electoral Vote Count Act lets Congress think it can choose the President, but it's unconstitutional*, Judge J. Michael Luttig and David B. Rivkin, Jr., Wall Street Journal, Mar. 18, 2021, available at: https://www.wsj.com/articles/congress-sowed-the-seeds-of-jan-6-in-1887-11616086776.4.

History also suggests that the Framers intended Congress' role to be ministerial.  At the Philadelphia Convention of 1787, they rejected a proposal by James Madison and Hugh Williamson to insert the phrase "who shall have balloted" after the word "Electors."  Kesavan, 80 N.C. L. Rev. at 1713, *quoting* 2 Farrand at 515.  The purpose of this was "so that the non-voting electors not being counted might not increase the number necessary as a majority of the whole—to decide the choice without the agency of the Senate."  Ibid.  John Dickinson successfully moved to insert after "Electors" the word "appointed."  Ibid.  Accordingly, the requisite number of electoral votes needed for victory is "a Majority of the whole Number of Electors Appointed."  U.S. Const. art. II, § 1, cl. 3.  This history suggests that the Framers

considered the possibility that there might not be a "vote," *if an elector shall not have balloted*.  They did not consider the possibility that an electoral vote might be unconstitutional, because vote tabulation machines did not recognize Sharpie ink. Kesavan, 80 N.C. L. Rev. at 1713.

In *United States v. William Pepe*, the government has already said that "the certification of the Electoral College vote is not an 'inquiry or investigation.'"); 1:21-CR-00052-TJK-2, Doc. 55, p. 8 n. 3 (D.D.C. 2021).

## II.   Applying Section 1512(c)(2) to Conduct Unrelated to the Availability or Integrity of Evidence Would Render as Surplusage: i) "Otherwise Obstructs" In Section 1512(c)(2); ii) the Rest of Section 1512; and iii) Much of Chapter 73.

"[A]ll words in a statute are to be assigned meaning, and" nothing is to be construed as surplusage.  *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (*quoting Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)).  "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."  *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013).  Reading Section 1512(c)(2) beyond acts affecting the availability or integrity of evidence used in an official proceeding commits the Court to layers of surplusage.  18 U.S.C. § 1512(c)(2).

Section 1512(c) provides: "Whoever corruptly—

(1)   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; *or*

(2)   *otherwise* obstructs, influences, or impedes any official

proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . . 18 U.S.C. § 1512(c) (emphasis added).

### A.   If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then the Words "or Otherwise" Would Have No Meaning.

The subsection could just read, "Whoever corruptly obstructs, influences, or impedes any official proceeding, or attempts to do so shall be fined … or imprisoned…." Conversely, understanding subsection (c)(2) to reach conduct directed at undermining the proceeding through actions that affect the integrity and availability of evidence other than records, documents, or other objects, such as tips to avoid surveillance, disclosing the identity of an undercover agent, soliciting a false statement, or making a false statement, gives meaning to the word "otherwise" in subsection (c)(2).  *See e.g., United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance sufficient to find "efforts were out of a desire ***to influence what evidence came before the grand jury***") (emphasis added); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation sufficient to find purpose was to **"*thwart evidence from reaching the investigation*"**) (emphasis added); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (attempting to obtain false statement ***to be used in pending federal charges*** sufficient for Section 1512(c)(2)) (emphasis added); *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (making false statements **"*directly to the grand jury itself*"** sufficient for Section 1512(c)(2)) (emphasis original); *United States v.*

*Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (false responses to interrogatories ***that were filed in the official proceeding*** sufficient for Section 1512(c)(2)) (emphasis added); *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (making false statements to outside counsel **"so that counsel *would provide misleading information to the grand jury*"**) (emphasis added).

*Begay v. United States* addressed what crimes were covered by the statutory phrase

> any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or ***otherwise involves*** conduct that presents a serious potential risk of physical injury to another.

553 U.S. 137, 142 (2008) (*quoting* 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis added). Relying on *ejusdem generis* the Supreme Court decided that "otherwise involves" covered "only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Ibid.* Had Congress intended the latter "all encompassing meaning," "it is hard to see why it would have needed to include the [preceding statutory] examples at all." *Ibid.*

Grammatically, the phrase "or otherwise obstructs…" cannot stand alone. 18 U.S.C. § 1512(c)(2). The adverb "otherwise" means "in a different way or manner." *Begay* at 144 (*quoting* Webster's Third New International Dictionary 1598 (1961)). The word "different" is an adjective meaning "not of the same kind : partly or totally unlike." *"Different,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/different (Last accessed Oct. 30, 2021). More specifically, it

is a comparative adjective, which by definition involves a relationship between two or more subjects. *"Comparative,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/comparative (Last accessed Oct. 30, 2021). Section 1512(c)(2) begins with the phrase "or otherwise obstructs...." Accordingly, it does not stand alone.

Section 1512(c)(2) is not an independent clause, because "or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so ... shall be fined ... or imprisoned" contains neither a subject nor a complete predicate. An "independent clause" is one that stands by itself as a simple sentence, i.e., it contains a subject and a predicate and completes a proposition by itself. *"Independent clause,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/independent%20clause (Last accessed Oct. 30, 2021).

The predicate is not complete, because the meaning of "or otherwise obstructs, influences, or impedes any official proceeding" cannot be determined without reference to the verb or verbs which precede it, but the comparative adverb "otherwise" by its definition modifies the verbs that follow it. Since Section 1512(c)(2) is not an independent clause, it is a dependent clause, meaning it is "connected to the main clause of a sentence." *"Dependent clause,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dependent%20clause (Last accessed Oct. 30, 2021). The clause to which Section 1512(c)(2) is "connected" is Section 1512(c)(1). Accordingly, Section 1512(c)(2) is not "independent of" Section 1512(c)(1).

The "otherwise" provision in Section 1512(c)(2) is not grammatically distinct from the one in *Begay*.  553 U.S. 137.  Like in *Begay* the issue is whether the "otherwise" conduct charged is a "similar crime" to the ones enumerated in Section 1512(c)(1).  *Begay* at 142.

By "similar crimes," *Begay* meant "crimes that are roughly similar in kind as well as in degree of risk posed to the [enumerated] examples themselves." *Id.* at 143. In *Begay*, the "example crimes" were "burglary, arson, extortion and crimes involving the use of explosives." *Ibid.*  The Supreme Court held that DUI was not "similar" to those, because "the listed crimes involve purposeful, 'violent' and 'aggressive' conduct," which driving intoxicated did not necessarily entail. *Ibid.*

Likewise, although soliciting false testimony (§ 1512(c)(2)) is not identical to document shredding (§ 1512(c)(1)), it is similar according to *Begay*, because both involve acts intended to affect the integrity or availability of evidence in a proceeding. *Volpendesto*, 746 F.3d at 286; *Phillips*, 583 F.3d at 1265; *Petruk*, 781 F.3d at 447; *Carson*, 560 F.3d at 585; *Burge*, 711 F.3d at 809; *Ring*, 628 F. Supp. 2d at 223.

Notwithstanding all the surplusage, even if somehow the construction were formally correct, it is not "clearly" so.  The Court would have turn to Section 1512(c)(2)'s legislative history. *Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 460 (1987) (review of legislative history appropriate to resolve statutory ambiguity).

Section 1512 is titled: "Tampering with a witness, victim, or an informant."  18 U.S.C. § 1512.  Section 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes."  Sarbanes–Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.  The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations."  S. Rep. No. 107-146 at 2 (2002).

The legislation was due in part to the collapse of Enron.  The Attorney General said Sarbanes-Oxley "was prompted by Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, had systematically destroyed potentially incriminating documents."  Mem. of William P. Barr, June 8, 2018 ("Barr Memo."), p. 5, https://int.nyt.com/data/documenthelper/549-june-2018-barr-memo-to-doj-mue/b4c05e39318dd2d136b3/optimized/full.pdf  (Last accessed Sep. 16, 2021).  Section 1512(c)(2) was a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly."  Ibid.

The Senate Judiciary Committee noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron."  S. Rep. No. 107-146 at 4.  The Act's

preamble and the legislative history make clear that the purpose of Section 1512(c) was to prevent corporations from destroying records relevant to federal securities investigations.  It is not intended to apply in all circumstances when a government function might have been impeded.  The Report states that the Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records."  S. Rep. No. 107-146 at 14 – 15.

Section 1512(c) did not exist as part of the original proposal.  S. 2010, 107th Cong. (2002).  Instead, Senator Trent Lott introduced it as an amendment.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).  Senator Lott explained the purpose of adding Section 1512(c):

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered…. [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena.  I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

148 Cong. Rec. S6542 (daily ed. July 10, 2002).

Senator Orin Hatch explained that Section 1512(c) would "close [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).

The Attorney General summarized:

10

The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence."

Barr Memo., p. 6.

### B.   If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then the Rest of Section 1512 Would Be Surplusage.

In *Yates v. United States*, the Supreme Court resisted a reading of an obstruction statute "that would render superfluous an entire provision passed in proximity as part of the same Act."  574 U.S. 528 (2015).

If Section 1512(c)(2) were to cover any act that obstructs, influences or impedes an official proceeding, then all of the following would be surplusage:

[Section 1512(a)(1) killing or attempting] to kill another person with intent to–

(A) prevent the attendance or testimony of any person in an official proceeding;

(B) prevent the production of a record, document, or other object, in an official proceeding; or

(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

[Section 1512(a)(2) using] physical force or the threat of physical force against any person, or attempts to do so, with intent to–

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to

11

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; or

(C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

[Section 1512(b) knowingly using] intimidation, threaten[ing], or corruptly persuad[ing] another person, or attempt[ing] to do so, or engag[ing] in misleading conduct toward another person, with intent to–

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a

violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

[Section 1512(d)] intentionally harass[ing] another person and thereby hinder[ing], delay[ing], prevent[ing], or dissuad[ing] any person from

(1) attending or testifying in an official proceeding;

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

(3) arresting or seeking the arrest of another person in connection with a Federal offense; or

(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempt[ing] to do so….

Congress would not have enacted these provisions, carefully tying each type of obstructive act *to the integrity or availability of evidence*, only to follow them with a clause that covers the exact same *actus reus*, but without any tie to evidence availability.  *Qi-Zhuo*, 70 F.3d at 139 ("[A]ll words in a statute are to be assigned meaning, and … nothing therein is to be construed as surplusage.").

### C.   If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then Much of Chapter 73 Would Be Surplusage.

If Section 1512(c)(2) were to cover any act that obstructs, influences or impedes an official proceeding, then all of the following would be surplusage:

[Section 1503] corruptly, or by threats or force, or by any threatening letter or communication, influenc[ing], intimidate[ing], or imped[ing] jurors, officers of the court, law enforcement officers, or the administration of justice;

13

[Section 1505] corruptly, or by threats or force, or by any threatening letter or communication influenc[ing], obstruct[ing], or imped[ing] or endeavor[ing] to influence, obstruct or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress. . ."

[Section 1510] willfully endeavor[ing] by means of bribery to obstruct the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator.

[Section 1513] retaliat[ing] against witnesses, victims or informants in official proceedings.

[Section 1519] knowingly alter[ing], destroy[ing], mutilate[ing], conceal[ing], cover[ing] up, falsif[ying], or mak[ing] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. . ."

### D.   *Yates* **Bars a Reading that Would Render So Much Surplusage.**

In *Yates,* the Supreme Court rejected the government's claim that "tangible object" Section 1519 included all physical objects, such as a dead fish, not just those that contain information.  574 U.S. at 542.  The Court rejected this construction, because if "tangible object" in Section 1519 covered all physical objects, it would have rendered as surplusage Section 1512(c)(1), which proscribes "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object. . ." *Yates* at 542.

*Yates* concerns the distinction between evidence that is used to record or preserve information (§ 1519) and physical evidence that does not intrinsically record or preserve information, such as a knife (§ 1512(c)(1)).  The Court applied *ejusdem generis* and *noscitur a sociis* to limit "tangible object" to an object used to record or

preserve information, because the phrase followed a list of words separated by commas, each noun of which recorded or preserved information (records, documents).

Under *noscitur a sociis*, "a word is known by the company it keeps to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates*, 574 U.S. at 543 (cleaned up).

Section 1519 proscribes "'alter[ing], destroy[ing] … *falsif[ying] or mak[ing] a false entry in* any record, document, or tangible object.'" *Yates* at 543 (*citing* § 1519) (emphasis in original). The italicized verbs "typically take as grammatical objects … things used to record or preserve information." *Ibid*. Accordingly, *noscitur a sociis* counseled limiting "tangible object" to evidence that is used to record or preserve information.

Under *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates* at 544 (cleaned up). That counseled in favor of interpreting "tangible object" to mean evidence that records or preserves information given that it followed "record[s], document[s]." *Ibid*.

> It is highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind ***in a provision targeting fraud in financial record keeping***.

*Yates* at 544. (emphasis added).

15

The exact same analysis applies to Section 1512(c)(2). It criminalizes "whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object … or otherwise obstructs, influences, or impedes any official proceeding…." Under *noscitur a sociis*, "or otherwise obstructs" in Section 1512(c)(2) is surrounded by words that *concern evidence impairment*, if not always impairment of physical evidence. That is true not only of the words in Section 1512(c)(1), but all of the words in Section 1512.

Under *ejusdem generis*, "or otherwise obstructs" in Section 1512(c)(2) follows: "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object…." While it might be reasonable to find that "or otherwise obstructs" includes non-physical evidence, "[i]t is highly improbable that Congress would have buried a general . . . statute covering [acts that have nothing to do with evidence] of any and every kind in a provision targeting fraud in financial record keeping." *Yates* at 544.

*Yates* also held that if "recourse to traditional tools of statutory construction leaves any doubt about the meaning of 'tangible object' … we would invoke the rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* at 548. Lenity was particularly appropriate because the government

> urge[d] a reading of [an obstruction statute] that exposes individuals to 20-year prison sentences for tampering with ***any*** physical object that ***might*** have evidentiary value in ***any*** federal investigation into ***any*** offense…. [B]efore we choose the harsher alternative, [we] require that Congress … [speak] in language that is clear and definite.

*Yates* at 548 (emphasis original).

16

Likewise, lenity is as appropriate here.  The government exposes defendant to a 20-year prison sentence for *any* obstructive act, *whether or not* it concerns evidence integrity or availability, in any "proceeding" *whether or not* it concerns an inquiry or investigation.

> **E.**   **Count Two Does Not Allege Interference with "Documentary or Tangible Evidence.**

Count Two charges:

> … corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15 – 18.
>
> Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

Doc. 34 at 2.

It alleges nothing about Electoral College certificates or the intent to stop Members of Congress from "reviewing" them.  Ibid.  It does not allege that Members of Congress were unable to "review" the certificates on account of defendant's actions or anyone else's.  Ibid.  Without allegation in the indictment contending either intention to or did "prevent the examination of documents, records, and other nontestimonial evidence," Count Two must be dismissed.

### III.   "A Proceeding before the Congress" Means One Involving an Inquiry or Investigation for the Purpose of Section 1512.

Courts "assume Congress is aware of existing law when it passes legislation and is aware of the judicial background against which it is legislating." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). "When Congress uses the language of one statute in another statute it usually intends both statutes to have the same meaning." *Avocados Plus Inc. v. Veneman*, 370 F. 3d 1243, 1249 (D.C. Cir. 2004). When interpreting statutes, the "assumption is that Congress knows the law – by which the Supreme Court means judicial decisions." *Id.*

Section 1512(c)(2) was codified in 2002 after enactment of the Sarbanes-Oxley Act. That is the "existing … legislation and … judicial background against which [Congress was then] legislating." *Miles* at 32. Courts "assume" Congress did not intend to stray from that background unless shown otherwise. *Id.* First, obstructing a proceeding has always involved an inquiry or investigation. Second, in 1991 the D.C. Circuit analyzed the legislative history of obstruction of Congress offenses specifically. *United States v. Poindexter*, 951 F.2d 369, 380 – 82 (D.C. Cir. 1991). Congress "simply extended the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress." *Id.* at 381. Section 1512 is titled "Tampering with a witness, victim or an informant." 18 U.S.C. § 1512.

Third, in 1994 the D.C. Circuit addressed charges under both Section 1505 and Section 1512. *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994). In *Kelley*, the

18

government stipulated that "proceeding" meant the same thing in Section 1505 and in Section 1512. *Id.* at 1128. In addition, an Office of the Inspector General matter qualified as a "proceeding," because the agency had: i) "adjudicative power" or "the power to enhance [its] investigation through the issuance of subpoenas or warrants[;]" and ii) the OIG matter was an investigation. *Id.* at 1127.

All of this preceded Congress' enactment of Section 1512(c)(2), and accordingly, Congress was aware of it. *Miles*, 498 U.S. at 32. "Proceeding" should not now mean something no law or court had meant before Congress legislated. *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) ("proceeding" in Section 1515(a)(1) must be interpreted in the "legal sense" to mean activities that feature the defining qualities of "the business done in courts").

## IV.   Conclusion

Count Two should be dismissed.

/s/ *William L. Welch,* III

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

**Certificate of Service**

I hereby certify that on this 2nd day of November 2021, a copy of the foregoing Supplemental Memorandum in Support of Motion to Dismiss was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch,* III

_____
William L. Welch, III