**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 21-cr-00032 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **GUY WESLEY REFFITT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**
**IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

RELEVANT BACKGROUND ...................................................................... 1

ARGUMENT .............................................................................................. 4

SECTION 1512(C)(2) APPLIES TO THE CONDUCT   ALLEGED IN THE SUPERSEDING INDICTMENT ..................................................................... 4

     I.    Congress's certification of the Electoral College vote is an official proceeding............................................................................................ 4

     II.   Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers the defendant's actions on January 6, 2021. ................................................................................. 7

     III.  Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach. ................................................................................................. 18

     IV.  The Supreme Court's decision in *Yates v. United States* does not counsel a different interpretation. ................................................................. 23

     V.   Even if Section 1512(c)(2) required that the obstructive act relate to documentary or tangible evidence, the defendant's alleged conduct would be covered. ......................................................................................... 33

CONCLUSION .......................................................................................... 36

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008) ............................................................................................ 29

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000) ............................................................................................ 21

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005) ................................................................................ 20, 21, 22

*Barber v. Thomas*,
    560 U.S. 474 (2010) ............................................................................................ 31

*Beecham v. United States*,
    511 U.S. 368 (1994) ............................................................................................ 30

*Begay v. United States*,
    553 U.S. 137 (2008) ...................................................................... 25, 26, 29, 30

*Bostock v. Clayton Cnty., Georgia*,
    140 S. Ct. 1731 (2020) ........................................................................................ 32

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*,
    331 U.S. 519 (1947) ................................................................................ 18, 27

*Chamber of Commerce of U.S. v. Whiting*,
    563 U.S. 582 (2011) ............................................................................................ 14

*Chiafalo v. Washington*,
    140 S. Ct. 2316 (2020) .......................................................................................... 6

*Collazos v. United States*,
    368 F.3d 190 (2d Cir. 2004) ................................................................................ 9

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ............................................................................................ 12

*Dean v. United States*,
    556 U.S. 568 (2009) ............................................................................................ 14

*Gooch v. United States*,
    297 U.S. 124 (1936) .............................................................................................. 9

*Hubbard v. United States*,
    514 U.S. 695 (1995) ............................................................................................ 10

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ................................................................ 14

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
  140 S. Ct. 768 (2020) ............................................................. 32

*Lawson v. FMR LLC*,
  571 U.S. 429 (2014) .................................................................. 7

*Loughrin v. United States*,
  573 U.S. 351 (2014) ........................................................... 14, 29

*Marinello v. United States*,
  138 S. Ct. 1101 (2018) .......................................................... 8, 23

*Marks v. United States*,
  430 U.S. 188 (1977) ................................................................ 26

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ................................................................ 12

*National Ass'n of Mfrs. v. Department of Defense*,
  138 S. Ct. 617 (2018) ............................................................... 8

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) .................................................................. 32

*Pasquantino v. United States*,
  544 U.S. 349 (2005) ................................................................ 13

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) ................................................................ 12

*Russello v. United States*,
  464 U.S. 16 (1983) .................................................................... 5

*S. D. Warren Co. v. Maine Bd. of Env't Prot.*,
  547 U.S. 370 (2006) ................................................................ 30

*Shular v. United States*,
  140 S. Ct. 779 (2020) ............................................................. 31

*United States v. Aguilar*,
  515 U.S. 593 (1995) .......................................................... passim

*United States v. Ahrensfield*,
  698 F.3d 1310 (10th Cir. 2012) ............................................. 10

*United States v. Brown*,
    688 F.2d 596 (9th Cir. 1982) ............................................................. 13

*United States v. Burge*,
    711 F.3d 803 (7th Cir. 2013) ................................................... 8, 10, 17

*United States v. Carson*,
    560 F.3d 566 (6th Cir. 2009) ............................................................. 10

*United States v. Cervantes*,
    No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021) ........................... 10, 33

*United States v. De Bruhl-Daniels*,
    491 F. Supp. 3d 237 (S.D. Tex. 2020) ................................. 15, 30, 31, 33

*United States v. Erickson*,
    561 F.3d 1150 (10th Cir. 2009) ......................................................... 21

*United States v. Espy*,
    145 F.3d 1369 (D.C. Cir. 1998) ......................................................... 29

*United States v. Frank*,
    354 F.3d 910 (8th Cir. 2004) ............................................................. 13

*United States v. Friske*,
    640 F.3d 1288 (11th Cir. 2011) ................................................. 19, 20, 22

*United States v. Gordon*,
    710 F.3d 1124 (10th Cir. 2013) ..................................................... 19, 20

*United States v. Howard*,
    569 F.2d 1331 (5th Cir. 1978) ......................................................... 9, 13

*United States v. Hutcherson*,
    No. 05-CR-39, 2006 WL 270019 (W.D. Va. Feb. 3, 2006) ........................... 14, 33

*United States v. Jeter*,
    775 F.2d 670 (6th Cir. 1985) ............................................................. 18

*United States v. Kernell*,
    667 F.3d 746 (6th Cir. 2012) ............................................................. 32

*United States v. Lefkowitz*,
    125 F.3d 608 (8th Cir. 1997) ............................................................. 13

*United States v. Leisure*,
    844 F.2d 1347 (8th Cir. 1988) ........................................................... 13

*United States v. Lester*,
    749 F.2d 1288 (9th Cir. 1984) ........................................................ 13

*United States v. Martinez*,
    862 F.3d 223 (2d Cir. 2017)............................................................ 10

*United States v. Matthews*,
    505 F.3d 698 (7th Cir. 2007) .......................................................... 19

*United States v. McGainey*,
    37 F.3d 682 (D.C. Cir. 1994)......................................................... 21

*United States v. Mintmire*,
    507 F.3d 1273 (11th Cir. 2007) ..................................................... 19

*United States v. Moyer*,
    674 F.3d 192 (3d Cir. 2012)........................................................... 32

*United States v. North*,
    910 F.2d 843 (D.C. Cir. 1990) ............................................. 18, 19, 20

*United States v. Petruk*,
    781 F.3d 438 (8th Cir. 2015) ................................................... passim

*United States v. Phillips*,
    583 F.3d 1261 (10th Cir. 2009) ..................................................... 10

*United States v. Poindexter*,
    951 F.2d 369 (D.C. Cir. 1991)............................................. 5, 12, 19

*United States v. Ring*,
    628 F. Supp. 2d 195 (D.D.C. 2009).................................... 8, 22, 30

*United States v. Rodgers*,
    466 U.S. 475 (1984).................................................................... 33

*United States v. Sampson*,
    898 F.3d 287 (2d Cir. 2018)........................................................... 13

*United States v. Scott*,
    979 F.3d 986 (2d Cir. 2020)........................................................... 32

*United States v. Singleton*,
    No. 06-CR-80, 2006 WL 1984467 (S.D. Tex. July 14, 2006)................... 14, 33, 35

*United States v. Sussman*,
    709 F.3d 155 (3d Cir. 2013)........................................................... 13

*United States v. Volpendesto*,
   746 F.3d 273 (7th Cir. 2014) ............................................................... 9, 10

*United States v. Watt*,
   911 F. Supp. 538 (D.D.C. 1995) ............................................................... 12

*United States v. Watters*,
   717 F.3d 733 (9th Cir. 2013) ............................................................... 19

*United States v. Yielding*,
   657 F.3d 688 (8th Cir. 2011) ............................................................... 32

*Yates v. United States*,
   574 U.S. 528 (2015) ............................................................... passim

**Statutes**

18 U.S.C. § 1341 ............................................................... 29

18 U.S.C. § 1344 ............................................................... 29

18 U.S.C. § 1503 ............................................................... 9, 12, 14

18 U.S.C. § 1505 ............................................................... 5, 14, 19

18 U.S.C. § 1512 ............................................................... passim

18 U.S.C. § 1515 ............................................................... 4, 10

18 U.S.C. § 1519 ............................................................... passim

18 U.S.C. § 2 ............................................................... 3

18 U.S.C. § 401 ............................................................... 21

18 U.S.C. § 924 ............................................................... 25, 30

28 U.S.C. § 2466 ............................................................... 9

3 U.S.C. § 15 ............................................................... 6, 7, 34

3 U.S.C. § 17 ............................................................... 7

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 ............................................................... passim

Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 ............................................................... 15

**Other Authorities**

148 Cong. Rec. H4683-84 (daily ed. July 16, 2002) ..................................................... 16

148 Cong. Rec. S6550 (daily ed. July 10, 2002) ................................................... 16, 17

Oxford English Dictionary................................................................................. 8, 9, 30

S. 1722, 96th Cong. (1979)........................................................................................ 5

S. Rep. No. 107-146 (2002).......................................................................... 15, 16, 32

Seventh Circuit Pattern Criminal Jury Instructions .................................................. 20

Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653
    (2002)................................................................................................................. 6

William Barr, *Mueller's "Obstruction" Theory*, June 8, 2018) ................................. 11

## INTRODUCTION

The defendant's obstruction of Congress's certification of the Electoral College vote on January 6, 2021, is criminalized by 18 U.S.C. § 1512(c)(2).  Nothing in Section 1512(c)(2)'s text, structure, or history, or in the relevant precedent, limits that provision to obstruction tied to documentary or tangible evidence.  In any event, even if such a limitation existed, the defendant's alleged conduct falls within the scope of the statute.  The defendant's motion to dismiss should therefore be denied.

## RELEVANT BACKGROUND

1.   Congress enacted a prohibition on "Tampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it within the pre-existing Section 1512 as subsection (c).  That prohibition applies to

> (c) [w]hoever corruptly--
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > (2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.*

18 U.S.C. § 1512(c) (emphasis added).

2.   At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building.  The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 U.S. Presidential Election.  At approximately 1:45 p.m., the defendant, Guy Reffitt, while armed with a handgun, joined a mass of others congregated outside the Capitol building.  Reffitt, walking upward on the banister on the west stairs of the Capitol, advanced forward from the crowd,

1

with a megaphone in his hand, yelling at the U.S. Capitol Police officers trying to protect the Capitol building.  Reffitt both tried to convince the officers to stand down (with comments such as "You can't stop us all") and rallied the mob to advance on the officers and the Capitol building (including by waving the mob forward after Reffitt had been immobilized by pepper spray and less-than-lethal projectiles).

Reffitt was clear about his intentions, both before and after attacking the Capitol:

*Telegram messages.* In a group Telegram chat with over 60 members, including fellow Texas Three Percenter militia members, on December 22, 2020, after Reffitt stated that he was planning to go to Washington, D.C., another person wrote, "The only way you will be able to do anything in DC is if you get the crowd to drag the traitors out."  Reffitt responded, "I don't think anyone going to DC has any other agenda."  In that same Telegram thread, on December 27, 2020, Reffitt wrote, "The legislative branch has committed treason." And: "The fuel is set. We will strike the match in DC on the 6th."

*Helmet camera video.*  On January 6, 2021, while at the Ellipse immediately before coming to the Capitol, Reffitt declared his intentions to those around him, as captured on the video camera he was wearing on his helmet: "I didn't come here to play games. I am taking the Capitol with everybody fucking else.  We are all going to drag those motherfuckers out, kicking and screaming. I just want to see Pelosi's head hit every fucking stair on the way out . . . and Mitch McConnell, too.  Fuck 'em all."

*Zoom recording.*  On January 9, 2021, after he returned home to Texas, Reffitt told his fellow militia members what he had intended to do by going to the Capitol on January 6, as captured on a Zoom recording of the meeting.  Recounting the events and his conversations at the Ellipse, Reffitt stated: "Everyone was saying exactly the same thing: 'When this is over,' talking

to Trump, 'we're going to the Capitol, you know.'  And I said, 'Well I'm not done until we drag them out screaming and kicking.  I don't care if Pelosi's head's hitting every step while I drag her by her ankles, she's coming out.'"

As a result of the actions of Reffitt and hundreds of others, Congress was forced to halt its proceedings and evacuate the House and Senate Chambers.  The congresspeople forced to evacuate included Speaker of the House Nancy Pelosi and Senate Majority Leader Mitch McConnell, both of whom Reffitt appears to have been targeting.  After the building was secured later that day, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

3.  On September 15, 2021, the grand jury returned a Second Superseding Indictment, charging the defendant with four counts, including count two, obstruction of an official proceeding and aiding and abetting that obstruction, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  ECF 34. On September 17, 2021, the defense moved to dismiss count two, ECF 38, arguing that (1) Congress's Joint Session to certify the Electoral College vote was not an "official proceeding" and (2) the word *corruptly* was unconstitutionally vague as applied to the defendant's conduct.  On October 1, 2021, the government opposed the motion.  ECF 40.

During the motions hearing on October 15, 2021, the Court confirmed that the defendant was advancing only these two arguments in support of his motion to dismiss count two.  (10/15/21 Tr. at 19-20.)  On October 19, 2021, the defendant filed a notice of supplemental authority, ECF 47, citing, *inter alia*, *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015).  The same day, the Court conducted a status hearing and granted the defendant's request for permission to file a supplemental brief to support his motion to dismiss, arguing that

the word "otherwise" in Section 1512(c)(2) limits the statute's reach and does not encompass the defendant's alleged conduct.

On November 2, 2021, the defendant filed his supplemental brief.  ECF 55.

## ARGUMENT

### SECTION 1512(C)(2) APPLIES TO THE CONDUCT ALLEGED IN THE SUPERSEDING INDICTMENT

Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding" has committed a crime.  A person violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding. *See* 18 U.S.C. § 1512(c)(2); § 1515(a)(1)(B).  Nothing in Section 1512(c)(2)'s text, structure, or history limits it to obstruction tied to documentary or tangible evidence.  Nor does the Supreme Court's decision in *Yates v. United States*, 574 U.S. 528 (2015)—which construed a different term in a different statute—support imposing such an atextual limitation in Section 1512(c)(2).  But even if such a limitation existed, the statute encompasses the defendant's alleged conduct.

I. **Congress's certification of the Electoral College vote is an official proceeding.**

The defendant reiterates (Supp. Br. 1-3, 18-20 (ECF 55)) his contention that Congress's certification of the Electoral College vote is not an "official proceeding" for purposes of Section 1512(c)(2).  *See* Def. Mot. to Dismiss, ECF 38, at 3-11.  As explained in the government's prior response, that contention is incorrect.  *See* Gov't Opp. to Def. Mot. to Dismiss, ECF 40, at 3-14. Section 1515(a)(1)(B) defines an "official proceeding" as a "proceeding before the Congress," which encompasses the certification proceeding undertaken by the Joint Session on January 6, 2021.  None of the defendant's new arguments undermines that straightforward analysis.

The defendant contends that an "official proceeding" means one involving an inquiry or investigation.  Supp. Br. 18-19.  He appears to equate a proceeding involving an inquiry or

investigation to an "adjudicatory proceeding," and then he argues that Congress's Joint Session on January 6 does not qualify because Congress's actions were "ministerial."  Supp. Br. 1-2.

But his approach overlooks the provision's plain language, *see* ECF 40, and fails on its own terms.  As an initial matter, the "inquiry or investigation" gloss the defendant purports to give to the "official proceeding" definition in Section 1515(a)(1) finds no support in the statute itself. *See* ECF 40, at 8-10.  It is correct that a congressional inquiry or investigation likely satisfies the definition of "official proceeding."  *Cf.* Supp. Br. 18.  It does not follow, however, that *only* proceedings in which Congress is exercising its power of inquiry satisfy the "official proceeding" definition.  Had Congress sought to limit the "official proceeding" definition in that way, it could have—but did not—import precisely that language from 18 U.S.C. § 1505, which applies to "due and proper exercise of the power of inquiry under which *any inquiry or investigation* is being had" (emphasis added) by Congress.[1]  *See Russello v. United States,* 464 U.S. 16, 23 (1983) (refraining from concluding that "differing language in the two subsections has the same meaning in each"). The broader language Congress used in Section 1515(a)(1)(B) thus covers a broader range of proceedings than "inquir[ies] or investigation[s]" covered in Section 1505[2]—including the Joint Session that meets to certify the Electoral College vote.

---

[1] The defendant's reliance on legislative history (*see* Supp. Br. 18) suffers a similar flaw.  Congress considered, but ultimately did not enact a narrower prohibition on obstructing the "exercise of a legislative power of inquiry," *see* S. 1722, 96th Cong. § 1323(a)(2)(C) (1979), opting instead for the broader provision covering obstruction of any "proceeding before the Congress" currently found in Section 1515(a)(1)(B).  *See United States v. Poindexter*, 951 F.2d 369, 382 (D.C. Cir. 1991) (discussing the unenacted Senate version of Section 1512).

[2] The defendant's reliance (Supp. Br. 18-19) on *United States v. Kelley*, 36 F.3d 1118, 1128 (D.C. Cir. 1994), in which the D.C. Circuit explicitly declined to "decide whether 'proceeding' has the same meaning in both § 1505 and § 1512," is misplaced.  The D.C. Circuit *rejected* Kelley's argument that Section 1505 "applies only to adjudicatory or rule-making activities," and indeed held that the Inspector General's investigation was a "proceeding" within the meaning of both Sections 1505 and 1512.  *Id.* at 1127-28.

But even if such an "adjudicatory" gloss applied to the definition of an "official proceeding," the certification of the Electoral College vote as set out in the Electoral Count Act of 1887 and the Constitution would qualify.   Far from a "ministerial" act (Supp. Br. 1), the certification of the Electoral College vote involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President of the United States serving as President of the Senate, "presid[es]."   3 U.S.C. § 15.   That Joint Session renders judgment on whether to certify the votes cast by Electors in the presidential election.   Under the Constitution, the Electors create "lists" of the presidential and vice-presidential candidates, which they "sign" and "certify" before sending to Congress.   U.S. Const. amend. XII.   Congress then decides whether to count those certified lists, or certificates in conformity with the Electoral Count Act.   3 U.S.C. § 15; *see* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1659 (2002) (Under the Electoral Count Act, "the President-elect is not elected by 'We the People' on election day, or even by the electors on the day they cast their votes, but by the joint convention of the Senate and House of Representatives on the day the electoral votes are formally counted").   As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.   3 U.S.C. § 15.   And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."   3 U.S.C. § 16.   Nothing in the history the defendant describes suggests a different conclusion.

While the defendant tries to bolster his "ministerial" argument with citations to statements made at the Constitutional Convention and to Article II, Section 1, Clause 3 of the Constitution (*see* Supp. Br. 2), he fails to acknowledge that that provision of the Constitution was superseded

by the Twelfth Amendment. *See Chiafalo v. Washington*, 140 S. Ct. 2316, 2320 (2020). The Twelfth Amendment—which was obviously not present in the original Constitution—explains the mechanism for Congress to assemble, in a Joint Session, to review, count, object to, debate, and certify the Electoral College ballots. The defendant also cites the word *immediately* from the Twelfth Amendment to suggest that Congress is not permitted to deliberate, but the amendment is not so definite, and indeed, as described above, the Electoral Count Act specifically contains a provision for the two Houses to withdraw to their own chambers, for up to two hours, 3 U.S.C. § 15, and while there to "debate" the objection to a certification—or to "debate" any "other question arising in the matter," 3 U.S.C. § 17.

Despite the defendant's contentions, and for the reasons stated in the government's initial brief (ECF 40, at 3-14), Congress's Joint Session was an "official proceeding."

## II.    Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers the defendant's actions on January 6, 2021.

In Section 1512(c)(2), Congress comprehensively prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a wide range of conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, and burning a building to conceal the bodies of murder victims. It also includes trying to storm into the Capitol to derail a congressional proceeding. A defendant who, acting with the necessary *mens rea*, obstructs (or attempts to obstruct) Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

1. Section 1512(c)(2)'s text and structure demonstrate that it serves as a comprehensive prohibition on corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their

ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted).  If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well."  *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted).  Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) reach broadly.  For example, the words "obstruct" and "impede" can "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on."  *Influence*, Oxford English Dictionary, *available at* http://www.oed.com.  By their plain meaning, therefore, the string of verbs in Section 1512(c)(2) are properly viewed as "expansive" in their coverage.  *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013).

Section 1512(c)'s structure confirms that straightforward interpretation.  Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly."  First, Section 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding."  Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise obstruct[], influence[], or impede[]" an official proceeding.  The term "otherwise," consistent with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes.  *Burge*, 711 F.3d at 809; *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to

whether the action relates to documents or records") (internal quotation marks omitted); *see also United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar

"[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Consistent with that interpretation, courts have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *Petruk*, 781 F.3d at 440, 447; disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *Volpendesto*, 746 F.3d at 286; and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Section 1512(c)(2) also applies to the defendant's alleged conduct, which involved trespassing, while armed with a handgun, into the restricted Capitol area, confronting and antagonizing law enforcement officers, and encouraging and aiding and abetting others to prevent the Joint Session of Congress from certifying the results of the 2020 Presidential election.  In so doing, the defendant hindered and delayed the certification of the Electoral College vote, an "official proceeding" as that term is defined in the obstruction statute.  *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach that conduct would neither

"frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

In contrast, reading Section 1512(c)(2) as limited only to obstructive acts akin to the document destruction or evidence tampering captured in Section 1512(c)(1) suffers at least three flaws. *First*, limiting Section 1512(c)(2) in that way would effectively render that provision superfluous in light of the comprehensive prohibitions against document and evidence destruction in both Sections 1512(c)(1) and 1519. *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (Section 1512(c)(1) provides a "broad ban on evidence-spoliation") (internal quotation marks omitted). By contrast, the straightforward interpretation that treats Section 1512(c)(2) as a catch-all for corrupt obstructive conduct not covered by Section 1512(c)(1) would "give effect to every clause and word" of Section 1512(c). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catch-all provision in Section 1503's omnibus clause to obstructive acts "directed against individuals" would render that catch-all superfluous because "earlier, specific[] prohibitions" in Section 1503 "pretty well exhaust such possibilities") (internal quotation marks omitted); *United States v. Watt*, 911 F. Supp. 538, 546 (D.D.C. 1995) (rejecting interpretation of the Section 1503 omnibus clause that would "serve no other purpose than to prohibit acts already prohibited in the first part of the statute" because that reading would "reduce[] the omnibus clause to mere redundancy").

Nor does the fact that Congress adopted a more general catch-all in Section 1512(c)(2) render superfluous other obstruction prohibitions found in Chapter 73, the criminal code's chapter on obstruction of justice. Instead, the catch-all in Section 1512(c)(2) serves to capture "known unknowns." *See Yates*, 574 U.S. at 551 (Alito, J., concurring) (quoting *Republic of Iraq v. Beaty*,

556 U.S. 848, 860 (2009)).  Indeed, "the whole value of a generally phrased residual clause . . . is that it serves as a catchall" to ensure that the full range of conduct Congress sought to regulate comes within the statute, including "matters not specifically contemplated" by more specific provisions.  *Beaty*, 556 U.S. at 860.  In any event, "[r]edundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.

Judicial treatment of the nearby omnibus clause in Section 1503, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503, is instructive.  Drafted in "very broad language," the omnibus clause or "catchall provision," *see Aguilar*, 515 U.S. at 599, principally operates to criminalize obstructive conduct that falls outside the narrower prohibitions within Section 1503 and neighboring provisions.  *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin); *Howard*, 569 F.2d at 1333-34 (attempting to sell grand jury transcripts).  No court, however, has held that the omnibus clause's broad language should be given an artificially narrow scope to avoid any overlap with Section 1503's other, more specific provisions.  *Cf.* *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005) ("The mere fact that two federal

criminal statutes criminalize similar conduct says little about the scope of either.").  The same is true for the catch-all provision in Section 1512(c)(2).

Similarly, Section 1512(c)(2)'s partial overlap with other obstruction statutes does not render those other provisions superfluous.  For example, the omnibus clause in Section 1503 and the congressional-obstruction provision in Section 1505 both reach an "*endeavor*[] to influence, obstruct, or impede" the proceedings—a broader test for inchoate violations than Section 1512(c)(2)'s "attempt" standard.  *See United States v. Sampson*, 898 F.3d 287, 301 (2d Cir. 2018) ("[E]fforts to witness tamper that rise to the level of an 'endeavor' yet fall short of an 'attempt' cannot be prosecuted under § 1512."); *United States v. Leisure*, 844 F.2d 1347, 1366-67 (8th Cir. 1988) (collecting cases recognizing the difference between "endeavor" and "attempt" standards). Section 1519, which covers destruction of documents and records in contemplation of an investigation or agency proceeding, does not require a "nexus" between the obstructive act and the investigation of proceeding—but Section 1512(c)(2) does.  *See infra*, Section III (describing "nexus" requirement in Section 1512(c)(2); Section IV (citing cases holding that no such nexus requirement applies to Section 1519).  The existence of even "substantial" overlap is not "uncommon" in criminal statutes.  *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014).  But given that Sections 1503, 1505, and 1519 each reach conduct that Section 1512(c)(2) does not, the overlap provides no reason to impose an artificially limited construction on the latter provision.

*Second*, importing into Section 1512(c)(2) a nexus-to-tangible-evidence-or-documents requirement would require inserting an extratextual gloss that would render the verbs in Section 1512(c)(2) nonsensical.  *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted).  The *actus reus* that those verbs encompass is obstructing, influencing, and

impeding; a defendant cannot "obstruct" a document or "impede" a financial record.  *Cf. Yates*, 574 U.S. at 551 (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").

*Third*, a review of the two district court decisions that have imposed something like a nexus-to-tangible-evidence-or-documents requirement show that it gives rise to unnecessarily complex questions about what sort of conduct qualifies as "similar to but different from" the proscribed conduct "described in [Section 1512](c)(1)."  *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished); *see id.* (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object").[3]  So construed, for example, Section 1512(c)(2) may not encompass false statements made to obstruct a proceeding—though courts have widely upheld convictions for such conduct.  *See Petruk*, 781 F.3d at 447 (collecting cases).

---

[3] Similarly complex questions would dog the defendant's proposed limitation of Section 1512(c)(2) to "conduct directed at undermining the proceeding through actions that affect the integrity and availability of evidence," Supp. Br. 5, and William Barr's proposed limitation to any conduct affecting the "'impairment of evidence,'" *id.* at 10-11 (quoting William Barr, *Mueller's "Obstruction" Theory*, June 8, 2018).  Even if either such limitation applied, however, the alleged conduct in this case would satisfy it.  *See infra*, Section V.

2.   Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there" and resort to legislative history is unnecessary.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) ("Congress's authoritative statement is the statutory text, not the legislative history.") (internal quotation marks omitted); *see also United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251-52 (S.D. Tex. 2020) (declining to consider Section 1512's legislative history in rejecting the claim that the statute was limited to document destruction).  Regardless, the legislative history of Section 1512(c)(2)—particularly when considered alongside the history of Section 1512 more generally—provides no support for a contrary conclusion.

When Congress in 1982 originally enacted Section 1512, that legislation did not include what is now Section 1512(c).  *See* Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249-50.  Its title then, as now, was "Tampering with a witness, victim, or an informant."  *Id.*; 18 U.S.C. § 1512.  As that title suggested, Section 1512 as originally enacted targeted conduct such as using intimidation, threats, or corrupt persuasion to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts as well as intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions.  *See* Pub. L. No. 97-291, § 4(a) (now codified as Section 1512(b) and Section 1512(d)).  For example, Section 1512 as enacted in 1982 included a prohibition on using intimidation, physical force, or threats, with the intent to "cause or induce any person to . . . alter, destroy, mutilate, or conceal an object with intent to impair that object's integrity or availability for use in an official proceeding."  *Id.* § 4(a) (originally § 1512(a)(2)(B); now codified at § 1512(b)(2)(B)).

Twenty years later, following the collapse of the Enron Corporation, Congress passed the Sarbanes-Oxley Act of 2002.  Pub. L. No. 107-204, 116 Stat. 745; *see Yates*, 574 U.S. at 535 (plurality opinion).  That legislation, which principally aimed to "prevent and punish corporate fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions," S. Rep. No. 107-146, at 2 (2002), included several different provisions, *id.* at 11 (describing different components of the law); *see also* 148 Cong. Rec. H4683-84 (daily ed. July 16, 2002) (outlining new provisions).  Foremost among them were two new criminal statutes, 18 U.S.C. § 1519 and § 1520, which were intended to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records."  S. Rep. No. 107-146, at 14.  The Senate Judiciary Committee Report on the Sarbanes-Oxley Act discussed those two provisions in detail.  *See id.* at 14-16.

By contrast, the Sarbanes-Oxley Act's legislative history provides limited explanation of Congress's objective in enacting Section 1512(c).  The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, noted that the pre-existing prohibition in Section 1512(b) made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally"—a limitation that "forced" prosecutors to "proceed under the legal fiction that the defendants [in then-pending *United States v. Arthur Andersen*] are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves."  S. Rep. No. 107-146, at 6-7.  Similarly, Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence."  148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of

Sen. Hatch).  At a minimum, nothing in these passing references casts doubt on the plain meaning of Section 1512(c)(2), which is reflected in the interpretation described above.

Section 1512(c) also differed from the newly enacted Sections 1519 and 1520 in that Congress added the former to an existing statutory section: Section 1512.  *See Yates*, 574 U.S. at 541 (plurality opinion) (noting that, unlike Section 1519, Section 1512(c)(2) was placed among the "broad proscriptions" in the "pre-existing" Section 1512).  Moreover, although Section 1512(c) as enacted in the Sarbanes-Oxley Act recognized two distinct prohibitions, *see* Pub. L. No. 107-204, § 1102, 116 Stat. 807 ("Tampering with a record *or* otherwise impeding an official proceeding") (emphasis added; capitalization altered), Congress did not amend Section 1512's title.  That title, "Tampering with a witness, victim, or an informant," § 1512, thus encompassed the pre-existing provisions aimed at a defendant's obstructive conduct directed toward another person,[4] but did not reflect the newly enacted prohibitions in Section 1512(c) that criminalized a defendant's own obstructive act, either through destroying documents (§ 1512(c)(1)) or otherwise impeding a proceeding (§ 1512(c)(2)).  *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (noting that Congress added Section 1512(c)(1), which covered evidence-spoliation, to Section 1512 "even though § 1512's preexisting title and provisions all related to witness-tampering").

Section 1512(c)'s legislative and statutory history thus offers two reasons to interpret Section 1512(c)(2) consistently with its plain text and structure.  First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately criminalize a

---

[4] *See* § 1512(a) (applies to killing, attempting to kill, or using physical force or the threat of physical force against a person to prevent testimony or induce a witness to withhold information); § 1512(b) (applies to using intimidation, threats, or corrupt persuasion against a person to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts); § 1512(d) (applies to intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions).

defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). Read together in this light, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. Second, no substantive inference is reasonably drawn from the fact that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record *or* otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c) in 2002. *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text").

## III.    Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach.

Although Section 1512(c)(2) applies to any conduct that "obstructs, influences, or impedes," a felony obstruction offense does not exist unless the defendant acts "corruptly" and targets his conduct at a specific "official proceeding." These two requirements—which require the government to prove a stringent *mens rea* and a nexus to an official proceeding—limit Section 1512(c)(2)'s reach. *Cf. United States v. Jeter*, 775 F.2d 670, 675 (6th Cir. 1985) (Section 1503 "contains a clear *mens rea* requirement that limits its scope to those who 'corruptly' or *intentionally* seek to obstruct").

1. To violate Section 1512(c)(2), the defendant must act "corruptly."  To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully.

Because "corruptly" is not defined in the statute, it is "understood . . . to have its ordinary meaning."  *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam).  For purposes of Section 1512(c)(2), "corruptly"[5] includes two components: (1) intent to obstruct, impede, or influence; and (2) wrongfulness.  *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").  That the term "corruptly" requires the government to prove that a defendant acted not only with intent to obstruct but also with "consciousness of wrongdoing" ensures that Section

---

[5] In his initial motion to dismiss, the defendant argued that the word "corruptly" itself was unconstitutionally vague as applied to him.  ECF 38, at 15-16.  In its initial opposition, the government already explained why that argument lacks merit.  ECF 40, at 17-19.

1512(c)(2) "reaches only" those who have committed felony obstruction.[6]  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005).  That limitation is particularly important where, as here, the defendant is alleged to have obstructed a congressional proceeding.  *See North*, 910 F.2d at 882 (noting that an "executive branch official" or a "political activist" may seek to persuade a representative to "stop[] spending her time pursuing a certain investigation" but instead pursue "some other legislative endeavor"; that conduct could be viewed as "endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly").[7]

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of Section 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing."  *Andersen*, 544 U.S. at 706.  That standard could be met where, for example, evidence showed that the defendant, dressed in a bulletproof vest and carrying a megaphone in his hand and a handgun on his waist, interfered with law enforcement officers by confronting them at the head of a mob, commanding them to stand down so that the mob could

---

[6] Although Section 1512(c)(2)'s statutory text does not include the modifier "knowingly," the statute does require that the defendant "engage in conduct knowingly."  *Gordon*, 710 F.3d at 1151; *Friske*, 640 F.3d at 1291.

[7] The "high maximum[] and no minimum[]" penalty provision that Congress enacted in Section 1512(c)(2), moreover, reflects that obstruction offenses "may run the gamut from major to minor," and empowers district court judges to "recognize differences between such cases" and to "try to make the punishment fit the crime."  *Yates*, 574 U.S. at 569-70 (Kagan, J., dissenting); *see Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (noting that "judges in this country have long exercised discretion" to impose sentences within a statutory sentencing range by "taking into consideration various factors relating both to offense and offender").  The same is true of the criminal contempt statute, 18 U.S.C. § 401, which has been applied to a wide range of conduct, *see United States v. McGainey*, 37 F.3d 682, 683 (D.C. Cir. 1994) (threatening gesture that led to "disruption" of a criminal trial constituted "'obstruction of the administration of justice'"); *id*. at 684-85 (citing other disruption case), and prescribes no maximum or minimum penalty, *see* 18 U.S.C. § 401 (permitting court the "power to punish by fine or imprisonment, or both, at its discretion").

overtake the building they were guarding, and then, after failing (and after being physically incapacitated by the officers' pepper spray and less-than-lethal projectiles during the confrontation), encouraging and aiding and abetting the mob to do just that, resulting in the officers' retreat.

2.   To violate Section 1512(c)(2), the government must also satisfy the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *Young*, 916 F.3d at 386 (internal quotation marks omitted). "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge." *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

The nexus requirement derives from the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995). There, the defendant was convicted under the omnibus clause in Section 1503 for lying to an FBI agent "who might or might not testify before a grand jury." *Id.* at 600. That uncertainty was too attenuated to give rise to criminal liability because an obstructive act must "have a relationship in time, causation, or logic" with the official proceeding. *Id.* 599-600. That was so, the Court held, because "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at 599.

The Supreme Court's decision in *Arthur Andersen* applied the nexus requirement to Section 1512(b)(2)(A) offenses, which prohibit "knowingly" and "corruptly persuad[ing]" another to destroy documents in contemplation of an official proceeding. *See* 544 U.S. at 703. Observing that "[i]t is . . . one thing . . . to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,'" *id.* at 707; *see* 18 U.S.C. § 1512(f), the Supreme Court found it "quite

another to say a proceeding need not even be foreseen," 544 U.S. at 708.  To secure a conviction under Section 1512(b), therefore, the government must prove that the defendant has "in contemplation" a "particular official proceeding in which [the tampered-with] documents might be material."  *Id.*

The same logic applies to Section 1512(c)(2).  *See Ring*, 628 F. Supp. 2d at 223 (applying nexus requirement to Section 1512(c)(2)).[8]  Courts considering prosecutions brought under Section 1512(c)(2), moreover, have vacated convictions where the evidence failed to establish a sufficient nexus between the obstructive act and the alleged official proceeding.  *See Young*, 916 F.3d at 387-89 (defendant's general awareness that the government might be investigating him was insufficiently connected to "a *specific* and *reasonably foreseeable* official proceeding"); *Friske*, 640 F.3d at 1292-93 (government failed to prove that the defendant who, at a friend's request, retrieved items that were subject to criminal forfeiture, "knew that the natural and probable result of his actions would be the obstruction of [the friend's] forfeiture proceeding").  To be sure, establishing a "relationship in time, causation, or logic," *Aguilar*, 515 U.S. at 599, between the obstructive conduct and the official proceeding in the defendant's case, where he is alleged to have forced his way onto the steps of the Capitol to impede Congress's certification of the Electoral College vote at the very moment that certification was underway, does not raise the borderline questions at issue in other cases.  But the nexus requirement nonetheless imposes a meaningful "restraint" on the "reach of a federal criminal [obstruction] statute."  *Marinello*, 138 S. Ct. at 1106 (quoting *Aguilar*, 515 U.S. at 600).

---

[8] Although neither the Supreme Court nor the D.C. Circuit has extended the "nexus" requirement to Section 1512(c)(2), every court of appeals to have confronted the question has.  *See Young*, 916 F.3d at 386 (collecting cases).

3.  The *mens rea* and nexus requirements in Section 1512(c)(2) ensure that only those who understand the character and import of their actions are punished.  A defendant does not violate the statute unless, at minimum, he intentionally and wrongfully obstructs (or attempts to obstruct) a particular, foreseeable proceeding that qualifies as an "official proceeding" under Section 1515(a)(1).

## IV.    The Supreme Court's decision in *Yates v. United States* does not counsel a different interpretation.

The Supreme Court's decision in *Yates v. United States*, which considered how to construe the statutory term "tangible object" in Section 1519, 574 U.S. at 532 (plurality opinion), does not undermine the interpretation of Section 1512(c)(2) articulated above.  In *Yates*, a plurality of the Court undertook a "contextual reading" to narrow the scope of "tangible object" in Section 1519 to "only objects one can use to record or preserve information, not all objects in the physical world."  *Id.* at 536 (plurality opinion).  The contextual features that animated that narrow interpretation in Section 1519 are, however, absent in Section 1512(c)(2).

1.  The Court in *Yates* considered a prosecution brought under Section 1519, which makes it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence" a federal investigation.  18 U.S.C. § 1519.  Yates was a commercial fisherman who ordered his crew to throw his catch back into the sea to prevent federal authorities from determining whether he had harvested undersized fish.  *Yates*, 574 U.S. at 531 (plurality opinion). The question presented was whether "tangible object" as used in Section 1519 included a fish.  A fractured Supreme Court produced three opinions.

a.  A four-Justice plurality concluded that Section 1519's "context" supported a "narrower reading."  *Yates*, 574 U.S. at 539.  A holding that "tangible object" included "any and all objects,"

the plurality concluded, would "cut § 1519 loose from its financial-fraud mooring" in the Sarbanes-Oxley Act.  *Id.* at 532.  The plurality grounded its analysis in several "[f]amiliar interpretive guides."  *Id.* at 539.  First, neither Section 1519's caption, "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," nor the title within the Sarbanes-Oxley Act within which Section 1519 was placed, "Criminal penalties for altering documents," suggested that Congress aimed to "sweep" in "physical objects of every kind."  *Id.* at 539-40.

Second, the plurality relied on Section 1519's placement within Title 18's Chapter 73.  *Yates*, 574 U.S. at 540.  Specifically, its placement at the end of the chapter following several provisions "prohibiting obstructive acts in specific contexts," suggested that Congress did not intend Section 1519 as an "across-the-board" spoliation ban.  *Id.*  In contrast, the plurality noted, Congress directed codification of the Sarbanes-Oxley Act's "other additions . . . within or alongside retained provisions that address obstructive acts relating broadly to official proceedings and criminal trials."  *Id.*  To illustrate one such "broad[]" provision, the plurality specifically referred to the provision at issue in this case, Section 1512(c), which, as noted above, was titled "Tampering with a record or otherwise impeding an official proceeding," and which Congress placed (as Section 1512(c)) within the "broad proscription[]" found in the "pre-existing" Section 1512.  *Id.* at 541.

Third, the plurality compared Section 1519 with the "contemporaneous passage" in the Sarbanes-Oxley Act of Section 1512(c)(1).  *See* 574 U.S. at 541.  Because Section 1512(c)(1)'s reference to "'other object'" encompassed "any and every physical object," the plurality "resist[ed] a reading of § 1519" that would make Section 1512(c)(1) superfluous.  *Id.* at 542-43.  Moreover, the plurality reasoned, the fact that Congress's formulation in Section 1519 did not track the language in Section 1512(c)(1) indicated that Congress intended Section 1519 to be construed

differently from Section 1512.  *Id.* at 545 n.7.  More specifically, the plurality concluded that, by adopting those different formulations, Congress intended the phrase "tangible object" in Section 1519 to "have a narrower scope" than the phrase "'other object'" in Section 1512(c)(1).  *Id.* at 544-45.

Fourth, the plurality found support for its narrowing construction in the *noscitur a sociis* and *ejusdem generis* interpretive canons.  574 U.S. at 543-46.  Because "tangible object" in Section 1519 was the "last in a list of terms that begins 'any record [or] document,'" the *noscitur a sociis* canon counseled interpreting that term "to refer . . . specifically to the subject of tangible objects involving records and documents."  *Id.* at 544.  That reading, moreover, "accord[ed] with" Section 1519's verbs, which include "'falsif[ying]'" and "'mak[ing] a false entry in'"—terms that commonly "take as grammatical objects records, documents, or things used to record or preserve information."  *Id.* (emphasis omitted).  Similarly, application of the *ejusdem generis* canon—that "general words" following "specific words" when listed in a statute are "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *id.* at 545 (internal quotation marks omitted)—indicated that Congress "would have had no reason to refer specifically to 'record' or 'document'" if it intended Section 1519 to "capture physical objects as dissimilar as documents and fish."  *Id.* at 546.[9]

---

[9] By way of example, the Supreme Court cited its decision in *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), where the Court interpreted the residual clause in the Armed Career Criminal Act (ACCA), which covered "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  The ACCA's enumeration of specific crimes suggested that the "otherwise involves" provisions applied only to "*similar*" crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"  *Begay*, 553 U.S. at 142.

Finally, the plurality stated that, to the extent its "recourse to traditional tools of statutory construction" left "any doubt" about how to interpret "'tangible object'" in Section 1519, the rule of lenity favored a narrow interpretation of that phrase.  574 U.S. at 547-48.  Because a broad reading of Section 1519 would criminalize "tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil," the plurality reasoned that before it opted for the "harsher alternative," Congress must speak "in language that is clear and definite."  *Id.* at 548 (internal quotation marks omitted).

b.   Justice Alito concurred in the judgment on narrower grounds.[10]  Observing that the statutory "question is close," Justice Alito reasoned that the combined effect of "the statute's list of nouns, its list of verbs, and its title" favored the plurality's conclusion.  *Yates*, 574 U.S. at 549 (Alito, J., concurring).  Section 1519's nouns suggested that "'tangible object'" in that provision "should refer to something similar to records or documents."  *Id.* at 550.  Similarly, Section 1519's list of verbs are "closely associated with filekeeping," and at least one verb phrase—"'makes a false entry in'"—"makes no sense outside of filekeeping."  *Id.* at 551.  Finally, Section 1519's title—"Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," § 1519—suggested that "no matter how other statutes might be read," Section 1519 "does not cover every noun in the universe with tangible form."  *Id.* at 552.

c.   Justice Kagan, joined by three other Justices, dissented.  In her view, the term "'tangible object'" in Section 1519 was "broad, but clear"; it encompassed, as it would in "everyday language," "any object capable of being touched."  *Yates*, 574 U.S. at 553 (Kagan, J., dissenting).

---

[10] Under the rule announced in *Marks v. United States*, 430 U.S. 188 (1977), Justice Alito's concurrence represents the binding holding as the narrowest opinion among those concurring in the judgment.  *See id.* at 193.

26

Reviewing Section 1519's text and context demonstrated that "Congress said what it meant and meant what it said." *Id.* at 555.  Moreover, Justice Kagan reasoned, when Congress in Section 1519 used a "broad term" such as "tangible object," an interpretation that provided "immunity" to defendants who destroyed non-documentary evidence had "no sensible basis in penal policy." *Id.* at 558.

2.  The decision in *Yates* does not unsettle the straightforward interpretation of Section 1512(c)(2) articulated above because the "familiar interpretive guides" on which the plurality (and to some extent Justice Alito) relied to narrow the scope of Section 1519 do not apply to Section 1512(c)(2).

Consider first, as the plurality did, Section 1512's statutory title.  *See Yates*, 574 U.S. at 539-40 (plurality opinion); *see also id.* at 552 (Alito, J., concurring) (considering Section 1519's title).  Even leaving aside the "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text," *Brotherhood of R.R. Trainmen*, 331 U.S. at 528-29, Section 1512's title, "Tampering with a witness, victim, or an informant," provides no reason to narrow the interpretation of Section 1512(c)(2).  *See supra*, at 17-18.  For one thing, Congress named that title 20 years before it enacted 1512(c) in the Sarbanes-Oxley Act, and then simply opted not to rename Section 1512 to reflect either of the two new obstruction prohibitions added in Section 1512(c).  Section 1512's overarching title therefore does not have the same interpretive force as Section 1519's title, which was enacted by the same Congress that enacted the rest of Section 1519.  *See Yates*, 574 U.S. 541 n.4 (plurality opinion).  Additionally, whereas Section 1519's title within the Sarbanes-Oxley Act, "Criminal penalties for altering documents," suggested a narrow focus on document destruction, *see id.* at 539-40, Section 1512(c)'s title within the Sarbanes-Oxley Act reflected both the document-destruction prohibition in Section 1512(c)(1)

*and* the broader catch-all obstruction provision in Section 1512(c)(2): "Tampering with a record *or otherwise impeding an official proceeding*." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered).

Similarly inapposite here is Section 1512(c)(2)'s placement within Chapter 73. *See Yates*, 574 U.S. at 540-41 (plurality opinion). Whereas Congress enacted Section 1519 as a standalone prohibition and placed it at the end of the chapter "together with specialized provisions expressly aimed at corporate fraud and financial audits," it instead inserted Section 1512(c) within the "pre-existing" Section 1512. *Id.* at 541 (plurality opinion). So situated, Section 1512(c)(2)'s function as a catch-all obstruction prohibition is consistent with Section 1512's role as a "broad proscription" on obstructive acts. *See id.* (plurality opinion).

That reading, moreover, is consistent with how the *Yates* plurality opinion describes Section 1512(c). *See* 574 U.S. at 541-43, 545. Contrasting the term "other object" in the document-destruction provision in Section 1512(c)(1) with "tangible object" in Section 1519, the plurality concluded that Section 1512(c)(1)'s later enactment suggested Congress intended it to reach more broadly than Section 1519. *Id.* at 542-43; *id.* at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep with it."). And if Congress intended Section 1512(c)(1) to cover more ground than Section 1519, Section 1512(c)'s text and structure make plain that it further intended Section 1512(c)(2) to cover more ground than Section 1512(c)(1).

The plurality, 574 U.S. at 544-45, and Justice Alito, *id.* at 550, also drew support for their narrowing construction of Section 1519 from interpretive canons, but those canons do not help the defendant here. "Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category." *United States v. Espy*, 145 F.3d 1369, 1370-71 (D.C. Cir. 1998). Section 1519's structure—a list of specific terms ("record"

and "document) followed by a more general term ("tangible object")—in a singular provision is susceptible to that analysis. *Yates*, 574 U.S. at 545-56 (plurality opinion); *id.* at 549-50 (Alito, J., concurring). But Section 1512(c)'s structure differs significantly: it includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive "or," and then a separate numbered provision containing the separate catch-all obstruction prohibition. "The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008). Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in Section 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable," *Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to Section 1512(c)(2), which embodies the same structure. *Cf. Loughrin*, 573 U.S. at 359 (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprised "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses on an equal footing and indicating that they have separate meanings").

The Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, on which the *Yates* plurality in part relied (*see supra* note 9), does not suggest a different conclusion with respect to Section 1512(c)(2).[11] The statutory provision at issue in *Begay* included a list of specified crimes

---

[11] The defendant, citing *Begay*, makes a faulty "grammatical[]" argument premised on the phrase "or otherwise obstructs" (Supp. Br. 6-8). First, contrary to the defendant's contention (Supp. Br. 6, 7), the word "or" is found at the end of Section 1512(c)(1), not the beginning of (c)(2). And it is set off from the prior clause with a semi-colon. The statute is therefore dissimilar to the one in *Begay*, which included the phrase "or otherwise involves" in a single sentence following a string

("any crime . . . that is . . . burglary, arson, or extortion, or involves use of explosives") followed, in the same sentence, by a more general category ("or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)); the Supreme Court held that the "otherwise involves" provision covered only crimes "similar" to those in the enumerated list. *See* 553 U.S. at 142-43. In Section 1512(c)(2), by contrast, "the 'otherwise' phrase . . . stands alone, unaccompanied by any limiting examples" in a provision that "is plainly separate and independent of" Section 1512(c)(1). *Ring*, 628 F. Supp. 2d at 224 n.17. "Thus, just as *Begay* did not define the 'otherwise' clause" in Section 924(e)(2)(B)(ii) "in terms of the independent and preceding" Section 924(e)(2)(B)(i), Section 1512(c)(2)'s "use of 'otherwise'" should not be construed "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering." *Id.*; *see De Bruhl-Daniels*, 491 F. Supp. 3d at 251 ("[Section 1512(c)(2)] does not appear as a broad catch-all term at the end of a list that must be wrangled into conformity with congressional intent using a canon of construction" but instead "exists as a potent, independent, and unequivocal catch-all provision that reaches all manner of obstructive conduct related to an official proceeding.").

The *noscitur a sociis* canon is similarly inapplicable here. That canon is used only to construe terms that are "of obscure or doubtful meaning," not to change the meaning of

---

of nouns and set off by a simple comma. 553 U.S. at 142; *see* 18 U.S.C. § 924(e)(2)(B)(ii). Second, the word "otherwise" is an adverb that modifies the three verbs that follow it: "obstruct[]," "influence[]," and "impede[]." The Oxford English Dictionary explains that "otherwise," when modifying a verb, is used to "signify a corresponding word, thing, idea, etc., of opposite or alternative meaning." *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com. It means "in another way" or "in a different manner." *Id.* The word "otherwise" in Section 1512(c)(2) therefore reinforces that (c)(2) is a separate and independent prohibition that is *different* from (c)(1). In other words, Section 1512(c)(2) prohibits obstructing, influencing, or impeding an official proceeding in a different or alternative way than by "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]" evidence as proscribed in Section (c)(1). *See supra*, at 8-9.

unambiguous terms that are simply broad. *Russell Motor Car Co.*, 261 U.S. at 520. Moreover, the canon may be invoked only "when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning." *S. D. Warren Co. v. Maine Bd. of Env't Prot.*, 547 U.S. 370, 378 (2006) (internal quotation marks omitted); *see Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."). As noted above, the first and second clauses of Section 1512(c) are not items in a list of related terms; rather, they are distinct offenses phrased in the disjunctive. 18 U.S.C. § 1512(c). That structure therefore does not lend itself to application of *noscitur a sociis*. *See De Bruhl-Daniels*, 491 F. Supp. 3d at 251 (declining to apply the *noscitur a sociis* canon to Section 1512(c)).

Finally, the *Yates* plurality's reliance on the rule of lenity has no application here.[12] The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *see Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). There is no grievous ambiguity here. Section 1512(c)(2)'s text, structure, history, and purpose make clear that it functions as a broad catch-all prohibition on obstructive conduct that covers "otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *Petruk*, 781 F.3d at 447 (internal quotation marks omitted).

---

[12] Justice Alito did not rely on several features that guide the plurality opinion, including the rule of lenity. *See* 574 U.S. at 549 (noting that the case "should be resolved on narrow grounds," namely, "the statute's list of nouns, its list of verbs, and its title," but not discussing the Sarbanes-Oxley Act, Section 1519's placement within Chapter 73, the Supreme Court's decision in *Begay*, or the rule of lenity). It follows that that his controlling opinion, *see supra* note 10, makes even more clear that Section 1512(c)(2) should not be interpreted differently than its text and structure would suggest.

The plurality also found the rule of lenity "relevant" in part given the absence of limiting principles under a broad construction of Section 1519.  *See Yates*, 574 U.S. at 548.  But neither of the features that constrain Section 1512(c)(2)'s reach—the government's requirement to establish that the defendant acted "corruptly" and a nexus to a contemplated official proceeding, *see supra*, Section III—is present in Section 1519.  Section 1519 requires that the defendant act "knowingly" and "with the intent to impede, obstruct, or influence," 18 U.S.C. § 1519, but does not impose the more stringent "corruptly" *mens rea*.  And courts of appeals have uniformly concluded that Section 1519 does not include a "nexus" requirement.  *See United States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (Supreme Court's decisions in *Marinello*, *Arthur Andersen*, and *Aguilar* do not "overrule[]" existing circuit precedent that Section 1519 "does not have a nexus requirement"); *United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012) (declining to extend nexus requirement from Section 1503 and 1512(b)(2) to Section 1519); *United States v. Kernell*, 667 F.3d 746, 753-55 (6th Cir. 2012); *United States v. Yielding*, 657 F.3d 688, 712-14 (8th Cir. 2011); *see also* S. Rep. No. 107-146, at 14-15 ("[Section 1519] is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.").[13]

To be sure, no court appears to have applied Section 1512(c)(2) to conduct precisely akin to the defendant's alleged actions, namely, confronting and interfering with law enforcement officers as he forced his way onto the Capitol steps to halt or delay a congressional proceeding. Even if Section 1512(c)(2)'s application to this case was "not expressly anticipated by Congress," that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a

---

[13] The defendant's rule-of-lenity argument (Supp. Br. 16-17), which relies entirely on the *Yates* plurality's analysis, fails for the same reasons.

legislative command." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation marks and brackets omitted). That is so even if the statute's application in a particular case "reaches 'beyond the principal evil' legislators may have intended or expected to address." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)). And any policy-based suggestion "that the current scheme should be altered," *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020), ought to be addressed to Congress, not this Court, *see, e.g.*, *United States v. Rodgers*, 466 U.S. 475, 484 (1984) ("Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress.").

## V.   Even if Section 1512(c)(2) required that the obstructive act relate to documentary or tangible evidence, the defendant's alleged conduct would be covered.

At a bare minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding. If, for example, the defendant had corruptly blocked the vehicle carrying the election returns to the Capitol for congressional examination at the certification proceeding, that conduct would clearly fit within Section 1512(c)(2). Section 1512(c)(2) would likewise cover blocking a bus carrying the Members of Congress to the Capitol to examine the election returns at the certification proceeding. And it just as readily covers displacing the Members of Congress from the House and Senate Chambers, where they would examine and discuss those returns and other records. Indeed, here, the defendant appears to have been specifically targeting Speaker Pelosi and Leader McConnell, trying to physically remove or displace them from the Capitol so that they could not review or vote on the Electoral College ballots.

No court following *Yates* has adopted an interpretation of Section 1512(c)(2) that limits it to document-focused obstructive conduct. *See, e.g.*, *Petruk*, 781 F.3d at 447-48; *De Bruhl-Daniels*,

491 F. Supp. 3d at 251; *Cervantes*, 2021 WL 2666684, at *6.  But even were this Court to adopt the limitation that Section 1512(c)(2) "requires some nexus to tangible evidence," *Singleton*, 2006 WL 1984467, at *3, or a "tangible object," *Hutcherson*, 2006 WL 270019, at *2, or "conduct directed at undermining the proceeding through actions that affect the integrity and availability of evidence," Supp. Br. 5, the defendant's alleged conduct would still fall within the scope of Section 1512(c)(2) because the defendant "otherwise obstruct[ed], influence[d], or impede[d]" Congress's ability to review documents that it was constitutionally and statutorily required to receive and act upon, thereby obstructing Congress's certification of the Electoral College vote.

The certification of the Electoral College vote is rooted in federal constitutional and statutory law that requires the creation and consideration of various documents.  Under the Twelfth Amendment, the state Electors must "vote by ballot," marking one set of ballots for the individual voted for as President and "distinct ballots" for the vice-presidential selection.  U.S. Const. amend. XII.  The Electors must then create "lists" of the presidential and vice-presidential candidates who received votes, "which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States."  *Id.*  These certified lists, or "certificates," are then opened by the President of the Senate "in the presence of the Senate and House of Representatives."  *Id.*  After opening them, the President of the Senate hands the certificates to two appointed "tellers," who in turn create a new "list" that comprises "the votes as they shall appear from the said certificates."  3 U.S.C. § 15.  During the reading of the certificates, the President of the Senate must open the floor to objections; any objection "shall be made in writing . . . and shall be signed by at least one Senator and one Member of the House of Representatives."  *Id.*  Congress's certification of the Electoral College vote, therefore, operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections.

Had the defendant sought to alter or destroy any of those documents, he also would have violated Section 1512(c)(1).  Instead, the defendant allegedly sought to stop the Members of Congress from reviewing those constitutionally and statutorily mandated documents at a proceeding to certify the results of the 2020 presidential election.  Because the defendant's alleged conduct thus precluded a full and fair examination of physical or documentary evidence at an official proceeding, the indictment's allegations would satisfy any extratextual "requirement" in Section 1512(c)(2) "for some nexus to a document or other tangible evidence."  *Singleton*, 2006 WL 1984467, at *5.

The defendant's claim that the indictment is deficient because it fails to allege "interference with documentary or tangible evidence" (Supp. Br. 17) (capitalization altered) is meritless.  The standards from Federal Rule of Criminal Procedure 7(c) and the Constitution are easily satisfied here.  Rule 7(c)(1) states in relevant part that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."   To  be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense."  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014).  "[B]y using the statutory language and specifying the time and place of the offense," an indictment provides both "fair notice" and protection against future prosecution.  *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

Here, the indictment alleges that the defendant corruptly obstructed "Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution

of the United States and 3 U.S.C. §§ 15-18."  ECF 34, Count Two.  The indictment's specific reference to the relevant constitutional and statutory provisions necessarily incorporates the procedures in those provisions that are described above.  And those procedures describe the documents and other tangible materials that must be prepared, sealed, transmitted, opened, reviewed, and counted as part of the Joint Session's certification of the Electoral College vote.

The indictment recites Section 1512(c)(2)'s "statutory language," *Williamson*, 903 F.3d at 130, and it lists the date and the specific proceeding that was allegedly obstructed.   There is no requirement that the indictment specifically allege *how* the defendant obstructed Congress's Joint Session.  The indictment therefore sufficiently puts the defendant on notice of the charge against him.

## CONCLUSION

For the reasons given here and in the government's opposition to the defendant's motion to dismiss (ECF 40), the Court should deny that dismissal motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-252-7277
Email: Jeffrey.Nestler@usdoj.gov

*/s/ James I. Pearce*
James I. Pearce
Capitol Breach Appellate Coordinator
NC Bar No. 44691
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-532-4991
Email: James.Pearce@usdoj.gov

37