**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No. 1:21-CR-00032-DLF-1** |
| **Guy Wesley Reffitt** | * | |

**Supplemental Reply Memorandum in Support of Motion to Dismiss Count Two of the Second Superseding Indictment**

Defendant Guy Reffitt has moved to dismiss Count Two of the Second Superseding Indictment, because it fails to state an offense (Fed. R. Crim. P. 12(b)(3)(B)(v), because the term "corruptly" is vague and unconstitutional (*See United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991)), and because applying Title 18 United States Code, Section 1512(c)(2) to conduct unrelated to the availability or integrity of evidence would render as surplusage: i) "otherwise obstructs" in Section 1512(c)(2); ii) the rest of Section 1512; and iii) much of Chapter 73.  18 U.S.C. §§ 1501 *et seq*.  Doc.'s 38, 55.  The government has responded in opposition.  Doc's 40, 56.  Currently, the Court has the defendant's Motion to Dismiss Count Two (Doc. 38) under advisement.[1]  Min. Ord., Oct. 15, 2021.

## I.    The Court's Questions.

The Court has directed the parties to answer: (1) whether Section 1512(c)(2)'s prohibition on obstructing, influencing, or impeding an official proceeding should be

---

[1] Currently, this issue is also before the Court in *United States v. Caldwell et al.*, 1:21-CR-00028-APM; *United States v. Aaron Mostofsky*, 1:21-CR-00138-JEB; and *United States v. Brady Knowlton*, 1:21-CR-00046-RDM.

understood in light of Section 1512(c)(1)'s prohibition on evidence spoliation; and (2) the appropriate definition of "corruptly" as it is used in Section 1512(c).  Min. Ord. Nov. 9, 2021.

1.    Yes, Section 1512(c)(2)'s prohibition on obstructing, influencing, or impeding an official proceeding should be understood in light of Section 1512(c)(1)'s prohibition on evidence spoliation (*see* III.A. *infra*); and

2.    "Corruptly" as used in Section 1512(c)(2) is not defined. *Poindexter*, 951 F.2d 369.  This invites arbitrary and discriminatory law enforcement.  *See United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017).

Section 1515 defines the term corruptly, but only for obstruction offenses charged "in section 1505."  18 U.S.C. § 1515(b).  Congress amended Section 1515 to provide:

> As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

18 U.S.C. § 1515(b).

Before this definition was added, the D.C. Circuit had determined that *corruptly* as used in Section 1505 was vague and unconstitutional.  *Poindexter*, 951 F.2d 369.  In *Poindexter*, a former national security advisor was charged with violating Section 1505 by obstructing a congressional investigation into the Iran/Contra Affair.  *Id.* at 371.  The obstruction consisted of lying to or misleading

Members of the House and Senate Intelligence Committees about U.S. shipments of missiles to Iran. *Id.* at 372.

> The relevant part of Section 1505 provided:

> Whoever corruptly influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House . . .shall be [punished].

Such vagueness as applied to Mr. Reffitt violates the Due Process Clause (U.S. Const. amend V), particularly in the context of political speech, assembly and petitioning of the government for a redress of grievances. *See* U.S. Const. amend I. Charges that criminalize political speech and the nonviolent protest of Congress *per se* violate the First Amendment, as applied.

Consider that if any act delaying certification of the Electoral College count constitutes "wrongful" 1512(c)(2) obstruction, then Vice President Al Gore's challenges to the Florida vote in 2000 would be felony obstruction, because the Supreme Court held that the challenges violated the equal protection rights of Florida voters. An equal protection violation is "wrong." Likewise consider a lobbyist or a political activist influencing a member of Congress before a hearing or vote on legislation. He or she would be guilty, depending on whether a jury considers supporting or opposing the legislation to be "wrong."

Even if "corruptly" in Section 1512 were defined, it still would not resolve the surplusage problem that the government's misinterpretation creates. *See* III.E. *infra*.

Mr. Reffitt maintains that Section 1512(c) only prohibits the obstruction of proceedings related to the *administration of justice* that take place before a tribunal. *See United States v. Ermoian*, 752 F.3d 1165, 1171 − 1172 (9th Cir. 2013). It does not prohibit the obstruction of any and every governmental function, such as the obstruction of legislative action by Congress. *Ibid*. Alleged obstruction of the Electoral College vote certification is not what Section 1512 regulates.

Likewise, legislative history supports that Section 1512(c) only applies to proceedings that are judicial in nature. When Congress enacted Section 1512(c), it was addressing the cover up of crimes relating to Enron. The Senate Judiciary Committee Report on Section 1512(c)(2) affirms its applicability to acts undertaken to obstruct a congressional committee investigating potential federal crimes. S. Rep. No. 107-146, at 2; 4; 6 − 7 (2002).

Even the Department of Justice's own Manual reflects this interpretation. *See* Criminal Resource Manual, CRM 1729 (Updated Jan. 17, 2020), Department of Justice    https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or (Last accessed Oct. 7, 2021).

Even if the statute were not vague, the rule of lenity, and the novel construction principle, require any ambiguity to be resolved in the defendant's favor. *See Yates v. United States*, 574 U.S. 528 (2015) (discussed at III.D. *infra*).

Section 1512(c)(2) covers conduct that while not altering, destroying, mutilating, or concealing a record, document, or other object, or attempting to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, would otherwise impair the integrity and availability of non-object information used in the "official proceeding." 18 U.S.C. § 1512.

Examples include: false responses to interrogatories that were filed in an official proceeding (*United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)); attempting to obtain false statement to be used in pending federal charges (*United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015)); making false statements to outside counsel "so that counsel would provide misleading information to the grand jury" (*United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009)); soliciting tips from corrupt cops to evade surveillance in effort to influence what evidence came before the grand jury (*United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); disclosing identity of undercover agent to subject of grand jury drug investigation in order to thwart evidence from reaching the investigation (*United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009)); and making false statements to grand jury (*United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009)). Section 1512(c)(2) does not cover any and all acts that obstruct or impede certification of the Electoral College vote.

II.    **The Interpretive Question Is Whether Section 1512(c)(2) May Be Cut Loose from Any Connection to Impairing the Integrity and Availability of Non-object Information Used in an "Official Proceeding."**

It is not about whether Section 1512(c)(2) is limited to document destruction. Nor is about what Congress could have said but did not. Over two hundred years ago, an English court would not hold that a statute about stealing sheep, or other cattle covered a bull rustler, because Parliament could have said that "cattle" was limited to *bos primigenius taurus* but did not. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212, 1223, 1225 (2018) (Gorsuch, J., concurring, *citing* 1 W. Blackstone, Commentaries on the Laws of England 88 (1769).

Courts "assume Congress is aware of existing law when it passes legislation and is aware of the judicial background against which it is legislating." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). A party must clearly overcome that assumption to establish that Congress intended to change the meaning given legal terms by other statutes and their judicial interpretation. *Hubbard v. United States*, 514 U.S. 695, 700 (1995). "When Congress uses the language of one statute in another statute it usually intends both statutes to have the same meaning." *Avocados Plus Inc.v. Veneman*, 370 F. 3d 1243, 1249 (D.C. Cir. 2004). When interpreting statutes, the "assumption is that Congress knows the law – by which the Supreme Court means judicial decisions." *Id.*

Section 1512(c)(2) was codified in 2002 after enactment of the Sarbanes-Oxley Act. That is the "existing … legislation and … judicial background against which

[Congress was then] legislating." *Miles* at 32.  Courts "assume" Congress did not intend to stray from that background unless shown otherwise. *Ibid.*

First, obstructing a proceeding has always involved an inquiry or investigation. The government does not cite a single pre-2002 law or case for "obstructing" a "proceeding" that was not an inquiry or investigation.  The government even concedes, "no court appears to have applied Section 1512(c)(2) to conduct precisely akin to the defendant's alleged actions." Gov't Resp. at 32, Doc. 56 at 40.

Second, in 1991 the D.C. Circuit analyzed the legislative history of obstruction of Congress offenses specifically. *Poindexter*, 951 F.2d at 380 – 82.  Congress "simply extended the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress." *Id.* at 381.  Even the title of Section 1512 is "Tampering with a witness, victim or an informant."  18 U.S.C. § 1512.

Third, in 1994 the D.C. Circuit addressed charges under both Section 1505 and Section 1512. *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994).  In *Kelley*, the government stipulated that "proceeding" meant the same thing in Section 1505 and in Section 1512. *Id.* at 1128.  In addition, an Office of the Inspector General matter qualified as a "proceeding," because the agency had: i) "adjudicative power" or "the power to enhance [its] investigation through the issuance of subpoenas or warrants[;]" and ii) the OIG matter was an investigation. *Id.* at 1127.

All of this preceded Congress' enactment of Section 1512(c)(2), and accordingly, Congress was aware of it.  *Miles*, 498 U.S. at 32.  "Proceeding" should not now mean something no law or court had meant before Congress legislated.  *Ermoian*, 752 F.3d at 1169 ("proceeding" in Section 1515(a)(1) must be interpreted in the "legal sense" to mean activities that feature the defining qualities of "the business done in courts").

III.   **Certification of the Electoral College Vote Pursuant to the Electoral Count Act of 1887 and the Constitution Do Not Qualify as an "Official Proceeding" for the Purpose of Section 1512(c)(2), Because Congress' Role Is Ministerial, Not Adjudicative.**

Neither the Elector Clauses, nor the Twelfth Amendment give Congress "adjudicative" power to reject certified Electoral College Lists.  The Constitution provides that Electors of the Electoral College shall send certified Lists of their Votes to the "Seat of Government of the United States," where the President of the Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. art. II, § 1, cl. 3; *see also* U.S. Const. art. II, § 1, cl. 1 – 2, 4.

Nor does the Twelfth Amendment give Congress power to enact legislation to enforce its provisions, unlike subsequent amendments expanding the franchise.  *Cf.* U.S. Const. amend. XV, § 2.  The Twelfth Amendment provides that once the President of the Senate has opened all of the Certificates, "the votes shall ***then*** be counted."  U.S. Const. amend. XII (emphasis added).  In the case of electoral deadlock, the House of Representatives is to "***immediately***" choose the next president from those on the list.  Ibid. (emphasis added).  At the Convention, James Wilson said,

> If the election be made as it ought as soon as the votes of the electors are
> opened & it is known that no one has a majority of the whole, there can
> be little danger of corruption.

Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. Rev. 1653,
1715 (2002), *citing* 2 The Records of the Federal Convention of 1787 at 502 (Max
Farrand ed., 1911).  The immediacy principle implies that the count may not be
delayed, which tends to show that it is ministerial, because adjudication would
involve deliberation.

Nor would the Necessary and Proper Clause work.  Congress has the power to
carry into execution: (1) "the foregoing Powers," (2) "all other Powers vested by the
Constitution into the Government of the United States"; and (3) "all other Powers
vested by this Constitution … in any Department or Officer thereof."  U.S. Const. art.
I, § 8, cl. 18.  "Foregoing powers" does not apply because it refers to the seventeen
enumerated powers of Article I, section 8, and the Elector Clauses are in Article II.
"All other Powers vested … into the Government" does not apply because the Elector
Clauses impose a duty to count, not the discretion implied by the word "Power."
Kesavan, 80 N.C. L. Rev. at 1736.  "All other Powers vested … in any Department or
Officer" does not apply because Congress is not a "Department" or "Officer."  *Hubbard
v. United States*, 514 U.S. 695, 700 (1995).

Vice President Mike Pence, the presiding officer of the electoral count, stated
on January 6th, that his duties were "largely ceremonial," not "adjudicative."  Ltr. of
Vice President Mike Pence, Jan. 6, 2021, available at: https://bit.ly/2WVy9s0 (Last
accessed Oct. 19, 2021).

Although Congress purported to grant itself the power to reject electoral certificates that "have not been so regularly given by electors whose appointment has been so certified[]" (3 U.S.C. § 15), the Constitution does not permit Congress to exercise that power.  Accordingly, the Electoral Count Act of 1887 (ECA) is generally regarded as "merely precatory" to avoid constitutional conflict.  Kesavan, 80 N.C. L. Rev. at 1793.  The argument that the ECA shows congressional sessions to count electoral votes are adjudicative conflicts with the Elector Clauses and the Twelfth Amendment.

In addition, even if the Congress in 1887 had the constitutional power to create adjudicative electoral vote procedures, it did not have the power to entrench the legislation, binding all future Congresses.  3 U.S.C. §§ 5, 15 (purporting to bind future Congresses to ECA procedures).  The anti-entrenchment principle forbids one Congress from binding another.  *United States v. Winstar Corp.*, 518 U.S. 839, 872 (1996); Kesavan, 80 N.C. L. Rev. at 1793 (ECA violates anti-entrenchment principle).  That is particularly so with respect to the ECA, which governs parliamentary rules.  The Constitution's Rulemaking Clause gives each Congress the power to set its own rules.  U.S. Const. Art. I, § 5, cl. 2 ("Each House may determine the rules of its proceedings").  Even if the ECA were constitutionally "adjudicative" in 1887, that did not make the joint session on January 6 necessarily adjudicative.  The ECA was at best a House rule in statutory form.  *Winstar Corp.*, 518 U.S. at 872; Kesavan, 80 N.C. L. Rev. at 1793.

The D.C. Circuit has held that the political question doctrine implies criminal liability may not turn on the courts' construction of ambiguous House rules. *United States v. Rostenkowski*, 59 F.3d 1291, 1304 (D.C. Cir. 1995). The Rulemaking Clause is a "textually demonstrable commitment of the [interpretation of parliamentary rules] to a coordinate political department." *Id.* at 1304 (*quoting Baker v. Carr*, 369 U.S. 186, 217 (1962)). There is a "lack of judicially discoverable and manageable standards for resolving" a question that turns on ambiguous House rules. *Ibid.*

The obscure ECA parliamentary rules manifested on January 6. The joint session was suspended at 1:15 p.m. Eastern Time, half an hour before the alleged obstructive acts in this case took place. 167 Cong. Rec. H77 (Jan. 6, 2021). The suspension of the joint session had nothing to do with protesters entering the Capitol. Instead, the President of the Senate ordered that "the two Houses … withdraw from the joint session" as a result of objections to the Arizona certificate by Members of Congress. *Ibid.* The government asks the Court to find not only that a joint session to count electoral votes is an "official proceeding" under obstruction law, but that a suspended one is too, pursuant to hypothetical House rules it has not even cited.

When a crime committed in Congress depends on the existence of a "competent tribunal," the legislature's House rules governing the requirements of such a proceeding must be satisfied. *Christoffel v. United States*, 338 U.S. 84, 88 (1949) (reversing perjury conviction concerning false testimony given to House committee because jury was allowed to convict without finding that the committee's quorum rules were satisfied).

11

Even after the joint session "resumed" at 11:35 p.m. that day, objections to State certificates continued into the wee hours.  167 Cong. Rec. H94 (Jan. 6, 2021). If these objections continued for hours *after* protesters had been cleared from the Capitol, the government has offered no explanation as to why they would not have continued earlier in the day, had protesters not intruded into the building.  Thus, there is no, and can be no, chronological argument that defendant was responsible for a delayed "resumption" of the joint session.

The consensus view among legal scholars is that "counting" is a ministerial, not a judicial act.  *See*, *e.g.*, Kesavan, 80 N.C. L. Rev. at 1712 (2002); Akhil Reed Amar, *Presidents, Vice Presidents, and Death: Closing the Constitution's Succession Gap*, 48 Ark. L. Rev. 215, 229 (1995) ("In counting votes, Congress performs in effect a ministerial function, registering the will of the voters in the electoral college."); *Congress Sowed the Seeds of Jan. 6 in 1887: the Electoral Vote Count Act lets Congress think it can choose the President, but it's unconstitutional*, Judge J. Michael Luttig and David B. Rivkin, Jr., Wall Street Journal, Mar. 18, 2021, available at: https://www.wsj.com/articles/congress-sowed-the-seeds-of-jan-6-in-1887-11616086776.4.

History also suggests that the Framers intended Congress' role to be ministerial.  At the Philadelphia Convention of 1787, they rejected a proposal by James Madison and Hugh Williamson to insert the phrase "who shall have balloted" after the word "Electors."  Kesavan, 80 N.C. L. Rev. at 1713, *quoting* 2 Farrand at 515.  The purpose of this was "so that the non-voting electors not being counted might

not increase the number necessary as a majority of the whole—to decide the choice without the agency of the Senate." Ibid. John Dickinson successfully moved to insert after "Electors" the word "appointed." Ibid. Accordingly, the requisite number of electoral votes needed for victory is "a Majority of the whole Number of Electors Appointed." U.S. Const. art. II, § 1, cl. 3. This history suggests that the Framers considered the possibility that there might not be a "vote," *if an elector shall not have balloted*. They did not consider the possibility that an electoral vote might be unconstitutional, because vote tabulation machines did not recognize Sharpie ink. Kesavan, 80 N.C. L. Rev. at 1713.

In *United States v. William Pepe*, the government has already said that "the certification of the Electoral College vote is not an 'inquiry or investigation.'"); 1:21-CR-00052-TJK-2, Doc. 55, p. 8 n. 3 (D.D.C. 2021).

## IV.   Applying Section 1512(c)(2) to Conduct Unrelated to the Availability or Integrity of Evidence Would Render as Surplusage: i) "Otherwise Obstructs" In Section 1512(c)(2); ii) the Rest of Section 1512; and iii) Much of Chapter 73.

"[A]ll words in a statute are to be assigned meaning, and" nothing is to be construed as surplusage. *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (*quoting Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013).

Section 1512(c) provides: "Whoever corruptly—

  (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; ***or***

  (2) ***otherwise*** obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

18 U.S.C. § 1512(c) (emphasis added). Reading Section 1512(c)(2) beyond acts affecting the availability or integrity of evidence used in an official proceeding commits the Court to layers of surplusage. 18 U.S.C. § 1512(c)(2).

## A. If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then the Words "or Otherwise" Would Have No Meaning.

The subsection could just read, "Whoever corruptly obstructs, influences, or impedes any official proceeding, or attempts to do so shall be fined ... or imprisoned...." Conversely, understanding subsection (c)(2) to reach conduct directed at undermining the proceeding through actions that affect the integrity and availability of evidence other than records, documents, or other objects, such as tips to avoid surveillance, disclosing the identity of an undercover agent, soliciting a false statement, or making a false statement, gives meaning to the word "otherwise" in subsection (c)(2). *See e.g., United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance sufficient to find "efforts were out of a desire ***to influence what evidence came before the grand jury***") (emphasis added); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation sufficient to find purpose was to "***thwart evidence from reaching the***

*investigation*") (emphasis added); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (attempting to obtain false statement ***to be used in pending federal charges*** sufficient for Section 1512(c)(2)) (emphasis added); *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (making false statements **"*directly to the grand jury itself*"** sufficient for Section 1512(c)(2)) (emphasis original); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (false responses to interrogatories ***that were filed in the official proceeding*** sufficient for Section 1512(c)(2)) (emphasis added); *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (making false statements to outside counsel **"so that counsel *would provide misleading information to the grand jury*"**) (emphasis added).

These cases reject the argument that Section 1512(c)(2) reaches conduct not intended to affect the availability or integrity of information used in the "official proceeding." They also prove that the phrase "or otherwise obstructs…" serves a purpose, avoiding surplusage.

*Begay v. United States* addressed what crimes were covered by the statutory phrase

> any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or ***otherwise involves*** conduct that presents a serious potential risk of physical injury to another.

553 U.S. 137, 142 (2008) (*quoting* 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis added). Relying on *ejusdem generis* the Supreme Court decided that "otherwise involves" covered "only similar crimes, rather than every crime that 'presents a serious

potential risk of physical injury to another.'" *Ibid.* Had Congress intended the latter "all encompassing meaning," "it is hard to see why it would have needed to include the [preceding statutory] examples at all." *Ibid.*

Grammatically, the phrase "or otherwise obstructs…" cannot stand alone. 18 U.S.C. § 1512(c)(2). The adverb "otherwise" means "in a different way or manner." *Begay* at 144 (*quoting* Webster's Third New International Dictionary 1598 (1961)). The word "different" is an adjective meaning "not of the same kind : partly or totally unlike." *"Different,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/different (Last accessed Oct. 30, 2021). More specifically, it is a comparative adjective, which by definition involves a relationship between two or more subjects. *"Comparative,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/comparative (Last accessed Oct. 30, 2021). Section 1512(c)(2) begins with the phrase "or otherwise obstructs…." Accordingly, it does not stand alone.

Section 1512(c)(2) is not an independent clause, because "or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so … shall be fined … or imprisoned" contains neither a subject nor a complete predicate. An "independent clause" is one that stands by itself as a simple sentence, i.e., it contains a subject and a predicate and completes a proposition by itself. *"Independent clause,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/independent%20clause (Last accessed Oct. 30, 2021).

The predicate is not complete, because the meaning of "or otherwise obstructs, influences, or impedes any official proceeding" cannot be determined without reference to the verb or verbs which precede it, but the comparative adverb "otherwise" by its definition modifies the verbs that follow it.  Since Section 1512(c)(2) is not an independent clause, it is a dependent clause, meaning it is "connected to the main clause of a sentence."  *"Dependent clause,"* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dependent%20clause   (Last accessed Oct. 30, 2021).   The clause to which Section 1512(c)(2) is "connected" is Section 1512(c)(1).  Accordingly, Section 1512(c)(2) is not "independent of" Section 1512(c)(1).

The "otherwise" provision in Section 1512(c)(2) is not grammatically distinct from the one in *Begay*.  553 U.S. 137.  However, it is grammatically distinct from the omnibus clause at issue in *United States v. Aguilar*, 514 U.S. 593, 610 (1995) (Scalia, J., dissenting in part and concurring in part).  Section 1503 provides:

> ***Whoever*** corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, ***or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice***, shall be punished ….

18 U.S.C. § 1503 (emphasis added).  Each crime in Section 1503 is a grammatically independent clause.  That is not true of Section 1512(c).  Also, unlike the clauses in Section 1503, those in Section 1512(c)(1) and (c)(2) share the "corruptly" element of the offense in common.  It is not repeated in each subpart.

The cases cited by the government, addressing the scope of the clause, again all involve acts intended to affect the integrity or availability of evidence in a proceeding.  *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (defendant hiding documents from proceeding); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of evidence to be used in proceeding).

The "otherwise" provision in Section 1512(c)(2) is grammatically distinct from the one in *Loughrin v. United States,* 573 U.S. 351, 359 (2014).  Section 1344's two clauses are grammatically independent (*see* 18 U.S.C. § 1344), and the case did not address an *ejusdem generis* argument at all.  *Loughrin,* 573 U.S. 351.

Like in *Begay* the issue is whether the "otherwise" conduct charged is a "similar crime" to the ones enumerated in Section 1512(c)(1).  *Begay* at 142.

By "similar crimes," *Begay* meant "crimes that are roughly similar in kind as well as in degree of risk posed to the [enumerated] examples themselves."  *Id.* at 143. In *Begay*, the "example crimes" were "burglary, arson, extortion and crimes involving the use of explosives."  *Ibid.*  The Supreme Court held that DUI was not "similar" to

those, because "the listed crimes involve purposeful, 'violent' and 'aggressive' conduct," which driving intoxicated did not necessarily entail. *Ibid.*

Likewise, although soliciting false testimony (§ 1512(c)(2)) is not identical to document shredding (§ 1512(c)(1)), it is similar according to *Begay*, because both involve acts intended to affect the integrity or availability of evidence in a proceeding. *Volpendesto*, 746 F.3d at 286; *Phillips*, 583 F.3d at 1265; *Petruk*, 781 F.3d at 447; *Carson*, 560 F.3d at 585; *Burge*, 711 F.3d at 809; *Ring*, 628 F. Supp. 2d at 223.

Notwithstanding all the surplusage, even if somehow the construction were formally correct, it is not "clearly" so.   The Court would have turn to Section 1512(c)(2)'s legislative history. *Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 460 (1987) (review of legislative history appropriate to resolve statutory ambiguity).

Congress did not consider but reject "inquiry or investigation" language for Section 1512.   Gov't Resp. at 5 n. 1, Doc. 56 at 13.   Instead, in 1979 Congress considered and rejected an omnibus clause outright, not "inquiry or investigation" specifically. *Poindexter*, 951 F.2d at 382.

Section 1512 is titled: "Tampering with a witness, victim, or an informant."  18 U.S.C. § 1512.  Section 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes."  Sarbanes–Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.   The Senate Judiciary

Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations."  S. Rep. No. 107-146 at 2 (2002).

The legislation was due in part to the collapse of Enron.  The Attorney General said Sarbanes-Oxley "was prompted by Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, had systematically destroyed potentially incriminating documents."  Mem. of William P. Barr, June 8, 2018 ("Barr Memo."), p. 5, https://int.nyt.com/data/documenthelper/549-june-2018-barr-memo-to-doj-mue/b4c05e39318dd2d136b3/optimized/full.pdf  (Last accessed Sep. 16, 2021).  Section 1512(c)(2) was a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly."  Ibid.

The Senate Judiciary Committee noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron."  S. Rep. No. 107-146 at 4.  The Act's preamble and the legislative history make clear that the purpose of Section 1512(c) was to prevent corporations from destroying records relevant to federal securities investigations.  It is not intended to apply in all circumstances when a government function might have been impeded.  The Report states that the Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction

or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146 at 14 – 15.

Section 1512(c) did not exist as part of the original proposal. S. 2010, 107th Cong. (2002). Instead, Senator Trent Lott introduced it as an amendment. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). Senator Lott explained the purpose of adding Section 1512(c):

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered…. [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

148 Cong. Rec. S6542 (daily ed. July 10, 2002).

Senator Orin Hatch explained that Section 1512(c) would "close [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. 148 Cong. Rec. S6542 (daily ed. July 10, 2002).

The Attorney General summarized:

> The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence."

Barr Memo., p. 6.

**B.      If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then the Rest of Section 1512 Would Be Surplusage.**

In *Yates v. United States*, the Supreme Court resisted a reading of an obstruction statute "that would render superfluous an entire provision passed in proximity as part of the same Act."  574 U.S. 528.

If Section 1512(c)(2) were to cover any act that obstructs, influences or impedes an official proceeding, then all of the following would be surplusage:

[Section 1512(a)(1) killing or attempting] to kill another person with intent to–

(A) prevent the attendance or testimony of any person in an official proceeding;

(B) prevent the production of a record, document, or other object, in an official proceeding; or

(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

[Section 1512(a)(2) using] physical force or the threat of physical force against any person, or attempts to do so, with intent to–

(A) influence, delay, or prevent the testimony of any person in an official proceeding;

(B) cause or induce any person to

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

22

(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; or

(C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

[Section 1512(b) knowingly using] intimidation, threaten[ing], or corruptly persuad[ing] another person, or attempt[ing] to do so, or engag[ing] in misleading conduct toward another person, with intent to–

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

[Section 1512(d)] intentionally harass[ing] another person and thereby hinder[ing], delay[ing], prevent[ing], or dissuad[ing] any person from

(1) attending or testifying in an official proceeding;

23

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

(3) arresting or seeking the arrest of another person in connection with a Federal offense; or

(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempt[ing] to do so....

Congress would not have enacted these provisions, carefully tying each type of obstructive act *to the integrity or availability of evidence*, only to follow them with a clause that covers the exact same *actus reus*, but without any tie to evidence availability. *Qi-Zhuo*, 70 F.3d at 139 ("[A]ll words in a statute are to be assigned meaning, and ... nothing therein is to be construed as surplusage.").

## C.    If Subsection (c)(2) Were to Reach Any and All Obstructive Acts, Then Much of Chapter 73 Would Be Surplusage.

If Section 1512(c)(2) were to cover any act that obstructs, influences or impedes an official proceeding, then all of the following would be surplusage:

[Section 1503] corruptly, or by threats or force, or by any threatening letter or communication, influenc[ing], intimidate[ing], or imped[ing] jurors, officers of the court, law enforcement officers, or the administration of justice;

[Section 1505] corruptly, or by threats or force, or by any threatening letter or communication influenc[ing], obstruct[ing], or imped[ing] or endeavor[ing] to influence, obstruct or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress. . ."

[Section 1510] willfully endeavor[ing] by means of bribery to obstruct the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator.

[Section 1513] retaliat[ing] against witnesses, victims or informants in official proceedings.

[Section 1519] knowingly alter[ing], destroy[ing], mutilate[ing], conceal[ing], cover[ing] up, falsif[ying], or mak[ing] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. . ."

## D.   *Yates* Bars a Reading that Would Render So Much Surplusage.

In *Yates,* the Supreme Court rejected the government's claim that "tangible object" Section 1519 included all physical objects, such as a dead fish, not just those that contain information.  574 U.S. at 542.  The Court rejected this construction, because if "tangible object" in Section 1519 covered all physical objects, it would have rendered as surplusage Section 1512(c)(1), which proscribes "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object. . ."  *Yates* at 542.

There is no support in *Yates*, or anywhere else, that Section 1512(c)(2), or any other provision in Section 1512, covers acts that do not intend to affect the integrity or availability of any kind of evidence.   *Yates* concerns the distinction between evidence that is used to record or preserve information (18 U.S.C. § 1519) and physical evidence that does not intrinsically record or preserve information, such as a knife (18 U.S.C. § 1512(c)(1)).  The Court applied *ejusdem generis* and *noscitur a sociis* to limit "tangible object" to an object used to record or preserve information, because the

phrase followed a list of words separated by commas, each noun of which recorded or preserved information (records, documents).

Under *noscitur a sociis*, "a word is known by the company it keeps to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates*, 574 U.S. at 543 (cleaned up).

Section 1519 proscribes "'alter[ing], destroy[ing] … *falsif[ying] or mak[ing] a false entry in* any record, document, or tangible object.'" *Yates* at 543 (*citing* § 1519) (emphasis in original). The italicized verbs "typically take as grammatical objects … things used to record or preserve information." *Ibid.* Accordingly, *noscitur a sociis* counseled limiting "tangible object" to evidence that is used to record or preserve information.

Under *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates* at 544 (cleaned up). That counseled in favor of interpreting "tangible object" to mean evidence that records or preserves information given that it followed "record[s], document[s]." *Ibid.*

> It is highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind ***in a provision targeting fraud in financial record keeping***.

*Ibid.* (emphasis added).

The exact same analysis applies to Section 1512(c)(2).  It criminalizes "whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object … or otherwise obstructs, influences, or impedes any official proceeding…."  Under *noscitur a sociis*, "or otherwise obstructs" in Section 1512(c)(2) is surrounded by words that *concern evidence impairment*, if not always impairment of physical evidence. That is true not only of the words in Section 1512(c)(1), but all of the words in Section 1512.

Under *ejusdem generis*, "or otherwise obstructs" in Section 1512(c)(2) follows: "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object…."  While it might be reasonable to find that "or otherwise obstructs" includes non-physical evidence, "[i]t is highly improbable that Congress would have buried a general . . . statute covering [acts that have nothing to do with evidence] of any and every kind in a provision targeting fraud in financial record keeping."  *Yates* at 544.

*Yates* also held that if "recourse to traditional tools of statutory construction leaves any doubt about the meaning of 'tangible object' … we would invoke the rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Id.* at 548.  Lenity was particularly appropriate because the government

> urge[d] a reading of [an obstruction statute] that exposes individuals to 20-year prison sentences for tampering with ***any*** physical object that ***might*** have evidentiary value in ***any*** federal investigation into ***any*** offense…. [B]efore we choose the harsher alternative, [we] require that Congress … [speak] in language that is clear and definite.

*Yates* at 548 (emphasis original).

Likewise, lenity is as appropriate here.  The government exposes defendant to a 20-year prison sentence for *any* obstructive act, *whether or not* it concerns evidence integrity or availability, in any "proceeding" *whether or not* it concerns an inquiry or investigation.

The argument that the crime in subsection (c) was added to a statute titled, "Tampering with a witness, victim, or an informant" and not some other or new section, because Congress simply opted not to rename it (Gov't Resp. at 26, Doc. 56 at 34), implies that Congress did not understand that it was injecting into Section 1512 the only criminal provision that has nothing to do with evidence impairment.

There is no authority for the argument that *ejusdem generis* does not apply because Section 1512(c)'s list of enumerated *actus reus* verbs followed by "or otherwise obstructs…" includes numbers and a semi-colon.  Gov't Resp. at 29, Doc. 56 at 37.  *Ali v. Fed. Bureau of Prisons* does say "the absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."  522 U.S. 214, 225 (2008).  However, Section 1512(c) does include a list: "whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object . . . or otherwise obstructs, influences, or impedes any official proceeding …."  18 U.S.C. § 1512(c).  The "common attribute" is interference with the integrity or availability of evidence.

*Ali* does not distinguish *Yates*.  *Ali* involved Section 2680(c) of Title 28, which provides that the U.S. government's waiver of sovereign immunity does not apply to claims arising from the detention of property by "any officer of customs or excise or

any other law enforcement officers." *Ali*, 552 U.S. at 216 (*quoting* 28 U.S.C. § 2680(c)). This statute includes no list.  The petitioner argued that the clause applied only to law enforcement officers enforcing customs or excise laws. *Id.*  The Court in *Ali* did not apply *ejusdem generis* to Section 2680(c), because unlike Section 1512(c), there was "no list of specific items separated by commas and followed by a general or collective term."  *Ali* at 225. The Court did not apply *noscitur a sociis,* because "although customs and excise are mentioned [only] **twice** in § 2680(c), nothing in the overall statutory context suggests that customs and excise officers were the exclusive focus of the provision."  *Ali* at 225.  (emphasis added).  By contrast, every single provision of in Section 1512 concerns interference with the integrity or availability of evidence.

Again, the "otherwise" provision in Section 1512(c)(2) is grammatically distinct from the omnibus clause at issue in *Aguilar*, 514 U.S. 593 at 610 (1995) (Scalia, J., dissenting in part and concurring in part).

There is no authority for the argument that *noscitur a sociis* does not apply to Section 1512(c), because "the first and second clauses . . . are not in a list of related terms."  Gov't Resp. at 31, Doc. 56 at 39.  Section 1512(c)(2) is a dependent clause, relying on Section 1512(c)(1) for its meaning, because the former is not a simple sentence.  Beginning "or otherwise obstructs…" its predicate is incomplete without reference to the first clause.  *United States v. De Bruhl-Daniels* holds that Section 1512(c)(2) reaches beyond document tampering, not that it covers acts not having anything to do with evidence.  491 F. Supp. 3d at 237, 251(S.D. Tex. 2020).

The *Yates* Court did not apply a "grievous ambiguity" standard, but a simple ambiguity standard.  574 U.S. at 548; *see also Abramski v. United States*, 573 U.S. 169, 204 (2014) (Scalia, J., dissenting) ("[C]ontrary to the miserly [grievous ambiguity] approach, the rule of lenity applies whenever, after all legitimate tools of interpretation have been exhausted, a reasonable doubt persists regarding whether Congress has made the defendant's conduct a federal crime … [I]n other words, whenever those tools do not decisively dispel the statute's ambiguity.") (cleaned up).

Even if a grievous ambiguity standard were to apply, it would still shields the defendant.  No provision in Section 1512 has ever been applied to acts that have no connection to the integrity or availability of evidence in a proceeding.  Even if that interpretation is somehow correct despite text, interpretive canons, case law and legislative history, it is "unambiguously" so.  *Yates*, 574 U.S. at 548.

The government's admission that "no court appears to have applied" its interpretation to Section 1512(c)(2) (Gov't Resp. at 32, Doc. 56 at 40) means applying it retroactively against the defendant is a prototypical due process violation under the novel construction principle.  *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). ("[A]n unforeseen judicial enlargement of a criminal statute, applied retroactively, operates precisely as an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids."  If a "legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction."  An "unforeseen judicial

enlargement" is one that has no support in precedent before the criminal act); *United States v. Lanier*, 520 U.S. 259, 266 (1997) (*Bouie* still good law).

### E.   The "Corruptly" and "Nexus" Elements Do Nothing to Avoid Surplusage.

The issue is whether the "corruptly" and nexus requirements somehow prevent the government's interpretation of Section 1512(c)(2) from rendering other provisions in that section and Chapter 73 surplusage.

That the government's interpretation of Section 1512(c)(2) still requires it to prove the defendant acted "corruptly" does not prevent rendering other Section 1512 provisions surplusage. The government's interpretation gives no meaning to the term "or otherwise" in subsection (c)(2). Subsection (c)(1) *also* requires the government to prove the corruptly element.

In addition, Section 1512(b) punishes "whoever . . . corruptly persuades another person … with intent to influence, delay or prevent the testimony of any person in an official proceeding" or to "cause or induce any person" to affect the integrity or availability of evidence. Again, despite the corruptly "limitation," the government's interpretation of Section 1512(c)(2) still renders Section 1512(b) surplusage. The same problem affects many other sections in Chapter 73 that carry the corruptly element, all of which are rendered surplusage by the government's interpretation of Section 1512(c)(2) notwithstanding its claimed "limitation." *See* 18 U.S.C. §§ 1503; 1505.

The government's definition of "corruptly" as just wrongfulness (Gov't Resp. at 19, Doc. 56 at 27) ignores that the consensus view that "corruptly" means "done … with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person." *Aguilar*, 514 U.S. at 616 (Scalia, J., dissenting in part and concurring in part); *Poindexter*, 951 F.2d at 379 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'"); *United States v. North*, 910 F.2d 843, 882, 285 U.S. App. D.C. 343 (D.C. Cir. 1990) (a "corrupt" intent means "the intent to obtain an improper advantage for oneself or someone else. . ."); *United States v. Reeves*, 752 F2d 995, 1001 (5th Cir. 1985) ("To interpret 'corruptly' [in obstruction statute] as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth' in this statute because of the chilling effect on protected activities … Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'").

The government's definition of "corruptly" as just wrongfulness ignores that "corruptly" does not mean the same thing in the context of congressional proceedings and legal proceedings.  While in the latter context, "acts specifically intended to 'influence, obstruct, or impede, the due administration of justice' are obviously wrongful, just as they are necessarily 'corrupt,'" the same is not true of other types of proceedings.  *Aguilar*, 514 U.S. at 616 (*citing North*, 910 F.2d at 941 (Silberman, J., concurring) (finding that "corruptly" in congressional proceedings means something different from the term in legal proceedings)).

32

The government's definition of "corruptly" as just wrongfulness ignores that *Arthur Andersen LLP v. United States* i) resolved the question whether it was erroneous for the Section 1512(b) jury instructions to exclude a consciousness of wrongdoing element, but did not address the unpresented issue whether "corruptly" may be defined as "wrongfully" in every context consistent with due process; and ii) concerned "corruptly" in the context of legal proceedings, not a congressional proceeding. 544 U.S. 696, 706 (2005).

That the government's interpretation of Section 1512(c)(2) still requires it to prove a nexus does not prevent rendering other Section 1512 provisions and sections in Chapter 73 surplusage. It is not just when charging Section 1512(c)(2) that the government must prove that in taking the obstructive act the defendant contemplated a particular, foreseeable official proceeding. The nexus requirement applies to § 1503. *Aguilar*, 515 U.S. at 593. It applies to § 1512(b)(2)(A) and (B). *Arthur Andersen*, 544 U.S. at 706. It applies to § 1512(b)(1). *United States v. Tyler*, 732 F.3d 241, 249 (3d Cir. 213). It applies to § 1512(c)(2). *United States v. Nicholas Young*, 916 F.3d 368, 386 (4th Cir. 2019). Indeed, it applies to every subsection in § 1512, *Tyler*, 732 F.3d at 249, including Section 1512(c)(1), whose function is already swallowed by the government's construction of subsection (c)(2). The nexus rule does not even address the surplusage problem created by the government's interpretation of Section 1512(c)(2).

**F.    Count Two Does Not Allege Interference with the Availability or Integrity of Evidence.**

Count Two charges:

… corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15 – 18.

Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

Doc. 34 at 2.

It alleges nothing about Electoral College certificates or the intent to stop Members of Congress from "reviewing" them.  Ibid.  It does not allege that Members of Congress were unable to "review" the certificates on account of defendant's actions or anyone else's.  Ibid.  Without allegation in the indictment contending either intention to or did "prevent the examination of documents, records, and other nontestimonial evidence," Count Two must be dismissed.

/s/ *William L. Welch,* III

_____

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

**Certificate of Service**

I hereby certify that on this 15th day of November 2021, a copy of the foregoing Supplemental Reply Memorandum in Support of Motion to Dismiss was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch,* III

_____
William L. Welch, III