**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | \* | |
| **v.** | \* | **No. 1:21-CR-00032-DLF-1** |
| **Guy Wesley Reffitt** | \* | |

**Response to Government's Supplemental Filing on 18 U.S.C. § 1512(c)(2) and Objection to Proposed Instruction Defining "Corruptly"**

**I.    The Government's Supplemental Filing (Doc. 71) Shows that Its Interpretation of Section 1512(c)(2) Makes Surplusage of Large Portions of Chapter 73.**

In the past six years, the Supreme Court has twice rejected the government's overbroad interpretations of "catchall" or "residual" clauses in obstruction of justice statutes. *Marinello v. United States*, 138 S. Ct. 1101 (2018); *Yates v. United States*, 574 U.S. 135 (2015). In both cases, the Court rejected the government's argument that redundancy in other obstruction statutes created by its overbroad catchall interpretation was "mere overlap." *Marinello* at 1107–08 (While "[s]ome overlap in criminal provisions is, of course, inevitable," the Court had not seen "overlap and redundancy to the degree that would result from the Government's broad reading of § 7212").

The government's construction of Section 1512(c)(2) is even broader than its interpretations were in *Marinello* and *Yates*. The government claims that subsection (c)(2) is the only provision in Section 1512—titled "Tampering with a witness, victim or informant"—criminalizing acts that need not intend to affect the integrity or availability of any kind of evidence, whether documentary or testimonial, such as the

act of appearing in the Capitol without permission.  To appreciate the extremity of the government's interpretation, the Court should notice that some January 6 defendants charged under Section 1512(c)(2) merely protested outside the Capitol, did not enter the building, and are accused of no violence or property destruction.  *See e.g.*, *United States v. Felipe Martinez*, 21-cr-392 (D.D.C. 2021).  Of course, the government contends that (c)(2) *also* covers all acts that do intend to affect the integrity or availability of evidence in a proceeding.

A.    **If Subsection (c)(2) Criminalizes Any Act that Obstructs an Official Proceeding, Then Not Just Subsection (c)(1), But the Rest of Section 1512 Is Redundant.**

The government does not even attempt to salvage (c)(1) from its overbroad interpretation of (c)(2).  Doc. 71 at 9–11.  Now follow the government's interpretive maneuvering closely, as its speciousness requires detailed unpacking:

While arguing that the government's interpretation of (c)(2) does not "swallow" sub-subsections 1512(a)(1)(C), 1512(a)(2)(C), and 1512(b)(3) (Doc. 71 at 9) it makes no attempt to argue that its any-act-that-obstructs-any-proceeding construction of (c)(2) does not render useless sub-subsections 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), and 1512(a)(2)(B).  That is because its (c)(2) interpretation plainly makes surplusage out of those provisions, all of which concern specific acts that interfere with the integrity or availability of evidence in a proceeding.

Even the government's chosen sub-subsections are not saved from oblivion.  It claims these are "not connected to an official proceeding" and thus its interpretation

of (c)(2) does not swallow them(Doc. 71 at 9), but that is not so.  When a person kills (§ 1512(a)(1)(C)), or uses physical force (§ 1512(a)(2)(C)) on, or threatens (§ 1512(b)(3)) someone to "prevent [their] communication . . .to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense. . .," this is connected to an official proceeding, because "an official proceeding need not be pending or about to be instituted at the time of the offense." § 1512(f)(1).  The nexus element merely requires that obstruction of a *specific* official proceeding, even if merely contemplated but not instituted, be the intended outcome of the obstructive act.  Therefore, if a defendant assaults a person to prevent their communication to law enforcement of the time and location of a particular drug transaction, the nexus requirement to a specific but not-yet-instituted official proceeding may be satisfied.   Accordingly, the government has not avoided surplusage in sub-subsections 1512(a)(1)(C), 1512(a)(2)(C), and 1512(b)(3).

The government's tangled attempt to show that its interpretation of (c)(2) does not "overlap" with subsections 1512(b)(1) and (2) illustrates the point perfectly. Subsection (b)(1) criminalizes knowingly using intimidation, threats or corrupt persuasion on a person with the intent to influence, delay, or prevent "the testimony of any person in an official proceeding."  The government says:

> The knowing threats and intimidation that those provisions prohibit
> may sometimes be corrupt, and thus fall within Section 1512(c)(2).  But
> they need not be.  A defendant might, in particular, knowingly threaten
> or intimidate someone into avoiding full participation in a proceeding
> for reasons unrelated to the outcome of the proceeding.  A defendant
> who, for example, knowingly intimidates someone into disregarding a
> subpoena for an object (say, a gun) because he wishes to use the object

3

himself (say, because he needs it for a drug deal that day), has violated Section 1512(b)(2).  But because the effect on the proceeding itself is only a tangential result of his conduct, rather than its design, he has not acted "corruptly" within the meaning of Section 1512(c)(2).

Doc. 71 at 10.

Claiming that "a defendant who … knowingly intimidates someone into disregarding a subpoena for a [gun] because he wishes to use the object himself [for a drug deal] has violated Section 1512(b)(2)[,]" but not acted "corruptly," in order to claim there is no overlap with an any-act-that-obstructs interpretation of subsection (c)(2) is strange.  The government is simultaneously arguing that "corruptly" means any obstructive act undertaken by the defendant "while" committing an offense independent of the obstructed proceeding.  Using a gun in facilitation of a drug deal is still a felony offense.  *See* 18 U.S.C. § 924(c).

The government's treatment of Section 1512(d) fares no better.  Subsection (d)(1) criminalizes intentional harassment of a person and thereby hindering, delaying, preventing or dissuading any person from "attending or testifying in an official proceeding."  Although the government concedes its any-act-that-obstructs-any-proceeding interpretation of (c)(2) also "overlaps" with the crime in (d)(1) (Doc. 71 at 10) it says, "Section 1512(c)(2) requires the government to prove that the defendant acted wrongfully with the intent to obstruct a particular official proceeding, whereas Section 1512(d)(1) imposes liability where a defendant simply harasses one person with the result … that some other person refrain from attending

or testifying at an official proceeding." Doc. 71 at 10. Apparently, according to the government simply harassing a person is not "wrongful."

According to the government, subsections (d)(2)–(4) "proscribe conduct unrelated to an official proceeding" so there is no "overlap" with its any-act-that-obstructs construction of (c)(2). Doc. 71 at 10. However, harassment designed to prevent a person from reporting to law enforcement or a judge ((d)(2)), from arresting a person "in connection with a federal offense" ((d)(3)), or from "causing a criminal prosecution … to be sought or instituted" ((d)(4)) is very much conduct related to an official proceeding, because official proceedings "need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1).

## B.   If Subsection (c)(2) Criminalizes Any Act that Obstructs an Official Proceeding, Then Sections 1503, 1505 Are Redundant.

Although the government concedes that its novel construction of Section 1512(c)(2) "overlaps" with Sections 1503 and 1505, the government claims that it "does not render them superfluous." Doc. 71 at 8. "Section 1503, for example, covers various forms of obstruction that interfere with the 'due administration of justice,' and thus encompass obstructive conduct outside the context of an official proceeding." *Ibid.* This does not make sense. Every circuit that has defined "due administration of justice" has held that its meaning is coterminous with judicial proceedings.[1] Judicial proceedings are also "official proceedings." 18 U.S.C. § 1515(a)(1)(A).

---

[1] *United States v. Richardson*, 676 F.3d 491, 502-503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279-80 (11th Cir. 1997)

More tangled still is the government's attempt at avoiding making surplusage of Section 1505:

> Section 1505 prohibits the corrupt obstruction of "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House, or any joint committee of the Congress." 18 U.S.C. § 1505. Such an inquiry or investigation is not necessarily an "official proceeding" whose obstruction would be prohibited by Section 1512(c)(2).

> For instance, if a congressional chief of staff directed his or her employees to falsely certify that they did not have any responsive documents in response to a request for information issued by investigators from the House Ethics Committee investigating the potential misuse of funds to pay campaign expenses, the chief of staff has likely violated Section 1505. . . But an investigation undertaken by the House Ethics Committee would not appear to qualify as an "official proceeding" for purposes of Section 1512(c)(2), thus placing the chief of staff's obstructive conduct outside the ambit of that provision.

Doc. 71 at 8–9.

The government does not explain why the "investigation undertaken by the House Ethics Committee" would not "appear" to constitute a Section 1512 "official proceeding" as a "proceeding before the Congress," the provision on which it relies in this case.   18 U.S.C. § 1515(a)(1)(B).   The government's reasoning difficult to

---

("due administration of justice" means "judicial procedure" and "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving thoughtful testimony when subpoenaed"); *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir. 1984) (defining obstruction of the "administration of justice" as acts that "thwart the judicial process"); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981) ("administration of justice" commences with "a specific judicial proceeding").

understand.  Suggesting a distinction between proceedings merely "by either House or any committee of either House" (§ 1505), and "proceedings before the Congress," (§ 1515(a)(1)(B)) on the ground that the former are merely constituent parts of the latter and that Section 1515(a)(1)(B) requires the presence of all constituent congressional components would present a serious problem.  The joint session of Congress on January 6 was suspended, and the Houses ordered to separate, an hour before the first protester intrusion.  167 Cong. Rec. H77 (Jan. 6, 2021) (at 1:15 p.m. Eastern Time, the vice president directed "the two Houses [to] withdraw from the joint session" due to congressional objections to the Arizona certificate).  If Sections 1512(c) and 1515(a)(1)(B) are to be distinguished from Section 1505 on the ground that the former do not cover separated House proceedings unlike the latter, then the government has not charged a Section 1512(c) offense for intrusions into the Capitol Building between 1:15 p.m. to approximately 11:35 p.m. on January 6, when the joint session of Congress "resumed."  167 Cong. Rec. H94 (Jan. 6, 2021).

The government concludes by citing cases noting that statutory "overlap" is not always surplusage.  Doc. 71 at 11.  However, all of these predate *Yates,* 574 U.S. 135 (2015) and *Marinello,* 138 S. Ct. 1101 (2018), which rejected the government's "mere overlap" arguments in the context of "catchall" or "residual" obstruction crimes, as is the case here.

## II.    Objection to Proposed Instruction Defining "Corruptly"

The government may not postpone the interpretive questions posed by the Court and by a Motion to Dismiss.  Whether the defendant obstructed, influenced or

impeded an official proceeding "corruptly" is an element of the Section 1512(c)(2) offense.  Mr. Reffitt has moved to dismiss Count Two of the Second Superseding Indictment on the basis that it does not allege facts stating an offense under that statute.  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  If the government's interpretation of "corruptly" as charged in the indictment is legally deficient, then Count Two does not state an offense, nor has the government presented legally cognizable evidence to the grand jury in satisfaction of the defendant's Fifth Amendment presentment right.

Instead of defining the key elements on which the charge relies, the government seeks to postpone the interpretive questions posed by the Court until jury instructions.  The government's case citations are misleading.  None holds that the government may avoid dismissal of a charge resting on an improper interpretation of an element of a criminal offense by "postponing" the issue until jury instructions.  Whether Count Two rests on a definition of "corruptly" passing constitutional muster is a legal question resolvable now.  If the charges do not rest on a proper definition, "postponing" the issue is not just a waste of the parties' and Court's resources.  It is a violation of the defendant's constitutionally protected liberty interest.  If questions of legal interpretation were postponed until trial, Rule 12 would be a dead letter.  Fed. R. Crim. P. 12.

The indictment must contain "the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  When it does not, the defendant has not received fair notice of the charges against him and the government has not properly presented the felony charge to the grand jury.  *See e.g.*, *United States v. Walsh*, 194 F.3d 37, 44

(2d Cir. 1999).  If defendant is correct that "corruptly" requires the government to allege and prove that he committed an obstructive act with the intent to obtain an unlawful advantage for himself or an associate and that he influenced another to violate their legal duty, the indictment must have alleged, and the grand jury must have passed upon, those allegations.  Count Two does not allege those facts and the government does not show otherwise.

In in *United States v. Ethan Nordean*, the government has claimed it will try the obstruction charges even with a jury instruction requiring it to prove that Nordean committed an obstructive act with the intent to obtain an unlawful advantage for himself or an associate.  1:21-CR-00175-TJK, Doc. 236 at 4.[2]  However, that does not somehow cure the failure to identify what fact alleged in Count Two and presented to the grand jury satisfies this "corruptly" definition.

The Court has held that such a pleading deficiency fails to provide constitutionally fair notice to a criminal defendant.  Minute Order Nov. 28, 2021 (ordering the government to particularize vague allegation that defendant "corruptly" obstructed Congress); *see also United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (Rule 7 not satisfied, because indictment did not identify specific overt

---

[2] The government does not make the same commitment if the Court requires it to prove that Nordean influenced another to violate their legal duty, as required by *United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991).  The FSI does not allege facts showing that Nordean committed such transitive corruption, nor has the government proffered any.

acts of defendants); *United States v. Brown*, 2007 U.S. Dist. LEXIS 49169, *45 (D.D.C. July 9, 2007) (Rule 7 not satisfied, when indictment did not "specif[y] alleged actions and specifically worded false statements on which the government shall rely in proving its case"); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007) (Rule 7 not satisfied, when indictment did not identify proceeds allegedly used in support of criminal enterprise so defendant does not "waste precious pre-trial preparation guessing what data … will be relevant to [the] defense"); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (Rule 7 not satisfied in false-statement case when indictment did not allege "which statements he has to defend against … when the government knows precisely the statements on which it intends to rely and can easily provide the information"); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (Rule 7 not satisfied, when indictment did not allege "the basis of the government's allegations that the defendant solicited and received things of value for and because of official acts performed and to be performed by defendant").

Not only does Count Two fail to allege facts satisfying the unlawful-advantage standard and the *Poindexter* transitive corruption rule (951 F.2d 369), the government provides no notice whatsoever of what the "corruptly" element factually entails in this case.

What was the "unlawful benefit" Reffitt intended to and did receive on January 6?

Whom did Reffitt influence to violate their legal duty and thereby obstruct an official proceeding?

The government's cursory treatment of the constructive amendment issue illustrates both how little thought it has put into grave charging decisions across hundreds of cases and how cavalier it is with the Court's time. *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 4. The government does not dispute Nordean's description of the rule from *Stirone v. United States*, 361 U.S. 212, 217 (1960), that a constructive amendment occurs when the evidence on which a defendant is tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury. Nor does the government dispute that such amendment is a "fatal error," for which prejudice is presumed. *Stirone*, 361 U.S. at 219; *United States v. Rigas*, 490 F.3d 208, 226 (2d Cir. 2007) (constructive amendment *per se* violation of grand jury right); *United States v. Atul Bhagat*, 436 F.3d 1140, 1145 (9th Cir. 2006) (same). Instead, the government flatly states that even if it did not present facts to the grand jury showing that Nordean acted with the intent to obtain an unlawful advantage for himself or an associate and that he influenced another to violate their legal duty, that does not "implicate the type of change to a factual theory of proof at issue in *Stirone*…." *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 4. That is not a legal argument. It is *ipse dixit*.

The government's implicit reasoning is no more rigorous. In *Stirone*, the change in the government's theory of liability from the grand jury stage to trial merely concerned the type of commodity passing through interstate commerce (sand versus steel). 361 U.S. at 219. Although the Hobbs Act charge required proof of an effect on interstate commerce, that jurisdictional subject was still tangential to the

11

underlying crime at issue, extortion.  *Ibid.*  By contrast, the meaning of the term "corruptly" lies at the heart of Count Two.

The meaning of "corruptly" in the context of obstruction of Congress  can and should be resolved before trial to avoid waste, to uphold Nordean's constitutionally protected liberty interest, and because Rules 7 and 12 of the Federal Rules of Criminal Procedure and the due process and presentment clauses of the Fifth Amendment require it.

### III.    The Government Continues to Ignore the Distinction between Judicial Proceedings and Congressional Ones, Because Equating Corruptly and Wrongfully Does Not Survive Scrutiny.

If, as the government erroneously contends, (i) Section 1512's "proceeding" does not require an investigation, inquiry, or the administration of justice (unlike every proceeding in the history of obstruction case law); and if (ii) subsection (c)(2) covers all obstructive acts whether or not they are intended to affect the integrity or availability of evidence, then defining "corruptly" to mean "wrongfully" would spawn an offense that criminalizes much of ordinary legislative business.  In *Nordean*, the government offers four rejoinders.  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 5–9.

First, the government says, "Defendants identify no case involving Section 1512(c) or congressional obstruction prosecuted under another statute that applies the improper-advantage theory they advocate."  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 5.  Of course, the government omits that, as the authorities cited by Nordean hold, "corruptly" has been defined to mean "wrongfully" only in the context of the

administration of justice, i.e., judicial proceedings or investigations, when "the advantage inconsistent with the duties and rights of others is so clear that courts have often been willing to impute the desire to obtain such advantage on a per se basis." *United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985) *cert. denied*, 474 U.S. 834 (1985).[3]

The government also does not cite a single case before January 6th, in which it charged either a Section 1512 or Section 1505 offense outside the context of the administration of justice. Faulting Nordean for not identifying a Section 1512(c)(2) case applying the improper-advantage definition turns the *ex post facto* principle on its head: it is not the government's problem that its charge lacks any precedential support—it is somehow the defendant's. In any case, Nordean cited many cases when courts have held or implied that the unlawful-advantage definition applies outside the context of tax obstruction. *See*, *e.g.*, *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (jury instruction applied unlawful-advantage definition in Chapter 73 case); *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)

---

[3] The government does not contest this definition of the "administration of justice." It implicitly concedes that even if there were to obtain a Section 1512(c)(2) conviction, it could secure no sentencing enhancements under the U.S. Sentencing Guidelines. Virtually all such enhancements require interference with the "administration of justice." USSG § 2J1.2. As Nordean has noted, this point does not just go to sentencing but to whether the government's attempt to decouple the obstruction of justice offense from investigations and evidence is legally sound—or perhaps just frivolous. The Guidelines show that the legally distinguished members of the Commission never contemplated an obstruction offense somehow divorced from investigations and evidence.

(generally defining "corruptly" to "require[] proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit.") (citing 21 Am. Jur. 2d, Criminal Law § 114 (2016)); Black's Law Dictionary 414 (rev. 4th ed. 1951) ("Corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage").

Second, the government argues that distinguishing between judicial proceedings and congressional ones—as Judge Kelly did in oral argument—is to "conflate[] the statute's *mens rea* and *actus reus* requirements."  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 5.  That is puzzling, because the government also contended that "the term 'corruptly' … is dependent on the context in which it appears." *Compare id.* at 5 with *id.* at 2.  The government refutes its own argument.

The government's cases also refute its own argument that the "corruptly" element may somehow be defined abstractly and avoid unconstitutional vagueness without paying heed to the nature of the obstructive act and of the proceeding. *Nordean*, 1:21-CR-00175-TJK, Doc. 224 at 6 (*citing Reeves*, 752 F.2d at 1001); *id.* at 10 (*citing Aguilar*, 515 U.S. at 616 (Scalia, J., concurring and dissenting in part)); *id.* at 7 (citing *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990)).  In all of these decisions, the courts distinguish between how "corruptly" is interpreted in judicial proceedings and non-judicial proceedings, such as those in Congress.  The courts were not "conflating the [obstruction] statute's *mens rea* and *actus reus* requirements." *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 5.  Instead, they recognized that, in the context of judicial proceedings and investigations, the equation of "corruptly" with

14

"wrongfully" does not result in unconstitutional vagueness, because the act of obstructing such a proceeding is corrupt *per se*. *Aguilar*, 515 U.S. at 616 (*citing North*, 910 F.2d at 941; *Reeves*, 752 F.2d at 999).

In contrast, when the proceeding and acts at issue cover a "broad[er] category of circumstances" than a judicial proceeding, such as a congressional proceeding, "merely prohibiting 'bad,' 'evil,' and 'improper' purposes is" void for vagueness and overbroad. *Reeves*, 752 F.2d at 999. Put another way, these decisions merely apply the simple linguistic touchstone that "meaning is use": a word such a "corruptly" takes its meaning from how it is ordinarily used (specifically, in investigations involving evidence) not from the nonce definition of an outcome-oriented interpreter.

Third, the government contends that *Reeves* and all of its progeny, on which the government itself relies, must have wrongfully identified the corrupt-act-*per-se* distinction in the context of judicial proceedings, because "lawyers regularly act with intent to obstruct or impede [judicial proceedings] by, for example, urging their clients not to disclose documents to investigators or in response to a grand jury subpoena." *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 6. It adds that the sensitive class of lawyers can only be saved from their fate by equating "corruptly" with "wrongfully." *Id*. This argument rests on two mistakes. The government has failed to review the statute at issue, which exempts *bona fide* legal advice by a licensed lawyer from the meaning of "corruptly"—without altering its default meaning. 18 U.S.C. § 1515(c). In addition, the vague, overbroad equation of "corruptly" with "wrongfully" is not needed to rescue lawyers given that "corruptly" may be defined merely to exclude

legal advice given to a client to preserve a right recognized by law, such as the privilege against self-incrimination.[4]

Fourth, the government argues that the Court should not follow *Reeves*' distinction between obstructive acts in judicial proceedings and in non-judicial proceedings, because the Supreme Court later imposed the obstruction of justice requirement in *Aguilar* that there be an intended nexus between the obstructive act and the proceeding at issue. *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 7. That is a *non sequitur*. The concern animating *Aguilar*'s nexus requirement has nothing to do with the distinction in *Reeves* and its progeny as well as in *North* and *Poindexter*. The so-called nexus rule merely requires the government to prove that when the defendant committed the charged act he did so with the intent to obstruct the specific proceeding at issue. *Aguilar*, 515 U.S. at 600. By contrast, the concern in *Reeves* was not that the defendant's act of placing a lien on an IRS agent's home was not directed to a specific proceeding (he knew he was under a specific IRS investigation), but that the *type* of proceeding at issue was not judicial and involved a "broad[er] category of circumstances," such that equating "corruptly" with "wrongfully" would be unconstitutionally vague. *Reeves*, 752 F.2d at 1001. Accordingly, the point that *Reeves* "predated *Aguilar*" does not make sense. As the government's supplemental

---

[4] This second exemption would therefore not cover a prosecutor who intentionally fails to provide exculpatory material to the defense and thereby obstructs an official proceeding.

brief itself shows, much of *Reeves*'s progeny *post*-dates *Aguilar*. *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 5–6.

Finally, the government just dismisses the examples Nordean offered to show how dangerously vague its novel interpretation of Section 1512(c)(2) is, which would criminalize a great deal of legislative business. *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 8. The government makes no effort whatsoever to explain how or why the over 100 misdemeanor plea agreement defendants, who entered into the Capitol Building on January 6th did not influence or obstruct Congress "wrongfully." The government expects the Court to overlook the arbitrariness at the heart of the government's investigation. Following the government down a path of willful blindness would lead to constitutional error and a defective verdict.

As for Nordean's hypothetical "lobbyist" and "former politician," the government says it has a distinction that renders their ordinary legislative activity legal even though it comes within the government's interpretation of Section 1512(c)(2). Its proposed instruction

> distinguishes between a political activist whose efforts to lobby and influence evinces an intent to obstruct but not corrupt intent, and an activist who seeks to obstruct a proceeding and does so corruptly by, *for example*, offering illegal bribes, engaging in violence, committing fraud, or engaging in other independently unlawful conduct.

*Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 8. (emphasis added).

However, this "distinction" does not actually distinguish or define anything. Nordean's lobbyist and former politician did not act corruptly, it says, because they

did not have corrupt intent, but other defendants corruptly obstruct Congress because … they do so corruptly … if their acts fall under an arbitrary list of activities—or perhaps even if their acts fall outside those "examples." Nordean's lobbyist would have "consciousness of wrongdoing" when he attempted to obstruct Congress's funding of gun-related fatality research. His former politician would know he was acting "evilly" in blocking legislation providing aid to children living in poverty. The government does not explain how they were not influencing Congress "wrongfully" under its definition of "corruptly." The lobbyist and former politician are guilty of felony obstruction of Congress, according to the government's no-investigation-no-evidence-needed interpretation, and should be prosecuted.

More confusing still, the Count Two does not allege that the defendant committed any of the illustrative "corrupt" acts cited in the government's jury instruction distinction: offering bribes, engaging in violence, committing fraud.

As for "other independent unlawful conduct," Nordean has shown that *Poindexter* forecloses the argument that one obstructs Congress "corruptly" by undertaking any obstructive act "while" committing an independent offense. *Nordean*, 1:21-CR-00175-TJK, Doc. 226, p. 14 n. 6. The government does not contest this reading of *Poindexter* and the argument is forfeited.

Nor does the government account for why over 100 defendants who entered the Capitol Building on January 6th were solely charged with, or entered into plea agreements concerning, Title 40 misdemeanors even though they influenced/obstructed Congress "while" committing such "independent" alleged

crimes as possessing controlled substances, committing local D.C. trespass, and entering a "restricted area" under Section 1752.

## IV.  The Government's New Attempts to Avoid *Poindexter's* Transitive Corruption Requirement Are Not Persuasive

Nordean showed that in *Poindexter* the D.C. Circuit foreclosed the government's equation of "corruptly" with "wrongfully" in the context of congressional obstruction.  *Nordean*, 1:21-CR-00175-TJK, Doc. 226 at 14–17.  He also showed that *Poindexter* requires the government to prove that the defendant committed transitive corruption, i.e., that he influenced another person to violate their legal duty.  *Id.*  The government now posits more reasons why *Poindexter* "has no application here."  They are misleading and confused.  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 9–13.

First, the government points out that *Poindexter* interpreted an obstruction of Congress offense under Section 1505 "at a time when Congress had not yet enacted Section 1512(c)(2)."  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 9.  This temporal distinction is meaningless, because the D.C. Circuit's interpretation of "corruptly" in *Poindexter* rested on statutory grammar, the due process clause, and the nature of proceedings in Congress—all of which Sections 1505 and 1512(c) share in common—not on some nonspecific temporal distinction between 1991 (*Poindexer*) and 2000 (Sarbanes-Oxley).  The government does not contend that the "corruptly" element in Section 1512(c) serves a grammatical function different from "corruptly" in Section 1505, because does not.  In both statutes, "corruptly" is an adverb that modifies the *actus reus* verbs at issue.  Of course, all of the legislative history the *Poindexter* court

canvassed concerning the history of obstruction of Congress offenses applies to Section 1512(c) no less than to Section 1505.  951 F.2d at 380–382.

Second, the government represents that *Poindexter* "expressly refrained from adopting the improper-advantage interpretation of 'corruptly' that Defendants now advocate."  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 9.  That is misleading.  The D.C. Circuit did not reject the improper-advantage definition.  To the contrary, the court cited with approval to Judge Silberman's concurrence in *North* as well as to *Reeves*, which adopted Nordean's definition of "corruptly."  *Poindexter*, 951 F.2d at 386 (*citing North*, 910 F.2d at 881; *Reeves*, 752 F.2d at 999-1001).  However, as a matter of judicial parsimony the *Poindexter* court did not reach the question, because the government had not even proven that the defendant transitively obstructed Congress by influencing another person to violate their legal duty.  *Id.*

Third, the government persists in falsely maintaining that Congress "overruled" *Poindexter* in Section 1515(b).  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 9.  It ignores that *Poindexter*'s transitive corruption rule rests on the D.C. Circuit's interpretation of the due process clause of the Fifth Amendment via the vagueness doctrine, 951 F.2d at 377–78, and that Congress cannot "overrule" the court's interpretation of the Constitution under the *Marbury* principle.  That is precisely what this Court meant in *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999), when it held that it may well be the case that Section 1515(b)'s vague defining

of "corruptly" to mean acting with an "improper purpose" runs afoul of *Poindexter*. The government's reply has nothing to say about *Kanchanalak*.[5]

Fourth, the government cites to cases contemplating vagueness doctrine generally. *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 10–12. The purpose is not clear. The government appears to suggest or believe that Nordean mounts a facial challenge to the term "corruptly," i.e., that he argues that all its applications are vague. In fact, Nordean's argument is exactly the opposite: he points out that an overwhelming body of case law has clearly defined "corruptly" in the Chapter 73 statutes—in the context of the administration of justice, i.e., judicial proceedings and investigations. He argues instead that "corruptly" is unconstitutionally vague as applied by the government to a congressional proceeding that is not an investigation and did not involve evidence. About that context the government's cases have nothing to say. However, the D.C. Circuit did in *North* and *Poindexter*, when the government's vague, value-laden definition of "corruptly" was rejected in the congressional context.

---

[5] The government continues its attempt to mislead the Court regarding the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 9–10. It says that decision held that "'corruptly' as used in Section 1512 is not vague." *Id.* at 10 (*citing* 544 U.S. at 705). The passage of *Arthur Andersen LLP* at the government's pin citation has nothing to say about vagueness doctrine. Even if it did, Nordean's argument is not that "corruptly" *as used in Section 1512* is vague, i.e., his is not a facial challenge. Instead, he argues *the government's* construction of "corruptly" is vague as applied to this case (as in *Poindexter*). In any case, the government fails to address Nordean's point that *Arthur Andersen*'s proceeding involved the administration of justice—court proceedings—unlike the proceeding at issue here which involved no investigation or evidence.

The government cites to *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996).  *Nordean*, 1:21-CR-00175-TJK, Doc. 236 at 12.  It represents that the D.C. Circuit "rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b)."  *Id.* Implying that the D.C. Circuit declined to extend *Poindexter*'s transitive corruption definition to Section 1512, it is seriously misleading.  In *Morrison,* the Court of Appeals upheld the obstruction conviction precisely because the government satisfied *Poindexter*'s transitive corruption rule, i.e., the defendant influenced another to violate their legal duty and thereby obstruct a proceeding.  98 F.3d at 630.  Indeed, the D.C. Circuit explicitly held that the *Poindexter* transitive corruption definition would extend to Section 1512.  *Id.  Poindexter* and *Morrison* are binding law in this Court.

/s/ *William L. Welch,* III

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Wesley Reffitt
(Appointed by this Court)

**Certificate of Service**

I hereby certify that on this 9th day of December 2021, a copy of the foregoing Response to Government's Supplemental Filing on 18 U.S.C. § 1512(c)(2) and Objection to Proposed Instruction Defining "Corruptly" was delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch,* III

_____
William L. Welch, III