**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 21-cr-00032 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **GUY WESLEY REFFITT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION *IN LIMINE***
**TO PERMIT GOVERNMENT TO ELICIT LAY OPINION**
**TESTIMONY ABOUT FIREARM HOLSTER**

The government, by and through its undersigned attorneys, respectfully submits the following supplemental brief in support of its motion *in limine* for an order allowing the government to elicit lay opinion testimony from Federal Bureau of Investigation (FBI) Special Agent (SA) Laird Hightower concerning a firearm holster visible on the defendant's person in photographs and videos of the defendant from the January 6, 2021 riot at the U.S. Capitol. On January 20, 2022, the Court directed the government to file a supplemental brief that provides specific details about SA Hightower's anticipated testimony, as well as higher quality photographs that will be used as the government's proposed exhibits with the witness when eliciting this testimony. This filing and its accompanying exhibits provide that information.

<u>Background</u>

On January 16, 2021, the FBI executed a search warrant at the defendant's home. The search team found a handgun in a holster on a nightstand in the defendant's bedroom. SA Hightower, as the lead case agent for this matter, participated in the search, but his responsibilities did not include photographing and/or seizing the evidence found; instead, other agents were tasked with those duties.

During the search, before evidence was seized, an FBI photographer documented the

evidence as it was found by the search team.  This included a handgun in a holster, which was found and photographed on a nightstand in the defendant's bedroom.  After those photographs were taken, agents on the search team started to collect the evidence.  Standard FBI procedure requires that a qualified agent "render safe" any firearms before they are collected.  While the agents were in the process of collecting the various pieces of evidence found in the defendant's bedroom, SA Hightower walked into the room and observed the handgun in the holster.  The handgun was subsequently collected by the search team and stored as evidence.  The holster in which the handgun was found was not seized, but it can be seen in the photographs that document the handgun and holster on the nightstand as they were originally found.  Electronic copies of these photos, as well as a separate photo of the firearm found in the holster, have been provided to the Court and defense counsel through USAFx in a folder labeled "Exhibit A- search photos."  The photos also have been previously disclosed to the defense as government trial exhibits 124, 125, 126, and 127.

SA Hightower continued to investigate this case after the January 16, 2021 search.  His investigation included reviewing photos and videos of the defendant during the Capitol riot on January 6, 2021.  In some of these photos and videos, SA Hightower observed that there were moments where the defendant's jacket was displaced from his lower torso, revealing a handgun holster on the defendant's right hip.  A silver object appeared to be lodged inside the holster.  One of these videos, a screenshot from that video, and a zoomed-in version of the screenshot, have been provided to the Court and defense counsel through USAFx in a folder labeled "Exhibit B- January 6 video and screenshots."  Previously, a lower resolution version of this video was disclosed to the defense as government trial exhibit 202.  The video provided today will now replace that video as

government trial exhibit 202.  The screenshot, which includes color adjustments by a member of the government's litigation team to make the holster more visible, will be government's trial exhibit 202.1; the zoomed-in version of the screenshot will be government's trial exhibit 202.2.

In anticipation of trial in this case, the FBI purchased a new Blackhawk Serpa CQC concealment holster to use as a demonstrative exhibit.  This proposed exhibit has been made available for viewing by the defense as government's trial exhibit 55.  For the Court's convenience, a screenshot from the Blackhawk website that includes an image of this type of holster has been provided to the Court and defense counsel through USAFx in a folder labeled "Exhibit C-Blackhawk Serpa CQC demonstrative photo."

<u>Proposed Testimony</u>

The government will seek to elicit the following testimony from SA Hightower concerning the holster he observed in the defendant's bedroom:

- When SA Hightower saw the handgun in the holster in the defendant's bedroom during the execution of the search warrant on January 16, 2021, he recognized the type of holster to be a Blackhawk Serpa CQC Concealment holster.

- He is personally familiar with this type of holster because he has purchased and owns several Blackhawk Serpa CQC concealment holsters, and he uses them for firearms in his personal collection.

- SA Hightower will state that he also has personal knowledge of this type of holster because he previously used a Blackhawk Serpa CQC concealment holster on a daily basis for more than a decade to carry his FBI service weapon.

- SA Hightower will explain that this type of holster has a distinctive feature: an auto-locking

finger retention device that is configured in an L-shape on the outside of the holster.  The user must push the finger retention device with his trigger finger in order to release the weapon from the holster.  SA Hightower is familiar with this distinctive feature because of his personal experience owning and using this type of holster.

- SA Hightower will explain that he saw an auto-locking finger retention device in an L-shaped configuration on the holster in the defendant's bedroom, and that this is part of why he recognized it to be a Blackhawk Serpa CQC concealment holster.

- SA Hightower will further explain that he also recognized the holster in the defendant's bedroom because of several other visible features he observed on it.  SA Hightower will explain that he is a firearms enthusiast, and from his own experiences buying Blackhawk Serpa CQC concealment holsters, he knows that they are made from an injection molded polymer and can be purchased in matte black, and that the holster comes with a paddle that can be used to clip it on the wearer's pants.  SA Hightower will testify that the holster he observed in the defendant's bedroom appeared to be made of matte black injection molded polymer, and it had an attached paddle to clip it onto the wearer's pants.

With regard to the photograph taken by the FBI search team photographer that documents the holster and handgun found on a nightstand in the defendant's bedroom, the government anticipates eliciting testimony from SA Hightower that the photograph is an accurate image of the same holster and handgun that SA Hightower saw in the defendant's bedroom.

With regard to the images of the defendant from January 6, 2021 shown in government exhibits 202, 202.1, and 202.2, the government will seek to elicit the following testimony:

- SA Hightower will testify that in the time since the January 16, 2021 search of the

4

defendant's residence, he has reviewed many images and videos showing the defendant during the riot.

- Upon reviewing certain images that show the defendant sitting on a railing on the steps of the Capitol, SA Hightower noticed that the bottom of the defendant's jacket is, at times, displaced from his lower body, and SA Hightower observed what appears to him to be a firearm holster on the defendant's right back hip area.

- He believes the firearm holster he observed in the photograph is a Blackhawk Serpa CQC concealment holster[1] because in certain higher-quality images, including exhibit 202.1, he can see the raised ridgeline of the L-shaped finger retention device on the side of the holster, as well as the paddle attachment on the outside of the defendant's pants. He is familiar with these features of this type of holster because of his personal experience with this product.

Finally, the government will seek to elicit testimony from SA Hightower concerning a newly purchased Blackhawk Serpa CQC concealment holster that the government will introduce as a demonstrative exhibit. In connection with this exhibit, the government will ask SA Hightower the following:

- SA Hightower will be asked to point out, on the demonstrative exhibit, the specific features that allowed him to recognize the holster in the defendant's bedroom to be a Blackhawk Serpa CQC concealment holster;

---

[1] If the Court is not inclined to allow SA Hightower to testify that, in his opinion, the photographs of the defendant at the Capitol on January 6 show what appear to be a Blackhawk Serpa CQC concealment holster, the government's backup proposal is to have SA Hightower testify that, in his opinion, the photographs simply show a firearm holster.

5

- Also using the demonstrative exhibit, he will be asked to point out the specific features that allowed him to recognize the holster in photographs of the defendant from January 6, 2021 to be a Blackhawk Serpa CQC concealment holster, including the paddle attachment and the finger retention device;

- He will be asked to explain how the wearer puts on this type of holster;

- He will be asked to explain how the paddle works to attach the holster to the wearer's clothing;

- He will be asked to demonstrate how the holster's finger retention device works; and

- He will be asked to explain how a firearm fits into the holster, i.e. with the barrel facing down, the handle facing up, and the top of the slide facing out.

<u>Argument</u>

The testimony the government seeks to elicit from SA Hightower is lay opinion testimony under Rule 701 because it is based on his personal knowledge.  While this witness could be qualified to provide expert testimony about firearms and related equipment (and therefore out of an abundance of caution has now been noticed as such (ECF 93)), the testimony the government plans to elicit concerning this holster is well within the boundaries of lay opinion testimony.

Under Rule 701, a witness may give a lay opinion that is "rationally based on the witness's perception," and "not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  The crux of a lay opinion, rather than an expert opinion, is that the testimony "results from a process of reasoning familiar in everyday life" rather than "a process of reasoning which can be mastered only by specialists in the field."  Fed. R. Evid. 701, Committee Notes- 2000 Amendment.  Judge Contreras recently provided a helpful explanation of the distinction between

expert and lay opinion:

> The line between the two kinds of testimony is a fine one. To discern one from the other, "a court must focus on the reasoning process by which a witness reached his proffered opinion." *Id*. at 1160 (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)). In general terms, "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.' " Fed. R. Evid. 701 advisory committee's note to 2000 amendment (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)); *see also Williams*, 827 F.3d at 1155. Each kind of reasoning involves comparing a generalization or baseline to the specific facts of a case to draw some conclusion. *See* Edward J. Imwinkelried, *Distinguishing Lay from Expert Opinion: The Need to Focus on the Epistemological Differences Between the Reasoning Processes Used by Lay and Expert Witnesses*, 68 SMU L. Rev. 73, 85–86 (2015). For example, both lay and expert testimony identifying handwriting as belonging to someone would involve comparing a generalization about the normal appearance of an author's handwriting to the appearance of the disputed handwriting. *See id*. But a lay opinion's defining characteristic is that it "arise[s] from the personal knowledge or firsthand perception of the witness." *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017). A witness offering a lay opinion grounds his baseline in personal experiences, then uses that baseline to evaluate an event that he personally observed. *See* 1 McCormick on Evidence § 11 (8th ed. 2020). To continue the handwriting example, a widow might rely on observations of her deceased husband's handwriting to opine that her husband was the author of a will she found in the days after his death. By contrast, an expert can derive his baseline from specialized techniques or the research of others and then assess an event at issue in a case even if he did not witness it.

*Atlanta Channel, Inc. v. Solomon*, 2021 WL 4243383, at *2 (D.D.C. Sept. 17, 2021).

An opinion grounded on a baseline of personal experiences is exactly the type of testimony offered here.  The type of holster at issue is available for purchase by the general public; it is not specialized equipment available only to law enforcement or the military.  Anyone could purchase this holster and become familiar with how it looks and operates by owning it and using it.  And, in turn, anyone with those personal experiences could become familiar enough with how the holster looks and operates to recognize it in person or in a photograph.  Any such opinion would be reached by a process that is readily familiar in everyday life: purchasing, owning, and using a product, such that one recognizes the product upon seeing others use it.  Because this is the nature

of the anticipated testimony here, it is well within the scope of Rule 701.

It is of no moment that this witness could be separately qualified as an expert in firearms and firearms-related equipment.  As the Committee Notes for Rule 701 make clear, the same witness may provide expert and lay testimony.  *See* Fed. R. Evid. 701, Committee Notes on Rules-2000 Amendment ("The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay testimony.  Certainly it is possible for the same witness to provide both lay and expert testimony in a single case." (emphasis in original)).  Here, where the witness will be asked to identify a consumer product about which he has personal knowledge because he has owned it and used it himself, the testimony falls squarely under Rule 701 regardless of whether the witness could also be qualified as an expert on similar topics.  *See United States v. Williams*, 827 F.3d 1134, 1155 (D.C. Cir. 2016) (holding that Rule 701 "was designed to ensure that any opinions offered by a lay witness are based on personal, 'first-hand knowledge or observation,' . . . and 'a process of reasoning familiar in everyday life.'" (quoting Fed. R. Evid. 701 Committee Notes (2000))).

Wherefore, the government respectfully requests that the Court grant its motion *in limine* allowing for lay opinion testimony from SA Hightower.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: _/s/ Risa Berkower_____
JEFFREY S. NESTLER
Assistant United States Attorney
D.C. Bar No. 978296
RISA BERKOWER
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-803-1576
Email: risa.berkower@usdoj.gov