UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 21-cr-00032 (DLF) |
| | : | |
| v. | : | |
| | : | |
| GUY WESLEY REFFITT, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT WITNESSES**

The government presently expects to call the following 13 witnesses and introduce through these witnesses the exhibits described below. The government may call additional or different witnesses as necessary.

**A.    U.S. Capitol Police Witnesses**

1.    Inspector Monique Moore

Inspector Moore was in charge of the U.S. Capitol Police command center on January 6, 2021. In that role, she oversaw the video surveillance system and radio and phone communications. She will provide an overview of the Capitol, including a photo (Ex. 601) and diagram (Ex. 602). To support the proof of a "civil disorder" for counts 1 and 4, she will explain the progression of the riot through the introduction of a compilation of surveillance video from outside and inside the Capitol (Ex. 204), which she will authenticate as a custodian of this business record.

To support the proof of the defendant's presence on restricted grounds (count 3) and interference with law enforcement (count 4), Inspector Moore will introduce, as business records, the surveillance videos depicting the defendant on the west side of the Capitol, north of the scaffolding: Ex. 205 (compilation of videos from cameras 0609, 0924, and 0925), Ex. 206 (video

from camera 0609), Exs. 207.1 and 207.2 (two clips from camera 0924), and Exs. 208.1 and 208.2 (two clips from camera 0925).

Finally, to support proof of the civil disorder's adverse effect on a federally protected function (count 4), Inspector Moore will introduce as a business record the surveillance video showing Vice President Pence's motorcade leaving the east plaza of the Capitol around 1:57 p.m. (Ex. 220).

    2.    <u>Sergeant Adam DesCamp,</u>
    3.    <u>Sergeant Matthew Flood, and</u>
    4.    <u>Officer Shauni Kerkhoff</u>

These three members of the Capitol Police interacted with the defendant on the west side of the Capitol in an attempt to protect the building from the rioters. They will describe their own actions and the actions of their colleagues, the defendant, and mob below the defendant. These actions will include their commands to the defendant, the defendant's statements to them and the crowd below, and the rioters eventually overwhelming the officers and pushing up farther towards the building. Specifically, Officer Kerkhoff launched pepperballs from a Tippmann PepperBall Launcher at the defendant, Sgt. DesCamp launched projectiles at the defendant from an FN-303 Projectile Launcher, and Sgt. Flood sprayed the defendant with "o.c." (oleoresin capsicum) from a SABRE Red 9-ounce O.C. canister. None of these efforts stopped the defendant's advances. Finally, Sgt. DesCamp was able to stop the defendant's advances by spraying him with "o.c." from a SABRE Red 46-ounce O.C. canister.

Officer Kerkhoff, who has since left the Capitol Police, will display and explain these four less-than-lethal weapons to the jury. Ex. 51 is the Tippmann PepperBall Launcher, Exs. 51A and 51B are photos of the two sides of the weapon, and Ex. 51C is a photo of the pellet the weapon launches. Ex. 52 is the FN-303 Projectile Launcher, Exs. 52A and 52B are photos of the two

sides of the weapon, and Ex. 52C is a photo of the pellet the weapon launches. Ex. 53 is the SABRE Red O.C. canister (46 oz., silver), and Exs. 53A and 53B are photos of the front and rear of the canister. And Ex. 54 is the SABRE Red O.C. canister (9 oz., black), along with a photo of it as Ex. 54A.

Officer Kerkhoff will further authenticate video, based on her personal knowledge, depicting the officers' interactions with the defendant: Ex. 201 (a Reuters news video), Ex. 203 (a cell phone video taken by another individual), and Ex. 211 (a Fox News video).

Officer Kerkhoff will also introduce two clips from the Capitol Police radio run. Ex. 210 is a one-minute-twenty-three-second long audio clip from approximately 1:08 p.m., in which an officer asks for assistance on the west side of the Capitol from officers with "non-lethal" weapons, which Officer Kerkhoff heard and caused her to go to that area with her colleagues and non-lethal weapons. Ex. 211 is a two-minute long audio clip from approximately 1:48 p.m., in which Officer Kerkhoff is describing her present interaction with the defendant and asking for further backup; on the audio, other officers also explain that the northwest terrace is being breached and that all available units should respond. When playing these two clips for the jury and Officer Kerkhoff, the government intends to display corresponding transcripts (Exs. 210T and 211T) to aid the jury's comprehension.

Officer Kerkhoff, Sgt. DesCamp, and Sgt. Flood will use other video, separately authenticated, to explain their interactions with the defendant. These video files include but are not limited to the surveillance video authenticated and introduced by Inspector Moore (Exs. 205 to 208), the News2Share video (Ex. 200, authenticated with a business record certification by Ford Fischer), and the video filmed by freelance journalist Emily Molli (Ex. 202, authenticated with a business record certification from her).

3

B.  **FBI Witnesses**

5.  <u>Karla Kennedy</u>

Ms. Kennedy is a nurse and photographer based in Dallas, Texas, who works for the FBI. She took the photographs during the FBI's execution of the search warrants on the defendant's house and vehicles on January 16, 2021. She will introduce these photographs as Exs. 100 to 150. The government also presently expects Ms. Kennedy to introduce the following physical items the FBI located during the search:

| | |
|---|---|
| 1B1 | Vest (black, Spartan Armor Systems) |
| 1B3 | Bear Attack Deterrent (two cans, Frontiersman) |
| 1B4 | Apple iPhone |
| 1B6 | Paperwork (Texas Three Percenters) |
| 1B7 | Hotel Key Card (Melrose Hotel) |
| 1B10 | Jacket (blue, Flash Armor) |
| 1B13.1 | Helmet (black) |
| 1B13.2 | Zip Tie Flex Cuffs |
| 1B13.3 | Shoulder Holster |
| 1B14 | Sunglasses (white, Oakley) |
| 1B19 | Hotel Receipt (Melrose Hotel) |
| 1B20.1 | Laptop (Microsoft Surface Pro) |
| 1B20.2 | External Hard Drive (Seagate) |
| 1B22 | Camera (Kodak PixPro Orbit 360, with gray bag) |
| 1B23.1 | Radio (Motorola) |
| 1B23.2 | PixPro charger, holder, and controller |
| 1B27 | Firearm (Smith & Wesson .40 caliber) |
| 1B28.1 | Magazine (Smith & Wesson .40 caliber, with 14 rounds, from 1B27) |
| 1B28.2 | One Round of Ammunition (Smith & Wesson .40 caliber, from 1B27) |
| 1B28.3 | Magazine (Smith & Wesson .40 caliber, with 14 rounds, from nightstand) |
| 1B29 | Firearm (Smith & Wesson model M&P 15), with scope and laser sight |

6.  <u>Special Agent Laird Hightower</u>

SA Hightower, based in Dallas, Texas, is the lead Texas agent on the investigation into the defendant. He will testify about his investigation into the charged crimes. On January 16, 2021, he led the search of the defendant's house and vehicles and arrest of the defendant. He will testify

4

about his observations during the search, including lay opinion testimony that he observed a Blackhawk Serpa CQC holster in the defendant's bedroom.

SA Hightower will introduce the photographs of the defendant at his arrest (Exs. 160 and 161). He will display to the jury, as a demonstrative exhibit, a Blackhawk CQC Serpa holster (Ex. 55).

In furtherance of proving the defendant's possession of a firearm while at the Capitol (count 3), SA Hightower will introduce still-frames of already-introduced videos that depict what appears to be a holster on the defendant's waist, and he will provide lay opinion testimony about the type of holster depicted. These include Exs. 200.1 and 200.2 (still frames from the News2Share video), 202.1 and 202.2 (still frames from the Molli video), and 203.1 (still frames, compiled in a PowerPoint, of the cell phone video).

7. <u>Special Agent Thomas Ryan</u>

SA Ryan, based in Washington, D.C., is the lead Washington Field Office agent on the investigation into the defendant. He will explain the defendant's movements using data from the Life360 geolocation app on the defendant's iPhone. The data itself, which the government does not intend to introduce, is authenticated a business record via a certificate from a custodian at Life360. SA Ryan will explain that the Life360 data includes a date/time and longitude/latitude, and that the FBI plotted that data onto four maps:

- Ex. 604.1 shows the defendant's phone traveling from his home in Wylie, Texas, to Washington, D.C., from January 4 to 6, 2021.

- Ex. 604.2 shows the movements of the defendant's phone within Washington, D.C., on January 6, 2021.

- Ex. 604.3 shows the defendant's phone traveling from Washington, D.C., to Wylie, Texas, from January 7 to 8, 2021.

- Ex. 604.4 shows the times the defendant's phone was at or near the defendant's home between January 8 and 13, 2021.

SA Ryan will explain an additional piece of evidence to support the fact that the defendant was in Washington, D.C., on January 6, 2021: the defendant's hotel folio from the Melrose Georgetown Hotel (Ex. 411).  This document is admissible as a business record pursuant to a certification.

Finally, in furtherance of proving that the civil disorder adversely affected commerce, SA Ryan will explain Mayor Bowser's Curfew Order (Mayor's Order 2021-002) (Ex. 415), which is self-authenticating under Federal Rule of Evidence 902(2).

8.  Special Agent Stacy Shahrani

SA Shahrani works for the FBI's Computer Analysis Response Team (CART).  She examined the digital devices that SA Hightower's team seized during the execution of the search warrants on January 16, 2021, and she was able to extract relevant digital evidence from some of those devices.

SA Shahrani will explain that Ex. 1B4, the Apple iPhone that the FBI seized from the defendant's person, had on it an app for Telegram, an encrypted messaging service, as well as regular text messaging (SMS).  SA Shahrani will introduce portions of the following chat threads from the iPhone; each exhibit focuses on the defendant's statements with others' statements occasionally visible for context:

| | |
|---|---|
| 1B4.1 | iPhone – SMS thread – w/ Don et al. – starting 12/20/20 |
| 1B4.2 | iPhone – Telegram thread –w/ Russ William Bowen – starting 12/20/20 |
| 1B4.3 | iPhone – Telegram thread – "DC bound" – starting 1/2/21 |
| 1B4.4 | iPhone – SMS thread – w/ Terri – starting 1/7/21 |
| 1B4.5 | iPhone – SMS thread – w/ Stypick – starting 1/7/21 |
| 1B4.6 | iPhone – Telegram thread – w/ Roddy – starting 1/9/21 |
| 1B4.7 | iPhone – Telegram thread – "TTP State" – starting 1/9/21 |
| 1B4.8 | iPhone – Telegram thread – "Oracle Thoughts" – starting 1/11/21 |
| 1B4.9 | iPhone – Telegram thread – w/ TTP Caliber – starting 1/13/21 |

SA Shahrani will explain that she examined Ex. 1B20.1, the Microsoft Surface Pro laptop that the FBI recovered from the defendant's living room. On the laptop she located a photograph of the defendant and R.H. (Ex. 1B20.1.1) and a photograph of a torso showing apparent bruises (Ex. 1B20.1.2). Each photograph was accompanied by metadata showing the date and time it was created (Exs. 1B20.1.1MD and 1B20.1.2MD).

Finally, SA Shahrani will explain that she examined Ex. 1B20.2, the Seagate External Hard Drive that was attached to the Microsoft Surface Pro laptop. On the hard drive, SA Shahrani located three relevant files:

- File DC001 (Ex. 1B20.2.1) is an MP4 video file with metadata (Ex. 1B20.2.1MD) showing that it was created on January 6, 2021, and accessed on January 10, 2021.[1] The metadata further shows that the file was created by a Kodak Orbit 360 camera. The video file, which is approximately 31 minutes long, appears to depict the defendant in Washington, D.C., near the Ellipse. While playing in a VLC video player, this video can be panned and rotated 360 degrees. The government intends to play portions of this video for the jury. While the video is playing, the government intends to display a corresponding transcript (Ex. 1B20.2.1T) to aid the jury's comprehension.

- File DC002 (Ex. 1B20.2.2) is an MP4 video file with metadata (Ex. 1B20.2.2MD) that is similar to the above file. The video, which is approximately 17 minutes long, appears to have been created just after file DC001. The government intends to play portions of this video for the jury. While the video is playing, the government intends to display a corresponding transcript (Ex. 1B20.2.2T) to aid the jury's comprehension.

- File "2021-01-09 21.14.57 Texas State Meeting – Zoom" (Ex. 1B20.2.3) is a 1-hour-and-43-minute long MP4 video file with metadata (1B20.2.3MD). SA Shahrani will explain that it appears to depict a recording of a Zoom video call. The government intends to play portions of this video for the jury. While the video is playing, the government intends to display a corresponding transcript (Ex. 1B20.2.3T) to aid the jury's comprehension.

**C.   U.S. Secret Service Witness**

   9.   Special Agent Paul Wade

---

[1] SA Shahrani will explain that, in her experience, time stamps in metadata are not always correct.

SA Wade is the United States Secret Service (USSS)'s supervisor at the U.S. Capitol. He is assigned to the USSS's Liaison Division and was present at the U.S. Capitol on January 6, 2021.

Prior to January 6, 2021, SA Wade met with representatives from the U.S. Capitol Police to prepare for the security on that day. On January 5, 2021, an agent who works for SA Wade emailed to the U.S. Capitol Police, with a copy to SA Wade, a Secret Service Head of State Notification Worksheet (Ex. 410), which served as the formal notification from the USSS to the U.S. Capitol Police that USSS protectees (Vice President Pence and members of his family) would be present at the Capitol the following day. SA Wade will introduce as an exhibit this notification and its cover email.

SA Wade will also introduce, based on personal knowledge, Ex. 221, surveillance video from the U.S. Capitol Police showing Vice President Pence and others descending the Senate members' staircase at approximately 2:25 p.m. To support the adverse effect on a federally protected function for count 4, SA Wade will generally explain the "emergency actions" that the USSS took in response to the riot: relocating Vice President Pence and his family members, bringing additional USSS personnel to the Capitol, and relocating the Vice President's motorcade.

**D.     Senate Witness**

10. Daniel Schwager

Mr. Schwager served as the counsel to the Secretary of the Senate on January 6, 2021. (He has since left the Senate.) Mr. Schwager will generally explain the process and constitutional and legal bases for Congress's certification of the Electoral College vote. As self-authenticating records, the government will introduce the Twelfth Amendment to the Constitution (Ex. 500); Title 3, Sections 15 through 18 of the United States Code (Exs. 501.15 through 501.18); and Senate Concurrent Resolution 1 (Ex. 504). Pursuant to certifications signed by records custodians of the

Senate and House of Representatives, the government will introduce a compilation of video stills from the official video feeds within the Senate chamber (Ex. 505) and House chamber (Ex. 506). Similarly, the government will introduce a video montage that displays clips from the official video feeds within each chamber along with the corresponding Congressional Record pages, which are self-authenticating pursuant to Federal Rule of Evidence 902(5) (Ex. 507).

Mr. Schwager, who was on the Senate floor on January 6, 2021, will generally explain his observations leading up to the presiding officer gaveling the Senate into recess.

**E.    Civilian Witnesses[2]**

11. <u>J.R.</u>

J.R. is the defendant's son.   He was 18 years old in January 2021.   He will explain that he first contacted the FBI about his father in December 2020.   He will further explain that he was aware that his father had left the family's home in Texas to go to Washington, D.C., and that his father sent group texts to the family while he was away.   J.R. will introduce two of those texts, from around January 7, 2021:   Ex. 212.1, in which the defendant sends a link to a Fox News segment depicting the defendant, and Ex. 212.2, in which the defendant circles himself in yellow on videos from news segments.

J.R. will explain that, using his cell phone, he recorded his father speaking to the family while at home around January 9 and 10, 2021.   He will introduce and authenticate five of these audio recordings: Exs. 214 through 218.   When playing these five audio files for the jury, the government intends to display corresponding transcripts (Exs. 214T through 218T) to aid the jury's comprehension.

---

[2] While the witnesses are identified by their initials in this public filing, the government has already provided the defense with their identities.

J.R. will further testify about a threat the defendant made to him that, after the defendant returned to Texas from Washington, D.C., about cooperating with the FBI's investigation into the events at the Capitol on January 6, 2021.  He will testify to the words the defendant used, why he perceived them to be a threat and took them seriously, and the steps he took to secure his own safety after that incident.

12. P.R.

P.R. is the defendant's daughter.  She was 16 years old in January 2021.  The government expects her to generally testify that she was with her brother and father in the family's kitchen when she heard her father tell them that if they turned him in to law enforcement, they would be traitors, and that traitors get shot.  She will also testify that she believed the defendant was intending to intimidate her and her brother to not contact the police or FBI about the defendant's involvement in the riot at the Capitol.

13. R.H.

R.H., a fellow member of the defendant's Texas Three Percenter militia group, traveled with the defendant from Texas to Washington, D.C., and back between January 4 and 8, 2021. He will testify about how he knows the defendant, discussions he had with the defendant, their travel arrangements, the defendant's firearms and tactical gear, and the defendant's movements and actions.

R.H. will also testify that he was given immunity for his testimony and will introduce an immunity letter from the government (Ex. 405).