UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 21-cr-00032 (DLF) |
| | : | |
| v. | : | |
| | : | |
| GUY WESLEY REFFITT, | : | |
| | : | |
| Defendant. | : | |

**PARTIES' JOINT FILING REGARDING JURY INSTRUCTIONS**

Pursuant to the Court's February 16, 2022, minute order, the parties hereby respond to the Court's questions:

1. **Proposed Instruction No. 20 (Definitions), Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon – Definition of "Deadly or Dangerous Weapon"**

The parties' proposed definition for a "deadly or dangerous weapon" in 18 U.S.C. § 1752 refers to "any object that can be used to inflict severe bodily harm or injury," noting that the "object need not actually be capable of inflicting harm or injury." In *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002), the D.C. Circuit, in considering a challenge to the jury instructions for assaulting a federal officer with a deadly or dangerous weapon in violation 18 U.S.C. § 111(a) and (b), discussed the difference between two types of potentially deadly and dangerous weapons. *Id.* at 45. First, certain objects qualify as "inherently deadly" weapons, including "a gun." *Id.* Second, other objects that are not inherently dangerous, such as the car at issue in that case, "must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner." *Id.*; *see United States v. Chansley*, 525 F. Supp. 3d 151, 161-62 (D.D.C. 2021) (noting that "courts have consistently defined 'dangerous weapon' as an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm," and citing cases). In other words, where the "dangerous and deadly" weapon in question is an

1

inherently dangerous object such as a "gun," the additional language—discussing the object's capability of causing serious bodily injury or death and the defendant's use of the object in that manner—is not required.

As the indictment makes clear in Count Three, the defendant in this case is charged with using and carrying a "semi-automatic handgun." A semi-automatic handgun is an inherently dangerous weapon regardless of whether it is in fact capable of causing death or serious bodily injury. *See Chansley*, 525 F. Supp. 3d at 162 (noting that "guns" are "obviously" and "inherently" dangerous) (citation omitted); *United States v. Martin*, 562 F.2d 673, 680 (D.C. Cir. 1977) (describing a machine gun as an "inherently dangerous object"); *McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986) (holding that an unloaded handgun constitutes a "dangerous weapon" because "a gun is typically and characteristically dangerous" and "the display of a gun instills fear in the average citizen"). The decision in *Arrington* did not consider inherently dangerous weapons such as the gun charged in this case. Accordingly, the parties' proposed definition is not inconsistent with *Arrington*.

2. **Proposed Instruction No. 20 (Elements), Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon – Use of Word "Firearm"**

The statute at issue, 18 U.S.C. § 1752(b)(1)(A), criminalizes a person who, "during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm." And Count Three of the Second Superseding Indictment charges that the defendant, "during and in relation to the offense, did use and carry a deadly and dangerous weapon and firearm, that is, a semi-automatic handgun." Accordingly, it would be appropriate to revise the fourth element in the parties' joint proposed jury instruction to read as follows: "Fourth, that the defendant used or carried a deadly or dangerous weapon <u>or firearm</u> during and in relation to the offense."

2

3. **Proposed Instruction No. 20 (Elements), Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon – Use of Term "Vice President Elect"**

    A. <u>The Indictment</u>

The government moves to strike references in Count Three of the Indictment to the "Vice President Elect." The defense does not oppose the motion.

In 18 U.S.C. § 1752, Congress prohibited certain types of conduct in any "restricted building or grounds." As relevant here, Section 1752 defines a "restricted building and grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). An individual violates Section 1752 by, among other things, "knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting," or if that individual "intends to and does impede government business through disorderly or disruptive conduct while in the restricted area." *United States v. Griffin*, No. 21-cr-92 (TNM), --- F.Supp.3d ---, 2021 WL 27778557, at *3 (D.D.C. July 2, 2021) (cleaned up). The list of individuals whom the United States Secret Service is authorized to protect includes the Vice President and the Vice President-elect. 18 U.S.C. § 3056(a)(1).

Here, Count Three alleges that the defendant violated Section 1752(a)(1) when he "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, *where the Vice President and Vice President-elect were temporarily visiting*, without lawful authority to do so." ECF No. 34 (emphasis added).

Further investigation has shed light on the whereabouts of the Vice President-elect during January 6, 2021. *See* Exhibit A, Declaration of Jason Jolly, Staff Assistant, United States Secret Service. The Vice President-elect, although present at the Capitol on the morning of January 6, had left and was planning to return to the Capitol until her travel there "was delayed when the Joint Session was interrupted by the riot." *Id.* at ¶ 3. The Vice President-elect thus did not return to the Capitol until approximately 7 pm to participate in the Certification of the Electoral College vote. *Id.* at ¶ 4.

Based on these factual developments, the government moves the Court to amend the charging language in Count Three from "where the Vice President and Vice President-elect were temporarily visiting" to "where the Vice President was temporarily visiting."[1]

The Fifth Amendment of the Constitution requires that the prosecution of a criminal defendant facing a felony charge "be begun by indictment." *Stirone v. United States*, 361 U.S. 212, 215 (1960). Once an indictment has issued, that charge "may not be broadened through amendment except by the grand jury itself." *Id.* at 216. By contrast, where the indictment "fully and clearly" charges an offense's elements, no constitutional infirmity arises if that indictment "alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985). Thus, language in the indictment that is "unnecessary to and independent of" the offense's allegations "may normally be treated as 'a useless averment' that 'may be ignored.'" *Id.* (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)).

---

[1] As noted above, Section 1752 defines a "restricted building and grounds" to include a building or grounds where a protected person "is or *will be* temporarily visiting." 18 U.S.C. § 1752(c)(1)(B) (emphasis added). The government does not request the Court to amend the indictment to include the future tense—"would be"—verb.

4

A court therefore has the authority "to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it."  *Miller*, 471 U.S. at 144; *see United States v. Quinn*, 401 F. Supp. 2d 80, 90 (D.D.C. 2005) (granting government motion to strike from an indictment language that referred not to "essential elements" but instead to "different means by which the defendants committed an alleged offense (any one which alone could support a conviction)"); *see also United States v. Holland*, 117 F.3d 589, 594-95 (D.C. Cir. 1997) ("Paring down the conspiracy's time frame added no new charges to the indictment" and thus did not require re-submission to the grand jury).[2]  In *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989) (Greene, J.), the government sought to narrow a conspiracy charge by dropping all language referring to one object of the alleged scheme.  *Id.* at 7.  In granting that motion, Judge Greene concluded that striking language from an indictment was consistent with the Constitution because "(1) the indictment as so narrowed constitute[d] a completed criminal offense, and (2) the offense [wa]s contained in the indictment as originally returned."  *Id.* at 9.

Here, after removal of the language that the government seeks to strike, the indictment continues to state a viable offense that has been in the charging document since the date of its return by the grand jury.  In Count Three, the key language on which the Section 1752 charge relies—that a person protected by the Secret Service was temporarily visiting a posted, cordoned-off, or otherwise restricted area within the Capitol—remains.  The indictment issued by the grand jury identified the same protected person—the Vice President—on which the amended language relies.  Deleting reference to the Vice President-elect "simply 'narrows' the scope of the charges,

---

[2] The Court's authority under *Miller* to strike language from an indictment at the government's request is distinct from the government's authority—with leave of the Court—to dismiss all or part of an indictment, information, or complaint under Rule 48(a) of the Federal Rules of Criminal Procedure.

which 'adds nothing new to the grand jury's indictment and constitutes no impermissible broadening.'" *Quinn*, 401 F. Supp. 2d at 90 (quoting *Holland*, 117 F.3d at 595) (brackets from quotation omitted).[3]

With the language about the Vice President-elect stricken, Count Three of the Indictment would read:

> On or about January 6, 2021, within the District of Columbia, **GUY WESLEY REFFITT** did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, without lawful authority to do so, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon and firearm, that is, a semi-automatic handgun.

### B. The Proposed Jury Instructions

There are no references to the Vice President-elect in the *elements* for the proposed jury instruction for Count Three. The operative element is the first one: "that the defendant entered or remained in a restricted building or grounds." The term "restricted building or grounds" is then defined by reference to a place "where a person protected by the Secret Service is or will be temporarily visiting." And the Secret Service protectee is then separately defined.

Within the proposed jury instructions, that separate definition of Secret Service protectees contains the only reference to the Vice President-elect: "The term 'person protected by the Secret Service' includes the Vice President, the immediate family of the Vice President, and the Vice President Elect." That is a correct statement of law. *See* 18 U.S.C. § 3056(a)(1). And it is

---

[3] Amending the subject-verb agreement—from the "Vice President and Vice President-elect *were* temporarily visiting" to the "Vice President *was* temporarily visiting"—is an "insignificant" correction that does not require resubmission to the grand jury. *See United States v. Bush*, 659 F.2d 163, 167 (D.C. Cir. 1981).

legally correct to instruct the jury with this definition irrespective of whether the term "Vice President-elect" is included in the charging language in the indictment.

Nevertheless, because the government does not presently intend to introduce evidence about the Vice President-elect's plans to visit the Capitol on the afternoon of January 6, 2021, for the sake of simplicity, the parties agree that the definition of Secret Service protectees in the jury instructions can be modified as follows: "The term 'person protected by the Secret Service' includes the Vice President and the immediate family of the Vice President."

4. **Proposed Instruction No. 19 (Definitions), Transporting a Firearm in Furtherance of a Civil Disorder – Use of Term "Commerce"**

The definition of the term "commerce" for purposes of 18 U.S.C. § 231 listed in the proposed jury instruction refers to "commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia."  Consistent with the government's recommendation in *United States v. Pugh*, No. 20-cr-73 (S.D. Ala, May 19, 2021), the district court in that case instructed the jury that commerce "means commerce or travel between one state, territory, or possession of the United States and any other state, territory, or possession of the United States, including the District of Columbia."  *See* Exhibit B (*Pugh* jury instructions transcript).

Notwithstanding that instruction, the parties do not object to omitting the phrase "or travel" in this instruction.   Accordingly, the revised instruction would read: "The term 'commerce' means commerce between one state, including the District of Columbia, and any other state, including the District of Columbia.   It also means commerce wholly within the District of Columbia."


Respectfully submitted,

For the Government:

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

_/s/_
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of
    Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-252-7277
Email: Jeffrey.Nestler@usdoj.gov

For the Defendant:

_/s/_
William L. Welch, III
D.C. Bar No. 447886
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Phone: 410-615-7186
Email: wlw@wwelchattorney.com