```
                  BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,          .
                                      .   Case Number 21-cr-32
            Plaintiff,                .
                                      .
       vs.                            .
                                      .
   GUY WESLEY REFFITT,                .   October 19, 2021
                                      .   12:32 p.m.
            Defendant.                .
   - - - - - - - - - - - - - - - - -


                    TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                      UNITED STATES DISTRICT JUDGE



   APPEARANCES:

   For the United States:        JEFFREY NESTLER, AUSA
                                 RISA BERKOWER, AUSA
                                 United States Attorney's Office
                                 555 Fourth Street Northwest
                                 Washington, D.C. 20530

   For the Defendant:            WILLIAM WELCH, III, ESQ.
                                 5305 Village Center Drive
                                 Suite 142
                                 Columbia, Maryland 21044




   Official Court Reporter:      SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
                                 U.S. Courthouse, Room 4704-B
                                 Washington, D.C. 20001
                                 202-354-3284


   Proceedings recorded by stenotype shorthand.
   Transcript produced by computer-aided transcription.
```

```
 1                     P R O C E E D I N G S
 2          (All participants present telephonically.)
 3          (Defendant not present.)
 4             COURTROOM DEPUTY:  Your Honor, we are in Criminal
 5   Action 21-32, the United States of America versus Guy Reffitt.
 6       If I can have the parties identify themselves for the
 7   record, beginning with the United States.
 8             MR. NESTLER:  Good afternoon, Your Honor.  Jeff
 9   Nestler for the United States.
10             MS. BERKOWER:  And Risa Berkower for the United
11   States.
12             MR. WELCH:  Good afternoon, Your Honor.  William Welch
13   on behalf of Guy Reffitt.
14             THE COURT:  All right.  Good afternoon, Counsel.  I
15   appreciate you being available on short notice.  I set this
16   telephonic status hearing to address the notice of supplemental
17   authority that the defendant just filed today after 1:00 p.m.
18       Mr. Welch, in this notice, you cite additional authority to
19   support the pending pretrial motion to dismiss, some of which
20   relates to your official proceeding argument which you raised in
21   your initial brief, your initial motion to dismiss, but it also
22   appears to me that you're raising an additional argument here,
23   which is the one I asked you about last week that other
24   defendants have raised that relate to the interplay between
25   (c)(1) and (c)(2).
```

1        You will recall I asked you whether you were raising the
2   argument that other defendants had raised that the otherwise
3   obstruct, influence, or impede portion of the statute must be
4   understood in light of (c)(1)'s focus on documents and evidence
5   and, thus, does not encompass any and all acts of obstruction,
6   such as forcibly halting Congress's certification of electoral
7   results.
8        You said at the time you weren't making that argument, but
9   here it appears to me that you are raising this argument.
10  You're citing *Begay* and *Yates* to support that, and this is a
11  serious argument.  It's one Mr. Reffitt has every right to
12  advance, but it does require appropriate briefing from both
13  sides.
14              MR. WELCH:  I understand.
15              THE COURT:  Not a notice like this.
16              MR. WELCH:  All right.
17              THE COURT:  So, you know, obviously, this creates an
18  issue because we've got this November 15th trial date, and I
19  want to accommodate that.  However, the parties certainly need
20  to brief this issue.  I certainly need to hear argument on this
21  issue.  And I certainly need to adequately consider this issue.
22  It's a serious one.
23       So I called this -- I didn't want to wait until the next
24  status hearing to address this.  And so that's the purpose of
25  this status hearing, is to address how we're going to proceed in

1  light of what I think the defense wants to do here, which is to
2  raise a serious legal issue, which it has every right to do.
3           MR. WELCH:  Well, what I thought -- and I do remember
4  you saying that at the beginning of the hearing, Your Honor, and
5  I did respond accordingly.
6      What I had been thinking was that -- I know that some other
7  folks have made like a First Amendment argument, and I wasn't
8  trying to go there with it.  And it clicked for me as I was
9  thinking about the issue -- I remember there was some discussion
10 about whether Congress was like a jury.  I don't remember who
11 said what specifically.  And it got me thinking about it some
12 more.  I was discussing it with another lawyer.  And I thought
13 well, you know, Congress is not like a jury.  The vote
14 certification is ministerial.  And I just wanted to at least --
15          THE COURT:  That argument --
16          MR. WELCH:  -- indicate that.
17          THE COURT:  That argument is tied in to one that you
18 made in your brief, but correct me if I'm wrong, it seems to me
19 you're raising this additional argument that relates to the
20 interplay between (c)(1) and (c)(2), and that to me seems like a
21 different argument, and it's argument that I'm beginning to
22 receive briefing on from other defendants, and it's the one I
23 tried to flag last week to determine if you were raising this
24 argument, and you said no.
25      So again, this is a serious legal argument that Mr. Reffitt

1  has every right to raise, but I need briefing on this.
2              MR. WELCH:  Understood.
3              THE COURT:  This is not a "cite to cases and have me
4  rule on this."  I need to consider it.  It's a difficult legal
5  issue.  I need briefing from you.  I need a response from the
6  government.  And you all need to talk about how we can do this.
7  I don't -- I'm concerned, because we've got this trial date, and
8  you all are working on other things.
9          So correct me if I'm wrong, but it seems to me that's the
10 argument you're pressing here.  And to be clear, I'm not
11 criticizing you for doing it, but I'm just telling you, for me
12 to consider this, I need legal briefing.
13             MR. WELCH:  Understood.  Well, I'm happy to do that,
14 and just looking at the calendar, I can have something to the
15 Court within a week.
16             THE COURT:  Okay.  So you would file a supplemental
17 brief addressing this issue, and it sounds like there are two
18 new issues.  One is sufficiently related to the one you've
19 raised that I probably wouldn't have scheduled this call just
20 for that one, but this other one to me seems quite different.
21          But you should go ahead and address both in the brief that
22 you'll file by, you're saying, a week from today, the 26th?
23             MR. WELCH:  Yes.
24             THE COURT:  And Mr. Nestler, how much time do you need
25 to respond to these arguments?

1           MR. NESTLER:  Just a week, Your Honor.
2           THE COURT:  All right.  So the government will file an
3  opposition by November 2nd.  And Mr. Welch, would you like time
4  to file a reply?
5           MR. WELCH:  Yes, Your Honor, and looking at my
6  calendar, I could do that -- I think I could do that by the 8th.
7           THE COURT:  By the 8th, okay.
8           MR. WELCH:  Yes.
9           THE COURT:  So in order to have a hearing on this,
10  we're going to have to combine this with the pretrial?
11           MR. WELCH:  Yes, we would; we could do that.
12           THE COURT:  This really jams the Court.  This is an
13  issue I would typically write on.
14     Mr. Nestler, what's the government's position on all this?
15           MR. NESTLER:  We share Your Honor's recollection about
16  at the hearing Your Honor flagged this issue and Mr. Welch
17  represented that the defense was not proceeding on it.
18     We, obviously, have briefed this in other cases, Judge, and
19  we actually cited to it in our opposition brief we filed in this
20  case to the briefing in the *Caldwell* case in front of Judge
21  Mehta.  So I don't think it would be particularly onerous for us
22  to brief this issue.
23     That being said, I haven't seen what Mr. Welch is going to
24  file, but I believe it will probably cover a lot of the same
25  topics and arguments that I've already personally dealt with, my

1  office has dealt with.
2      All that said, we share the Court's desire to have a trial
3  date and stick with it.  There's a lot of logistical issues that
4  go into preparing for trial.  And so I guess I don't really know
5  how to answer the question about whether we can keep the trial
6  date or not, if that's ultimately what Your Honor is asking.
7           THE COURT:  Well, I'm -- I don't want to make
8  Mr. Reffitt choose between a speedy trial and this motion.
9      On the other hand, Mr. Welch, my concern is -- and it's
10 been one I've alluded to multiple times.  We need to be ready to
11 go, and I'm not feeling confident that the parties are ready to
12 go.  There are all kinds of novel issues raised in this case and
13 evidentiary issues that I would have thought would have been
14 briefed by now, separate and apart from this issue, which I
15 think is a serious issue, as I've said multiple times, and I
16 think it's important to brief it.
17     And I really have concerns, because this trial is taking a
18 window of time.  It's very condensed.  And it needs to run
19 smoothly for us to complete it on time.  And this is concerning
20 to me because this takes away from other things that the parties
21 need to be doing to be ready to go to trial and to have thought
22 things out and to be prepared and to anticipate legal issues.
23 And I'm concerned that that's not going on, and it makes me very
24 nervous about this November 15th trial date, to be perfectly
25 honest.  That's where my head is right now.

1                MR. WELCH:  I understand what the Court is saying.  I
2    have spoken with my client.  As he expressed previously, he
3    wants the current trial schedule, and I expect otherwise to be
4    prepared.
5                THE COURT:  Are you all making progress in terms of
6    discussing potential motions in limine and that kind of thing?
7    And this is directed to both of you.
8                MR. WELCH:  We had a conversation about that
9    yesterday.  I believe the government is considering a motion in
10   limine regarding one of the Capitol police officers who has --
11   or is in the process of leaving the Capitol police force to take
12   another position.  I believe that Ms. Berkower can speak more
13   clearly to that.
14        And our discussion the other day was that if I could have
15   some documentation that confirms that she was not told to leave
16   the Capitol police force, that this is a voluntary separation on
17   her own, not for any cause, like she had done anything
18   dishonest, if I could have something to paper my file to
19   indicate that's the case and where she is going, not because I
20   intend to ask her about it but just so I can cover my behind, so
21   to speak, were there ever a question about was I aware of, you
22   know, what did I know.  Then, you know, I didn't see any need to
23   ask about where this lady is currently working.  I don't think
24   that's relevant.  The only way it would become relevant is if
25   she were fired for, you know, falsifying her time records or

1  lying or something like that, because that would go to
2  credibility, which Ms. Berkower had not indicated is the case.
3              THE COURT:  All right.  So I didn't mean to interrupt,
4  Mr. Nestler.  Did you start to say something?
5              MR. NESTLER:  I was only going to say that's correct,
6  we discussed that motion in limine, and we are working through
7  some other security issues with the Secret Service and Capitol
8  Police related to both that officer and other issues about
9  security at the Capitol.  We're trying to work through that on
10 our end, and it may be subject to a motion about trying to limit
11 any in-court testimony.
12     So those are our subjects of motions that we plan to
13 address, if Mr. Welch is not amenable to agreeing to limit, or
14 maybe there could be a consent motion.
15     But otherwise, we are in full trial preparation mode on our
16 end, Your Honor, in terms of with witnesses and exhibits, and we
17 expect to be ready.
18     So I hear Your Honor's concern, and this late-breaking
19 briefing on a complicated legal issue, I think, also gives us
20 the impression that maybe something else was going on.
21     But aside from that, we are prepared and expect to be
22 prepared.
23             THE COURT:  The other way in which this legal issue
24 could impact decisions that need to be made before trial
25 relates, obviously, to the jury instructions, and those -- I

1  don't know what the parties think, but I don't expect that to be
2  an easy process.
3      Are you all reaching agreement on jury instructions?  Do
4  you all expect to, you know, essentially agree on the main
5  substantive areas, and if not, will this be a hard-fought fight
6  in terms of the jury instructions, for example in the
7  instructions charge?
8          MR. NESTLER:  We have done the legal research for
9  that, Judge.  We have not yet shared with Mr. Welch our
10 position, which we are still formalizing at the Department of
11 Justice, about what the instructions should be.  I don't know if
12 the defense is going to agree or if we will need to litigate
13 that question in front of Your Honor.
14     Although what Your Honor is saying makes sense in the sense
15 that the legal issues related to the briefing on 1512(c)(2) are
16 bound up with the jury instructions.  So one may affect the
17 other.
18         THE COURT:  Most definitely.  And if I'm ruling on
19 that less than a week before trial, when are we figuring out
20 jury instructions?  We don't have time to do that in the middle
21 of trial.
22         MR. NESTLER:  Right.  I think it's just that one
23 instruction.  The other instructions, I don't think, are going
24 to pose as many of an issue or as much of an issue.
25         THE COURT:  Mr. Welch, what's your thinking?

1            MR. WELCH:  I would tend to agree.  If we're all using
2    the Red Book, I think most of the instructions are going to be
3    pretty standard, with the exception of that one on obstruction,
4    so Count 2.
5            MR. NESTLER:  The instructions, just so we're clear,
6    for two of the charges.  For the other obstruction charge and
7    for the unlawful entry charge, it should be fairly
8    straightforward, Judge.  The two other charges are for 231,
9    which is the civil disorder charges, both (a)(2) and (a)(3).
10   Those are not Red Book accessible.  So those will require some
11   thought on both sides.  We are hopeful we will be able to reach
12   an agreement.
13           THE COURT:  When did I set the deadline for you all to
14   file proposed jury instructions?
15           MR. WELCH:  29th.
16           THE COURT:  Okay.  We're at the 14th now.  To the
17   extent you all are reaching agreement on other instructions, can
18   you let me know that even earlier than the 29th?  What I don't
19   want to have is just a complete mess of, you know, jury
20   instructions with arguments -- you're telling me that you're not
21   going to have arguments on anything except this one.  That
22   certainly is reassuring.
23        But if you all start -- as you're talking through these
24   things, if you're reaching agreement, can you just go ahead and
25   file something to let us know that so we can start preparing

1  these jury instructions?  Because everything that you all give
2  to the Court has to be turned around and ruled upon before
3  trial.  And if you're jamming me to the last week before trial,
4  that doesn't leave a lot of time to give these important issues
5  the kinds of, you know, careful thought and consideration they
6  deserve.  So the more that you all work out ahead of time, you
7  can let me know.  We can start getting jury instructions ready,
8  except for this one.
9      When I'm talking about motions in limine, I'm not just
10 talking just about *Giglio*.  That's helpful to know.  But
11 potential impeachment cross-examination, you know, if the
12 defendant were to testify, potential defenses, all of those, I
13 would think, would be raising motions in limine on both sides
14 right now that I'm not seeing.
15     And Mr. Nestler, I haven't gone back and refreshed my
16 recollection about the facts of this case, but I do remember at
17 the detention hearing there were other allegations.  Based on
18 what you've said in response to Mr. Welch's comments on whether
19 there's 404(b), I'm guessing you're not pursuing those, but if
20 Mr. Reffitt were to take the stand and would get into whatever
21 he was doing with respect to -- I can't even remember what the
22 allegation was, but it was some bombing at another site or
23 something.  I don't remember.
24     Is that potential cross-examination that you think is
25 appropriate?  And if so, should we be filing motions in limine,

1    Mr. Welch?

2             MR. WELCH:  If the government proposes to use that,
3    and I have not seen a 404(b) notice indicating that they were,
4    then it might be.

5             THE COURT:  Again, as we've discussed, the line
6    between what's 404(b) and what's not, if the defendant should
7    take the stand, in terms of impeachment and credibility, I think
8    the lines aren't as clear.

9         So Mr. Nestler, if you can shed any light on that, and
10   maybe what you say is going to trigger Mr. Welch to file some
11   motions up front.

12            MR. NESTLER:  Sure.  We have provided Mr. Welch with
13   the defendant's statements and other allegations.  As we've
14   said, we don't plan to introduce things like that statement
15   about bombing a social media company in our case-in-chief.

16        If the defendant testifies and opens the door to it, it may
17   be relevant.  We don't know if he will testify or open the door
18   to it.  But I don't --

19            THE COURT:  All right.  So Mr. Welch, this -- sorry to
20   interrupt.  But Mr. Welch, this is the kind of thing you should
21   be filing motions on now.  These are not things I should be
22   addressing in the middle of trial.  You know what his statements
23   are.  If you think there's statements that he made that
24   shouldn't be inquired in on cross-examination, I want to see
25   those up front, not in the middle of trial.

1          MR. WELCH:  I understand that, Your Honor, and my
2    client has not made a decision and might not make a decision
3    about whether he's going to testify until close of the
4    government's case.
5          THE COURT:  But why can't you -- why can't you say,
6    "In the event he were to testify, this would be inappropriate
7    cross-examination"?  Why is that something that can't be flushed
8    out in advance of trial?  You're not committing that he's going
9    to testify.
10         MR. WELCH:  Well, I could.  I don't think I've focused
11   on that.
12         THE COURT:  That's what I don't understand why.  Am I
13   missing something?  I've certainly had trials where defense
14   attorneys don't yet know whether a defendant is going to
15   testify, but yet, they do file such motions.
16      Mr. Nestler, I don't know, in this district, is that
17   unusual?
18         MR. NESTLER:  No, it's not unusual, Judge.
19         MR. WELCH:  I think one of the things that I typically
20   do in practice, Your Honor, is that I would not just go ahead
21   and file these motions when I know that 404(b) requires a
22   notice.  It's not just that okay, these things are out there in
23   discovery.  If the government has not filed a notice, then I
24   don't want to go highlighting these things for the government.
25   As a defense lawyer, you wait and say well, did they even file

1   the notice, because if they didn't file the notice, then they're
2   not in compliance with the rule on something like that.
3           THE COURT:  Well, he's told you they don't intend to
4   offer this evidence in their case-in-chief, but this might be
5   appropriate cross-examination.
6           MR. WELCH:  I understand that.  I'm hearing him say
7   that now, and I know that my client is not committed one way or
8   the other as to whether he's going to exercise his Fifth
9   Amendment privilege.
10          THE COURT:  Understood.  And I'm not asking you to
11  decide that.  But what I am saying is some of these issues are
12  difficult issues, and if we have to address them in the middle
13  of the trial, there will potentially be delays that I'm trying
14  to avoid.
15          MR. WELCH:  Understood.
16          THE COURT:  So you have notice of his statements, and
17  if there's things about those statements that you think would be
18  inappropriate cross-examination, I would seek it out if they
19  haven't given notice, and they haven't.  So that's not an issue.
20       But again, I'm concerned that a lot of issues that are
21  predictable that can surface in terms of, for the government,
22  potential defenses that the defense may raise, I think there are
23  things that could be anticipated, and they might not happen, but
24  that both sides would benefit from flushing this out up front,
25  and I don't understand why neither side is doing it.

1          I'm especially frustrated because we've got a really
2     difficult legal issue that I will be ruling on and deciding jury
3     instructions on a number of days before trial that could have
4     been and should have been handled weeks, if not months, earlier.
5          So I don't know how many different ways to say it, but you
6     all need to be proactive.  There's a way that this case can be
7     tried efficiently by both sides, but you're not really setting
8     yourselves up to do it, and you're jamming the Court also, and
9     that's really frustrating, despite the warnings and the
10    invitations to file motions and extend dates and the like.
11         I really don't know what else to say to get you all to
12    focus on being prepared.
13         Mr. Welch, if you're going to file this brief within a
14    week, if the government can respond more quickly, I ask that it
15    does so, and the defense, if it can respond more quickly as well
16    as file the motion more quickly, if it could file the reply more
17    quickly, please do.  If you all can put your heads together and
18    supply the Court jury instructions that you've agreed upon
19    before the date that I've asked for, please do, and if you could
20    think about other motions you could be filing to make this trial
21    go more seamlessly, I would appreciate it.
22         Significant legal issues are really not welcome,
23    particularly given the limited amount of time we have to try
24    this case.  And it will take longer.  It will take longer
25    because of all the logistics with moving a jury around and COVID

1  and all of the different courtrooms we're going to have to use,
2  and this is not going to go chop chop, because there are all
3  these protocols in place that we have to follow.  So it's not
4  like we can just easily dismiss the jury for five, ten minutes,
5  and we can take up a legal issue and then come back.  You all
6  really need to think ahead, and you need to not only during
7  trial, after hours, but before trial, try to minimize the extent
8  to which we're dealing with unexpected issues in the middle of
9  trial, because it will slow things down.  And we have -- as I've
10 said, we've got until the Wednesday before Thanksgiving to get
11 this case tried.  All right?
12         MR. NESTLER:  Yes, Judge.
13     One more point just for Your Honor to be aware, we do think
14 once we provide Mr. Welch with our full exhibit list of what we
15 plan to introduce, that may tee up some additional issues.
16 We're working diligently on making sure he knows exactly what
17 we're planning to do in our case-in-chief, and hopefully, that
18 will help crystallize some of these topics.
19         THE COURT:  Well, why don't -- it sounds like,
20 Mr. Nestler -- is there some in particular that you think are
21 going to tee up some issues?  Why not flag those for him now
22 before you provide the whole list?  If you know what those are,
23 go ahead and give him notice now so he can file the motion.
24     But start filing motions, please.  Don't have me with a
25 list of a dozen significant legal issues to deal with on the eve

```
1    of trial.
2             MR. NESTLER:  Understood, Your Honor.
3             THE COURT:  All right.  So when is the next hearing we
4    have set?
5             MR. NESTLER:  It's November 3rd at 10:00, a live
6    pretrial conference.
7             MR. WELCH:  Correct.
8             THE COURT:  All right.  Okay.  I will see you all
9    then.  Thank you.
10        (Proceedings adjourned at 2:58 p.m.)
```

Case 1:21-cr-00032-DLF   Document 114   Filed 02/27/22   Page 19 of 19

19

```
1                CERTIFICATE OF OFFICIAL COURT REPORTER
2
3            I, Sara A. Wick, certify that the foregoing is a
4    correct transcript from the record of proceedings in the
5    above-entitled matter.
6
7            Please Note:  This hearing occurred during the
8    COVID-19 pandemic and is, therefore, subject to the
9    technological limitations of court reporting remotely.
10
11
12   /s/ Sara A. Wick                      February 27, 2022
13   SIGNATURE OF COURT REPORTER           DATE
```