**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GUY WESLEY REFFITT,<br><br>     Defendant. | Case No. 21-cr-32-DLF-1 |

<u>**THE PRESS COALITION'S MOTION FOR COURTROOM ACCESS DURING TRIAL**</u>

Pursuant to Local Criminal Rule 57.6, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Court TV, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., TheHuffingtonPost.com, Inc. d/b/a HuffPost, Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Newsy, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., Vox Media, LLC, and WP Company LLC, d/b/a the Washington Post (together, the "Press Coalition") respectfully move the Court to reserve a single seat in Courtroom 14 to permit a pool reporter to observe the upcoming trial in *United States v. Reffitt*, Case No. 21-cr-32-DLF-1, the first trial to be held arising from the January 6, 2021 riot at the U.S. Capitol.  The Press Coalition's interest in this matter, a statement of the relevant facts, and a specific prayer for relief are each set forth in the accompanying Memorandum of Points and Authorities.

**REQUEST FOR HEARING**

The Press Coalition respectfully requests a hearing on this Motion.

Dated:  February 27, 2022          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 21-cr-32-DLF-1 |
| GUY WESLEY REFFITT, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**PRESS COALITION'S MOTION FOR COURTROOM ACCESS DURING TRIAL**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

## PRELIMINARY STATEMENT

On Monday, February 28, 2022, this Court is scheduled to begin jury selection for the first criminal trial arising from the January 6, 2021 riot at the U.S. Capitol, "the most significant assault on the Capitol since the War of 1812." *See Trump v. Thompson*, 2021 U.S. App. LEXIS 36315, at *11 (D.C. Cir. Dec. 9, 2021). The public interest in these proceedings could not be greater. The movants learned late on Friday, however, that the Court plans to conduct this trial without a single member of the press or the public in the courtroom.

Movants, the Press Coalition,[1] respectfully ask that the Court reserve a single seat in the trial courtroom to permit a pool reporter to observe the trial in person. The Press Coalition appreciates the great efforts this Court and the other judges in this District have made during pre-trial proceedings to facilitate press and public access despite pandemic-related challenges. But even with the accommodations of media rooms, overflow courtrooms, and the facilitated release of exhibits, the First Amendment and clear Supreme Court precedent require public access to the trial courtroom itself. The public is entitled by law to read and hear first-hand accounts as jurors observe the questioning of witnesses, arguments of counsel, and the rulings of the Court during this historic trial.

Given the urgent nature of this request and the impending start of trial proceedings, the Press Coalition asks that the Court rule on this request as soon as practicable.

---

[1] The "Press Coalition" consists of: Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Court TV, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., TheHuffingtonPost.com, Inc. d/b/a HuffPost, Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Newsy, POLITICO LLC, Pro Publica, Inc., Tegna, Inc., Vox Media, LLC, and WP Company LLC, d/b/a the Washington Post.

## BACKGROUND

### I.      The Capitol Riot

On January 6, 2021, thousands of rioters stormed the U.S. Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/pressrel/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721.  In response, federal law enforcement agencies "deployed [their] full investigative resources . . . to aggressively pursue those involved in criminal activity." *Id.*  The Government has since charged more than 700 defendants, including Defendant Guy Reffitt, with crimes committed during the Capitol riot. *See Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

### II.     Defendant Reffitt

According to the Government, Reffitt "is a member of a '3%er' militia organization known as the 'Texas Three Percenters.'" *See* Gov't's Mem. in Supp. of Pretrial Detention at 4, Dkt. 10.  The Government alleges that "on or around January 5, 2021, Reffitt and another [militia] member drove from Texas to Washington, D.C.," and that "[d]uring the drive, Reffitt talked about 'dragging those people out of the Capitol by their ankles' and installing a new government." *Id.*  According to the Government, Reffitt "brought at least two firearms with him on his trip to Washington, D.C.: an AR-15 rifle and a Smith & Wesson pistol." *Id.*

On January 6, 2021, Reffitt "was at the front of the first group of rioters to challenge a police line that was trying to secure the U.S. Capitol building from being breached." *Id.* at 1. More specifically, he "led a group of rioters up the Capitol steps, confronted law enforcement, and retreated only after being pepper sprayed in the face." *Id.* at 1-2.  Reffitt then "returned home to Texas," where he "told his children that they would be traitors if they reported him to

2

law enforcement, and that 'traitors get shot.'" *Id.* at 2.  Reffitt subsequently "bragged to fellow militia members about his involvement in the riot, recruited other rioters into the militia, and ordered bear spray and riot shields to his home to prepare for further violence." *Id.*

Reffitt was arrested in Texas on January 19, 2021.  *See* Arrest Warrant at 1, Dkt. 11.  On January 27, 2021, the Government charged Reffitt with obstruction of an official proceeding and aiding and abetting the same in violation of 18 U.S.C. §§ 2 & 1512(c)(2), entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), and obstruction of justice in violation of 18 U.S.C. § 1512(a)(2)(C).  *See generally* Indictment, Dkt. 4.  On September 15, 2021, the Government additionally charged Reffitt with civil disorder in violation of 18 U.S.C. § 231(a)(2) and entering and remaining in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. §§ 1752(a)(1) & (b)(1)(A).  *See generally* Second Superseding Indictment, Dkt. 34.  Journalists, including members of the Press Coalition, have regularly reported on this case over the past year as it has proceeded to trial.[2]

Trial in this matter was originally scheduled to begin on November 15, 2021.  *See* Minute Order of July 21, 2021.  In October 2021, however, the Court granted Reffitt's motion to continue the trial.  *See* Minute Order of Oct. 26, 2021.  Jury selection is now scheduled to begin on February 28, 2022.  *See* Pre-Trial Order at 1, Dkt. 104.

---

[2] *See, e.g.*, Holmes Lybrand & Hannah Rabinowitz, *Prosecutors plan to call defendant's children to testify in first US Capitol attack trial*, CNN (Feb. 8, 2022), https://www.cnn.com/2022/02/08/politics/january-6-capitol-attack-first-trial-witnesses-guy-reffitt/index.html; Scott MacFarlane & Robert Legare, *The January 6 trial for Guy Reffitt that will set the standard for hundreds to follow*, CBS News (Feb. 4, 2022), https://www.cbsnews.com/news/january-6-trial-guy-reffitt-capitol-assault/; Zoe Tillman, *A Capitol Riot Trial Is Slowly Starting To Take Shape*, BuzzFeed News (Nov. 29, 2021), https://www.buzzfeednews.com/article/zoetillman/capitol-riot-trial-polarized-reffitt-jurors.

### III.     Press Access To These Proceedings

The Court's February 15, 2022 Pre-Trial Order provided that jury selection will begin in
the Ceremonial Courtroom, that "[i]ndividualized voir dire will take place in Courtroom 16," and
that "[a]fter the jury is selected, trial will commence in Courtroom 14."  Dkt. 104 at 1.  The Pre-
Trial Order further stated that these "courtrooms will be restricted to trial participants only, but
the Court will provide an overflow courtroom and a media room from which members of the
public and the media will be able to watch a live-stream video of the trial subject to strict health
and safety protocols."  *Id.*

According to the media advisory issued in this matter on February 25, 2022, however,
"[a]pproximately three seats will be available for the media and public in [the Ceremonial
Courtroom], and approximately 10 seats will be available in Courtroom 16," and "[a]t least one
seat in each courtroom may be reserved for designated media pool representatives, upon
application to the Court's Media Liaison."  *Advisory Regarding Media and Public Access* at 1,
https://www.dcd.uscourts.gov/sites/dcd/files/AdvisoryMediaPublicAccess.pdf.  The advisory
noted that "[a]djustments to these arrangements may be made as necessary to maximize media
and public access and assure fair opportunities for access for all interested parties."  *Id.* at 2.

As the media advisory did not specify whether seats will be reserved for designated
media pool representatives in Courtroom 14, where the trial in this matter will take place, several
Press Coalition journalists contacted the Court's Media Liaison on February 25 for clarification.
The Media Liaison communicated that, at present, the Court does not intend to permit any
members of the press or public to observe the trial from inside Courtroom 14.

Because the First Amendment prohibits the total exclusion of the press and public from
the trial courtroom, the Press Coalition now respectfully submits this access motion.

## ARGUMENT

It is well settled that a "trial is a public event" and "[w]hat transpires *in the court room* is public property."  *Craig v. Harney*, 331 U.S. 367, 374 (1947) (emphasis added).  Indeed, as the Supreme Court observed in *Richmond Newspapers, Inc. v. Virginia*, when a "trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted.  To work effectively, it is important that society's criminal process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it."  448 U.S. 555, 571-72 (1980) (internal marks omitted).  Thus, "the right to attend criminal trials is implicit in the guarantees of the First Amendment."  *Id.* at 580.  Chief Justice Burger emphasized the practical value of this constitutional right, noting that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."  *Id.* at 572.

As the Supreme Court more recently explained, the First Amendment right of access is a right of *meaningful* access, and courts are therefore "obligated to take *every reasonable measure* to accommodate public attendance at criminal trials."  *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curiam) (emphasis added).  The Supreme Court in *Presley* held that because of the obligation to ensure public attendance, the trial court violated the Constitution when it excluded the defendant's uncle from *voir dire* on the basis that, with 42 potential jurors sitting throughout the courtroom, "[t]here just isn't space for [the public] to sit in the audience."  *Id.* at 210.  This same principle led to the re-selection of a jury in this courthouse, in *United States v. Craig*, after the public was temporarily excluded from *voir dire*.  *See* Aug. 13, 2019 Hr'g Tr. at 225:12 - 234:20, *United States v. Craig*, No. 19-cr-125-ABJ (D.D.C.).

These constitutional requirements of openness and transparency are critical in any criminal trial.  Especially here – for the first trial arising from the Capitol riot – the Press Coalition cannot stress enough the importance of securing public confidence through contemporaneous, in-person access to the trial.  That is why it is essential for this Court not to exclude the press, who "function[] as surrogates for the public," *see Richmond Newspapers*, 448 U.S. at 573, from the courtroom throughout this trial.

Again, while the Press Coalition appreciates this Court's efforts in setting aside an overflow courtroom and media rooms, for two reasons the complete exclusion from Courtroom 14 cannot satisfy this Court's obligation to take "*every* reasonable measure" to accommodate the press and public's ability to monitor this trial.  *Presley*, 558 U.S. at 210 (emphasis added).

**First**, remotely observing a trial cannot fully substitute for in-courtroom access.  In *United States v. Alimehmeti*, for example, the Government sought to exclude the press and public from the courtroom when undercover officers would be testifying during a high-profile terror-related prosecution in the Southern District of New York.  The press objected and "proposed that the Court authorize a member of the press who regularly covers the courthouse to be present as a 'pool' reporter who would report to other members of the media the observations he or she had made in court."  284 F. Supp. 3d 477, 484 (S.D.N.Y. 2018).  The Government instead "propose[d] two steps to assure a degree of immediate public access to the content of this testimony notwithstanding the exclusion of the press and public," namely "that an audio feed of that testimony be live-streamed to a different room within this courthouse during the period of partial closure," and that the Government would "make available to the public and the press an unredacted copy of the transcript of each [witness's] testimony promptly."  *Id.* at 487.  The district court, however, appropriately rejected a total courtroom closure and instead "permit[ted]

6

at least one representative from among the District's press pool to be present for each [witness's] testimony, so as to assure press exposure to visual observations (e.g., of trial participants' reactions) that *only a person physically present in court* can make." *Id.* (emphasis added).  The court concluded that this arrangement satisfied the First Amendment because "the public will have access to, through the reporting of an SDNY press pool member, any visual observations of trial participants noted by the reporter." *Id.* at 488.

Here, too, a ban on press in the trial courtroom would impermissibly restrict public access regardless of the Court's accommodations to date.  This Court should therefore adopt the same approach as in *Alimehmeti* and allow a pool reporter in Courtroom 14 to "assure press exposure to visual observations . . . that only a person physically present in court can make." *Id.* at 487.[3]

**Second**, recent experience suggests the courtroom has space for a pool reporter during trial even with the pandemic-related changes in courtroom layout.  Just last week, trial began before the Honorable Randolph D. Moss in *United States v. El-Saadi et al.*, No. 19-cr-374, and at least one reporter was able to observe some trial proceedings in person.  *See* Josh Gerstein, *Trial opens for men accused of funneling millions to back Hillary Clinton in 2016 presidential race*, Politico (Feb. 24, 2022), https://www.politico.com/news/2022/02/24/trial-campaign-donations-hillary-clinton-2016-00011691 (noting that "[d]ue to the coronavirus pandemic, the courtroom ha[d] been reconfigured").  Moreover, in that case "a technical issue" prevented those seated in an overflow courtroom from viewing the Government's first witness as she testified, *see id.*, which only underscores the risk of a total exclusion of the press from the courtroom in this trial.

---

[3] The press's role as surrogate for the public is especially important here, as "[t]he public telephone line for Judge Friedrich's courtroom will not be accessible during trial" and only a limited number of members of the public may observe the trial in overflow rooms.  *See* Pre-Trial Order at 1, Dkt. 104.

Because remote viewing of this historic trial cannot adequately substitute for in-courtroom access, and because it seems likely that even a reconfigured courtroom could accommodate a single journalist in attendance – serving as a representative for both the press and the general public – the Court's current plan to exclude the press from Courtroom 14 would fall short of its constitutional obligation to take "every reasonable measure" to accommodate press and public access. *Presley*, 558 U.S. at 210.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant this motion and allow at least one media-designated pool reporter to be physically present in Courtroom 14 throughout the trial.  The Press Coalition appreciates the Court's prompt attention to this matter, and the undersigned counsel are available at the Court's convenience to be heard on this motion.

Dated:  February 27, 2022

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of February 2022, I caused true and correct copies of

the foregoing to be served via electronic mail and U.S. Mail on the following:

Jeffrey S. Nestler
Risa Berkower
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, NW
Washington, DC 20530
Jeffrey.Nestler@usdoj.gov
Risa.Berkower@usdoj.gov

James I. Pearce
Capitol Breach Appellate Coordinator
555 4th Street, NW
Washington, DC 20530
James.Pearce@usdoj.gov

*Counsel for the United States*

William Lawrence Welch, III
5305 Village Center Drive, Suite 142
Columbia, MD 21044
wlw@wwelchattorney.com

*Counsel for Defendant Guy Reffitt*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)