**United States District Court for the District of Columbia**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No. 1:21-cr-00032-DLF-1** |
| **Guy Wesley Reffitt** | * | |

**Motion for Judgment of Acquittal**

Defendant moves for judgment of acquittal on Counts One, Two, Three, Four, and Five, because the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(c). In support, he states:

1.     Only after the government gave Rocky Hardie immunity, did he claim that he and the defendant brought firearms to Washington. Tr. Mar. 3, 2022 a.m. at 1095–1159.

2.     Mr. Hardie then said that he split the cost of the trip and shared the driving. *Ibid.*

3.     He also said the firearms were for self defense. *Ibid.*

4.     Mr. Hardie seemed to have trouble remembering, and when he did not know what to say, he asked the government for examples. *Ibid.*

5.     None of the Capitol Police Officers testified that the defendant had a gun. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

6.     Nor does the Capitol Police video, for which there are safeguards to prevent altering and editing (Tr. Mar. 3, 2022 a.m. at 797:12–799:8), show a gun.

Exhibit 205.

7.      Only Agent Hightower, who unlike Officer Shauni Kerkoff, Sergeant Adam DesCamp, and Sergeant Matthew Flood was not even at the Capitol on January 6, 2021, claimed he could see a particular holster in Exhibits 202 and 202.1. Tr. Mar. 4, 2022 at 1218–1261.

8.      In addition, Agent Hightower said that Exhibits 202 and 202.1 were "prepared by the government."  Tr. Mar. 4, 2022 at 1253:8–9, 13.

9.      He could not remember how he acquired Exhibit 200.  Tr. Mar. 4, 2022 at 1254:22.

10.      Unlike the Capitol Police video, there were no safeguards to prevent altering and editing Exhibits 200, 202, and 202.1.

11.      Agent Ryan said that he bought Exhibit 55, because "the FBI did not seize Mr. Reffitt's holster *for whatever reason*…."  Tr. Mar. 7, 2022 a.m. at 1316:19–20.

12.      According to the Capitol Police, Guy Reffitt never put his hand on anyone.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

13.      Guy Reffitt never threw anything at anyone.  *Ibid*.

14.      He never hit anyone with anything.  *Ibid*.

15.    He never assaulted anyone.  *Ibid*.

16.    He never tried to assault anyone, and he did not help anyone else commit an assault.  *Ibid*.

17.    Guy Reffitt did not go in the Capitol.  *Ibid.; see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221.

18.    He did not break anything, and he did not take anything.  *Ibid*.

19.    He did not threaten harm, and he was not aggressive.  Tr. Mar. 7, 2022 at 1273–1305.

20.    According to the Capitol Police, Guy Reffitt never disarmed an officer. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

21.    He never tried to disarm an officer, and he did not help anyone else disarm an officer.  *Ibid*.

22.    Guy Reffitt never interfered with an arrest.  *Ibid*.

23.    He never tried to interfere with an arrest, and he did not help anyone else interfere with an arrest.  *Ibid*.

24.    The government stipulated that the Capitol police video (Exhibit 205) was not altered or edited in any way.  Exhibit 701.

25.    The government also stipulated that the joint session began at

3

approximately 1:00 p.m. and adjourned approximately 15 minutes later.  Exhibit 702.

26.     The timestamps in Exhibit 205 and 507 prove that the defendant's interaction with the Capitol police was over while Vice President Pence was still presiding in the Senate and Speaker Pelosi was still presiding in the House.

27.     The timestamps in Exhibit 205 and 221 prove that the defendant's interaction with the Capitol police was over before Vice President Pence was seen in the stairwell with Agent Wade.

28.     Jackson Reffitt claimed that his life was threatened.  Tr. Mar. 3, 2022 p.m. at 886–1033.

29.     He claimed that he told Agent Hightower about it the same day.  *Ibid*.

30.     However, Agent Hightower said the priority of the investigation would have increased if lives were threatened, because he said life-threatening emergencies receive priority.  Tr. Mar. 4, 2022 p.m. at 1222–1223, 1255–1256.

31.     Instead, Jackson Reffitt went back to his dad's house, and the FBI came five days later.  Tr. Mar. 3, 2022 p.m. at 886–1033.

32.     Jackson Reffitt's story has changed from he did not believe his dad would ever hurt him, to he took the threats seriously, and then to he's pretty sure about what his dad said.  *Ibid*.

33.     Hyping his story on CNN, Good Morning America and on his GoFundMe

page has made Jackson Reffitt over $158,000.00.  *Ibid*.

34.     The Capitol police did not hype their testimony by claiming to hear things that they did not hear, or by claiming to see things that they did not see.

35.     The Capitol Police video corroborated the Capitol Police Officers' testimony.  Exhibit 205.

36.     Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was told to get back.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

37.     They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed.  *Ibid*.

38.     As soon as he was pepper sprayed, that was the end of it, and he sat down on the banister railing.  *Ibid*.

39.     Sergeant Des Camp testified that Mr. Reffitt was incapacitated.  *Ibid*.

**Memorandum in Support of Motion for Judgment of Acquittal**

A defendant may move for judgment of acquittal, or renew such a motion, within 14 days after a verdict.  Fed. R. Crim. P. 29(c).

In reviewing the sufficiency of evidence for a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002).

## I.     Count One:

In order to prove transporting a firearm in furtherance of a civil disorder (18 U.S.C. § 231(a)(2)), the government must prove beyond a reasonable doubt:

1) that the defendant transported a firearm in commerce; and

2) that the defendant did so knowing, having reason to know or intending that the firearm would be used unlawfully in furtherance of civil disorder.

No reasonable juror would credit Rocky Hardie's claim that he and the defendant brought firearms to Washington.  Tr. Mar. 3, 2022 a.m. at 1095–1159; *see Jackson* at 319; *Wahl* at 375.

First, he only said that after the government gave him immunity, which the government reserved the right to void.  Exhibit 405.

Second, Mr. Hardie seemed to have trouble remembering, and when he did not know what to say, he asked the government for examples.  Tr. Mar. 4, 2022 a.m. at 1095–1159.

Third, even he said Mr. Reffitt uses hyperbole, embellishes, and dramatizes. *Ibid*.

Fourth, even he said the firearms were for self defense.  *Ibid*.

6

Fifth, none of the Capitol Police Officers testified that the defendant had a gun. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

Sixth, the Capitol Police video, for which there are safeguards to prevent altering and editing, does not show a gun.  Exhibit 205.

Seventh, only Agent Hightower, who was not even at the Capitol on January 6, 2021, claimed he could see a particular holster in Exhibits 202 and 202.1.  Tr. Mar. 4, 2022 at 1218–1261.  The Court instructed the jury that

> A firearm includes any weapon, which is designed to or may be readily converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.  A frame or receiver is a part of the firearm.  ***A holster is neither a frame nor is it a receiver***.

Tr. Mar. 7, 2022 p.m. at 1422:16–20.

Eighth, Agent Hightower said that Exhibits 202 and 202.1 were "prepared by the government."  Tr. Mar. 4, 2022 at 1253:8–9, 13.

Ninth, he could not remember how he acquired Exhibit 200.  Tr. Mar. 4, 2022 at 1254:22.

Tenth, unlike the Capitol Police video, for which there was both testimony (Tr. Mar. 3, 2022 a.m. at 797:12–799:8) and a stipulation (Exhibit 701) that they had not been altered or edited, there were no safeguards to prevent altering and editing Exhibits 200, 202, and 202.1.

Eleventh, Agent Ryan said that he bought Exhibit 55, because "the FBI did not seize Mr. Reffitt's holster ***for whatever reason***…."  Tr. Mar. 7, 2022 a.m. at 1316:19–20.

## II.    Count Two:

Defendant moved to dismiss Count Two, i) because it fails to state an offense, ii) because the alleged conduct did not "obstruct, influence, and impede" a proceeding within the meaning of the statute, and iii) because the term "corruptly," as applied is unconstitutionally vague.   Doc's 38, 55.   The Court denied the Motion without prejudice to renewal pursuant to Rule 29.   Doc. 81; *see* Fed. R. Crim. P. 29. Accordingly, in support of this Motion for Judgment of Acquittal, defendant adopts and incorporates the arguments made previously in support of the Motion to Dismiss Count Two.  Doc's 38, 55, 74, 89, 100.

Context, structure, and scope of the statute suggest that subsection (c)(2) has a narrow focus.  18 U.S.C. § 1512; *see United States v. Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72 at 20–22 (Mar. 7, 2022).   The historical development of the statute suggests that subsection (c)(2) operates as a catchall to subsection (c)(1).   *Miller* at 23–25.  Legislative history supports a narrow reading of subsection (c)(2).  *Id.* at 26–28.

Subsection (c)(2) has a serious ambiguity.  *Id.* at 28.  Courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute, …."  *Id.,*

*quoting United States v. Aguilar*, 515 U.S. 593, 600 (1995).  They have "construe[d]

penal laws strictly and resolve[d] ambiguities in favor of the defendant, …." *Miller* at

28, *quoting United States v. Nasir,* 17 F.4th 459, 472 (3d Cir. 2021) (*en banc*) (Bibas,

J., concurring) (*citing Liparota v. United States*, 471 U.S. 419, 427 (1985)).

Defendant maintains that in order to prove obstruction of an official proceeding

(18 U.S.C. § 1512(c)(2)), the government must prove beyond a reasonable doubt:

1)  that the defendant acted knowingly;

2)  that the defendant obstructed, influenced, or impeded, or attempted to
    obstruct, influence or impede an official proceeding by impairing the
    integrity and availability of non-object information to be used in the official
    proceeding;

3)  that the defendant acted corruptly to obstruct, influence, or impede the due
    administration of justice, that is, the defendant acted knowingly and
    dishonestly with the intent to obtain an unlawful advantage for himself or
    an associate, and that he influenced another to violate their legal duty; and

4)  that the defendant's alleged actions had a relationship in time, causation,
    or logic with the proceeding such that it was foreseeable that defendant's
    conduct would interfere with the proceeding.   In other words, the
    government must prove to you beyond a reasonable doubt that obstruction
    of an official proceeding was the natural and probable outcome of
    defendant's conduct.

Doc's 38, 55, 74, 89, 100; *see United States v. Ermoian*, 752 F.3d 1165, 1171–1172 (9th Cir. 2013); *United States v. Ahrensfield*, 698 F. 3d 1310 (10th Cir. 2012); *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991); *United States v. North*, 910 F.2d 843, 882, 285 U.S. App. D.C. 343 (D.C. Cir. 1990) (a "corrupt" intent means "the intent to obtain an improper advantage for oneself or someone else…"); *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) ("To interpret 'corruptly' [in obstruction statute] as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth' in this statute because of the chilling effect on protected activities … Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'").

No reasonable juror would find that the defendant impaired, attempted to impair, or helped anyone else impair the integrity and availability of non-object information (*see Ermoian* 752 F.3d at 1171–1172), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375.

No reasonable juror would find that the defendant acted corruptly to obstruct, influence, or impede the due administration of justice (*see Ahrensfield*, 698 F. 3d 1310), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375. To the contrary, the record reflects that the joint session began at approximately 1:00 p.m. and adjourned approximately 15 minutes later. Exhibit 702. The timestamps in Exhibit 205 and 507 prove that the defendant's interaction with

the Capitol police was over while Vice President Pence was still presiding in the Senate and Speaker Pelosi was still presiding in the House. The timestamps in Exhibit 205 and 221 prove that the defendant's interaction with the Capitol police was over before Vice President Pence was seen in the stairwell with Agent Wade.

No reasonable juror would find that the defendant acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate, and that he influenced another to violate their legal duty (*see Poindexter*, 951 F.2d 369; *North*, 910 F.2d at 882; *Reeves*, 752 F.2d at 1001), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375.

Nor would a reasonable juror find that that the defendant took some action with respect to a document, record, other object, or non-object information, in order to corruptly obstruct, impede or influence an official proceeding (*See Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375. To the contrary, Guy Reffitt did not go in the Capitol. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349; *see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221. He did not break anything, and he did not take anything. *Ibid*.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. Sergeant Des Camp testified that Mr. Reffitt was incapacitated. *Ibid*. The Capitol Police video corroborated the Capitol Police Officers' testimony.

11

Exhibit 205.

Nor would a reasonable juror find that the defendant assaulted anyone. Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was told to get back. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed. *Ibid*. Guy Reffitt never tried to assault anyone, and he did not help anyone else commit an assault. *Ibid*. He did not threaten harm, and he was not aggressive. Tr. Mar. 7, 2022 at 1273–1305.

The Court said to the government, "[a]t a minimum, you need to prove the attempt or the aiding and abetting the assaults, or you're not going to prove the obstruction." Tr. Feb. 18, 2022 at 10:19–21.

The Court also said,

Assault, you know, batteries, all of that works. What doesn't work are these vague, you know, terms like stopping and delaying the vote or interfering with police officers, you know, without that -- interfere by shouting. I think the government needs to be crisp with its theory. And so long as it is, it will go to the jury, but if it's not, it won't.

Tr. Feb. 24, 2022 at 43:4–11.

## III.   **Count Three:**

In order to prove entering and remaining in a restricted building or grounds with a deadly or dangerous weapon (18 U.S.C. § 1752(a)(1) and (b)(1)(A)), the government must prove beyond a reasonable doubt:

1)  that the defendant entered or remained in a restricted building or grounds without lawful authority to do so;

2)  that the defendant knew that the building or grounds was restricted, and he knew that he lacked lawful authority to enter or remain there; and

3)  that the defendant knowingly used or carried a firearm during and in relation to the offense.

No reasonable juror would credit Rocky Hardie's claim that he and the defendant brought firearms to Washington.  Tr. Mar. 3, 2022 a.m. at 1095–1159; *see Jackson* at 319; *Wahl* at 375.

First, he only said that after the government gave him immunity, which the government reserved the right to void.  Exhibit 405.

Second, Mr. Hardie seemed to have trouble remembering, and when he did not know what to say, he asked the government for examples.  Tr. Mar. 4, 2022 a.m. at 1095–1159.

Third, even he said Mr. Reffitt uses hyperbole, embellishes, and dramatizes. *Ibid*.

Third, none of the Capitol Police Officers testified that the defendant had a gun.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.

Fourth, the Capitol Police video, for which there are safeguards to prevent altering and editing, does not show a gun.  Exhibit 205.

Fifth, only Agent Hightower, who was not even at the Capitol on January 6, 2021, claimed he could see a particular holster in Exhibits 202 and 202.1.  Tr. Mar. 4, 2022 at 1218–1261.  The Court instructed the jury that

> A firearm includes any weapon, which is designed to or may be readily converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.  A frame or receiver is a part of the firearm.  ***A holster is neither a frame nor is it a receiver***.

Tr. Mar. 7, 2022 p.m. at 1422:16–20.

Sixth, Agent Hightower said that Exhibits 202 and 202.1 were "prepared by the government."  Tr. Mar. 4, 2022 at 1253:8–9, 13.

Seventh, he could not remember how he acquired Exhibit 200.  Tr. Mar. 4, 2022 at 1254:22.

Eighth, unlike the Capitol Police video, for which there was both testimony (Tr. Mar. 3, 2022 a.m. at 797:12–799:8) and a stipulation (Exhibit 701) that they had not been altered or edited, there were no safeguards to prevent altering and editing Exhibits 200, 202, and 202.1.

Ninth, Agent Ryan said that he bought Exhibit 55, because "the FBI did not seize Mr. Reffitt's holster ***for whatever reason***…."  Tr. Mar. 7, 2022 a.m. at 1316:19–20.

14

**IV.    Count Four:**

In order to prove obstructing officers during a civil disorder (18 U.S.C. § 231(a)(3)), the government must prove beyond a reasonable doubt:

1)  that the defendant knowingly committed an act or attempted to commit an act;

2)  that in committing or attempting to commit that act, the defendant intended to obstruct, impede or interfere with one or more law enforcement officers;

3)  that at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

4)  that the civil disorder in any way or degree obstructed, delayed or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally-protected function.

No reasonable juror would find that the defendant knowingly committed an act or attempted to commit an act; *see Jackson* at 319; *Wahl* at 375.  To the contrary, according to the Capitol Police, Guy Reffitt never put his hand on anyone, never threw anything at anyone, never hit anyone with anything, never assaulted anyone, never tried to assault anyone, and he did not help anyone else commit an assault.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Guy Reffitt did not

go in the Capitol. *Ibid*.; *see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221. He did not break anything, and he did not take anything. *Ibid*. He did not threaten harm, and he was not aggressive. Tr. Mar. 7, 2022 at 1273–1305.

The government stipulated that the Capitol police video (Exhibit 205), which corroborates all of this, was not altered or edited in any way. Exhibit 701.

No reasonable juror would find that the defendant intended to obstruct, impede or interfere with one or more law enforcement officers. To the contrary, Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was told to get back. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed. *Ibid*. Guy Reffitt never tried to assault anyone, and he did not help anyone else commit an assault. *Ibid*. He did not threaten harm, and he was not aggressive. Tr. Mar. 7, 2022 at 1273–1305.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. Sergeant Des Camp testified that Mr. Reffitt was incapacitated. *Ibid*. The Capitol Police video corroborated the Capitol Police Officers' testimony. Exhibit 205.

According to the Capitol Police, Guy Reffitt never disarmed an officer, never tried to disarm an officer, and he did not help anyone else disarm an officer. Tr. Mar.

2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Guy Reffitt never interfered with an arrest.  *Ibid*.  He never tried to interfere with an arrest, and he did not help anyone else interfere with an arrest.  *Ibid*.

The government stipulated that the Capitol police video (Exhibit 205), which corroborates all of this, was not altered or edited in any way.  Exhibit 701.

## V.    **Count Five:**

In order to prove obstruction of justice — hindering communication through physical force or threat of physical force (18 U.S.C. § 1512(a)(2)(C)), the government must prove beyond a reasonable doubt:

1)  that the defendant knowingly used or attempted to use physical force or the threat of physical force against Jackson Reffitt or Peyton Reffitt;

2)  that the defendant acted with intent to hinder, delay or prevent Jackson Reffitt or Peyton Reffitt from communicating to law enforcement information relating to the commission or possible commission of an offense;

3)  that there was a reasonable likelihood that at least one of the communications targeted by the defendant would have been made to a federal officer; and

4)  the information that would have been communicated to a federal officer related to the possible commission of a federal offense.

No reasonable juror would credit Jackson Reffitt's claim that his and Peyton Reffitt's lives were threatened.  Tr. Mar. 3, 2022 p.m. at 886–1033; *see Jackson* at 319; *Wahl* at 375.

First, Jackson Reffitt claimed he told Agent Hightower about it the same day. Tr. Mar. 3, 2022 p.m. at 886–1033.  However, Agent Hightower said the priority of the investigation would have increased if lives were threatened, because he said life-threatening emergencies receive priority.  Tr. Mar. 4, 2022 p.m. at 1222–1223, 1255–1256.  Instead, Jackson Reffitt went back to his dad's house, and the FBI came five days later.  Tr. Mar. 3, 2022 p.m. at 886–1033.

Second, Jackson Reffitt's story has changed from i) he did not believe his dad would ever hurt him, to ii) he took the threats seriously, and then to iii) he's pretty sure about what his dad said.  *Ibid*.

Third, hyping his story on CNN, Good Morning America and on his GoFundMe page has made Jackson Reffitt over $158,000.00.  *Ibid*.

## Request for Hearing

Defendant requests a hearing.  Loc. Cr. R. 47(f).

## Points and Authorities

*Jackson v. Virginia*, 443 U.S. 307 (1979).
*Liparota v. United States*, 471 U.S. 419 (1985).
*United States v. Ahrensfield*, 698 F.3d 1310 (10th Cir. 2012).
*United States v. Aguilar*, 515 U.S. 593 (1995).

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013).

*United States v. Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72 (Mar. 7, 2022).

*United States v. Nasir,* 17 F.4th 459 (3d Cir. 2021).

*United States v. North*, 910 F.2d 843 (D.C. Cir. 1990).

*United States v. Reeves*, 752 F.2d 995 (5th Cir. 1985).

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

*United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002).

18 U.S.C. § 231(a).

18 U.S.C. § 1512.

18 U.S.C. § 1752.

Fed. R. Crim. P. 29(c).

Loc. Cr. R. 47(f).

*/s/ William L. Welch, III*

---

William L. Welch, III

D.C. Bar No. 447886

wlw@wwelchattorney.com

5305 Village Center Drive, Suite 142

Columbia, Maryland 21044

Telephone: (410) 615-7186

Facsimile: (410) 630-7760

Counsel for Guy Reffitt

(Appointed by this Court)

19

**Certificate of Service**

I hereby certify that on this 21st day of March 2022 a copy of the foregoing Motion for Judgment of Acquittal, Memorandum, and Request for Hearing were delivered electronically to Mr. Jeffrey S. Nestler (jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch,* III

_____

William L. Welch, III

20