**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 21-cr-00032 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **GUY WESLEY REFFITT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S**
**POST-TRIAL MOTIONS**

The Court should not disturb the jury's guilty verdict on all counts following the trial. None of the three post-trial motions filed by the defendant—for judgment of acquittal on all counts (ECF No. 128), for a new trial on Count Three (ECF No. 129), and to arrest judgment on Count Two (ECF No. 130)—has any merit.

## I. BACKGROUND

On March 8, 2022, following over three days of evidence, the jury returned a verdict of guilty on all five counts. The Court then orally denied the defendant's initial Rule 29 motion, on which it had reserved ruling, finding that the evidence was more than sufficient to sustain the jury's verdict on each count. *See* Tr. 3/8/22 at 1498-99 ("Considering the evidence in the light most favorable to the government, as the Court must, the Court finds that a rational jury could find the essential elements of the crimes charged beyond a reasonable doubt.").

The defendant timely filed his post-trial motions on March 21, 2022.

## II. LEGAL STANDARD

Rule 29 permits the defendant the move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the

evidence "in the light most favorable to the government" to determine if "*any* rational trier of act could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)). When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the jury, not for the judge when deciding a motion under Rule 29. *United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses").

A defendant's Rule 29 burden at the post-verdict stage is "very high," in part because evidence to support a conviction does "not need to be overwhelming." *United States v. Pasha*, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015). Indeed, the Court owes "tremendous deference to a jury verdict." *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990). The defendant cannot surmount that demanding standard here.

Rule 33 permits the Court to vacate the judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In order to grant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v.*

2

*Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991) (internal citations and quotation marks omitted). The defendant bears this heavy burden under Rule 33, and to meet it he "must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights." *Williamson*, 81 F. Supp. 3d at 89.

Finally, Rule 34 permits the defendant to move the Court to "arrest judgment" if the court does not have jurisdiction over the charged offense. Fed. R. Crim. P. 34(a). To succeed under Rule 34, a defendant must point to a fundamental error on the face of the indictment to show that the court lacked jurisdiction over the offense. 3 Fed. Prac. & Proc. Crim. § 601 ("Grounds for Arresting Judgment") (4th ed. 2021). "Motions to arrest judgment are rarely granted." *Id.* The *only* basis for a Rule 34 motion is that the court lacked jurisdiction over the offense in the first place. *United States v. Mitchell*, 389 F. Supp. 917, 920 (D.D.C. 1975), *aff'd sub nom. United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976).

The defendant cannot satisfy the standard in Rule 33, and Rule 34 is inapplicable.

## III.   ARGUMENT

The defendant's motion for judgment of acquittal reads like his closing argument, focusing on witnesses' credibility, alleged inconsistencies, and innuendo about altered videos. But his burden here is not to convince a jury to find him not guilty; rather, he must convince this Court that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. He has not come close to meeting that burden. To the contrary, the evidence readily supports the jury's guilty verdict on each count.

### A.   Count One, Transporting a Firearm in Furtherance of a Civil Disorder

Count One charged the defendant with transporting a firearm in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2). To establish that offense, the government had to

prove that (1) "the defendant transported a firearm in commerce"; and (2) "the defendant did so knowing, having reason to know, or intending that the firearm would be used unlawfully in furtherance of a civil disorder." Final Jury Instructions (ECF No. 119), at 24 (Mar. 7, 2022). The evidence amply supported each element.

First, there is sufficient evidence for a rational jury to find that the defendant transported two firearms from his home in Texas into Washington, D.C. Mr. Hardie testified that the defendant brought an AR-15 rife and a semi-automatic handgun, which were introduced into evidence, *see* Ex. 1B29 (AR-15-style rifle, Smith & Wesson model M&P 15); Ex. 1B27 (Smith & Wesson .40 caliber semi-automatic handgun), in the car for the cross-country trip that the two men made together, *see* Tr. 3/4/22 at 1119 ("I saw that he had an AR."); *id.* at 1120 ("He had a handgun."). Mr. Hardie further testified that the defendant left his AR-15 rifle fully assembled in his car in the hotel garage in Georgetown on the morning of January 6, 2021. *See* Tr. 3/4/22 at 1122 ("We opened our cases for our ARs, and we reassembled the ARs."). And Jackson Reffitt testified that he saw his father bring the AR-15 rifle and his handgun back into the house upon his return from Washington, D.C. *See* Tr. 3/3/22 at 973 (defendant brought inside house "his gun case that carried his AR"); *id.* at 974-75 (defendant had handgun on his hip).

Second, the evidence easily supports the jury's finding that the defendant transported the firearms into the District "knowing, having reason to know[,] or intending that the firearm would be used unlawfully in furtherance of civil disorder." Tr. 3/7/22 at 1422 (jury instruction). The defendant knew it was illegal to possess the firearms in the District and at the Capitol. *See* Tr. 3/4/22 at 1112-13 (testimony of Mr. Hardie that the defendant said it would not be legal to possess a gun in the District); Ex. 1B4.2 (12/28/20 Telegram message in which the defendant says, "I don't think unarmed will be the case this time. I will be in full battle rattle. If that's a law I break, so be

it.").  And given the copious evidence about the defendant's intent to work with the crowd to physically drag legislators out of the Capitol building, *see, e.g.*, Ex. 1B4.1 (agreeing on December 22, 2020, with fellow Texas Three Percenter that "[t]he only way you will be able to do anything in DC is if you get the crowd to drag the traitors out"), the jury could readily have drawn the inference that the defendant knew or intended that his firearms would be used to further the aims of the civil disorder.

Moreover, although guilt on Count One does not depend on any civil disorder ever coming to pass, the evidence clearly established that the defendant was a full participant in a civil disorder at the Capitol.  The testimony of Officer Kerkhoff, Sgt. DesCamp, and Sgt. Flood, along with the overview testimony of Inspector Moore and the summary surveillance video montage (Ex. 204), easily demonstrated that what occurred at the Capitol on January 6, 2021, constituted a "civil disorder" within the definition of 18 U.S.C. § 232(1).  It was a "public disturbance" involving acts of violence (there were many) by more than three people (there were hundreds if not thousands) that satisfied the definition: it caused an immediate danger of injury and property damage and it in fact resulted in injury and property damage.  Thus, the riot at the Capitol, as the Court already found, constituted a civil disorder.  *See* Tr. 3/8/22 at 1500.

As the Court already found, "a jury could well find beyond a reasonable doubt that Mr. Reffitt knew or intended that the guns would be used in furtherance of the civil disorder in violation of Title 18 United States Code Section 231(a)(2)."  Tr. 3/8/22 at 1499.  The Court should deny the motion for judgment of acquittal on Count One.

## B.    Count Two, Obstruction of an Official Proceeding

A rational jury could have found—as it did—that the defendant violated 18 U.S.C. § 1512(c)(2).  Here, the defendant does not seriously argue this point; rather, he unsuccessfully

attempts to re-litigate the correctness of the Court's instructions to the jury.  And the defendant's motion to "arrest judgment" on Count Two summarily fails because he identifies no sound basis to question this Court's jurisdiction over the count.

1.       There is sufficient evidence that the defendant violated Section 1512(c)(2)

To prove a violation of Section 1512(c)(2), the government had to prove beyond a reasonable doubt the following four elements:

> First, the defendant attempted to or did obstruct or impede an official proceeding.

> Second, the defendant acted with the intent to obstruct or impede the official proceeding.

> Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

> Fourth, the defendant acted corruptly.

Final Jury Instructions (ECF No. 119), at 25.

The government can satisfy its burden on this count by proving (a) that the defendant obstructed an official proceeding, (b) *attempted* to obstruct an official proceeding, and/or (c) *aided and abetted* others to obstruct an official proceeding.  *Id.*

As the Court already concluded, "a rational jury could find beyond a reasonable doubt that Mr. Reffitt obstructed an official proceeding in violation of Title 18 United States Code Section 1512(c)(2) or that he attempted the offense or aided and abetted others in committing the offense." Tr. 3/8/22 at 1501.  Congress's Joint Session on January 6, 2021, was an "official proceeding." Tr. 3/7/22 at 1424 (jury instruction).  And the government presented evidence that Vice President Mike Pence, Speaker of the House Nancy Pelosi, and senators and representatives were evacuated from the Senate and House chambers and thus could not proceed with the session.  *See* Ex. 702

(stipulation); Ex. 507 (video montage of proceedings); Tr. 3/4/22 at 1072-73 (testimony of Dan Schwager, counsel to the Secretary of the Senate).[1]

The defendant both attempted to and intended to obstruct the proceeding:  he went to the Capitol building and tried to get past the Capitol Police officers and into the building to the prevent the proceeding from taking place.  He acted "corruptly" both by using unlawful means and by acting with an unlawful purpose.  He employed unlawful means when he "assisted and encouraged others who used unlawful means, namely assaults of federal officers, to forcibly breach the Capitol."  Tr. 3/8/22 at 1501 (Court ruling).  And he acted with an unlawful purpose, that being "to physically overthrow Congress."  *Id.* at 1502 (Court ruling).  His purpose, as evidenced by both his statements and the tools he brought with him, like flexicuffs and a handgun, was to physically drag lawmakers out of the Capitol.  And he had "consciousness of wrongdoing": he knew that the Capitol Police officers were doing their jobs in preventing his access to the building, he knew he was not allowed to possess firearms in the District and especially at the Capitol, and he knew that his actions would cause the proceeding to stop.  *See* Tr. 3/4/22 at 1112-13 (testimony of Mr. Hardie that the defendant said it would not be legal to possess a gun in the District); Ex. 217 at 1:20 (recording of defendant telling his son, "I did bring a weapon on property that we own. Federal grounds or not.  The law is written, but it doesn't mean it's right law."); Ex. 218 at 4:20

---

[1] Contrary to the defendant's representation in his motion, the parties did not stipulate that the Joint Session "adjourned" at approximately 1:15 p.m.  Mot. ¶ 25.  Rather, the parties stipulated that at 1:15 p.m. the two Houses of Congress "adjourned to their separate chambers for up to two hours to resolve a particular objection."  Ex. 702.  As Mr. Schwager confirmed in his testimony, the Joint Session was ongoing even while the two Houses were debating separately; it did not conclude until the Vice President, as the presiding officer, announced that it was *dissolved* early in the morning on January 7, 2021.  Tr. 3/4/22 at 1075; *see also* Ex. 501.16 (showing that 3 U.S.C. § 16 provides, "Such joint meeting shall not be dissolved until the count of electoral votes shall be completed and the result declared.").

(defendant describing the police officers firing projectiles at him as doing "their job"); Ex. 1B4.2 (12/28/20 Telegram message in which the defendant says, "I don't think unarmed will be the case this time.  I will be in full battle rattle.  If that's a law I break, so be it.").  On December 22, 2020, when a fellow Texas Three Percenter told the group via Telegram that "[t]he only way you will be able to do anything in DC is if you get the crowd to drag the traitors out," the defendant agreed. Ex. 1B4.1.

In addition to obstructing Congress's proceeding through his own actions, the defendant also aided and abetted others.  He used a megaphone so that the crowd could better hear him.  *See* Ex. 205 at 1:48:05 p.m. (surveillance video showing defendant using megaphone).  He told the officers guarding the landing that they needed step aside because they could not "stop us all."  Tr. 3/7/22 at 1282-83 (testimony of Sgt. DesCamp).  His actions while standing on the banister were somewhat performative; he was "posturing" like he was "encourag[ing]" others, "leading the crowd up from the stairs" by showing them the way and waving them forward with his arm.   Tr. 3/2/22 at 709-10 (testimony of Officer Kerkhoff).    And he continued to wave others forward towards the Capitol even after he sat down on the banister.  *Id.*; Tr. 3/7/22 at 1337 (testimony of Sgt. Flood); Ex. 205 at 1:51:30 (surveillance video showing the defendant gesturing).  Afterwards, he bragged on Telegram that he "forc[ed] the Capital police [*sic*] hand" and that "when they finally broke through the doors[,] my job was done then."  Ex. 1B4.5.

The evidence was therefore sufficient for the jury to convict the defendant of obstruction of an official proceeding.

2.      The Court's instructions to the jury were correct

In seeking a judgment of acquittal, the defendant proposes a set of jury instructions[2] that are wrong as a matter of law, that no court has adopted, and that this Court already explicitly rejected.  His proposed element two would require the government to prove that the defendant "impair[ed] the integrity and availability of non-object information."  And element three would require obstruction with the "due administration of justice, that is, the defendant acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate, and that he influenced another to violate their legal duty."  Neither is supported.

a.      There is no requirement that "the integrity and availability of non-object information" be impaired.

There is no basis for this extratextual limitation in the statute.  *See United States v. Sandlin*, No. 21-cr-88 (DLF), 2021 WL 5865006, at *8 (D.D.C. Dec. 10, 2021) (rejecting "defendants' narrow construction of subsection (c)(2), which would limit its scope to acts affecting evidence"); *see also id.* at *4 (noting that a court should "ordinarily resist reading words or elements into a statute that do not appear on its face") (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)).

---

[2] The defendant's proposed instruction is on page 9 of his motion:

1) that the defendant acted knowingly;

2) that the defendant obstructed, influenced, or impeded, or attempted to obstruct, influence or impede an official proceeding by impairing the integrity and availability of non-object information to be used in the official proceeding;

3) that the defendant acted corruptly to obstruct, influence, or impede the due administration of justice, that is, the defendant acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate, and that he influenced another to violate their legal duty; and

4) that the defendant's alleged actions had a relationship in time, causation, or logic with the proceeding such that it was foreseeable that defendant's conduct would interfere with the proceeding. In other words, the government must prove to you beyond a reasonable doubt that obstruction of an official proceeding was the natural and probable outcome of defendant's conduct.

And the phrase does not appear to have been adopted by a single court. Indeed, while the defendant relies heavily on *United States v. Ahrensfield*, 698 F.3d 1310, 1324 n.8 (10th Cir. 2012), in that case there was no such limitation in the jury instructions that the obstruction relate to some type of information, whether "non-object," documentary, or otherwise.

In addition, the defendant's proposal is *not* the one recently endorsed by Judge Nichols in *United States v. Miller*, No. 21-cr-119 (CJN), 2022 WL 823070, at *15 (D.D.C. Mar. 7, 2022), which held that the defendant must "take some action with respect to a document, record, or other object" to corruptly obstruct an official proceeding. (Notably, the conviction in *Ahrensfield*, which was premised on a law enforcement officer disclosing the existence of an undercover investigation to the target of that investigation, would not survive the "document, record, or other object" requirement imposed by Judge Nichols's decision in *Miller*.) And while the defendant relies heavily on Judge Nichols's decision in *Miller*, the government respectfully submits that that decision was wrongly decided and against the great weight of authority. On April 1, 2022, the government moved Judge Nichols to reconsider his decision; that motion is attached here as Exhibit 1 and the government incorporates those arguments.

In reaching his decision, Judge Nichols did not acknowledge this Court's prior decision in *Sandlin*, which the Court then adopted in this case. *See* Dec. 11, 2021 Min. Order. Three weeks later, the Court explicitly cited its *Sandlin* decision in rejecting Defendant Reffitt's argument that "§ 1512(c)(2) only covers acts that affect the state and content of what may be considered at an official proceeding." Dec. 29, 2021 Order (ECF No. 81), at 4.

Judge Nichols's decision in *Miller* also did not grapple with the unanimous legal analyses of five other judges of this Court[3] that subsection (c)(2) is not limited by subsection (c)(1).  In *United States v. Caldwell*, 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021), Judge Mehta concluded that Section 1512(c)(2) is not "limited" to conduct "affecting the integrity or availability of evidence in a proceeding." *Id.* at \*11.  In *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at \*11 (D.D.C. Dec. 21, 2021), Judge Boasberg's brief analysis endorsed *Sandlin* and *Caldwell*.  In *United States v. Nordean*, 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021), Judge Kelly reasoned that an interpretation of Section 1512(c)(2) limiting it to "impairment of evidence" could not "be squared with" Section 1512(c)(2)'s "statutory text or structure." *Id.* at \*6. Judge Bates followed suit in *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at \*5 (D.D.C. Feb. 16, 2022), and so did Judge Kollar-Kotelly in *United States v. Grider*, 21-cr-22, 2022 WL 392307, at \*5-\*6 (D.D.C. Feb. 9, 2022).  Moreover, in *United States v. Puma*, 21-cr-454, 2022 WL 823079, at \*13 (D.D.C. Mar. 19, 2022), Judge Friedman explicitly disagreed with Judge Nichols's decision in *Miller*, instead endorsing this Court's conclusion in *Sandlin* that "Section 1512(c)'s structure [ ] does not support narrowly construing subsection (c)(2)'s otherwise expansive plain text." *Id.* at \*13 (quoting *Sandlin*, 2021 WL 5865006, at \*6) (alteration in *Puma*).

As explained in the government's motion to reconsider in *Miller*, Judge Nichols's decision is based primarily on erroneously applying the "rule of lenity."  Judge Friedman explained why Judge Nichols is wrong on this point, *see Puma*, 2022 WL 823079, at \*12, and this Court already explicitly rejected the application of the rule of lenity, *see Sandlin*, 2021 WL 5865006, at \*10

---

[3] In *Miller*, Judge Nichols did cite *United States v. Montgomery*, 21-cr-46 (RDM), 2021 WL 6134591, at \*10-\*18 (D.D.C. Dec. 28, 2021), in which Judge Moss reached the same conclusion as these other five judges, following an extended discussion of Section 1512(c)'s text, structure, and legislative history.

(holding that "the rule of lenity does not apply" because Section 1512(c)(2) is "unambiguous"). As this Court noted when ruling on Defendant Reffitt's initial Rule 29 motion, "a Court must first exhaust all the tools of statutory interpretation and determine the best reading of the statute before the rule of lenity comes into play and only then when the Court has identified a grievous ambiguity." Tr. 3/8/22 at 1505 (citing *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring)). Indeed, "because a court must exhaust all the tools of statutory interpretation before resorting to the rule of lenity, and because a court that does so often determines the best reading of the statute, the rule of lenity rarely if ever comes into play." *Wooden*, 142 S. Ct. at 1075 (Kavanaugh, J., concurring). Contrary to Judge Nichols's approach of "resolv[ing] ambiguities in favor of the defendant," *see Miller*, 2022 WL 823070, at *15 (internal citation and quotation marks omitted), the rule of lenity is *not* an "overriding consideration of being lenient to wrongdoers." *Wooden*, 142 S. Ct. at 1075 (Kavanaugh, J., concurring).

As this Court explained in *Sandlin,* while Section 1512(c)(1) prohibits the corrupt destruction or alteration of documents, records, and other objects in connection with an official proceeding, Section 1512(c)(2) "prohibits obstruction by means *other than* document destruction." 2021 WL 5865006, at *6. That conclusion follows inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself, *Montgomery*, 2021 WL 6134591, at *12 (quoting *Texas Dep't of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015)).

b.   A Section 1512(c)(2) offense does not require obstruction of the "due administration of justice" or the transitive use of "corruptly."

The Court addressed this specific argument in *Sandlin*, rejecting the proposition that the "due administration of justice" is an element of the offense. *See* 2021 WL 5865006, at *4 (because Section 1503 targets "the due administration of justice," whereas Section 1512(c)(2) "targets official proceedings more broadly," "the Court will not read an 'administration of justice' requirement into 'official proceeding'"). After adopting the reasoning from *Sandlin* in this case, *see* Dec. 11, 2021, Min. Order, and reviewing the parties' briefing on this specific point, the Court again "reject[ed]" the defendant's argument. *See* Tr. 2/3/22 at 10 ("As I and a half a dozen other judges on this court have held, the defendant need not have intended to instruct, impede, or influence the due administration of justice to violate Section 1512(c)(2). The statute just requires an intent to obstruct an official proceeding, which includes proceedings before Congress, and such proceedings need not relate to the administration of justice.").

Though the defendant's motion favorably cites Judge Nichols's recent decision in *Miller*, that decision did *not* adopt the defendant's proposed "due administration of justice" argument. While the phrase "due administration of justice" did appear in the jury instruction in *Ahrensfield*, (a) the phrase made sense in that that case because the official proceeding in question was a grand jury investigation rather than a proceeding before the Congress, and (b) the Tenth Circuit expressly disclaimed any reliance on the propriety of the district court's jury instructions. *See* 698 F.3d at 1324 n.8 (noting that the court did "not have occasion to review the correctness of this instruction" for Section 1512(c)(2)).

In addition, this Court already specifically rejected the defendant's argument that Section 1512(c)(2) requires a person to corruptly influence *another*. *See* Tr. 2/3/22 at 10 ("I'm also rejecting the argument you've raised that to violate Section 1512(c)(2) a defendant needs to

13

influence another to violate a legal duty. . . The defendant's own behavior must be corrupt; he need not corrupt another."). The Court cited Judge Mehta's opinion in *Caldwell* for this precise proposition. *Id.* (citing *Caldwell*, 2021 WL 6062718, at *10). At the pretrial conference on February 18, 2022, the defendant re-raised the points about "due administration of justice" and the transitive use of "corruptly," and the Court again rejected those proposals. *See* Tr. 2/18/22 at 12-13 ("[A]s I said at the last hearing and as I ruled in *Sandlin*, I don't believe to violate 1512(c)(2) a defendant need have intended to obstruct, impede, or influence the due administration of justice. A defendant also does not need to have influenced another to violate his or her legal duty to fall under Section 1512(c)(2)."). The Court also rejected the defendant's proposition that the definition of "corruptly" requires an "an intent to gain an advantage for oneself or another" or "dishonesty." Tr. 2/3/22 at 10-11. A conviction under Section 1512(c)(2) does not require the government to prove these additional elements.

### 3. The Court should not "arrest judgment" on Count Two.

The defendant asks the Court to "arrest judgment" of this count under Rule 34, *see* ECF No. 130, but he offers no reason why this Court would lack jurisdiction over a Section 1512(c)(2) charge. Subject-matter jurisdiction "involves a court's power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). For every federal criminal prosecution, 18 U.S.C. § 3231 supplies district courts with original jurisdiction for "all offenses against the laws of the United States," which indubitably includes the Section 1512 offense with which the defendant is charged.

The defendant's motion does cite or discuss any basis for a jurisdictional challenge to Count Two. Instead, the defendant simply repeats attacks on the sufficiency of the indictment that this Court has already rejected. Moreover, nothing in Section 1512—or, for that matter, Chapter 73, or even Title 18 itself—suggests that a federal district court in Washington, D.C., would

somehow lack jurisdiction over a charge that is alleged to have taken place in Washington, D.C., earlier the same month the defendant was charged with the offense. Indeed, both this Court and all the judges cited above, *see* Section III.B.2.a, *supra*, have denied motions to dismiss Section 1512(c)(2) charges arising from the attack on the Capitol without so much as a hint that jurisdiction is lacking. Even Judge Nichols's decision in *Miller* dismissing the Section 1512(c)(2) charge for failure to state an offense did not suggest that the court was somehow without jurisdiction over the offense in the first place.

### C. Count Three, Entering or Remaining in a Restricted Building or Grounds with a Firearm

Count Three charged the defendant with entering or remaining in a restricted building or grounds with a firearm, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A). To prove the defendant's guilt on this count, the government was required to prove that the defendant (1) "entered or remained in a restricted building or grounds without lawful authority," (2) "knew that the building and grounds was restricted and . . . knew that he lacked the lawful authority to enter or remain there," and (3) "knowingly used or carried a firearm during and in relation to the offense." Final Jury Instructions (ECF No. 119), at 30. The evidence fully supported those elements.

Indeed, the defendant's concession makes clear that the first two elements are satisfied. The defendant conceded that the government presented evidence that he was at the U.S. Capitol on January 6, 2021, within the restricted area, and that he knew he was present without lawful authority. *See* Tr. 3/7/22 at 1472 (defense counsel, in closing, urging jury to "[f]ind Mr. Reffitt guilty of Count 3A," the lesser-included charge of entering or remaining in a restricted building or grounds without a firearm). This Court already reached the same conclusion in its oral ruling on the Rule 29 motion. *See* Tr. 3/8/22 at 1499-1500 ("The testimony of Capitol police officers shows

that Mr. Reffitt knew he was on restricted grounds and did not have the lawful authority to be there, as he ignored police barricades, signs, and officers' commands to retreat.").

There is also plentiful evidence supporting the third element that the defendant carried his handgun with him when he went to the Capitol.  A firearm holster is visible on the defendant's hip while he is on the banister of the Capitol.  *See* Ex. 202.1 (still frame of Emily Molli video); Tr. 3/4/22 at 1243 (Agent Hightower testimony about the holster visible in the still frame).  And the defendant told others before and after that he was carrying his firearm.  *See* Ex. 1B20.2.2 at 3:53 (helmet camera video of defendant telling others while at Ellipse, "Every one of my guys are here and I can assure you they came in hot.  So did I."); Tr. 3/3/22 at 996 (Jackson Reffitt testimony that, in Ex. 214, between 6:26 and 7:54, the defendant explains he had a loaded firearm while at the Capitol and the defendant took the firearm out of the holster to display it to Jackson Reffitt); Ex. 1B20.2.3.1 (Zoom recording of the defendant telling William Teer, "I had my . . . 40 on my side").

As the Court already found, "a rational jury could find beyond a reasonable doubt that Mr. Reffitt entered or remained in a restricted area with a firearm in violation of Title 18 United States Code Section 1752(a)(1) and (b)(2)."  Tr. 3/8/22 at 1499.

Additionally, there is no merit to the defendant's motion for a new trial "in the interest of justice" on this count.  ECF No. 129.  The one-page motion appears to suggest that the defendant is guilty only of the lesser-included offense of entering or remaining *without* a firearm.  But the motion does not identify *why* the interest of justice would support a new trial.  There is no basis for a new trial; there is no "newly discovered evidence," *cf.* Fed. R. Crim. P. 33(b)(1), or any other reason why a new trial would be warranted.

### D.      Count Four, Obstructing Officers During a Civil Disorder

In Count Four, the defendant was charged with committing or attempting to commit an act to obstruct officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).  To prove that offense, the government was required to prove that (1) "the defendant knowingly committed an act or attempted to commit an act," (2) in so doing, the defendant "intended to obstruct, impede, or interfere with" law enforcement officers; (3) the law enforcement officers were at that time "engaged in the lawful performance of their official duties incident to and during a civil disorder," and (4) the civil disorder adversely affected either a federally protected function or commerce. Final Jury Instructions (ECF No. 119), at 32.  The government could also meet its burden by proving that the defendant *attempted to* obstruct the officers.  *Id.* at 33.

The government presented sufficient evidence that the defendant obstructed and interfered with the Capitol Police officers incident to and during a civil disorder.  The first three elements are satisfied because the defendant actively engaged three Capitol Police officers in an effort to obstruct or interfere with them as they sought to maintain control over hordes of rioters outside the Capitol building on January 6.  Officer Kerkhoff, Sgt. DesCamp, and Sgt. Flood each testified that the defendant refused their commands to stop, continued up the banister, and allowed and encouraged the crowd below him to fill in the space, getting closer and closer to the officers attempting to protect that narrow landing that led up to the Senate chamber.  *See, e.g.*, Tr. 3/7/22 at 1285-86 (testimony of Sgt. DesCamp that "[a]ll the people that were with him were also moving up every time he moved up," which was "significant" because "the only access to the Capitol at this point is on that level, and we want to keep everybody down").  The officers' testimony is corroborated by the surveillance video, Ex. 205, and the other videos of the incident, Ex. 200 (News2Share video); Ex. 201 (Reuters video); Ex. 202 (Emily Molli news video); Ex. 203 (cell

phone video).  All three officers had to engage the defendant with less-than-lethal weapons—Pepperball launcher, Ex. 51, projectile launcher, Ex. 52, handheld O.C. spray, Ex. 54, and large-canister O.C. spray, Ex. 53—in an attempt to stop his advances.  And the officers' attention being focused on the defendant allowed other members of the crowd to further penetrate inside the scaffolding, further endangering the officers.  *See, e.g.*, Tr. 3/7/22 at 1287 (Sgt. DesCamp describing how while he was engaged with the defendant others were "using knives to cut the scaffolding open to gain access into that area").

As the defendant's motion points out, Sgt. DesCamp testified that the defendant was "incapacitated" after he was hit with pepper spray, and Sgt. Flood testified that the defendant sat down after being pepper sprayed.  *See* Tr. 3/7/22 at 1301 (Sgt. DesCamp); Tr. 3/7/22 at 1345 (Sgt. Flood).  As an initial matter, it is not clear what, if any, legal significance attaches to this fact given that the defendant had already engaged in his obstructive act at officers by that point.  In any event, Sgt. Flood also made clear that he did not see the defendant after their interaction, because he went inside the Capitol building to assist with the Senate.  Tr. 3/7/22 at 1343.  And other evidence shows that the defendant was not fully incapacitated or stopped.  To the contrary, he continued to wave and gesture for the crowd to surge forward after he was sitting on the banister.  Tr. 3/7/22 at 1341-42 (Sgt. Flood testimony); Ex. 202 (Emily Molli video) at 0:12–0:22.  And surveillance video showed the defendant walking up the stairs with the rest of the crowd at around 2:15 p.m., towards the doors of the Senate wing that were initially breached at 2:13 p.m.  *See* Ex. 205 at 2:15:40 p.m. (showing the defendant walking up the stairs); Ex. 204 at 2:13:03 p.m. (showing the initial breach of the building at the Senate wing).  Moreover, the defendant himself told his fellow Texas Three Percenter militia members that he had made it to the landing outside the Capitol building before he finally turned back.  *See* Ex. 1B20.2.3.1 (Zoom recording in which the defendant states, "I got

up the stairs, I got to the top where it was level, you could see the doors and they were beating on the doors."); Ex. 1B4.5 ("[W]hen they finally broke through the doors[,] my job was done then.").

The evidence supporting the jury's finding that the riot that occurred at the Capitol on January 6, 2021, met the definition of a "civil disorder" is recounted above in connection with Count One.  *See* Section III.A, *supra*.  And evidence established that the civil disorder adversely affected both commerce and federally protected functions.  First, the riot at the Capitol caused Mayor Bowser to issue curfew, *see* Ex. 415, which caused Safeway to close its stores in the District, *see* Ex. 703, which caused Safeway to lose out on business and not be able to receive out-of-state shipments, *see* Ex. 703.  Thus, the civil disorder adversely affected commerce.  Second, the civil disorder "adversely affected the Secret Service's plans to protect Vice President Pence and his family, thus interfering with the performance of a federally protected function."  Tr. 3/8/22 at 1500 (Court's post-trial ruling); *see* Tr. 3/4/22 at 1091-92 (U.S. Secret Service Special Agent Paul Wade testifying about the "emergency actions" the Secret Service had to take to protect Vice President Pence and his family, including relocating them and their motorcade and bringing additional agents to the Capitol to ensure their protection for the remainder of the proceeding).  And the civil disorder adversely affected the United States Capitol Police's protection of the United States Capitol building, something that police force is sworn to do.  *See* Tr. 3/2/22 at 603 (testimony of Officer Kerkhoff).

As the Court stated, "[a] rational jury could also find beyond a reasonable doubt that Mr. Reffitt obstructed officers during a civil disorder in violation of Title 18 United States Code Section 231(a)(3)."  Tr. 3/8/22 at 1500.  The Court should deny the motion for judgment of acquittal on Count Four.

19

**E.      Count Five, Obstruction of Justice—Hindering Communication Through Force or Threat of Physical Force**

Count Five charged the defendant with obstructing justice by hindering communication to law enforcement through force or the threat of physical force, in violation of 18 U.S.C. § 1512(a)(2)(C).  That crime has four elements: (1) "the defendant knowing used or attempted to use physical force or the threat of physical force against" his children; (2) the defendant intended to "hinder, delay, or prevent" his children from communicating information about an actual or potential crime to law enforcement; (3) "there was a reasonable likelihood that at least one of the communications targeted by the defendant would have been made to a federal officer," and (4) "the information that would have been communicated to the federal officer related to the possible commission of a federal offense."  Final Jury Instructions (ECF No. 119), at 34.  Those elements were amply supported at trial.

First, Jackson Reffitt testified that the defendant told him and his sister, "If you turn me in, you are traitor.  Traitors get shot."  Tr. 3/3/22 at 1003.  He took the statements as a "threat"; he was "scared" for himself and his sister.  *Id.* at 1004.  According to Jackson Reffitt's testimony, the defendant also said to Peyton Reffitt, "You better not be recording this or I will put a bullet in your phone."  *Id.*  He took the comments "seriously" and reported to the FBI, later that day, that his father "threatened me and my little sister."  *Id.* at 1005, 1007-08; *see also* Tr. 3/4/22 at 1229 (Agent Hightower testimony about receiving the report of the threat from Jackson Reffitt).  From that testimony, a rational jury could easily conclude both that the defendant threatened his children with force and that the defendant in issuing the threat intended to prevent his children from communicating with law enforcement about the defendant's participation in the riot at the Capitol on January 6.

Second, the defendant's words and the context in which he issued the threat makes clear that his children—in particular, Jackson Reffitt—envisioned communicating to a *federal* law officer about the defendant's potential or actual *federal* crimes.  As the Court found, a "jury could credit Jackson Reffitt's testimony that Mr. Reffitt threatened to shoot his children or put a bullet through his daughter's phone if they informed the FBI about his actions on January 6, and the information that they would have provided, and indeed Jackson had already provided, related to federal offenses."  Tr. 3/8/22 at 1500-01.  "A rational jury" could therefore "find that Mr. Reffitt obstructed justice by threatening physical force in violation of Title 18 United States Code Section 1512(a)(2)(C) or that he took a substantial step toward obstructing justice."  *Id.* at 1500.

The defendant's attack on Jackson Reffitt's credibility has no place in a motion under Rule 29.  For example, the defendant complains that "Jackson Reffitt's story has changed," that he "hyp[ed] his story" on national media, and that made over $158,000 on his GoFundMe site.  Mot. at 18.  The jury's verdict rejected these credibility claims, *see Campbell*, 702 F.2d at 264 (court must presume jury properly "evaluat[ed] the credibility of witnesses"), and this Court should not "determine the credibility of witnesses," *Glasser*, 315 U.S. at 80.

## Conclusion

The Court should deny the defendant's three post-trial motions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: _____

Jeffrey S. Nestler
Assistant United States Attorney
DC Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Washington, D.C. 20530
Phone: 202-252-7277
Email: Jeffrey.Nestler@usdoj.gov