```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
```

UNITED STATES OF AMERICA,
                                        CR Action
             Plaintiff,                 No. 1:21-032

        vs.                             Washington, DC
                                        February 28, 2022
GUY WESLEY REFFITT,
                                        2:05 p.m.
             Defendant.
_____/


          TRANSCRIPT OF VOIR DIRE - AFTERNOON SESSION
         BEFORE THE HONORABLE DABNEY L. FRIEDRICH
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**        JEFFREY S. NESTLER
                              RISA BERKOWER
                                U.S. ATTORNEY'S OFFICE
                                555 Fourth Street NW
                                Washington, DC 20530
                                202-252-7277


**For the Defendant:**        WILLIAM WELCH, III
                                5305 Village Center Drive
                                Suite 142
                                Columbia, MD 21044
                                410-615-7186



**Reported By:**              **LORRAINE T. HERMAN, RPR, CRC**
                                Official Court Reporter
                                U.S. District & Bankruptcy Courts
                                333 Constitution Avenue, NW
                                Room 6720
                                Washington, DC 20001
                                202-354-3196

1          **P R O C E E D I N G S**

2                    (Whereupon, the morning session of this proceeding

3      was reported by Sara Wick, and is bound under separate

4      cover.)

5                    **THE COURT:**  While getting the jurors ready, I

6      wanted to talk to you about how late we can go today.

7                    Mr. Hopkins, you haven't had a chance to talk to

8      the court reporter yet?

9                    **COURTROOM DEPUTY:**  [SHOOK HEAD]

10                   **THE COURT:**  Can you all go til 5:00 today?

11                   **MR. WELCH:**  Yes.

12                   (Nods around government's counsel table.)

13                   **THE COURT:**  I was going to suggest resuming

14     tomorrow at 9, but the second batch -- so the 48 to 80,

15     having them report at 10:30, thinking that we would probably

16     have a few left.  Does that make sense to everyone?

17                   **MR. WELCH:**  Sure.

18                   **MS. BERKOWER:**  Sounds good.

19                   **THE COURT:**  Okay.  We will take one break in the

20     afternoon, around 3:30-ish, somewhere in there.  If someone

21     needs a break earlier, let me know.  And then we will see

22     how much we can cover until 5.

23                    I've said a couple of times we need to qualify 36.

24     I'm wrong.  We need to qualify 40, with the alternates.

25     Check me on that but I'm pretty sure we need to do 40.

1   Because if all of you strike different alternate jurors, and

2   you exercise four strikes, then the four alternates are

3   gone.  So we need eight to fill the alternate group.  Does

4   that make sense?

5             **MR. WELCH:**  Uh-huh.  So check me on the math.  So

6   that means we need to qualify at least 40, maybe 41,

7   depending on what hour of the day it is, maybe 42.  Right

8   now I think we have 10 qualified; is that right?

9             **COURTROOM DEPUTY:**  Yes, ma'am.

10            **THE COURT:**  Okay.  I appreciate you all moving

11  things.  You all have gotten through a lot.

12            Mr. Nestler, we probably need to probably stop a

13  little before 5, unless you all can stay a few minutes late.

14  I do want to see the PowerPoint.

15            **MR. NESTLER:**  We can stay as late as the Court

16  needs.

17            **THE COURT:**  You too, Mr. Welch?

18            **MR. WELCH:**  I didn't hear the last thing.

19            **THE COURT:**  I said I want to address the

20  PowerPoint at the end of the day.  So the question is, Can

21  we stay a few minutes after 5 for me to see that quickly?

22            **MR. WELCH:**  Yeah.  Yep.

23            **THE COURT:**  Are you all ready?

24            **COURTROOM DEPUTY:**  Juror number 0946.

25            **THE COURT:**  Let me tell them what the questions

1    are.  Give me three seconds.

2           0946, this juror has said yes to 1, 3, 4, 18 and

3    19.  There's also one question I had.  I think somewhere in

4    here there's an architect in the Capitol.  Did you all see

5    that?

6           **MR. WELCH:**  Yes.

7           **THE COURT:**  I don't know whether he or she

8    qualifies as an employee of the Congress.  But I think by

9    statute, employees of the Congress are exempt from service.

10   I need to look at the statute.  Do you all know what I am

11   talking about?

12          [No response]

13          **COURTROOM DEPUTY:**  Your Honor, juror number 0946.

14          (Prospective juror steps up.)

15          **THE COURT:**  Good afternoon, sir.  Just one moment.

16   Bear with us.  Sorry to keep you waiting.

17          **PROSPECTIVE JUROR:**  Sure.

18          **THE COURT:**  Counsel, can we speak briefly?

19          (Bench conference.)

20          **THE COURT:**  Can you all hear me?

21          **MS. BERKOWER:**  Yes.

22          **THE COURT:**  So the oath that the jurors were given

23   this morning, I assume covers through this proceeding as

24   well.  Do you all think differently?  In abundance of

25   caution, we can with start reminding them they are still

1    under oath, but my sense is once they are sworn in, they are

2    sworn in for the day.  Do you all have any differing view?

3           **MS. BERKOWER:**  That was our view, Your Honor, that

4    the one oath would cover the entire day.

5           **THE COURT:**  Do you agree, Mr. Welch?

6           **MR. WELCH:**  Yes, Your Honor.  I would agree.  It's

7    all part of the same panel.  If we have a different group

8    tomorrow, they obviously wouldn't have heard something.

9           **THE COURT:**  All right.  Well, in that case I am

10   not going to start doing that today, but would if you all

11   had objected.  But since you don't, we will just proceed

12   with them still under oath.  Okay.  Thank you.

13          **MS. BERKOWER:**  Thank you.

14          (Bench conference concluded.)

15          **THE COURT:**  All right, sir.  You are 0946.

16   Correct?

17          **PROSPECTIVE JUROR:**  Correct.

18          **THE COURT:**  All right.  So you have answered yes

19   to the question that you live or work near the Capitol.  Can

20   you explain, please?

21          **PROSPECTIVE JUROR:**  I work at 12th, between E and

22   F, Northwest.  I wasn't sure if that was in the --

23          **THE COURT:**  Were you working there on January 6th?

24          **PROSPECTIVE JUROR:**  No.  No, I wasn't.

25          **THE COURT:**  All right.  And you live somewhere

1    else?

2              **PROSPECTIVE JUROR:**  I live in northwest D.C.

3              **THE COURT:**  All right.  Were you in D.C. on

4    January 6th?

5              **PROSPECTIVE JUROR:**  Yes.

6              **THE COURT:**  Were you inconvenienced in any way by

7    the events at the Capitol?

8              **PROSPECTIVE JUROR:**  No.

9              **THE COURT:**  All right.  You also said you followed

10   the news about the January 6th events at the Capitol; and

11   that you've seen news either about Mr. Reffitt or other

12   individuals at the Capitol.  Can you elaborate on that,

13   please?

14             **PROSPECTIVE JUROR:**  Sure.  I wouldn't say I was,

15   like, directly following it.  It just sort of was, you know,

16   everywhere.  If you turn on CNN, I read the Wall Street

17   Journal and the Washington Post every day.

18             **THE COURT:**  So you are following headlines and top

19   news stories, but not doing your own digging for information

20   about --

21             **PROSPECTIVE JUROR:**  Yeah.  It was just sort of,

22   you know, a little bit in your face.  So it was unavoidable

23   for the time being.

24             **THE COURT:**  And has that been the case since

25   January 6th of 2021?

1        **PROSPECTIVE JUROR:**  I don't think so.  You see

2    things -- I just see headlines pop up here and there like

3    Congress is doing you know an investigation or, you know,

4    obviously on the anniversary of January 6th, you know,

5    President Biden spoke.  But I'm not following it like a case

6    or something.

7        **THE COURT:**  Okay.  And if I can ask you just to

8    keep your voice up a little bit and maybe lean forward,

9    because the microphone is in front of you.

10       **PROSPECTIVE JUROR:**  Sure.

11       **THE COURT:**  All right.  So as you sit here now, do

12   you recall whether you've heard anything specifically about

13   the defendant in this case, Mr. Guy Wesley Reffitt or any

14   other named individual?

15       **PROSPECTIVE JUROR:**  I don't think I heard his name

16   specifically.

17       **THE COURT:**  Do you recall other individuals you've

18   heard about?

19       **PROSPECTIVE JUROR:**  Not by name.

20       **THE COURT:**  All right.  Have you formed any

21   opinion based on what you've seen or heard in the news or

22   elsewhere about the allegations in this case?

23       **PROSPECTIVE JUROR:**  Not really.

24       **THE COURT:**  What about the guilt or innocence of

25   any of these individuals?

1          **PROSPECTIVE JUROR:**  Not really.

2          **THE COURT:**  When you say "not really," what do you

3     mean?

4          **PROSPECTIVE JUROR:**  I'm a lawyer.  So I look at it

5     sort of, like, you know, I wouldn't think anything until I

6     heard what the particular facts of the case were.

7          **THE COURT:**  Tell me, where are you a lawyer?

8          **PROSPECTIVE JUROR:**  I don't technically practice

9     law now.  I was a lawyer at Shearman Sterling for 16 years.

10    Now I am a principal at Deloitte Tax.  I do corporate M&A

11    tax work.

12         **THE COURT:**  All right.  And what did you do when

13    you were in private practice?

14         **PROSPECTIVE JUROR:**  Tax work too.

15         **THE COURT:**  All right.  Have you done any criminal

16    work?

17         **PROSPECTIVE JUROR:**  No criminal work.

18         **THE COURT:**  All right.  Based on what you either

19    learned in law school or based on your experience as a

20    lawyer in private practice, do you think you would have any

21    trouble following the instructions that I give you, even if

22    they were inconsistent with what you thought the law was?

23         **PROSPECTIVE JUROR:**  No.  No, it shouldn't.

24         **THE COURT:**  All right.

25         You also stated that either you or your family

1    members or close friends work in law enforcement.

2              **PROSPECTIVE JUROR:**  My sister-in-law's husband is

3    in the Coast Guard; that was it.  I wasn't sure if that was

4    in the perimeter, so to speak.

5              **THE COURT:**  Yeah.  Anything about the fact that

6    that person, that relative, works for the federal government

7    make you lean towards the government in this case?

8              **PROSPECTIVE JUROR:**  No.

9              **THE COURT:**  All right.  You understand, as

10   Mr. Reffitt sits here, he's innocent until proven guilty?

11             **PROSPECTIVE JUROR:**  Yes.

12             **THE COURT:**  And the government would have to prove

13   him guilty beyond a reasonable doubt to convict him of the

14   charges here?

15             **PROSPECTIVE JUROR:**  Yes.

16             **THE COURT:**  Do you think you could apply those

17   instructions fairly --

18             **PROSPECTIVE JUROR:**  Yes.

19             **THE COURT:**  -- and impartially?

20             **PROSPECTIVE JUROR:**  Yep.

21             **THE COURT:**  All right.  Ms. Berkower?

22        **MS. BERKOWER:**  Good afternoon.

23             **PROSPECTIVE JUROR:**  Good afternoon.

24        **MS. BERKOWER:**  Just a quick follow-up question

25   about your time at Shearman and Sterling, the law firm.  Did

1    you do litigation there?

2         **PROSPECTIVE JUROR:**  No, I was a tax attorney.  So

3    I did mostly M&A transactions and internal restructurings

4    but no litigation.

5         **MS. BERKOWER:**  Great.  Thank you.

6         **THE COURT:**  Any questions, Mr. Welch?

7         **MR. WELCH:**  No thank you, Your Honor.

8         **THE COURT:**  All right.  Thank you, sir.  You are

9    excused, from the courtroom that is.

10        (Prospective juror steps down.)

11        **THE COURT:**  All right.  The next juror will be

12   juror number 3 -- 0322.  This juror has answered yes to

13   questions 1, 3 and 4.

14        **COURTROOM DEPUTY:**  Your Honor, juror number 0322.

15        (Prospective juror steps up.)

16        **THE COURT:**  Good afternoon, ma'am.

17        **PROSPECTIVE JUROR:**  Hello.  How are you?

18        **THE COURT:**  Doing well.  How are you?

19        **PROSPECTIVE JUROR:**  Fine.  Thank you.

20        **THE COURT:**  All right.  I'm guessing because you

21   are here, you actually want to serve, but I want to make

22   sure that you know, given your age, you have the right to

23   not to serve, if you choose not to.

24        **PROSPECTIVE JUROR:**  I do know that.

25        **THE COURT:**  I just wanted to make sure.

1          **PROSPECTIVE JUROR:**  And I have friends that are

2     asking me, Why are you doing this?

3          **THE COURT:**  Well, we are very grateful that you're

4     here doing your civic duty, even though you don't have to.

5          All right.  Well, let me ask you some follow-up

6     questions about the answers you gave to your -- to the

7     questions I asked you in the other courtroom.  First, you

8     say that you live or you work near the U.S. Capitol?

9          **PROSPECTIVE JUROR:**  I live in Capitol Hill.

10         **THE COURT:**  How far from the Capitol do you live?

11         **PROSPECTIVE JUROR:**  I live on Eighth, the number

12    8, Street.

13         **THE COURT:**  Were you home on January 6th of 2020?

14         **PROSPECTIVE JUROR:**  Yes.

15         **THE COURT:**  Were you inconvenienced in any way by

16    the events of that day?

17         **PROSPECTIVE JUROR:**  You mean on a personal level?

18         **THE COURT:**  Yes.

19         **PROSPECTIVE JUROR:**  No.

20         **THE COURT:**  Was anyone you know in the

21    neighborhood or elsewhere?

22         **PROSPECTIVE JUROR:**  Well, if you say

23    inconvenienced, some people were frightened.

24         **THE COURT:**  Anyone you know closely?

25         **PROSPECTIVE JUROR:**  Not particularly, no.

1          **THE COURT:**  All right.  You've also said that you

2     followed the news about the January 6th events at the

3     Capitol.

4          **PROSPECTIVE JUROR:**  Yes.

5          **THE COURT:**  And that you've heard or seen news

6     either about the defendant in this case, Mr. Reffitt, or

7     other individuals who were at the Capitol on January 6th.

8     Can you tell us about that?

9          **PROSPECTIVE JUROR:**  Yes.  I'm a person who watches

10    the news.  So I want to be educated and know what is

11    happening in our community and our world.  I didn't know --

12    I don't know any particular person, but I did see the news.

13         **THE COURT:**  Do you recognize Mr. Reffitt, who's

14    seated here with his mask down?

15         **PROSPECTIVE JUROR:**  I do not.

16         **THE COURT:**  All right.  Is there anyone in

17    particular you remember by name, who you've read about or

18    seen on the news?

19         **PROSPECTIVE JUROR:**  You mean besides our, like,

20    Senators and people like that?

21         **THE COURT:**  Right.  I'm talking about, you know,

22    the individuals who breached the Capitol that day or any

23    criminal defendants in particular.

24         **PROSPECTIVE JUROR:**  No, I don't recognize any

25    names.

1        **THE COURT:**  All right.

2        Do you know individuals who were in the Capitol

3    that day, whether they be members of Congress or their

4    staffs or police?

5        **PROSPECTIVE JUROR:**  No, I don't.

6        **THE COURT:**  Have you formed any opinion about the

7    guilt of the people who were involved in the events at the

8    Capitol on January 6th?

9        **PROSPECTIVE JUROR:**  I haven't formed any opinion

10   about individual people.

11       **THE COURT:**  Have you formed an opinion generally

12   about the Capitol events?

13       **PROSPECTIVE JUROR:**  On certain levels, yes.

14       **THE COURT:**  And can you explain a little bit more

15   why that is?

16       **PROSPECTIVE JUROR:**  Well, I wasn't happy to see

17   what happened to our Capitol and to the people who were in

18   it.

19       **THE COURT:**  Understanding that, do you think that

20   you could put your feelings aside about what happened that

21   day and decide this case solely, based on the evidence you

22   hear in the courtroom and the instructions I give you?

23       **PROSPECTIVE JUROR:**  Yes.  I think I could be a

24   very fair juror.  I think each person needs to be evaluated

25   and judged by their own actions.  So I'm not grouping

1    everybody together and painting them with the same brush.

2            **THE COURT:**  All right.  And you understand as

3    Mr. Reffitt sits here, he's presumed innocent.

4            **PROSPECTIVE JUROR:**  Yes.

5            **THE COURT:**  All right.  Ms. Berkower?

6            **MS. BERKOWER:**  Nothing for the government, Your

7    Honor.

8            **THE COURT:**  Mr. Welch?

9            **MR. WELCH:**  No questions.  Thank you.

10           **THE COURT:**  All right.  Thank you, ma'am, very

11   much.

12           **PROSPECTIVE JUROR:**  Oh, I was hoping for more

13   questions.

14           (Prospective juror steps down.)

15           **THE COURT:**  All right.  The next juror will be

16   juror 1009.  That juror has answered yes to questions 2, 3,

17   4 and 19.

18           **COURTROOM DEPUTY:**  Your Honor, juror number 1009.

19           (Prospective juror steps up.)

20           **THE COURT:**  Good afternoon, sir.

21           **PROSPECTIVE JUROR:**  Good afternoon.

22           **THE COURT:**  If you feel comfortable taking off

23   your mask, please do.  And if you could please keep your

24   voice up, the microphone is right there in front of you, so

25   the court reporter can hear you.

 1              **PROSPECTIVE JUROR:**  Okay.

 2              **THE COURT:**  All right.

 3              So you have answered yes to either you or someone

 4    you know has a direct or indirect connection to the events

 5    at U.S. Capitol on January 6th, 2021; is that correct?

 6              **PROSPECTIVE JUROR:**  Yes.

 7              **THE COURT:**  And who is that?

 8              **PROSPECTIVE JUROR:**  So I have two friends who work

 9    on the Capitol in Senate offices.  And then my stepmother is

10    a -- was in the Trump administration.  She was the

11    ambassador to Canada, as well as subsequently the ambassador

12    of the UN.

13              **THE COURT:**  All right.

14              The two friends who you mentioned who were working

15    in the Capitol, were they there on January 6th?

16              **PROSPECTIVE JUROR:**  I'm for sure one of them was.

17    I believe the other one was not on the Capitol that day.

18              **THE COURT:**  Have you spoken to either of them

19    about what happened that day?

20              **PROSPECTIVE JUROR:**  Somewhat, yes.  Not in a ton

21    of detail.

22              **THE COURT:**  And the information you've learned

23    from them, is it specific in nature or the kinds of things

24    that you also read about in the paper?

25              **PROSPECTIVE JUROR:**  The kinds of things I also

1    read about in the paper, yeah.

2         **THE COURT:**  Simply because you know these two

3    individuals, maybe one of whom wasn't there that day but it

4    sounds like one was, would that lead you to favor one side

5    over the other in this case?

6         **PROSPECTIVE JUROR:**  I don't believe so.

7         **THE COURT:**  All right.

8         You've also said yes to question 3, that you

9    followed the news about the January 6th events at the

10   Capitol.  And I am just curious, have you followed the news

11   in a general kind of way or have you done research yourself

12   and stayed on top of the events?

13        **PROSPECTIVE JUROR:**  I would say I am pretty --

14   just interested in politics in general.  I use Twitter often

15   just for reading.  So I'd say I've seen a good amount of the

16   news coverage.  I haven't necessarily sought out anything on

17   this more than any other current event, but I would say I am

18   fairly on top of most of the news.

19        **THE COURT:**  So you follow daily news?

20        **PROSPECTIVE JUROR:**  Yes.

21        **THE COURT:**  All right.

22        You also say that you have seen or heard news

23   about either the defendant, Mr. Reffitt, or other

24   individuals who were at the Capitol on January 6th.  Can you

25   explain that, please?

1          **PROSPECTIVE JUROR:**  Correct.

2          I believe I saw a Tweet just a couple days ago

3   saying that this trial was about to happen.  I did not read

4   anything more than that.  But I did see just an overview of

5   the charges, and that the trial was occurring.  And then

6   I've, you know, like I said, just stayed on top of general

7   news about various defendants.

8          **THE COURT:**  Which defendants in particular?

9          **PROSPECTIVE JUROR:**  Not anybody that I can

10  remember to name, but just the goings on of how -- of who --

11  you know, just of the news, I would say.  Not anything in

12  particular that I can remember.

13         **THE COURT:**  Okay.

14         Anything that you can remember about this case in

15  particular, whether it be hearings or rulings or --

16         **PROSPECTIVE JUROR:**  All I remember was the Tweet

17  had mentioned there was the taking a gun to the Capitol

18  charge, was one of the charges; that's what I remember.

19         **THE COURT:**  Do you remember who sent the Tweet?

20         **PROSPECTIVE JUROR:**  I do not.  It was just on my

21  time -- it was just re-Tweeted into my timeline.  I'm not

22  sure who -- by who.

23         **THE COURT:**  All right.

24         What other sources do you follow in terms of news?

25         **PROSPECTIVE JUROR:**  Primarily Twitter.  And then I

1    follow kind of a broad range of people on Twitter from both

2    sides of the aisle and news, Jake Tapper, and other news

3    sources, I would say.

4             **THE COURT:**  All right.  So you've heard the

5    admonition I gave you in the ceremonial courtroom about not

6    paying attention to headlines and Tweets or anything?

7             **PROSPECTIVE JUROR:**  I've stopped.

8             **THE COURT:**  You stopped?

9             **PROSPECTIVE JUROR:**  Yes.

10            **THE COURT:**  Can you stop the immediate alerts so

11   you are not seeing additional headlines?

12            **PROSPECTIVE JUROR:**  Yes.

13            **THE COURT:**  All right.

14            Anything -- well, based on anything you've read or

15   seen have you formed any fixed views about this case or the

16   events of January 6th?

17            **PROSPECTIVE JUROR:**  I don't think so.  I believe I

18   could -- you know, carry out my duty as a juror to bear a

19   clean mind into the trial.

20            **THE COURT:**  Do you believe you could come into

21   this courtroom and wipe the slate clean of what you've seen

22   and heard on the news and decide the case base solely on

23   what you see and hear in here?

24            **PROSPECTIVE JUROR:**  I do.

25            **THE COURT:**  You understand Mr. Reffitt is presumed

1    innocent as he sits here now?

2          **PROSPECTIVE JUROR:**  Yes.

3          **THE COURT:**  And the government has to prove its

4    case beyond a reasonable doubt to convict him of any of the

5    charges?

6          **PROSPECTIVE JUROR:**  Yes.

7          **THE COURT:**  You also say you, a family member,

8    close friend is a lawyer or a law student or worked in a law

9    office?

10         **PROSPECTIVE JUROR:**  Correct.  I have several

11   friends who are lawyers.  My dad was also a trained lawyer.

12         **THE COURT:**  And what kind of lawyers were they?

13   Your dad and your friends?

14         **PROSPECTIVE JUROR:**  My dad became a general

15   counsel at a company.  He did not practice any law outside

16   of that, and he does not continue to practice law.

17              My cousin-in-law who, you know, I am also friends

18   with is a clerk in the Jag Corps currently in D.C.  And then

19   I have several other friends -- I have a couple other

20   friends that are in law school that I am not quite as close

21   with.

22         **THE COURT:**  Do you talk criminal legal issues with

23   any of those folks?

24         **PROSPECTIVE JUROR:**  I've discussed criminal legal

25   issues with my cousin-in-law in the Jag Corps.  Again, more

1   generally.  Not anything super specific, just out of

2   curiosity of his job and general curiosity about the law.

3                THE COURT:  Have you talked to any of them about

4   this case?

5                PROSPECTIVE JUROR:  I have not.

6                THE COURT:  Not this case, the Capitol events,

7   rather.

8                PROSPECTIVE JUROR:  I have not.

9                THE COURT:  Anything about those conversations

10  that make you feel you can't follow my instructions in this

11  case?

12               PROSPECTIVE JUROR:  No.

13               THE COURT:  All right.

14               Okay.  Ms. Berkower?

15               MS. BERKOWER:  Good afternoon.

16               PROSPECTIVE JUROR:  Good afternoon.

17               MS. BERKOWER:  Just a few follow-up questions for

18  you.  I think you said that your mother -- your stepmother

19  held a political position in the Trump administration?

20               PROSPECTIVE JUROR:  Correct.

21               MS. BERKOWER:  Was she still in that position on

22  January 6th?

23               PROSPECTIVE JUROR:  She was.

24               MS. BERKOWER:  Was she at the Capitol on January

25  6th?

1          **PROSPECTIVE JUROR:**  I'm fairly certain she was

2     not.  We have never discussed anything related to January

3     6th, the day of January 6th, with her.

4          **MS. BERKOWER:**  So you don't know one way or the

5     other whether she was there or not there?

6          **PROSPECTIVE JUROR:**  I'm pretty confident she

7     wasn't.  I am fairly certain she would have been in New

8     York.

9          **MS. BERKOWER:**  Okay.  After January 6th when she

10    was still in that position, was she involved in any of the,

11    like, you know administration-related events in the fall-out

12    of that incident?

13         **PROSPECTIVE JUROR:**  I have not discussed anything

14    related to January 6th with her, so I cannot say for certain

15    either way.

16         **MS. BERKOWER:**  And you said that you follow a

17    number -- you know, you are very interested in politics and

18    you use Twitter and you've seen news about this.

19         **PROSPECTIVE JUROR:**  Uh-huh.

20         **MS. BERKOWER:**  Who on Twitter do you follow that

21    is posting about this January 6th?

22         **PROSPECTIVE JUROR:**  Sure.  So I would say Jake

23    Tapper, Jim Roberts would be another one, Jonah Goldberg,

24    Scott Adams would be another one.  I'd say those are the

25    ones that immediately come to mind.  I follow -- those are

1    the ones that would come immediately to mind that discuss

2    January 6th.

3              **MS. BERKOWER:**  Understood.

4              Did you say whether or not you could recall whose

5    Tweet you saw concerning this particular case?

6              **PROSPECTIVE JUROR:**  I cannot.  I cannot remember.

7    I mean -- if I had to guess it would probably be Jim

8    Roberts, because I know he's been Tweeting about January 6th

9    events more specifically than, I think, the others.  But I

10   can't say for certain whether that was it.

11             **MS. BERKOWER:**  When's the last time you think you

12   saw information on Twitter about January 6th?

13             **PROSPECTIVE JUROR:**  I believe I saw that Tweet two

14   days ago, maybe.  So I would say very recently.

15             **MS. BERKOWER:**  And I know Judge Friedrich asked

16   you if you had formed any fixed views about the events of

17   January 16th (sic) and you said you had not; is that right?

18             **PROSPECTIVE JUROR:**  That's correct.

19             **MS. BERKOWER:**  Just to follow up on that, though,

20   have you formed an opinion about the guilt or innocence of

21   the people involved in that event?

22             **PROSPECTIVE JUROR:**  No.  No, I mean not -- I would

23   say, no.  There's nothing -- I mean, I would say there's

24   nothing that I could determine now based on the guilt or

25   innocence of any single person that was involved in that

1    day.

2              **MS. BERKOWER:**  Have you come to any opinions,

3    though, about the guilt or innocence generally about people

4    who are involved in the events of that day?

5              **PROSPECTIVE JUROR:**  Um, I mean, I would say that

6    probably -- my opinion as it stands now would be that it was

7    people put themselves in a reckless situation by being

8    there.  So I would say that's my general stance on the

9    events of that day.

10             **MS. BERKOWER:**  And it sounds like the events of

11   that day is something you are still interested in; is that

12   right?

13             **PROSPECTIVE JUROR:**  Yeah.  Yes.

14             **MS. BERKOWER:**  So are you going to be able to

15   completely set aside those opinion that people put

16   themselves in a reckless situation by being there when you

17   come to hear evidence in this case?

18             **PROSPECTIVE JUROR:**  I believe so.  I mean, I think

19   for me it -- you know, I -- my -- I believe that I could put

20   that aside due to, I think, the duty I feel as a -- you

21   know, as a citizen.  To be a juror is important, and part of

22   that duty as a citizen.  So I do think that I could put that

23   aside as best as I can.  I mean -- I believe that it would

24   be sufficient enough to be a juror in the case.

25             **MS. BERKOWER:**  Okay.  Just to follow up on that

1    again.

2              **PROSPECTIVE JUROR:**  Yeah.

3              **MS. BERKOWER:**  How confident are you though that

4    you could actually do it.  I know you know it is an

5    important civic duty and you know the judge will ask you to

6    do that.

7              **PROSPECTIVE JUROR:**  Correct.

8              **MS. BERKOWER:**  How confident are you that you

9    could do that?

10             **PROSPECTIVE JUROR:**  I am confident.

11             **MS. BERKOWER:**  You are confident?

12             **PROSPECTIVE JUROR:**  Yes.

13             **MS. BERKOWER:**  You said your father was a general

14   counsel, but I didn't catch what he was a general of.

15             **PROSPECTIVE JUROR:**  It was a company called Mapco,

16   at the time, and has since become -- certainly it's Alliance

17   Research Partners.  He was general counsel probably 30-plus

18   years ago or 20-plus -- at least 20, 25, 30 years ago so.

19   And -- yeah.

20             **MS. BERKOWER:**  May I ask you, how long have you

21   lived in the district?

22             **PROSPECTIVE JUROR:**  I moved in -- so six years.

23   2016 is when I moved.

24             **MS. BERKOWER:**  What is your profession?  I don't

25   think I understood what was listed.

1          **PROSPECTIVE JUROR:**  Yes, so my brothers and I own

2     a professional soccer team in Tulsa, Oklahoma.  And I do the

3     data and tech stuff for that full-time remotely from D.C.

4          **MS. BERKOWER:**  Do you have to travel between here

5     and Oklahoma?

6          **PROSPECTIVE JUROR:**  I do.  We are currently out of

7     season.  I do have travel plans for home opener in March,

8     March -- so in two weeks I was planning on going to our

9     season opener and then for home opener the following

10    weekend.

11         **MS. BERKOWER:**  And, um, given your stepmother's

12    former position in the Trump administration, does your

13    family make political donations?

14         **PROSPECTIVE JUROR:**  They do.

15         **MS. BERKOWER:**  And if you voted to convict the

16    defendant in this case, would you still be welcome at family

17    events?

18         **PROSPECTIVE JUROR:**  I would, yes.

19         **MS. BERKOWER:**  How confident are you?

20         **PROSPECTIVE JUROR:**  I am confident in that.

21         **MS. BERKOWER:**  I see you are smiling.  Can you

22    explain why?

23         **PROSPECTIVE JUROR:**  My father was a major donor to

24    President Trump and other generally more republican-leaning

25    causes, but I don't think that they would put any political

1    affiliations ahead of -- I believe that they are also very

2    duty bound as well about serving the country.  And I don't

3    think that any political affiliations would take precedent

4    over my duty as a juror and any decisions that I make in the

5    courtroom.

6              **MS. BERKOWER:**  Thank you.

7              **THE COURT:**  Mr. Welch?

8              **MR. WELCH:**  No questions.  Thank you.

9              **THE COURT:**  All right.  Thank you, sir.

10             **PROSPECTIVE JUROR:**  Thank you.

11             (Prospective juror steps down.)

12             **THE COURT:**  One moment.  Am I correct that the

13   next juror is 1486?

14             **MR. WELCH:**  I have 1312, Your Honor.

15             **THE COURT:**  1312.  Okay.  I am getting ahead of

16   myself.

17             All right.  1312, this juror said yes to 3 and yes

18   to 4.  Okay.

19             **COURTROOM DEPUTY:**  Juror number 1312.

20             **THE COURT:**  Thank you.

21             (Prospective juror steps up.)

22             **THE COURT:**  Good afternoon, sir.  If you are

23   comfortable doing so, could you take off your mask?

24             **PROSPECTIVE JUROR:**  Of course.

25             **THE COURT:**  Just try to keep your voice up.

1    That's a microphone sitting there in front of you.

2              **PROSPECTIVE JUROR:**  Very good.

3              **THE COURT:**  So you have answered yes to question

4    number 3 and question number 4.  You said you followed the

5    news about the January 6th events at the Capitol; is that

6    right?

7              **PROSPECTIVE JUROR:**  That's correct.

8              **THE COURT:**  In what way have you followed it?

9              **PROSPECTIVE JUROR:**  Just normal newspapers.

10             **THE COURT:**  Okay.  Do you read anything beyond

11   newspapers?  Are you following it on social media?

12             **PROSPECTIVE JUROR:**  No.

13             **THE COURT:**  What about TV?

14             **PROSPECTIVE JUROR:**  No.

15             **THE COURT:**  Have you followed any news accounts

16   concerning specific individuals, including the defendant,

17   Mr. Reffitt, in this case?

18             **PROSPECTIVE JUROR:**  Not at all.

19             **THE COURT:**  And I take it you haven't seen

20   anything in the news or elsewhere about the specific

21   allegations in this case?

22             **PROSPECTIVE JUROR:**  No.  I don't recognize the

23   name at all, no.

24             **THE COURT:**  Okay.  I'm just wondering, based on

25   the news you've reviewed, is this principally at the time of

1    January 6th or have you followed it since that time?

2              **PROSPECTIVE JUROR:**  Just however it comes through

3    in the normal newspapers.

4              **THE COURT:**  Just normal headlines?

5              **PROSPECTIVE JUROR:**  I'm not researching anything.

6    I am just reading whatever gets shared.  Every now and then

7    there is an update.

8              **THE COURT:**  Right.  Occasionally those updates are

9    about specific individuals, but as you sit here you don't

10   recall any names of specific individuals?

11             **PROSPECTIVE JUROR:**  No.

12             **THE COURT:**  Do you recognize Mr. Reffitt sitting

13   here in the courtroom?

14             **PROSPECTIVE JUROR:**  Not at all.

15             **THE COURT:**  Have you formed any opinion about the

16   guilt of the people involved in the Capitol events?

17             **PROSPECTIVE JUROR:**  Specifically in this case, not

18   at all.  But, I mean, I have certainly formed some opinions

19   based on articles I've read previously, yes.

20             **THE COURT:**  All right.  And based on the opinions

21   you formed, do you think that you could put those aside and

22   come into this courtroom and be a fair and impartial juror

23   based solely on what you hear in this courtroom?

24             **PROSPECTIVE JUROR:**  Yeah.  Absolutely.  I know

25   nothing about what this case might involve.

1          **THE COURT:**  You don't have strong feelings or

2     opinions one way or the other that would have you come into

3     this case favoring either the government or the defense?

4          **PROSPECTIVE JUROR:**  No.

5          **THE COURT:**  And you have no opinion about

6     Mr. Reffitt's guilt or innocence?

7          **PROSPECTIVE JUROR:**  I don't know anything about

8     it.  Nope.

9          **THE COURT:**  All right.  Ms. Berkower?

10         **MS. BERKOWER:**  Nothing from the government, Your

11    Honor.  Thank you.

12         **THE COURT:**  Mr. Welch?

13         **MR. WELCH:**  Thank you.  [SHAKES HEAD]

14         **THE COURT:**  All right.  Thank you, sir.

15         (Prospective juror steps down.)

16         **THE COURT:**  So this juror, 1486, answered yes to

17    1, 3, 5 and 18.

18         **COURTROOM DEPUTY:**  Your Honor, juror number 1486.

19         (Prospective juror steps up.)

20         **THE COURT:**  If you could go down to the last --

21    second-to-last seat, right in front of the microphone there.

22    And if -- thank you, sir.  Good afternoon.

23         **PROSPECTIVE JUROR:**  Good afternoon.

24         **THE COURT:**  So looking at your note card here, I

25    see you answered yes to live or work near the Capitol.

1          **PROSPECTIVE JUROR:**  Uh-huh.  I live on First

2    Street, South --

3          **THE COURT:**  Southwest.

4          **PROSPECTIVE JUROR:**  I live near the Capitol.

5          **THE COURT:**  So were you in your home on January

6    6th?

7          **PROSPECTIVE JUROR:**  I was.

8          **THE COURT:**  You were.  I am not super familiar

9    where that is, but could you see the Capitol from your home?

10         **PROSPECTIVE JUROR:**  Not from my home but if you

11   walked up the block to Capitol South Metro, or just in that

12   general area you can see it, yeah.

13         **THE COURT:**  Did you do that that day?

14         **PROSPECTIVE JUROR:**  I did not.

15         **THE COURT:**  You just stayed inside?

16         **PROSPECTIVE JUROR:**  I did.

17         **THE COURT:**  Were you aware the events were going

18   on?

19         **PROSPECTIVE JUROR:**  I was.

20         **THE COURT:**  You were watching them on TV?

21         **PROSPECTIVE JUROR:**  Yes.

22         **THE COURT:**  Were you scared?

23         **PROSPECTIVE JUROR:**  I was afraid.

24         **THE COURT:**  Did you know anyone that was at the

25   Capitol?

1        PROSPECTIVE JUROR:  I did not.

2        THE COURT:  You also mentioned that you followed

3   the news about the January 6th events at the Capitol.

4        PROSPECTIVE JUROR:  Uh-huh.

5        THE COURT:  Is that in a general kind of way or

6   have you tracked specific cases or stayed on top --

7        PROSPECTIVE JUROR:  A general kind of way.

8        THE COURT:  Just headline news?

9        PROSPECTIVE JUROR:  Yeah.

10        THE COURT:  Headline stories?

11        PROSPECTIVE JUROR:  Yes.

12        THE COURT:  How do you tend to get your news about

13   the Capitol events?

14        PROSPECTIVE JUROR:  Just through local news, news

15   sources, cable news, kind of a mixed bag of it all.

16        THE COURT:  All right.  Have you seen or heard

17   anything about this particular case?

18        PROSPECTIVE JUROR:  No, I have not.

19        THE COURT:  Have you seen or heard anything about

20   any individual in particular that you recall?

21        PROSPECTIVE JUROR:  No.

22        THE COURT:  Given how close you were to the

23   Capitol, I have to wonder where whether you formed any

24   opinion about the guilt of the people who were involved in

25   the events at the Capitol.

1          **PROSPECTIVE JUROR:**  Um, I mean, it's an unsavory

2     thing.  I'm not -- um -- I don't know how to answer this.

3     It's just that I didn't care for it.  But in terms of

4     forming an opinion, I mean, I don't -- I guess that's my

5     opinion.  It was not something I would do personally.

6          **THE COURT:**  Right.

7          Well, I'm wondering as you sit here, are you able

8     to put the feelings aside, the opinions, perhaps strong

9     ones, aside, and decide this case fairly and impartially

10    based on the evidence that's presented here in the

11    courtroom?

12         **PROSPECTIVE JUROR:**  Yeah, I'm confident I can do

13    that.

14         **THE COURT:**  You're sure you can kind of wipe the

15    slate clean and look at this case anew?

16         **PROSPECTIVE JUROR:**  Yes.

17         **THE COURT:**  Are you at all concerned as you sit

18    here in the courtroom listening to the evidence you will

19    reliving in your own head how you felt that day?

20         **PROSPECTIVE JUROR:**  Not necessarily.  I mean, I

21    purposely stayed inside.  I mean, I did all I could to not

22    see it or hear it, I think, personally.  So --

23         **THE COURT:**  Did that inconvenience you that day?

24    Were you supposed to go certain places?

25         **PROSPECTIVE JUROR:**  No.

1          **THE COURT:**  All right.

2          You also indicated that you -- you or family

3     members or close friends work in law enforcement; is that

4     right?

5          **PROSPECTIVE JUROR:**  Yes.  I have a brother who is

6     a police officer in Federal Way, Washington.

7          **THE COURT:**  In where?

8          **PROSPECTIVE JUROR:**  Federal Way, Washington.

9          **THE COURT:**  The State of Washington?

10         **PROSPECTIVE JUROR:**  Yes.

11         **THE COURT:**  How long has he been a police officer?

12         **PROSPECTIVE JUROR:**  Twenty-five years.

13         **THE COURT:**  Do you think by virtue of your

14    relationship with your brother, you would be more inclined

15    to give greater weight to the testimony of police who will

16    testify and federal agents who might testify in this case?

17         **PROSPECTIVE JUROR:**  I don't know -- no.  I don't

18    have a super-close relationship with him.  So I don't talk

19    to him about -- I wouldn't talk to him about things like

20    this, I don't think.

21         **THE COURT:**  Have you talked to him about the

22    events of January 6th?

23         **PROSPECTIVE JUROR:**  No.

24         **THE COURT:**  Could you judge the credibility of a

25    police officer, just like you would judge the credibility of

1    any other witness you might see testify?

2              **PROSPECTIVE JUROR:**  Uh-huh.

3         **THE COURT:**  All right.  Ms. Berkower?

4         **MS. BERKOWER:**  Good afternoon.

5         **PROSPECTIVE JUROR:**  Hi.

6         **MS. BERKOWER:**  Very briefly, you just said uh-huh

7    to that last question.

8         **PROSPECTIVE JUROR:**  Okay.

9         **MS. BERKOWER:**  Did you mean yes or no?

10        **PROSPECTIVE JUROR:**  Yes.

11        **MS. BERKOWER:**  You would judge the testimony of a

12   police officer the same as any other witness?

13        **PROSPECTIVE JUROR:**  Yes.

14        **MS. BERKOWER:**  Okay.  Thank you.

15        **PROSPECTIVE JUROR:**  Sorry about that.

16        **MS. BERKOWER:**  No problem.  Thank you.

17        **THE COURT:**  Mr. Welch, any questions?

18        **MR. WELCH:**  No thank you.

19        **THE COURT:**  All right.  Thank you, sir.

20             (Prospective juror steps down.)

21        **THE COURT:**  All right.  Get ready.  There are a

22   lot of yeses on this one, including the mask.  So I'm going

23   to put my mask on.

24             This juror had yes answers to 1, 3, 4, 5, 6, 12,

25   13, 14, 15, 16, 17, 18, 19, 20, 22, 24 and 27.  So I'm going

1    to start with --

2            **MS. BERKOWER:**  Your Honor.  Is that 0313?

3            **THE COURT:**  0313, yes.

4            **MS. BERKOWER:**  Thank you.

5            **THE COURT:**  I'm going to start with questions 22,

6    the hardship, and 27, the reason it's difficult for this

7    juror to serve in this case.  And if there's a need to go

8    on, I will.  If you all agree, give me the signal.

9            **COURTROOM DEPUTY:**  Your Honor, juror number 0313.

10           (Prospective juror steps up.)

11           **THE COURT:**  Good afternoon, ma'am.

12           **PROSPECTIVE JUROR:**  Good afternoon.

13           **THE COURT:**  All right.  I'll ask you to keep your

14   voice up, that's a microphone in front of you, so the court

15   reporter can hear you.

16           **PROSPECTIVE JUROR:**  Of course, ma'am.

17           **THE COURT:**  I'm going to start with your yes

18   answer that serving as a juror would be an extreme hardship.

19   And I'll remind you, if at any point I'm asking questions

20   that you would like to respond to privately, based on some

21   sensitive information, let me know, and we can talk through

22   this headset.

23           **PROSPECTIVE JUROR:**  Thank you.

24           **THE COURT:**  All right.  Is that a question you can

25   answer?

1          **PROSPECTIVE JUROR:**  Yes, ma'am.

2          **THE COURT:**  All right.  Go ahead.

3          **PROSPECTIVE JUROR:**  I'm the primary caregiver for

4     my child.  He's not in before care or after care.  School

5     starts at around 8:45 and ends at 3:15.

6          **THE COURT:**  Okay.  I missed the first part of your

7     answer.  You said you --

8          **PROSPECTIVE JUROR:**  I am the primary caregiver for

9     my child.

10          **THE COURT:**  Okay.

11          **PROSPECTIVE JUROR:**  I'm also the person who takes

12     him to all of the activities, as well as school for drop-off

13     and pick-up.

14          **THE COURT:**  Are you a single mom?

15          **PROSPECTIVE JUROR:**  I am not.

16          **THE COURT:**  Okay.  And does your partner work?

17          **PROSPECTIVE JUROR:**  Yes, he does.

18          **THE COURT:**  Do you also work?

19          **PROSPECTIVE JUROR:**  Yes, I do.

20          **THE COURT:**  Is there anyone else for a short

21     period of time that could help you all with those

22     arrangements?

23          **PROSPECTIVE JUROR:**  Unfortunately, no.

24          **THE COURT:**  You don't have any baby-sitters or

25     anyone else?

1          **PROSPECTIVE JUROR:**  No.

2          **THE COURT:**  All right.

3          What about -- what age is the child?

4          **PROSPECTIVE JUROR:**  Five -- six.

5          **THE COURT:**  Just one child?

6          **PROSPECTIVE JUROR:**  Just one.

7          **THE COURT:**  All right.  You also answered yes to,

8   There is some other reason that it makes it difficult for to

9   you sit fairly and impartially and attentively as a juror.

10          **PROSPECTIVE JUROR:**  Correct.  I work on Capitol

11   Hill.  I feel very strongly about what happened that day.  I

12   had staff that work -- that live nearby as well --

13          **THE COURT:**  You work at the Library of Congress?

14          **PROSPECTIVE JUROR:**  I do.

15          **THE COURT:**  Were you working that day?

16          **PROSPECTIVE JUROR:**  I was but not on site.  I did

17   have staff I asked to come in on that day and staff

18   sheltering in place in their houses.

19          **THE COURT:**  They were sheltered in place where?

20          **PROSPECTIVE JUROR:**  In their houses not very far

21   from the events of the day.

22          **THE COURT:**  I see.  On Capitol Hill.

23          **PROSPECTIVE JUROR:**  Correct.

24          **THE COURT:**  Have you talked to them about the

25   events of that day?

1          **PROSPECTIVE JUROR:**  I had to.  I am their manager.

2     I had to help them process, as well as the fact that they

3     were completely stressed and freaked out.  The events of

4     that day carried on for multiple months afterwards.  I had

5     to help them through that.

6          I was also the person that requested people come

7     in that day.  Only for them to then get turned out into the

8     streets as things were happening, therefore stressing

9     everybody out because they were pretty much in danger at

10    that point.

11         **THE COURT:**  So some of your staff, who you brought

12    in that day to the Library of Congress were --

13         **PROSPECTIVE JUROR:**  Yes, I --

14         **THE COURT:**  Let me finish the question.

15         **PROSPECTIVE JUROR:**  Oh, sorry, ma'am.

16         **THE COURT:**  That's all right.

17         Some of the staff that you ordered to come into

18    the Library of Congress that day were told to evacuate; is

19    that what you are saying?

20         **PROSPECTIVE JUROR:**  Correct.

21         **THE COURT:**  And they were on the street --

22         **PROSPECTIVE JUROR:**  Correct.

23         **THE COURT:**  -- and scared?

24         **PROSPECTIVE JUROR:**  Yes.

25         **THE COURT:**  Did any of them get hurt?  Injured?

1          **PROSPECTIVE JUROR:**  They did not.

2          **THE COURT:**  Do you know anyone who was actually at

3     the Capitol that day?

4          **PROSPECTIVE JUROR:**  Yes.  At the Capitol.  Hold

5     on.  The Capitol Complex, yes.  Not at the Capitol.

6          **THE COURT:**  Okay.  Anyone who was inside the

7     Capitol grounds?

8          **PROSPECTIVE JUROR:**  Yes.  I ordered some -- well,

9     are you considering the Madison Building part of the

10    grounds?

11         **THE COURT:**  Is the part where the Library of

12    Congress is technically part of the Capitol grounds?

13         **PROSPECTIVE JUROR:**  Yes, they are all connected.

14    They are connected underground.

15         **THE COURT:**  Underground.  Okay.  I didn't know

16    that.

17         **PROSPECTIVE JUROR:**  It's completely fascinating.

18    It really is.

19         **THE COURT:**  All right.  Well, aside from the

20    underground connection, I guess what I am getting at is was

21    anyone inside of the Capitol building or right outside the

22    Capitol building where the rioters were?

23         **PROSPECTIVE JUROR:**  I do not know.  I did not ask

24    any further questions.

25         **THE COURT:**  All right.

1          Let me ask you about what you've heard about the

2     Capitol events since that day.

3               **PROSPECTIVE JUROR:**  I don't even know where to

4     start on that question, ma'am.

5               **THE COURT:**  Have you followed these events

6     closely?

7               **PROSPECTIVE JUROR:**  I have followed them very

8     closely, yes.

9               **THE COURT:**  And is that just reading the headlines

10    each day or are you looking for information relating to

11    those --

12              **PROSPECTIVE JUROR:**  No, looking for information.

13              **MR. WELCH:**  Excuse me, Your Honor.  I think the

14    parties have a question for the Court.

15              **THE COURT:**  Okay.  All right.  Bear with us just a

16    moment.

17              (Bench conference.)

18              **THE COURT:**  Can you hear me?

19              **MS. BERKOWER:**  Yes.

20              **THE COURT:**  Is there an agreement this person

21    should be stricken?

22              **MR. WELCH:**  I believe so.

23              **THE COURT:**  Okay.  Thank you.

24              (Bench conference concluded.)

25              **THE COURT:**  All right.  Thank you, ma'am.  You are

1   excused.

2           (Prospective juror steps down.)

3           **THE COURT:**  All right.  This next juror is 0443.

4   He has answered yes to 3, 4, 5, 6, 12, 22 and 27.  Again, I

5   will start with 22 and 27.

6           **COURTROOM DEPUTY:**  Your Honor, juror number 0443.

7           (Prospective juror steps up.)

8           **THE COURT:**  Good afternoon, sir.

9           **PROSPECTIVE JUROR:**  How are you doing, ma'am?

10          **THE COURT:**  You may have a seat.

11          **PROSPECTIVE JUROR:**  How are you doing, Judge?

12          **THE COURT:**  Good to have you here.  If you feel

13  comfortable taking off your mask, feel free to do so.

14          **PROSPECTIVE JUROR:**  Yes, ma'am.

15          **THE COURT:**  All right.  So looking at your card, I

16  see that you answered yes to the question, whether serving a

17  (sic) juror would be an extreme hardship.  And before you

18  answer that, let me remind you, if you would like to give me

19  your answer privately with the Court staff and the parties,

20  we can do that, if it's something sensitive you would rather

21  not talk about in public.

22          **PROSPECTIVE JUROR:**  I would like to talk about it

23  out in public.

24          **THE COURT:**  You are okay?

25          **PROSPECTIVE JUROR:**  Yes, ma'am.

1          **THE COURT:**  All right.  Go ahead.

2          **PROSPECTIVE JUROR:**  I think I am speaking from my

3     heart.  I think that the incident that happened on January

4     the 6th, I think the -- I think everybody that went in there

5     was already guilty for going to the Capitol.  That's my

6     opinion.  That's straight from my heart.  I think everyone

7     should be prosecuted to the max.

8          **THE COURT:**  It sounds like you have a really

9     strong opinion about this.  It would be hard to set aside --

10          **PROSPECTIVE JUROR:**  Correct.

11          **THE COURT:**  -- and come and sit as a fair and

12     impartial juror in this case?

13          **PROSPECTIVE JUROR:**  Correct.

14          **THE COURT:**  It sounds like that you would be

15     leaning in favor of convicting the defendant, regardless of

16     the evidence.

17          **PROSPECTIVE JUROR:**  Correct.

18          **THE COURT:**  All right.  Is there a motion?

19          **MR. WELCH:**  There is.

20          **THE COURT:**  All right.  Thank you, sir.

21          (Prospective juror steps down.)

22          **THE COURT:**  Okay.  The next juror is 0045, has

23     answered yes to 3, 4, 5, 6 -- I think 17 -- 18, 22 and 24.

24     So 24 is the mask.

25          **COURTROOM DEPUTY:**  Your Honor, juror number 0045.

1          (Prospective juror steps up.)

2          **THE COURT:**  Good afternoon, ma'am.

3          **PROSPECTIVE JUROR:**  Good afternoon.

4          **THE COURT:**  If I can ask you to keep your voice

5     up, that's a microphone right there in front of you.

6          I want to ask you first about your yes answer to

7     the question about whether serving as a juror would present

8     an extreme hardship for you.  You indicated that it would.

9     And let me remind you, if you would like to tell me why that

10    is, if it raises sensitive issues that you want to tell me

11    about on the phone with the husher on, we can do that.  Are

12    you comfortable answering that question in public?

13         **PROSPECTIVE JUROR:**  Yes.

14         **THE COURT:**  Okay.  Keep your voice up so the court

15    reporter can hear you, and explain why serving as a juror in

16    this case would present an extreme hardship.

17         **PROSPECTIVE JUROR:**  I didn't think I answered

18    that.  What number was that?

19         **THE COURT:**  That was, I think, 22.  Am I off here?

20    Let me check the number.

21         Yes.  So I had asked you -- I had explained that

22    we expect the presentation of evidence in this case to

23    include -- conclude early next week.  And after the close of

24    evidence, the jury will deliberate until it reaches its

25    decision.  Would serving as a juror in this case be an

1    extreme hardship to you?  You answered yes to that, but did

2    you mean to answer yes to another one you think?

3              **PROSPECTIVE JUROR:**  It probably was another

4    question.

5              **THE COURT:**  Okay.  Let me ask you the next

6    question.  And, again, same point here, that if you'd prefer

7    to answer through the headset, we can do it that way.

8              The next question is 23.  It relates to whether

9    you have health or physical problems that would make it

10   difficult to serve.  Not that one?

11             **PROSPECTIVE JUROR:**  [SHAKES HEAD]

12             **THE COURT:**  All right.  The question before 22

13   was, Have you had an experience as a juror that would affect

14   your ability to be fair and impartial in this trial?

15             **PROSPECTIVE JUROR:**  No.

16             **THE COURT:**  Not that one?

17             **PROSPECTIVE JUROR:**  No.

18             **MR. WELCH:**  So you did answer yes about keeping

19   the mask on.

20             **PROSPECTIVE JUROR:**  Yes.

21             **THE COURT:**  All right.  I also asked a catch-all

22   question, which was, Is there any other reason I have not

23   asked you that might make it difficult for you to sit fairly

24   and impartially and attentively as a juror?  Could that have

25   been the question?

1          **PROSPECTIVE JUROR:**  I don't think so.

2          **THE COURT:**  What about the person outside handing

3     out pamphlets.  Did you mean to answer yes to that?

4          **PROSPECTIVE JUROR:**  No.

5          **THE COURT:**  All right.  I am going to go through

6     the other numbers I've written down, and if something else

7     comes to mind, I want you to let me know.

8          **PROSPECTIVE JUROR:**  Okay.

9          **THE COURT:**  So starting at the top, you've stated

10    that you heard news about the January 6th events.  You've

11    also said that you've heard or seen news about either the

12    defendant in this case or other individuals who were at the

13    Capitol on January 6th.  Can you tell us a little bit more

14    about that?

15         **PROSPECTIVE JUROR:**  I watched the news.  I saw the

16    feed when the incident first happened, with the commotion

17    and everything going on at the Capitol building, how they

18    went in, destroyed the building.  They were just fighting

19    off the police and everything, you know, just terrorizing.

20         **THE COURT:**  Have you seen anything on the news or

21    read anything, heard anything about Mr. Reffitt, the

22    defendant in this case?

23         **PROSPECTIVE JUROR:**  I don't think so.

24         **THE COURT:**  Do you recognize him?  He's seated

25    over there at the table with the mask down?

1          **PROSPECTIVE JUROR:**  I'm not sure.

2          **THE COURT:**  You don't necessarily recognize him?

3          **PROSPECTIVE JUROR:**  No.

4          **THE COURT:**  All right.  Have you formed any

5     opinion about the guilt of the people who were involved in

6     the events of the Capitol on January 6th?

7          **PROSPECTIVE JUROR:**  Yes, by watching the news,

8     yes, I have formed an --

9          **THE COURT:**  Can you keep your voice up?  It's hard

10    to hear you.

11         **PROSPECTIVE JUROR:**  I said, Yes, I have formed an

12    opinion.

13         **THE COURT:**  All right.  And I take it from what

14    you've said so far, this is a negative opinion?

15         **PROSPECTIVE JUROR:**  Yes.

16         **THE COURT:**  And is it fair to say that you think

17    the people who were there on January 6th are guilty; is that

18    what you are saying or something short of that?

19         **PROSPECTIVE JUROR:**  Yes.

20         **THE COURT:**  Sorry?

21         **PROSPECTIVE JUROR:**  Yes.

22         **THE COURT:**  All right.  And you understand that

23    Mr. Reffitt, as he sits here, he's presumed innocent under

24    the law.  Is that an instruction you can follow or do you

25    have such a strong view about the events of that day that

1    you would be unable to follow my instruction?

2              **PROSPECTIVE JUROR:**  I will be unable to follow

3    your instructions.

4              **THE COURT:**  And you understand under our criminal

5    justice system that a defendant cannot be convicted unless

6    and until the government proves the defendant's guilt beyond

7    a reasonable doubt.  Would it be hard for you to follow that

8    instruction?

9              **PROSPECTIVE JUROR:**  Yes.

10             **THE COURT:**  All right.  Is there a motion?

11             **MR. WELCH:**  There is.

12             **THE COURT:**  Any objection on striking?

13             **MS. BERKOWER:**  No, Your Honor.

14             **THE COURT:**  All right.  Thank you, ma'am.

15             (Prospective juror steps down.)

16             **THE COURT:**  All right.  The next juror is 0671,

17   has answered yes to 3, 4 and 17.

18             **COURTROOM DEPUTY:**  Your Honor, juror number 0671.

19             (Prospective juror steps up.)

20             **THE COURT:**  Good afternoon, ma'am.

21             **PROSPECTIVE JUROR:**  Good afternoon.

22             **THE COURT:**  All right.  I see that you answered

23   yes to the question that you follow the news about the

24   January 6th events at the Capitol; is that right?

25             **PROSPECTIVE JUROR:**  Yes.

1          **THE COURT:**  And you've heard or seen news about

2     either Mr. Reffitt, the defendant in this case, or other

3     individuals who were charged in connection with the January

4     6th events; is that right?

5          **PROSPECTIVE JUROR:**  It was the article in this

6     morning's Post, yes.

7          **THE COURT:**  About Mr. Reffitt?

8          **PROSPECTIVE JUROR:**  Yes, about the trial.

9          **THE COURT:**  Have you read other articles or seen

10    news clips that relate to Mr. Reffitt other than the article

11    today?

12         **PROSPECTIVE JUROR:**  No.

13         **THE COURT:**  How about other individuals?  Have you

14    followed any other January 6th defendants closely?

15         **PROSPECTIVE JUROR:**  Not a particular defendant,

16    just the event in general.

17         **THE COURT:**  And when you say you follow the event

18    in general, are you talking about just staying up to date

19    with headlines in the newspapers and on TV or are you

20    looking for articles about the January 6th events?

21         **PROSPECTIVE JUROR:**  No.  I just receive the paper

22    every day so you can't miss it.

23         **THE COURT:**  All right.  Have you formed an opinion

24    about the guilt of people who were involved in the January

25    6th events?

1          **PROSPECTIVE JUROR:**  No, not particularly.

2          **THE COURT:**  Despite what you've read, despite what

3    you seen on TV, would you be able to put all of that aside

4    and come in and decide whether Mr. Reffitt is innocent or

5    guilty, based on the evidence presented in this case?

6          **PROSPECTIVE JUROR:**  I'd have to look at the facts

7    for the individual and not for the group in total.

8          **THE COURT:**  So you think you could put aside what

9    you've seen and read already and just focus on what's

10   presented in this courtroom?

11         **PROSPECTIVE JUROR:**  Yes, because I know nothing

12   about him.

13         **THE COURT:**  All right.  And you understand that as

14   he sits here, he is presumed innocent under the law?

15         **PROSPECTIVE JUROR:**  That's true.

16         **THE COURT:**  And you understand that?

17         **PROSPECTIVE JUROR:**  Yes.

18         **THE COURT:**  And you understand that he could not

19   be convicted of any of the charges unless and until the

20   government proved him guilty beyond a reasonable doubt?

21         **PROSPECTIVE JUROR:**  Yes.

22         **THE COURT:**  And you wouldn't have any trouble

23   following that instruction?

24         **PROSPECTIVE JUROR:**  No.

25         **THE COURT:**  All right.  You also stated that you

1    have some strong views on firearms?

2              **PROSPECTIVE JUROR:**  Yes.

3              **THE COURT:**  And does that -- given your strong

4    views about firearms, does it make you feel like you would

5    favor one side or the other in this case?  There are, as I

6    said earlier this morning, allegations of firearms in this

7    case.  Would that create a problem for you serving on the

8    jury?

9              **PROSPECTIVE JUROR:**  No.  I personally am not in

10   favor of guns but, you know, that's -- I don't think a gun

11   in Texas is exactly the issue that we are here for today so

12   until you see the facts of gun ownership is just ubiquitous

13   in this country.

14             **THE COURT:**  All right.

15             Well, you understand that the indictment charging

16   Mr. Reffitt with possessing firearms is not evidence in this

17   case.

18             **PROSPECTIVE JUROR:**  Okay.

19             **THE COURT:**  You understand that?

20             **PROSPECTIVE JUROR:**  Right.

21             **THE COURT:**  So would you weigh the evidence in

22   deciding whether to convict him of gun charges and follow

23   the instructions that I give you?

24             **PROSPECTIVE JUROR:**  Yes.  I mean, I understand.

25             **THE COURT:**  All right.  Ms. Berkower?

1          **MS. BERKOWER:**  Good afternoon.

2          **PROSPECTIVE JUROR:**  Good afternoon.

3          **MS. BERKOWER:**  May I ask, do you currently work?

4          **PROSPECTIVE JUROR:**  Yes, I do.

5          **MS. BERKOWER:**  What is your profession or

6    occupation?

7          **PROSPECTIVE JUROR:**  I'm an administrative

8    assistant for a non-profit.

9          **MS. BERKOWER:**  Can you say which non-profit that

10   is?

11         **PROSPECTIVE JUROR:**  Sure.  Order of the Eastern

12   Star.

13         **MS. BERKOWER:**  Thank you.

14         **THE COURT:**  Mr. Welch, any questions?

15         **MR. WELCH:**  No, thank you.

16         **THE COURT:**  All right.  Thank you, ma'am.

17         Oh, one other thing before you go.  I just want to

18   make sure.  I assume that you saw on the jury questionnaire

19   that you don't have to serve because of your age.  We are

20   delighted you are here.  I just want to make sure that you

21   know that you have the option not to serve.

22         **PROSPECTIVE JUROR:**  I know.

23         **THE COURT:**  Okay.  All right.  Thank you for being

24   here.

25         **PROSPECTIVE JUROR:**  Next time --

1          (Prospective juror steps down.)

2          **THE COURT:**  All right.  The next juror didn't

3    answer yes to any questions.

4          **COURTROOM DEPUTY:**  What number is that, Your

5    Honor?

6          **THE COURT:**  1566.

7          **COURTROOM DEPUTY:**  Juror number 1566.

8          (Prospective juror steps up.)

9          **THE COURT:**  One closer.  This way.  Right in front

10   of the microphone.  There you go.  Right there.  And if you

11   are comfortable taking off your mask, please do.

12         Good afternoon.

13         **PROSPECTIVE JUROR:**  Good afternoon.

14         **THE COURT:**  All right.  So you haven't answered

15   yes to any of my questions.

16         **PROSPECTIVE JUROR:**  No.  None of the questions

17   pertained to me, no.

18         **THE COURT:**  Really?  So you have not heard any

19   news about the January 6th events at the Capitol?

20         **PROSPECTIVE JUROR:**  I did hear about it, but I

21   didn't -- I wasn't involved with it.

22         **THE COURT:**  You weren't tracking it closely?

23         **PROSPECTIVE JUROR:**  No, ma'am.

24         **THE COURT:**  You were aware of the events that

25   happened on January 6th, 2021?

1                    **PROSPECTIVE JUROR:**  Yes.

2                    **THE COURT:**  All right.  And you did see news about

3      it on TV or in the newspaper?

4                    **PROSPECTIVE JUROR:**  Only on TV in passing.  I

5      didn't get any names involved in the cases or anything like

6      that.

7                    **THE COURT:**  All right.

8                    Did you pay attention to that news close to

9      January 6th or have you followed it since then?

10                   **PROSPECTIVE JUROR:**  I haven't because the media

11     sensationalizes things.  So I don't know what was true or

12     untrue.  So I didn't take --

13                   **THE COURT:**  You haven't been following the news

14     reporting about those events closely?

15                   **PROSPECTIVE JUROR:**  No.  No, Your Honor.

16                   **THE COURT:**  All right.

17                   I reviewed a number of instructions in the other

18     room this morning, instructions about things like the

19     presumption of innocence, that defendants are presumed

20     innocent under the law.

21                   **PROSPECTIVE JUROR:**  Yes.  Yes.

22                   **THE COURT:**  Would you have any problem following

23     that instruction or any of the other instructions I

24     mentioned?

25                   **PROSPECTIVE JUROR:**  I do not.

1          **THE COURT:**  All right.

2          **PROSPECTIVE JUROR:**  I do not have any problem with

3     it.

4          **THE COURT:**  And you don't live near the Capitol or

5     you don't work near the Capitol?

6          **PROSPECTIVE JUROR:**  No, ma'am.

7          **THE COURT:**  Would you think you could come into

8     this courtroom and be neutral for both sides?  Not

9     predisposed towards the government or the defense in this

10    case?

11         **PROSPECTIVE JUROR:**  I can be neutral.

12         **THE COURT:**  You could decide this case based on

13    the evidence you hear in the courtroom and the instructions

14    I provide?

15         **PROSPECTIVE JUROR:**  Yes, Your Honor.

16         **THE COURT:**  All right.  Ms. Berkower?

17         **MS. BERKOWER:**  Good afternoon.

18         **PROSPECTIVE JUROR:**  Good afternoon.

19         **MS. BERKOWER:**  You said a moment ago you think the

20    media has sensationalized things, and you didn't know what

21    was true and not true.  What do you mean by, "the media has

22    sensationalized things"?

23         **PROSPECTIVE JUROR:**  They can make things larger

24    than they actually are.

25         **MS. BERKOWER:**  And are there particular sources

1    you feel have sensationalized things?  News sources?

2            **PROSPECTIVE JUROR:**  No.  No particular case.  It's

3    just that I feel that they do this to get views and, you

4    know, that type of thing.

5            **MS. BERKOWER:**  And are there particular TV or

6    radio or podcast or online sites that you feel have

7    particularly sensationalized things here?

8            **PROSPECTIVE JUROR:**  No, just the news in general.

9            **MS. BERKOWER:**  What channel news do you watch?

10           **PROSPECTIVE JUROR:**  Channel 7, occasionally, to

11    look at the weather.  Really that's it.  In passing in the

12    morning I have the TV on.

13           **MS. BERKOWER:**  Anything online as well for news?

14           **PROSPECTIVE JUROR:**  No.

15           **MS. BERKOWER:**  Okay.  All right.  Thank you.

16           **THE COURT:**  Mr. Welch?

17           **MR. WELCH:**  No questions.  Thank you.

18           **THE COURT:**  All right.  Thank you, ma'am.

19           **PROSPECTIVE JUROR:**  Thank you.

20           (Prospective juror steps down.)

21           **THE COURT:**  All right.  The next juror is 1670.

22    And this juror has marked yes to the mask question and to

23    the -- question 24 and 27.

24           **COURTROOM DEPUTY:**  Your Honor, are you ready?

25           **THE COURT:**  Yes.

1          **COURTROOM DEPUTY:**  Juror number 1675.

2          (Prospective juror steps up.)

3          **THE COURT:**  Good afternoon.

4          **PROSPECTIVE JUROR:**  Good afternoon.

5          **THE COURT:**  If I can ask you to keep your voice up

6     and speak into that microphone that's right in front of you,

7     that would be helpful.

8          **PROSPECTIVE JUROR:**  Good afternoon.

9          **THE COURT:**  All right.  I see that you've answered

10    yes to the question that there is some other reason that

11    makes it difficult for you to sit fairly and impartially and

12    attentively as a juror.

13          And before you answer why you said yes to that,

14    let me remind you that if you'd like to give your answer to

15    this question on the headset with the husher on because it

16    would reveal private information, you may do so.  Are you

17    comfortable explaining why you answered yes to that in

18    public?

19          **PROSPECTIVE JUROR:**  Well, can you repeat that

20    question?

21          **THE COURT:**  So the question said -- the question

22    you answered yes to or just what I asked you now?

23          **PROSPECTIVE JUROR:**  The one you said I answered

24    yes to.

25          **THE COURT:**  The one I asked you this morning?

1          **PROSPECTIVE JUROR:**  Yes.

2          **THE COURT:**  Okay.  Let me actually read the

3     question.  I don't want to -- all right.

4          So what I said this morning was, "My final

5     question is what I call my catch-all question.  This asks

6     whether there is any other reason that I've not asked about

7     that might make it difficult for you to sit fairly,

8     impartially and attentively as a juror.  Perhaps you have a

9     religious, moral or philosophical reason or strong personal

10    or political beliefs that you believe would make it hard for

11    you to be a fair and impartial juror.  In sum, is there some

12    reason that I have not already mentioned that would make it

13    difficult for you to sit as a fair and impartial juror in

14    this case?"

15         Did you mean to say, yes, to that question?

16         **PROSPECTIVE JUROR:**  No.

17         **THE COURT:**  You did not.  Okay.

18         Let me ask you some of the questions surrounding

19    that.  I know you were uncomfortable with me and the

20    attorneys taking the mask off.  Right?

21         **PROSPECTIVE JUROR:**  Yes.

22         **THE COURT:**  Okay.  Let me see what -- so there was

23    -- the question right before that question I just asked you

24    was, I said that I understood someone outside was passing

25    out a pamphlet and did you read the pamphlet?  Did you read

1    that?

2              **PROSPECTIVE JUROR:**  Not all the way.  I didn't

3    read the whole thing.

4              **THE COURT:**  Sorry.  I can't hear you.

5              **PROSPECTIVE JUROR:**  I didn't read the whole thing.

6              **THE COURT:**  You read part of it, though?

7              **PROSPECTIVE JUROR:**  Yes.

8              **THE COURT:**  All right.  Is that why you think you

9    answered yes, because of the pamphlet question?

10             **PROSPECTIVE JUROR:**  Why I answered yes to --

11             **THE COURT:**  To that question I just asked you

12   because you read part of it?

13             **PROSPECTIVE JUROR:**  Regarding the face mask?

14             **THE COURT:**  No, no, the pamphlet.  The pamphlet.

15   I'm sorry.  I am being really confusing here.

16             **PROSPECTIVE JUROR:**  At first you were saying the

17   other question.

18             **THE COURT:**  I'm sorry.  I am jumbling it all up.

19             Here is my question:  Did someone hand you a

20   pamphlet out there?

21             **PROSPECTIVE JUROR:**  A paper, yes.

22             **THE COURT:**  You read part of it?

23             **PROSPECTIVE JUROR:**  A little bit, yes.

24             **THE COURT:**  What did you read on the pamphlet?  Do

25   you remember?

1          **PROSPECTIVE JUROR:**  It was kind of -- no, not all

2    of it, no.

3          **THE COURT:**  Do you remember any of it?  I know

4    there was a lot of tiny print.  You don't have to get it out

5    right now.

6          **PROSPECTIVE JUROR:**  This paper right here?

7          **THE COURT:**  Yeah.  No, I don't want you to read

8    it.  I don't want you to read it.  But I'm curious if you

9    remember what you read.

10          **PROSPECTIVE JUROR:**  No, not quite.

11          **THE COURT:**  Not quite.  All right.

12          Well, let me say this:  You understand that if you

13    are selected as a juror in this case, that you will need to

14    decide this case based only on the evidence that's presented

15    in the courtroom and the instructions I give you.  Do you

16    understand that?

17          **PROSPECTIVE JUROR:**  Yes.

18          **THE COURT:**  And I will give you a number of

19    instructions in this trial, if you are selected as a juror.

20    I mentioned a few of them earlier this morning.  For

21    example, I explained that the defendant in a criminal case,

22    like Mr. Reffitt here, the defendant is presumed to be

23    innocent under the law.  Do you understand that?

24          **PROSPECTIVE JUROR:**  Yes.

25          **THE COURT:**  As he sits here now, he is innocent

1    unless and until he is proven guilty beyond a reasonable

2    doubt.  Do you understand that?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  And would you have any trouble

5    following that instruction if you were picked to serve as a

6    juror in this case?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  Is there any reason why you think you

9    might not be able to be fair and impartial to both sides in

10   this case?  Both the defense and the government.

11             PROSPECTIVE JUROR:  I don't --

12             THE COURT:  Do you think you could be fair and

13   neutral?

14             PROSPECTIVE JUROR:  Fair, yes.

15             THE COURT:  To both sides.

16             PROSPECTIVE JUROR:  Okay.  I can be fair, yes.

17             THE COURT:  You do.  Okay.

18             You did not answer yes to the question, "You've

19   heard news about the January 6th Capitol events."  Do you

20   know about what happened on January 6th, 2021?

21             PROSPECTIVE JUROR:  When everybody was climbing

22   over the walls.

23             THE COURT:  At the Capitol?  You heard about that

24   event?

25             PROSPECTIVE JUROR:  I heard a little bit.  I

1    didn't want to put exactly yes.  I didn't hear everything

2    but I heard a little.

3              **THE COURT:**  A little bit.  On the news?

4              **PROSPECTIVE JUROR:**  Yes.

5              **THE COURT:**  You weren't anywhere near the Capitol

6    that day?

7              **PROSPECTIVE JUROR:**  No.

8              **THE COURT:**  Do you live or work near the Capitol?

9              **PROSPECTIVE JUROR:**  No.  I work for PG County

10   Public Schools and I work for Costco.

11             **THE COURT:**  All right.

12             Based on the that little that you saw on the news,

13   have you formed any opinion about what happened that day?

14             **PROSPECTIVE JUROR:**  I thought it was crazy, the

15   fact that, you know, you see --

16             **THE COURT:**  Can you keep your voice up a little

17   bit.  It's hard to hear you through the mask.

18             **PROSPECTIVE JUROR:**  I'm a little nervous too.

19   It's my first time.

20             **THE COURT:**  I understand.

21             **PROSPECTIVE JUROR:**  I thought it was actually

22   crazy for what I saw, because I never seen it before.

23             **THE COURT:**  All right.

24             **PROSPECTIVE JUROR:**  I didn't think it was

25   appropriate.

1        **THE COURT:**  Do you think it would be possible for

2    you to put your feelings about what happened that day aside

3    and come to this courtroom with a clear mind and decide

4    Mr. Reffitt's guilt or innocence based only on what you hear

5    in the courtroom?

6        **PROSPECTIVE JUROR:**  I mean, I'm not going to lie,

7    yeah, but at the same time I would be nervous a little bit

8    too.

9        **THE COURT:**  No.  I definitely don't want you to

10    lie.  You are under oath now.  Right?  I appreciate you

11    trying to be as honest as you can.

12        When you say, "I don't want to lie," are you

13    saying it would be a little bit difficult to put everything

14    out of your mind?  Is that what you mean when you say, "It

15    would be a little bit difficult"?

16        **PROSPECTIVE JUROR:**  I'm saying -- how do I explain

17    it?  Of course, I'm going to tell the truth, but at the same

18    time while you are telling the truth, you just don't know

19    what the next person is capable of or what could happen to

20    cause -- of the answer that you give.  Do you understand

21    what I am saying?

22        **THE COURT:**  Are you nervous about serving as a

23    juror just because you've never done it before?

24        **PROSPECTIVE JUROR:**  I never done it before.

25        **THE COURT:**  Does that make you nervous?

1          **PROSPECTIVE JUROR:**  Yes, a little bit.

2          **THE COURT:**  Are you nervous about that?  Are you

3 nervous about whether you can be fair?

4          **PROSPECTIVE JUROR:**  I'm nervous about both.

5          **THE COURT:**  You're nervous about whether you can

6 be fair as well as whether you can serve as a juror?

7          **PROSPECTIVE JUROR:**  Yes.

8          **THE COURT:**  And is that because you have such

9 strong views about what happened on January 6th?

10          **PROSPECTIVE JUROR:**  Yes.

11          **THE COURT:**  And knowing what you know about what

12 happened that day, do you come into the courtroom leaning

13 towards the prosecution in this case because you think it

14 was wrong?

15          **PROSPECTIVE JUROR:**  Do I come into the courtroom

16 leaning?

17          **THE COURT:**  Do you come to court favoring the

18 government or the prosecution over the defense because of

19 the views that you have about January 6th or do you come to

20 Court open to hearing both sides and judging this case

21 fairly and impartially?

22          **PROSPECTIVE JUROR:**  I would judge it fairly.

23          **THE COURT:**  Okay.  All right.  Ms. Berkower?

24          **MS. BERKOWER:**  Good afternoon.

25          **PROSPECTIVE JUROR:**  Good afternoon.

1          **MS. BERKOWER:**  Just a few follow-up questions

2     about that paper that you got handed outside the courthouse.

3          **PROSPECTIVE JUROR:**  Yes.

4          **MS. BERKOWER:**  So did you talk to the person who

5     handed it to you?

6          **PROSPECTIVE JUROR:**  No.

7          **MS. BERKOWER:**  So they just gave it to you and you

8     took it?

9          **PROSPECTIVE JUROR:**  Yes, pretty much.

10         **MS. BERKOWER:**  And why did you take it?

11         **PROSPECTIVE JUROR:**  She said, Take this paper.

12    This is what --

13         **THE COURT:**  Sir, can you keep your voice up?  I'm

14    having a hard time hearing you.

15         **PROSPECTIVE JUROR:**  Basically gave me the paper

16    and telling me this is what I need to read -- I didn't read

17    the whole thing, that's what I was saying.  Basically

18    telling me this is the paper you need to have and you need

19    to read.  I followed by that.

20         **MS. BERKOWER:**  I'm sorry.  I will put my mask back

21    on.  I'm sorry about that.

22         Okay.  He said, This is what you need.  Was it a

23    man or a woman?  Did you say he?  The person who handed it

24    to you.

25         **PROSPECTIVE JUROR:**  Yes.  Yes.

1       **MS. BERKOWER:**  He said, This is what you need to

2    know to be a juror; is that what he said?  Is that what I

3    heard you say?

4       **PROSPECTIVE JUROR:**  Is this -- is this the paper

5    you are talking about right here?  Can I take it out?

6       **MS. BERKOWER:**  I think before you said you got

7    handed a piece of paper outside the building before you came

8    in.

9       **PROSPECTIVE JUROR:**  Can I take it out?

10      **MS. BERKOWER:**  Sure.

11      **THE COURT:**  Sir, you can take it out and show it

12   to us.

13      **PROSPECTIVE JUROR:**  Is this the paper?  United

14   States District Court for the District of Columbia.

15      **THE COURT:**  No.

16      **MS. BERKOWER:**  I think we thought you were talking

17   about a different paper.

18      **THE COURT:**  Sorry, sir.  There was a different

19   piece of paper that we thought that you had received.  That

20   was a piece of paper given to you by the court?

21      **PROSPECTIVE JUROR:**  Yes.

22      **THE COURT:**  Okay.  All right.  You can read that

23   paper.  Sorry about that.

24      **MS. BERKOWER:**  Okay.  In that case, I'm sorry for

25   the confusion, and I have no further questions.  Thank you.

1          **PROSPECTIVE JUROR:**  That's why I was kind of --

2    I'm sorry.  I was confused.  I am nervous.

3          **THE COURT:**  I understand.  We just heard that

4    someone was handing pamphlets out.  And that's what I

5    thought you were referring to.  I should have asked to see

6    it earlier.

7          Let me ask you before I give Mr. Welch a chance to

8    ask you questions, Do you recognize Mr. Reffitt in the

9    courtroom?  Have you seen him on TV or the newspaper?  The

10   defendant, do you see him with the mask down over there?

11   Have you seen him on TV or anything?

12         **PROSPECTIVE JUROR:**  I don't recall seeing

13   Mr. Reffitt.

14         **THE COURT:**  All right.  Well, let me just ask you,

15   No matter what you've seen, what you've heard about what

16   happened at the Capitol on January 6, and no matter what

17   opinions you have, can you put all of that aside and decide

18   this case based only on the evidence that you hear in the

19   courtroom and the instructions I give you?

20         **PROSPECTIVE JUROR:**  Yes.

21         **THE COURT:**  Okay.  Mr. Welch?

22         **MR. WELCH:**  No questions.  Thank you.

23         **THE COURT:**  All right.  Thank you, sir.

24         **PROSPECTIVE JUROR:**  Okay.  Sorry for the

25   difficulties.

1      **THE COURT:**  No.  No.

2          (Prospective juror steps down.)

3      **THE COURT:**  All right.  The next juror is 0 --

4   that was 1670.  Right?

5      **COURTROOM DEPUTY:**  That's correct, Judge.

6      **THE COURT:**  So 35 -- 0355, yes to 1, 3 and 4.

7      **COURTROOM DEPUTY:**  0355.

8          (Prospective juror steps up.)

9      **THE COURT:**  Good afternoon, ma'am.  If you are

10  comfortable taking off your mask, you may.

11         All right.  You've answered yes to the question

12  that you live or work at or near the U.S. Capitol; is that

13  right?

14     **PROSPECTIVE JUROR:**  Yes.

15     **THE COURT:**  And which is it?

16     **PROSPECTIVE JUROR:**  Third and E, Southwest, where

17  I work.

18     **THE COURT:**  Where do you work?

19     **PROSPECTIVE JUROR:**  NASA headquarters.

20     **THE COURT:**  All right.  Can you see the Capitol

21  from where you work?

22     **PROSPECTIVE JUROR:**  Not in my office.  Maybe

23  certain floors and certain windows, but I haven't spent much

24  time there.

25     **THE COURT:**  It's pretty close to the Capitol?

1      **PROSPECTIVE JUROR:**  Yes.  We are near the Ford

2   House of Representatives building.

3      **THE COURT:**  Were you working on January 6th?

4      **PROSPECTIVE JUROR:**  I was teleworking.

5      **THE COURT:**  From home?

6      **PROSPECTIVE JUROR:**  Correct.

7      **THE COURT:**  All right.

8      Did you know anyone who was -- were the people in

9   your office that day working?

10      **PROSPECTIVE JUROR:**  There were some people.  Most

11  people had been working remotely since the pandemic.

12      **THE COURT:**  Did you talk to them about the events

13  of January 6th?

14      **PROSPECTIVE JUROR:**  I don't think that I have

15  spoken to anyone who was actually in the building.

16      **THE COURT:**  What about anyone who was in actual

17  Congress that day?

18      **PROSPECTIVE JUROR:**  No.

19      **THE COURT:**  You mentioned that you have followed

20  the news about the January 6th events at the Capitol.  Do

21  you track the stories about it or do you just read the

22  headlines as they come up when you read the news generally?

23      **PROSPECTIVE JUROR:**  I don't actively track it.  I

24  see the headlines come up.  If it's a story that seems

25  interesting, I click on it.  But more passively than

1    anything, I would say.

2             **THE COURT:**  This tends to be online?

3             **PROSPECTIVE JUROR:**  Sometimes online.  Sometimes

4    on television news.  Sometimes on NPR, radio stations.

5             **THE COURT:**  All right.  Have you heard or read or

6    seen anything about Mr. Reffitt, the defendant, in this

7    case?

8             **PROSPECTIVE JUROR:**  Not that I'm aware of.

9             **THE COURT:**  What about other individuals, specific

10   individuals, who have been charged in connection with the

11   January 6th events?

12            **PROSPECTIVE JUROR:**  I don't recall names but I

13   have seen stories about individuals.

14            **THE COURT:**  Can you tell us in general what those

15   stories have related to?

16            **PROSPECTIVE JUROR:**  There's some of the more, I

17   guess, photographed ones that have been on the news that

18   would -- specific individuals that there have been

19   continuing coverage of.  I think that there was one recently

20   but I don't recall the details of that particular story or

21   case.

22            **THE COURT:**  Based on what you've seen and heard,

23   have you formed any opinions about the guilt of those who

24   were involved in the January 6 events?

25            **PROSPECTIVE JUROR:**  Not holistically or

1      deliberately, I guess, or systematically.

2              **THE COURT:**  All right.  If not holistically or

3      systematically, have you individually formed any opinions on

4      individuals' guilt or innocence?

5              **PROSPECTIVE JUROR:**  I would say that I haven't,

6      you know, thoroughly looked at all of the details for each

7      case to have a solid opinion one way or the other.

8              **THE COURT:**  Do you have such strong feelings about

9      the events of that day that you could not come into this

10     courtroom and be fair and impartial if you were selected as

11     a juror in this case?

12             **PROSPECTIVE JUROR:**  I'd like to believe that I can

13     be fair and impartial.

14             **THE COURT:**  You think you would come in as a

15     neutral juror, open to hearing the evidence that's presented

16     here in the courtroom and putting aside anything you may

17     have seen or heard before and judging this case solely based

18     on what happens in this courtroom and the instructions I

19     give you?

20             **PROSPECTIVE JUROR:**  Yes, I would like to think so.

21             **THE COURT:**  All right.  Ms. Berkower?

22             **MS. BERKOWER:**  Nothing from the government, Your

23     Honor.

24             **THE COURT:**  Mr. Welch?

25             **MR. WELCH:**  No questions.  Thank you.

1          **THE COURT:**  All right.  Thank you, ma'am.

2          (Prospective juror steps down.)

3          **THE COURT:**  All right.  The next juror 1747, yes

4    answers to 3, 4, 5, 6, 17, 18, 22, 27.

5          I'll start with 22.

6          **COURTROOM DEPUTY:**  Your Honor, juror number 1747.

7          (Prospective juror steps up.)

8          **THE COURT:**  Good afternoon, ma'am.  How are you?

9          **PROSPECTIVE JUROR:**  Fine.

10         **THE COURT:**  Good.  I wanted to ask you about your

11   yes answer to question 22, which indicated that serving as a

12   juror would present an extreme hardship to you.  Are you

13   comfortable answering that question publicly or would you

14   prefer to do it on the headset?

15         **PROSPECTIVE JUROR:**  I can do it publicly.

16         **THE COURT:**  Okay.

17         **PROSPECTIVE JUROR:**  I'm the primary -- the

18   designated person with my niece.  Because her schedule is

19   kind of flexible, I am the primary contact to pick up her

20   daughter from daycare -- from school.  So she has no one

21   else to pick her up.

22         My schedule is kind of flexible, where her

23   schedule is not flexible.  She would have to take off work

24   and everything, which would, you know, be a hardship on her.

25   So my schedule is kind of flexible.  I can take leave and

1    stuff because I work for the government so that would kind

2    of help her with her schedule and not taking off and

3    everything like that for financial hardship for her on her

4    side.

5            **THE COURT:**  And how old is her daughter?

6            **PROSPECTIVE JUROR:**  Six.  And they get out of

7    school at 2.

8            **THE COURT:**  All right.  Is there an after-school

9    program that the daughter could attend?

10           **PROSPECTIVE JUROR:**  Yes, up to 5 p.m. but she

11   don't get off work until 7 or 8:00.

12           **THE COURT:**  And where is her niece in school?

13           **PROSPECTIVE JUROR:**  My niece's school is in

14   Maryland.  She is in Avalon Elementary School in Fort

15   Washington, Maryland.

16           **THE COURT:**  All right.  And there is no other

17   family member or friend who might be able to make

18   arrangements to pick her up, for a short period of time, if

19   you were asked to serve on this jury?

20           **PROSPECTIVE JUROR:**  Everybody works 12-hour

21   shifts.  Her father, which is my brother -- both

22   grandparents are in law enforcement.  They have 12-hour

23   shifts.  Even her ex-husband, he has a 12-hour shift.  And

24   he is in the law enforcement.  So everybody's shift is kind

25   of --

1          **THE COURT:**  And the 12-hour shifts are always

2     during the day rather than the night?

3          **PROSPECTIVE JUROR:**  Yeah, 7 a.m. to 7 p.m. or 6

4     a.m. to 6 p.m.

5          **THE COURT:**  But there is after-care until 5?

6          **PROSPECTIVE JUROR:**  Yes.

7          **THE COURT:**  Okay.  All right.  Well, let me run

8     through some of these other questions as well that I have

9     for you.

10          **PROSPECTIVE JUROR:**  Okay.

11          **THE COURT:**  You mentioned that you have followed

12    the news about the January 6th events.

13          **PROSPECTIVE JUROR:**  Yes.

14          **THE COURT:**  And you've seen news either about the

15    defendant, Mr. Reffitt, or about other individuals who were

16    at the Capitol on January 6th.  Can you tell us in kind of a

17    general way what you've seen or heard on the news?

18          **PROSPECTIVE JUROR:**  Well, basically just seeing

19    the videos, the commentaries that I've seen on the news

20    about who was involved in the insurgence, and the text, and

21    who was involved and what happened.  Certain individual who

22    was at the case -- who had came on television that I see on

23    different networks.

24          **THE COURT:**  Is this around the time of the January

25    6th events or have you continued to follow it since then?

1          **PROSPECTIVE JUROR:**  Off and on this year.  But

2      last year, yes.  When it happened, yes, I was following it

3      rigorously, to see what was going on.

4          **THE COURT:**  Did you follow it closely?  Did you

5      track individual cases?

6          **PROSPECTIVE JUROR:**  No.

7          **THE COURT:**  And have you followed it closely since

8      then?

9          **PROSPECTIVE JUROR:**  No.

10         **THE COURT:**  Based on what you've seen or heard,

11     have you formed any opinion about the guilt of those who

12     were involved in the January 6th events at the Capitol?

13         **PROSPECTIVE JUROR:**  Yes.

14         **THE COURT:**  And what about Mr. Reffitt in

15     particular?

16         **PROSPECTIVE JUROR:**  Based on what I saw on news

17     and stuff, you know, I don't feel like I have a biased

18     opinion.  I just feel that he would be, in my opinion,

19     guilty, based on what happened at the Capitol.

20         **THE COURT:**  And that's Mr. Reffitt in particular?

21         **PROSPECTIVE JUROR:**  No, anyone who was involved at

22     the insurgence on January 6th.

23         **THE COURT:**  So you heard me earlier this morning

24     when I said that a defendant comes to court presumed

25     innocent by law; that's an instruction you would hear.

1      **PROSPECTIVE JUROR:**  Yeah.

2      **THE COURT:**  And that a defendant can't be

3   convicted unless and until the government proves its case

4   beyond a reasonable doubt.  Would you have a hard time

5   following my instructions?

6      **PROSPECTIVE JUROR:**  Listening, I think I probably

7   would because -- I mean, I understand your question, but I

8   just feel that on that day I don't think I could.

9      **THE COURT:**  So you think you'd come into this case

10   kind of favoring the government's side?

11      **PROSPECTIVE JUROR:**  Yes.

12      **MR. WELCH:**  Your Honor, I have a question for the

13   Court.

14      **THE COURT:**  All right.  Anything from the

15   government?

16      **MS. BERKOWER:**  Your Honor, I think we would like

17   to --

18      **THE COURT REPORTER:**  I'm sorry.  Please use the

19   microphone.

20      **MS. BERKOWER:**  I think we would like to continue

21   questioning this prospective juror.

22      **THE COURT:**  Okay.  All right.

23      Our goal here, as I said this morning, is to try

24   to get a panel of jurors who are neutral.

25      **PROSPECTIVE JUROR:**  Okay.

1       **THE COURT:**  And who don't come into the courtroom

2    leaning one way or the other.  And a lot of individuals have

3    feelings about what happened on January 6th and that's not

4    uncommon.  But the question is whether you can put those

5    feelings, those opinions aside, and kind of wipe the slate

6    clean, and decide this case based on the evidence you hear

7    in this courtroom and the instructions I provide.  Is that

8    something you think you could do?

9       **PROSPECTIVE JUROR:**  No.

10      **THE COURT:**  All right.  You've also said you have

11   some views on firearms.

12      **PROSPECTIVE JUROR:**  Yes.

13      **THE COURT:**  Are those views you could put aside in

14   deciding this case?  This case does -- there are allegations

15   of firearms.  There are allegations that Mr. Reffitt

16   possessed firearms.  They are just allegations at this

17   point.  An indictment is not evidence.  Would that have any

18   impact on your ability to be fair and impartial to both

19   sides in this case?

20      **PROSPECTIVE JUROR:**  [No response]

21      **THE COURT:**  You seem to be hesitating.  What are

22   you thinking about?

23      **PROSPECTIVE JUROR:**  I'm trying to think can I, you

24   know, based on my views on firearms I'm trying to think if I

25   can be fair.  I don't think so.

1          **THE COURT:**  All right.  You look like you are

2    really struggling.  And there is no wrong answer here.  We

3    just want you to tell the truth.

4          **PROSPECTIVE JUROR:**  Okay.

5          **THE COURT:**  I know these are hard questions.  I

6    appreciate your candor.  So, again, just to make sure I'm

7    understanding, you don't think you could put your views

8    aside about firearms?

9          **PROSPECTIVE JUROR:**  No.

10          **THE COURT:**  All right.  Ms. Berkower?

11          **MS. BERKOWER:**  Good afternoon.

12          **PROSPECTIVE JUROR:**  Hello.

13          **MS. BERKOWER:**  Ma'am, I just wanted to follow up

14    on a few questions that Judge Friedrich just asked you.  The

15    first -- I want to make sure I understand your views on

16    setting aside your own personal opinions if you were picked

17    as a juror.  Okay.

18          **PROSPECTIVE JUROR:**  [NODDED HEAD]

19          **MS. BERKOWER:**  I understand it sounds like you

20    have opinions about the guilt of people involved in January

21    6th.  Do I understand that correctly?

22          **PROSPECTIVE JUROR:**  Yes.

23          **MS. BERKOWER:**  And if the judge were to order you

24    that if you were picked as a juror you must set aside those

25    opinions, would you be able to follow her order?

1          **PROSPECTIVE JUROR:**  I don't believe so, no.

2          **MS. BERKOWER:**  And you said that you can be fair

3     -- you don't know if you can be fair given your views about

4     firearms.  Could you explain what views you are concerned

5     about?

6          **PROSPECTIVE JUROR:**  I just have a view that not

7     everyone should have a firearm.  And I don't think there's a

8     need for certain military firearms or any type of firearm.

9     I just believe that firearm is not a right but a privilege.

10    So in that case -- there should be certain, you know -- a

11    firearm is too easily available for people to access and

12    everything in that manner.

13         **MS. BERKOWER:**  If the Judge were to order you to

14    set those views aside, would you be able to follow that

15    order?

16         **PROSPECTIVE JUROR:**  No.

17         **MS. BERKOWER:**  Thank you, ma'am.

18         **THE COURT:**  All right.  Thank you, ma'am.

19         (Prospective juror steps down.)

20         **THE COURT:**  Is there any motion?

21         **MR. WELCH:**  I renew my motion.

22         **THE COURT:**  All right.  I will grant the motion.

23         The next juror, 0728 answered yes to 3, 4, 5, 7,

24    19, 20.

25         **COURTROOM DEPUTY:**  Your Honor, juror number 0728.

1              (Prospective juror steps up.)

2         **THE COURT:**  Good afternoon.

3         **PROSPECTIVE JUROR:**  Good afternoon.

4         **THE COURT:**  If you are comfortable taking off your

5    mask --

6         **PROSPECTIVE JUROR:**  I am.

7         **THE COURT:**  -- would you, please?

8         All right.  So I see that you've answered yes to

9    the questions about news relating to the January 6th Capitol

10   events.  I take it you've seen news on TV, in the newspaper,

11   on the internet --

12        **PROSPECTIVE JUROR:**  That's correct.

13        **THE COURT:**  -- about these events.

14        **PROSPECTIVE JUROR:**  Yes.

15        **THE COURT:**  You've also seen or heard news either

16   about the defendant, Guy Reffitt, or other individuals

17   connected to January 6.  Can you elaborate, please?

18        **PROSPECTIVE JUROR:**  Sure.  Other individuals, I

19   don't know them by first name.  I just know them sort of by

20   the social media names they've given -- you know, the guy

21   with the horns or whatever, but I don't know their names.

22        I thought they all went through the system

23   already.  So I don't know the individual people, but I do

24   know that they are being tried or taking deals.  That's all

25   I know.

1          **THE COURT:**  Okay.  Have you followed these cases

2     on your own or do you just read the headlines and the news

3     stories that you see when you review news generally?

4          **PROSPECTIVE JUROR:**  Well, I read The Washington

5     Post pretty much every day.  And I read the headline.  I

6     don't really read the articles because you kind of have to

7     pick your poison as to how you want to start or end your day

8     so --

9          **THE COURT:**  I'm sorry.  I didn't catch that.

10          **PROSPECTIVE JUROR:**  You -- I kind of have to

11     decide, Is this worth me going down the rabbit hole reading

12     this?  Is this going to upset me?  Is this going to ruin my

13     day?  Is it interesting enough headline that I want to read

14     it?  I don't always read it, but I do read the Post and so I

15     am probably more familiar with headlines than I am with

16     actual content.

17          **THE COURT:**  Have you seen any articles about

18     Mr. Reffitt?

19          **PROSPECTIVE JUROR:**  No, his name doesn't even

20     sound familiar to me.

21          **THE COURT:**  All right.  Based on what you've seen

22     and heard, have you formed any opinions about the guilt or

23     innocence of those who are involved in the January 6th

24     events?

25          **PROSPECTIVE JUROR:**  I do have an opinion, and I do

1    find it irreprehensible what they've done.

2          **THE COURT:**  All right.  Given that strong opinion,

3    is that something you think you could put aside, if you were

4    chosen as a juror in this case, and decide this case fairly

5    and impartially based on the evidence as presented in the

6    courtroom?

7          **PROSPECTIVE JUROR:**  I'd like to think I can.  My

8    job -- my 9-to-5 job is an internal auditor.  I do internal

9    fraud investigations on associates for an insurance company.

10   So my job is to, no matter what I think about the

11   department, the individuals, my job is to go collect the

12   facts and then present them to management to decide what

13   they want to do with the associate.  So it's part of my

14   everyday existence.

15         **THE COURT:**  All right.  But if you understand if

16   you serve as a juror in this case, your job is not to go

17   collect the facts.

18         **PROSPECTIVE JUROR:**  That's correct.  What I am

19   trying to say is I can be objective in my research or taking

20   the information.

21         **THE COURT:**  All right.  So you will base any

22   decision, any verdict, based only on the evidence that you

23   would see and hear in the courtroom?

24         **PROSPECTIVE JUROR:**  That is correct.

25         **THE COURT:**  All right.  And despite those strong

1  views, you don't feel like you are coming into this case

2  kind of favoring the government's side over the defense?

3            **PROSPECTIVE JUROR:**  It would be untrue to say I

4  don't have a bias.  I do.

5            **THE COURT:**  All right.  Do you understand that

6  Mr. Reffitt, as he sits here, is presumed under the law to

7  be innocent?

8            **PROSPECTIVE JUROR:**  That is correct.

9            **THE COURT:**  And do you understand that he cannot

10  be convicted unless and until the government proves its case

11  beyond a reasonable doubt?

12            **PROSPECTIVE JUROR:**  That is correct.

13            **THE COURT:**  And would you be able to put aside

14  everything you've seen and heard about the Capitol events in

15  deciding this case solely based on what you heard in the

16  courtroom?

17            **PROSPECTIVE JUROR:**  I believe I can.

18            **THE COURT:**  Oh, you say you no longer live in D.C.

19            **PROSPECTIVE JUROR:**  I have a residence at 3003 Van

20  Ness Street.  I lived there with my boyfriend until very

21  recently.  My name is still on the lease.  It's a recent

22  breakup.  I am staying in Falls Church with my friend until

23  I can remove my name from the lease.  But my intention is to

24  remain a D.C. resident.  I actually finished completing

25  mortgage paperwork yesterday to purchase in D.C.

214

1          **THE COURT:**  So -- I'm just confused.

2          **PROSPECTIVE JUROR:**  I'm temporarily staying in

3     Falls Church.  I didn't answer that questions because --

4          **THE COURT:**  I see.  All right.  You haven't moved

5     outside of D.C.

6          **PROSPECTIVE JUROR:**  No.  Absolutely not.

7          **THE COURT:**  All right.  You also say you, a family

8     member or close friend is a lawyer, student or works in a

9     legal office.

10         **PROSPECTIVE JUROR:**  My ex-boyfriend who I resided

11    with is currently in law school.

12         **THE COURT:**  All right.  And did you talk about the

13    law with him?

14         **PROSPECTIVE JUROR:**  Not really.

15         **THE COURT:**  Do you talk about the law with anyone

16    else?

17         **PROSPECTIVE JUROR:**  No.

18         **THE COURT:**  You could follow my instructions just

19    by what you may have heard about the law?

20         **PROSPECTIVE JUROR:**  Yes.

21         **THE COURT:**  And what you've seen on TV?

22         **PROSPECTIVE JUROR:**  Yes.

23         **THE COURT:**  All right.  This question, if you'd

24    like to answer privately on the headset, you can do that.

25         **PROSPECTIVE JUROR:**  Okay.

1          **THE COURT:**  The question you answered yes to is

2     that you or someone you know well has been arrested, charged

3     or convicted of a crime or been a victim or witness to a

4     crime.  Is that something you'd like to answer privately?

5          **PROSPECTIVE JUROR:**  No.

6          My father was shot when I was eight or nine years

7     old, in second grade.  I was not present to it, but it was a

8     fundamental part of my life.

9          **THE COURT:**  I'm very sorry to hear that.  Was

10     someone prosecuted for that offense?

11          **PROSPECTIVE JUROR:**  I do not believe so.

12          **THE COURT:**  Did your father survive?

13          **PROSPECTIVE JUROR:**  He did.

14          **THE COURT:**  All right.

15          Were the police -- I take it the police were

16     contacted?

17          **PROSPECTIVE JUROR:**  Yes.

18          **THE COURT:**  Was there anything about the way that

19     investigation was handled or what you saw in terms of how

20     the police behaved that might make you favor one side or the

21     other in this case?

22          **PROSPECTIVE JUROR:**  No.  I was really young.  I

23     just know that an incident happened.  And my parents didn't

24     discuss it with us in any great detail because it was

25     traumatic.  So it happened.  He survived.  We moved on.

 1              **THE COURT:**  All right.

 2              All right.  Ms. Berkower?

 3              **MS. BERKOWER:**  Nothing from the government, Your

 4    Honor.

 5              **THE COURT:**  Mr. Welch?

 6              **MR. WELCH:**  I have a couple, Your Honor.

 7              **THE COURT:**  Okay.

 8              **MR. WELCH:**  Ma'am, does the way that your father

 9    was injured cause you to have strong feelings about

10    firearms?

11              **PROSPECTIVE JUROR:**  Um, I would say, yes, I did

12    feel that way.  I hate to bring him back up but my ex was a

13    hunter.  So I went hunting to get over this fear of guns.

14    And it actually worked.  I like rifle shooting so --

15              **MR. WELCH:**  Very good.  And I'm sorry to bring up

16    your ex again.

17              **PROSPECTIVE JUROR:**  That's fine.

18              **MR. WELCH:**  How long have you been staying in

19    Falls Church?

20              **PROSPECTIVE JUROR:**  So the breakup happened in

21    August, but a week later my father died.  I went straight

22    from the breakup to Florida, Miami.  I stayed there six to

23    eight weeks with my mom.  Then I came back to D.C. and then

24    I moved myself to a friend's house.  And then I went back to

25    Miami because I wasn't well.  And then I came back at the

1    beginning of the year.  So I have been in Falls Church,

2    really, at the beginning of the year.

3            MR. WELCH:  Okay.  You just indicated you just

4    signed a mortgage --

5            PROSPECTIVE JUROR:  No, the mortgage people

6    started to roll.

7            MR. WELCH:  I'm sorry.  Thank you for correcting

8    me.  When are you supposed to move back into D.C.?

9            PROSPECTIVE JUROR:  The realtor and I have a

10   three-month window to get me back to D.C.  So that is our

11   goal.

12           MR. WELCH:  Okay.  Thank you.

13           PROSPECTIVE JUROR:  Uh-huh.

14           MR. WELCH:  Your Honor, I have a question for the

15   Court, an actual question.

16           THE COURT:  Right.  I know.  Ms. Berkower, do you

17   have follow up?

18           MS. BERKOWER:  No follow up, Your Honor.

19           THE COURT:  Okay.  All right.  You may be excused.

20           (Prospective juror steps down.)

21           THE COURT:  So I assume this has to do with her

22   residence or lack thereof.

23           MR. WELCH:  Right.  And that would be the

24   question.  I haven't researched this.  I don't know whether

25   under the set of facts that she has presented, whether she

1       is actually domiciled in D.C. since last August, when the

2       breakup happened --

3                   **THE COURT:**  Right.

4                   **MR. WELCH:**  With the thought she is going to close

5       in six months.

6                   **THE COURT:**  She said she is still on the lease but

7       she has been living in Falls Church since the start of the

8       year.

9                   **MR. WELCH:**  Yeah.

10                  **THE COURT:**  Does the government have a position on

11      this?

12                  **MS. BERKOWER:**  Yes, Your Honor.

13                  Your Honor, the way I wrote it down is she still

14      considers herself -- her intention is to remain a D.C.

15      resident, so she still considers herself a D.C. resident,

16      but has been staying with a friend in Virginia.

17                  **THE COURT:**  But the hope is to buy a home in D.C.

18      It's not even definite at this point.  The intention is to

19      return to D.C.

20                  I don't know offhand the answer to this.  I think

21      we need to look at this.  Is there any need to call her back

22      for follow-up questions?

23                  **MR. WELCH:**  [SHAKES HEAD]

24                  **MS. BERKOWER:**  I guess we could call her back for

25      a few, Your Honor.

1          **THE COURT:**  Okay.

2          **COURTROOM DEPUTY:**  Juror number 0728.

3          **THE COURT:**  Good afternoon, again.

4          **PROSPECTIVE JUROR:**  Hello.

5          **THE COURT:**  I just wanted to follow up with a few

6    more questions about your current residence.  So as I

7    understand it, you've been living in Falls Church, Virginia

8    since the start of the year; is that correct?

9          **PROSPECTIVE JUROR:**  That's correct.

10         **THE COURT:**  Yet your name is on the lease --

11         **PROSPECTIVE JUROR:**  That's correct.

12         **THE COURT:**  -- in a D.C. apartment that you lived

13   with your boyfriend for how long?

14         **PROSPECTIVE JUROR:**  It will be actually be -- it

15   was three years.  We signed the lease, I believe -- it was

16   the end of February, the beginning of March, of 2019.

17         **THE COURT:**  All right.  But you moved out in

18   August of 2021.  Correct?

19         **PROSPECTIVE JUROR:**  I would say I probably -- I

20   moved out -- I picked up my belongings in October of 2021.

21   But I did not have a home, for lack of a better word, until

22   January 'cause I was taking care of my mom in Miami,

23   Florida.

24         **THE COURT:**  Okay.  So I had thought you said

25   August but it was October when --

1          **PROSPECTIVE JUROR:**  Yeah, the breakup was August.

2    My dad died a week later, hence the travel back and forth to

3    Miami, Florida.

4          **THE COURT:**  And then you moved your stuff out in

5    October.

6          **PROSPECTIVE JUROR:**  Yes.  And the trip in between

7    me going back to Florida, I packed up all of my stuff and I

8    put it in somebody's garage.

9          **THE COURT:**  All right.

10         **PROSPECTIVE JUROR:**  And I continued to travel back

11   home to take care of my family.

12         **THE COURT:**  And you stayed on a couple of

13   occasions between then and the start of the year with

14   friends in D.C.?

15         **PROSPECTIVE JUROR:**  That's correct.

16         **THE COURT:**  And your intention right now is to try

17   to buy a place in D.C.?

18         **PROSPECTIVE JUROR:**  That is correct.

19         **THE COURT:**  But you don't have any contract on any

20   place?

21         **PROSPECTIVE JUROR:**  No.  No.  I just got

22   pre-qualified.  This whole idea March 1st was sort of

23   get-your-life together and of course, I am here.

24         **THE COURT:**  But you've been consistently living in

25   Falls Church, Virginia since January of this year?

1          **PROSPECTIVE JUROR:**  I would say that's a fair

2     assessment, yes.

3          **THE COURT:**  Okay.  Okay.  Ms. Berkower?

4          **MS. BERKOWER:**  Good afternoon.

5          **PROSPECTIVE JUROR:**  Good afternoon.

6          **MS. BERKOWER:**  Just a few more questions about

7     this.  Do you have a car?

8          **PROSPECTIVE JUROR:**  I do.

9          **MS. BERKOWER:**  Is it registered in Virginia or

10    D.C.?

11         **PROSPECTIVE JUROR:**  Everything is still registered

12    in D.C.

13         **MS. BERKOWER:**  What about your residence with your

14    employer?  Did you update that at all?

15         **PROSPECTIVE JUROR:**  No, because I didn't know

16    where I was going to stay.

17         **MS. BERKOWER:**  When does that lease that your name

18    is on, when does that expire?

19         **PROSPECTIVE JUROR:**  It should be expiring at the

20    end of this month.  Originally I was going to sign an

21    agreement that said "roommate removal."  But because I got

22    this, I just put a hold on it to see what the courts wanted

23    to do.

24         **MS. BERKOWER:**  Did you receive a jury summons

25    through the mail?

222

1              PROSPECTIVE JUROR:  Yes, I did.

2              MS. BERKOWER:  So where are you receiving your

3    mail now?

4              PROSPECTIVE JUROR:  At 3003 Van Ness --

5              MS. BERKOWER:  You still receive your mail at the

6    apartment?

7              PROSPECTIVE JUROR:  Yes.  Yes.

8              MS. BERKOWER:  Okay.  You said that you left some

9    of your belongings with a friend?

10             PROSPECTIVE JUROR:  Uh-huh.

11             MS. BERKOWER:  Is that friend in the district or

12   outside?

13             PROSPECTIVE JUROR:  Well, it's Falls Church.  She

14   has a garage.

15             MS. BERKOWER:  Okay.  So you moved your belongings

16   there.

17             PROSPECTIVE JUROR:  Uh-huh.

18             MS. BERKOWER:  Do you consider yourself a D.C.

19   resident still?

20             PROSPECTIVE JUROR:  I do.

21             THE COURT:  You say the lease expires the end of

22   this month?  Is that today?

23             PROSPECTIVE JUROR:  Yes.  Yes.  So when it

24   expires, you go month to month.  So every month we can stay

25   in there, as long as we don't sign a lease.  I was going to

1    remove my name off this lease for the same questions you are

2    asking me about, but I put a hold on it when I got the jury

3    summons because I wanted the courts to decide whatever you

4    wanted me to do.  I didn't want to interrupt this process.

5              **THE COURT:**  All right.  But after today, will your

6    name be off the lease?

7              **PROSPECTIVE JUROR:**  No, because I told them to put

8    a stop until I was done with this.

9              **THE COURT:**  All right.  Any other questions?

10   Mr. Welch?

11             **MR. WELCH:**  I don't have any additional questions.

12             **THE COURT:**  Okay.

13             **MR. WELCH:**  I do for the Court but not this

14   person.

15             **THE COURT:**  Okay.  Thank you, ma'am.  I appreciate

16   your additional time.

17             (Prospective juror steps down.)

18             **THE COURT:**  All right.  So this is something that

19   I want to look at.  You all may think you know the answer.

20   I just don't, as I sit here now.  Ms. Berkower, is there

21   something you want to say?

22             **MS. BERKOWER:**  Only a request to put a pin in this

23   question, and we can take it up at a later time, since we

24   still have other jurors --

25             **THE COURT:**  Yes, I would like to keep moving.  I

1  will ask you all to take a look at this this evening, and I

2  will as well, and we will address it first thing tomorrow.

3          All right.  The next juror is juror number 0432.

4  She's --

5          (Knocking on door.)

6          Just one moment.

7          -- she answered yes to 2, 3, 4, 5, 6, 15, 17, 26

8  and 27.

9          **MR. WELCH:**  Your Honor, could you repeat those

10  numbers?

11          **THE COURT:**  Yes, 2, 3, 4, 5, 6, 15, 17, 26 -- I

12  think that's the pamphlet question -- and 27.

13          **MR. WELCH:**  Thank you.

14          **THE COURT:**  All right.

15          **COURTROOM DEPUTY:**  Juror number 0432.

16          **THE COURT:**  Good afternoon, sir.

17          **PROSPECTIVE JUROR:**  Hello.

18          **THE COURT:**  If you are comfortable taking off your

19  mask, please do.  And thank you for your patience.

20          **PROSPECTIVE JUROR:**  Yeah.

21          **THE COURT:**  All right.  So I see that you've

22  answered yes to having either you or someone you know having

23  a direct or indirect connection to the events at the Capitol

24  on January 6th, 2021.  Can you explain what that is?

25          **PROSPECTIVE JUROR:**  Yeah.  A couple different.  I

1    have several friends that worked at the Capitol in

2    Congressional offices.

3              **THE COURT:**  On January 6th?

4              **PROSPECTIVE JUROR:**  Yep.

5              And also through an associate, was aware of

6    somebody who was involved in organizing the rally.  So

7    there's a connection there as well.

8              **THE COURT:**  This is the Stop the Steal rally?

9              **PROSPECTIVE JUROR:**  Correct.

10             **THE COURT:**  All right.  Have you discussed the

11   events of January 6th with those who were in the Capitol on

12   that day?

13             **PROSPECTIVE JUROR:**  Yes.

14             **THE COURT:**  And did you learn information from

15   them that is different in nature than what you hear (sic) in

16   the paper?

17             **PROSPECTIVE JUROR:**  No, I just commiserated with

18   them about it.

19             **THE COURT:**  All right.  Simply because you know

20   someone who was in the Capitol at the time, does that make

21   you lean in favor of one side or the other in this case?

22             **PROSPECTIVE JUROR:**  Well, in my profession I'm a

23   public relations consultant.  I work with a lot of

24   journalists.  I know a lot of the journalists that covered

25   the events.  I have friends and associates that work in the

1   Capitol.  The nature of my business is such that I read the

2   paper and I am aware of the news.  I am very aware of this

3   case.  I followed it.

4             THE COURT:  This particular case?

5             PROSPECTIVE JUROR:  Yep.

6             THE COURT:  Tell me in general what you know about

7   this case.

8             PROSPECTIVE JUROR:  I know it emanated -- I know

9   that he resides in Texas.  I don't have the specific details

10  of it, but the coverage of the events itself I have watched

11  and read very closely.  It's part of what I -- my

12  relationship with journalists that I work with.  I watch

13  what they cover.  I look at what they cover.  I have weighed

14  in with reporters from time to time on issues.  I've had a

15  couple discussions with journalists about this particular

16  incident, you know, and what happened.

17            THE COURT:  The January 6th events.

18            PROSPECTIVE JUROR:  [NODDED HEAD]

19            THE COURT:  This defendant in particular?

20            PROSPECTIVE JUROR:  No, nothing in particular to

21  the defendant and the intricacies of the case.  I am

22  generally aware of it.  That's why I noted in my

23  questionnaire that I have a strong view on it.  I have a --

24  you know, because of my knowledge and friends who worked in

25  the Capitol, I feel very strongly about it and because of

1    the knowledge of somebody who I know who set up the rally.

2    I have a strong opinion on that and not a favorable one.

3         **THE COURT:**  All right.  And would you be able to

4    set aside those strong views and come to this case as a

5    neutral juror and be fair and impartial to both sides?

6         **PROSPECTIVE JUROR:**  I want to be candid, Your

7    Honor, I don't think so.  I don't believe so, no.  I have

8    very strong views.  A lot of it probably bleeds over into my

9    politics.  I feel very strongly about what happened.

10        **THE COURT:**  And even though a criminal defendant,

11   in our criminal justice system, is presumed innocent, you

12   would have a hard time --

13        **PROSPECTIVE JUROR:**  Sure.

14        **THE COURT:**  -- treating him that way?

15        **PROSPECTIVE JUROR:**  I can respect that.  My father

16   was a lawyer.  I work with a lot of attorneys in my

17   business.  I am giving you an honest assessment --

18        **THE COURT:**  That's all we want.

19        **PROSPECTIVE JUROR:**  -- of how I feel about it.  I

20   understand.  And I really, you know, respect the right of

21   defendants in the legal system.  I -- again, I am very

22   differential to that.  I am giving you an honest assessment

23   of where I am personally and how it viscerally affected me

24   and the people I know, and the opinions I have of the people

25   who helped organize -- this one individual.  And then I've

1    had conversations with people about this person who I --

2    just was incredulous that they did what they did.  I hear

3    what you are saying.  I am just giving you an honest

4    assessment.

5            **THE COURT:**  That's what we want.  We want you to

6    be honest.  So I appreciate your candor.  So it sounds like,

7    based on all of the factual information you know, and your

8    strong views, it would be very hard to be fair and impartial

9    in this case.

10           **PROSPECTIVE JUROR:**  Yeah, it would.

11           **THE COURT:**  All right.

12           **PROSPECTIVE JUROR:**  Candidly, it would.  Again,

13   due to the folks I know who worked in the Hill and

14   experiences they had, that they relayed to me, in addition

15   to my strongly-held views about how it happened, it's

16   something I can't get my head around.

17           **THE COURT:**  You answered yes to the question you

18   have an opinion about Mr. Reffitt's guilt or innocence as

19   you sit here now?

20           **PROSPECTIVE JUROR:**  I do.  I hate to say it.

21   Again, and it's not -- we have to wait for the evidence to

22   present itself and this process to play out.  But I will

23   tell you that I -- again, I can't sit here and be candid

24   with you and say I objectively would be able to put that

25   aside, Your Honor, that's why I answered the way I did.

1      **THE COURT:**  All right.  Well, I appreciate that.

2      And you also indicated you would have difficulty

3  following all of these instructions that you know about in

4  our criminal justice system.  You answered yes to question

5  15 that has to do with your strong personal beliefs.

6      **PROSPECTIVE JUROR:**  And the reason why I answered

7  that way, maybe I misunderstood the question, is given my

8  bias; that was why I answered the way I did.

9      **THE COURT:**  All right.  And you also indicated you

10  would struggle to avoid all media and research.

11      **PROSPECTIVE JUROR:**  That is another thing.  It is

12  the nature of my business.  I have to read the news.  I do

13  it every day.  I move around with several of the daily

14  newspapers with me.  It is the nature of what I do.  So it's

15  very hard not to come across this, obviously, since this is

16  playing out in the news right now.  So I am an avid news

17  follower.

18      **THE COURT:**  All right.  And you are a P.R.

19  communications consultant?

20      **PROSPECTIVE JUROR:**  Correct.

21      **THE COURT:**  Do you work for anyone in particular?

22      **PROSPECTIVE JUROR:**  Well, I have my own

23  consultancy so it's me.  In particular, a variety of

24  different clients.  I have represented attorneys throughout

25  the course of my business, but also companies, trade

1      associations, your typical Washington fare, in terms of

2      clients.

3                  **THE COURT:**  All right.  Ms. Berkower?

4                  **MS. BERKOWER:**  Good afternoon.

5                  So, um, I understand you said you have very strong

6      feelings about the events of January 6th.  Did I understand

7      you correctly?

8                  **PROSPECTIVE JUROR:**  Yes.

9                  **MS. BERKOWER:**  And just to be clear, do your

10     strong feelings concern the crowd and the events generally?

11                 **PROSPECTIVE JUROR:**  Versus?

12                 **MS. BERKOWER:**  Versus individual people who were

13     there?

14                 **PROSPECTIVE JUROR:**  I would say the event itself

15     that led up to what happened at the Capitol, I have a strong

16     view on that, because I am aware of a certain individual

17     that was part of the organization of that.  And I'm still

18     amazed by it.  So the event itself.

19                 As far as the individual participants, one

20     defendant versus another, and what -- you know, what one did

21     and another didn't do, no, I am not weighed in on any

22     individual person.

23                 **MS. BERKOWER:**  And so is it fair to say that you

24     think individuals should be held responsible for their own

25     actions, rather than the actions of the overall event?

1      **PROSPECTIVE JUROR:**  I think each individual needs

2  to be held accountable for their own actions.

3      **MS. BERKOWER:**  And would you agree that that

4  should be on the evidence specific to what that person did?

5      **PROSPECTIVE JUROR:**  Sure.

6      **MS. BERKOWER:**  And if the judge were to instruct

7  you to set aside your feelings generally about the event

8  overall, and just to focus only on the evidence about what

9  this defendant did, as presented in court, would you be able

10  to do that?

11      **PROSPECTIVE JUROR:**  As I said, I don't think I

12  will be able to do that because I read a lot of the news

13  coverage of the specific individuals that were charged.  And

14  I'm afraid that that bias could be brought into my

15  participating in the jury.

16      **MS. BERKOWER:**  Even though you don't know anything

17  about this particular defendant?

18      **PROSPECTIVE JUROR:**  Well, I didn't say I didn't

19  know anything about it.  I said I don't recall any specific

20  details about it, but I have read enough about it that I am

21  generally aware of the case.

22      **MS. BERKOWER:**  And I think you said, though, a

23  minute ago, you have no opinion about this defendant's

24  guilt.  You would have to wait for the evidence.  Right?

25      **PROSPECTIVE JUROR:**  Sure.  I don't have any

1    opinion about the guilt, but I am going into it with some

2    knowledge of the facts and the circumstances of it.  I'm not

3    coming into this in a vacuum, is what I am trying to

4    explain.

5            **MS. BERKOWER:**  Understood.

6            **PROSPECTIVE JUROR:**  You know?  I am trying to be

7    as candid as I can, because I want to be as respectful to

8    you and to the defendant, to say I have a general view that

9    at the margins, anything that was done, whether it was very

10   active, not active, whether somebody actually did something

11   physical, I just have a general view that that shouldn't

12   have happened.  The Capitol should not have been -- you

13   know, invaded or whatever the word you want to use.  It

14   shouldn't have happened.  If you are participating in that,

15   to me, I can't get -- I don't get my head around it.  I just

16   can't.

17           **MS. BERKOWER:**  I understand you have knowledge of

18   the events of January 6th.  Right?  You've read a lot about

19   it.  Right?  But would you be all to keep an open mind

20   listening to the evidence so that this defendant is judged

21   only on the evidence against him?

22           **PROSPECTIVE JUROR:**  I don't know how other ways I

23   could say it.  I mean, I don't think so.  That's my -- if I

24   was chosen and I had to look at the evidence, I'm not going

25   to disqualify exculpatory evidence, you know?  But my

1       instinct is that I'm going to come in with a very high, high

2       level of skepticism, and that's how I come in.

3               **MS. BERKOWER:**  But if the government weren't able

4       to prove the defendant's guilt beyond a reasonable doubt,

5       would you still acquit him?

6               **PROSPECTIVE JUROR:**  If the government wasn't able

7       to prove beyond a reasonable doubt, I would have to acquit

8       him.

9               **MS. BERKOWER:**  And would you be assessing whether

10      the government proved beyond a reasonable doubt that he was

11      guilty based only on the evidence presented about him?

12              **PROSPECTIVE JUROR:**  I'd have to.

13              **MS. BERKOWER:**  Thank you, Your Honor.

14              **THE COURT:**  Mr. Welch?

15              **MR. WELCH:**  Just a couple, Your Honor.

16              You remain afraid that your bias would be brought

17      to the jury; is that fair to say?

18              **PROSPECTIVE JUROR:**  Yes.

19              **MR. WELCH:**  You were viscerally affected by what

20      happened; is that fair to say?

21              **PROSPECTIVE JUROR:**  Yes.

22              **MR. WELCH:**  No further questions.

23              **THE COURT:**  All right.  Thank you, sir.

24              **PROSPECTIVE JUROR:**  Thank you.

25              **MR. WELCH:**  I have a question for the Court.

1          **THE COURT:**  All right.

2          (Prospective juror steps down.)

3          **THE COURT:**  All right.  Is there a motion?

4          **MR. WELCH:**  I do have a motion for cause you, Your

5     Honor.

6          **THE COURT:**  All right.  Go ahead.

7          **MR. WELCH:**  And this man is clearly being as

8     candid as he can be.  He is afraid that his bias will come

9     in the jury room.  If you order him to serve, he will serve.

10    And he will do his best to follow the Court's order.  But he

11    remains afraid that his bias, in spite of the Court's

12    instruction, would be brought into that jury room, because

13    he feels so strongly.  He told us he's trying to be as

14    candid as he can.  And for these reasons, he should be

15    stricken for cause.

16         **THE COURT:**  All right.

17         Ms. Berkower?

18         **MS. BERKOWER:**  Your Honor, while it's true this

19    juror did say he had -- you know, information about the

20    events of January 6th and a preconceived notion, when he was

21    pushed on whether he would assess this defendant's guilt

22    only based on the evidence presented in the courtroom he

23    said, "I'd have to."

24         When asked if the government didn't meet its

25    burden proving the defendant's guilt beyond a reasonable

1   doubt, would he still acquit, he said, "I would have to."  I

2   submit that if Your Honor did order him to serve on the

3   jury, he would follow the Court's instructions and set aside

4   what his preconceived opinions were coming in.  Thank you.

5           **THE COURT:**  All right.  Well, I think he said in

6   almost a dozen different ways he felt he was biased here.

7   Both in terms of the facts he knows, as well as his very

8   strong feelings.  And I think he was trying to be as candid

9   as he could.

10          Yes, he said, if forced to serve, he would do his

11  best to follow my instructions.  But that's not the kind of

12  juror we want, who admittedly says, you know, again, a dozen

13  different ways, I am biased toward one side.  So I will

14  strike him for cause.

15          The next juror is 0663, answered yes to number 2,

16  number 3, number 4, number 19 and number 20.

17          **COURTROOM DEPUTY:**  Your Honor, I have juror number

18  0663.

19          (Prospective juror steps up.)

20          **THE COURT:**  If you are comfortable taking off your

21  mask, please do.

22          All right.  Good afternoon.  Thank you for your

23  patience.  You answered yes to having either you or someone

24  you know having a direct or indirect connection to the

25  events at the U.S. Capitol on January 6th, 2021.  Can you

1   explain?

2            **PROSPECTIVE JUROR:**  Sure.  I knew a person -- was

3   friends with a person whose brother was arrested for being

4   at the Capitol and participating.  There was a news article

5   about him.

6            **THE COURT:**  If you can turn your head towards the

7   microphone.  Sorry.

8            **PROSPECTIVE JUROR:**  So we -- people that knew him

9   sort of passed around that news article when it came out.  I

10  think a little bit earlier this year.  I know him but I am

11  not -- I don't have contact with him.

12           **THE COURT:**  How closely do you know him?

13           **PROSPECTIVE JUROR:**  He is a brother of person I

14  used to be friends with.

15           **THE COURT:**  And where does he live?

16           **PROSPECTIVE JUROR:**  The person that was arrested?

17           **THE COURT:**  Yes.

18           **PROSPECTIVE JUROR:**  I believe he lives in D.C. or

19  in Maryland or D.C.  But I know that according to the

20  article, not firsthand.

21           **THE COURT:**  All right.  How often do you see this

22  person?

23           **PROSPECTIVE JUROR:**  Never.

24           **THE COURT:**  And how often do you see the sister?

25  The friend?

1          **PROSPECTIVE JUROR:**  The brother.  Not anymore at

2    all.  No contact at all.

3          **THE COURT:**  Since when?

4          **PROSPECTIVE JUROR:**  Maybe like five or six years

5    ago.  We were friends.  No longer.

6          **THE COURT:**  So you learned about this only through

7    an article that was passed around by other friends?

8          **PROSPECTIVE JUROR:**  Yeah.  Friends also him, yeah.

9          **THE COURT:**  All right.  And do you know is that

10   individual being prosecuted in this court?

11         **PROSPECTIVE JUROR:**  I don't recall where he was

12   being prosecuted.

13         **THE COURT:**  And according to the article, at

14   least, what was he accused of doing?  Do you remember?

15         **PROSPECTIVE JUROR:**  Similar things in this case.

16   I don't know if there was possession of any firearms, but

17   just being at the Capitol and stuff like that.

18         To be honest with you, I don't really remember the

19   details of the article.  I just recall that.  So I wanted to

20   mark it just to be doubly sure.

21         **THE COURT:**  Was that just a single article?

22         **PROSPECTIVE JUROR:**  I've only read one article.

23         **THE COURT:**  All right.  Have you followed other

24   news stories about the January 6th event?

25         **PROSPECTIVE JUROR:**  Yes.

1      **THE COURT:**  Have you read or seen anything about

2  Mr. Reffitt, the defendant in this case?

3      **PROSPECTIVE JUROR:**  No.

4      **THE COURT:**  What about other individuals apart

5  from the brother of the friend of yours?

6      **PROSPECTIVE JUROR:**  Specific people?

7      **THE COURT:**  Yes.

8      **PROSPECTIVE JUROR:**  I don't recall anyone's name,

9  specifically, but sort of what they look like, one person in

10  particular looked particularly rememberable (sic) from the

11  news of that day.

12      **THE COURT:**  All right.  Do you recognize

13  Mr. Reffitt, who's seated over there?

14      **PROSPECTIVE JUROR:**  No.

15      **THE COURT:**  All right.  Based on what you've seen,

16  based on what you've heard, have you formed any opinion

17  about the guilt of those who were involved in the events of

18  January 6th?

19      **PROSPECTIVE JUROR:**  Individually?  Um -- I guess

20  in -- to be fully transparent --

21      **THE COURT:**  Please do.

22      **PROSPECTIVE JUROR:**  -- I think probably, yes.  But

23  I think I could be impartial hearing the evidence of one

24  person.  I'm just -- it's kind of hard to say.

25      **THE COURT:**  No, I appreciate your candor very

1    much.

2              What I'm trying to figure out is whether you could

3    put aside whatever opinions or views you have about the

4    guilt or innocence of others, and if you were chosen as a

5    juror in this case, decide this case based solely on what

6    you hear in this courtroom in terms of witness testimony and

7    other evidence and the instructions that I give you?

8              **PROSPECTIVE JUROR:**  Yes, I think I can do that.

9              **THE COURT:**  And you think you could put aside what

10   you've read and what you've thought and these feelings that

11   you hold now in deciding this case, if you were chosen as a

12   juror?

13             **PROSPECTIVE JUROR:**  Yes.

14             **THE COURT:**  As you sit here now, do you have any

15   opinion as to Mr. Reffitt's guilt or innocence in this case?

16             **PROSPECTIVE JUROR:**  No.

17             **THE COURT:**  And do you understand that under our

18   system of laws, that criminal defendants are presumed

19   innocent?

20             **PROSPECTIVE JUROR:**  Yes.

21             **THE COURT:**  And they can only be convicted if the

22   government proves the elements of the offense beyond a

23   reasonable doubt?

24             **PROSPECTIVE JUROR:**  Yes.

25             **THE COURT:**  You also indicated that you or a

1    family member or close friend is a lawyer or a law student

2    or works in a law office?

3                    **PROSPECTIVE JUROR:**  Yes.

4            **THE COURT:**  And who might that be?

5                    **PROSPECTIVE JUROR:**  Me.

6            **THE COURT:**  You.  Okay.  What kind of lawyer are

7    you?

8                    **PROSPECTIVE JUROR:**  I work for the Office of

9    Personnel Management, federal government.  I work in their

10   Office of General Counsel doing administrative insurance

11   litigation.

12           **THE COURT:**  How long have you been there?

13                   **PROSPECTIVE JUROR:**  I've been at the Office of

14   Personnel Management for 11 years and in the General

15   Counsel's Office for six?  Six.

16           **THE COURT:**  What did you do before that in the

17   law?

18                   **PROSPECTIVE JUROR:**  I went to law school before

19   that.

20           **THE COURT:**  Based on your experience as a lawyer,

21   and your studies as a law student, do you think you could

22   follow the instructions I give you in this case, even if

23   they conflicted with what you thought you knew about the law

24   as a student or as a lawyer?

25                   **PROSPECTIVE JUROR:**  Yes.

 1          **THE COURT:**  Now, this question, if you would like

 2   to answer privately on the telephone here, we can do that.

 3   But the question you answered yes to was, Have you or

 4   someone you know well been arrested, charged or convicted of

 5   a crime or been a victim or witness to a crime?  Is that

 6   something you feel comfortable answering publicly?

 7          **PROSPECTIVE JUROR:**  Yes.

 8          **THE COURT:**  Okay.  Go ahead.

 9          **PROSPECTIVE JUROR:**  I was a victim of a crime.  I

10   was mugged at gunpoint and hit with the firearm while I was

11   being mugged.

12          **THE COURT:**  And when did this occur?

13          **PROSPECTIVE JUROR:**  December 2014.

14          **THE COURT:**  Was that here in the District of

15   Columbia?

16          **PROSPECTIVE JUROR:**  Yes.

17          **THE COURT:**  Was the person who hit you and mugged

18   you apprehended?

19          **PROSPECTIVE JUROR:**  They were arrested and they

20   were not charged because they were a juvenile.

21          **THE COURT:**  Is there anything about the way that

22   case was handled by the police that would make you, you

23   know, either frustrated or supportive of the police you

24   might hear in this case?

25          **PROSPECTIVE JUROR:**  No.

1          **THE COURT:**  Is there anything about that

2   experience as a victim of a firearm-related crime that would

3   make you view this case in an impartial and neutral way?  As

4   you may recall from this morning, this case does have

5   allegations, unproven allegations of possession of firearms.

6   Firearms were not fired, but there are allegations that

7   Mr. Reffitt used and carried a firearm on Capitol grounds

8   and that he transported firearms.

9          Given your experience, as a victim of a

10  gun-related crime, would you be inclined to favor the

11  government's side, the prosecution's side?

12         **PROSPECTIVE JUROR:**  Um -- um, I guess I would say

13  I have strong feelings about gun violence and gun

14  possession, but I do understand how to act or sort of

15  receive information and take and analyze that impartially.

16         **THE COURT:**  Do you think you could be fair to both

17  sides in this case, despite your strong views about gun

18  possession?

19         **PROSPECTIVE JUROR:**  I think I could.

20         **THE COURT:**  All right.  Ms. Berkower?

21         **MS. BERKOWER:**  Nothing from the government, Your

22  Honor.

23         **THE COURT:**  Mr. Welch?

24         **MR. WELCH:**  No questions.  Thank you.

25         **THE COURT:**  All right.  You may be excused.

 1              **PROSPECTIVE JUROR:**  Okay.  Thanks.

 2              (Prospective juror steps down.)

 3              **THE COURT:**  All right.  The next juror is 0826.

 4    This juror has answered yes to 3, 4, 18, 22 and 23.  I'll

 5    start with 22 and 23.

 6              **COURTROOM DEPUTY:**  Your Honor, juror number 0826.

 7              (Prospective juror steps up.)

 8              **THE COURT:**  Good afternoon, sir.

 9              **PROSPECTIVE JUROR:**  Good afternoon.

10              **THE COURT:**  Thank you for your patience.

11              **PROSPECTIVE JUROR:**  No problem.

12              **THE COURT:**  If you don't mind taking off your mask

13    --

14              **PROSPECTIVE JUROR:**  Sure.

15              **THE COURT:**  -- if you feel comfortable, please do.

16              **PROSPECTIVE JUROR:**  Sure.

17              **THE COURT:**  I wanted to start with two of the yes

18    answers you gave to questions 22 and 23, one of which said

19    that serving as a juror would be an extreme hardship for

20    you.  Is that a question you feel comfortable answering in

21    public?

22              **PROSPECTIVE JUROR:**  Sure.

23              **THE COURT:**  All right. can you explain?

24              **PROSPECTIVE JUROR:**  Yes.  Actually, I work for

25    D.C. Public Schools.  And we have a staff of three.  One of

1    them is about to go on vacation.  So it's only going to

2    leave one person in the building.  So it wouldn't be

3    feasible for just one person.

4               **THE COURT:**  All right.  And what is your role with

5    the D.C. public schools?

6               **PROSPECTIVE JUROR:**  I am a maintenance supervisor.

7               **THE COURT:**  Do you work at multiple schools or

8    just one school?

9               **PROSPECTIVE JUROR:**  Just one school.

10              **THE COURT:**  Which school is that?

11              **PROSPECTIVE JUROR:**  Martin Luther King Elementary.

12              **THE COURT:**  And you say one person is going on

13   vacation.  When is that?

14              **PROSPECTIVE JUROR:**  He is starting tomorrow.

15              **THE COURT:**  And will be gone how long?

16              **PROSPECTIVE JUROR:**  About two weeks.

17              **THE COURT:**  All right.  You also said that you

18   have some health or physical problems that would make it

19   difficult for you to serve as a juror.  Can you answer that

20   publicly?  Are you uncomfortable doing so?

21              **PROSPECTIVE JUROR:**  Sure.  I have diabetes.  A lot

22   of times I can't sit real long.  I have to go to the

23   restroom a lot.

24              **THE COURT:**  So the plan for trial would likely be

25   to sit from approximately 9:30 to 4:30, 4:45 each day.  We

1    take an hour break in the middle of the day, and we take two

2    breaks one in the morning and one in the afternoon.  Would

3    that be difficult for you?

4              **PROSPECTIVE JUROR:**  Yes.

5              **THE COURT:**  It would?

6              **PROSPECTIVE JUROR:**  Yes.

7              **THE COURT:**  How often would you need breaks?

8              **PROSPECTIVE JUROR:**  Like 15 minutes out of each

9    hour.

10             **THE COURT:**  So every hour you need a break?

11             **PROSPECTIVE JUROR:**  Yes.

12             **THE COURT:**  All right.  Let me ask you about some

13   other questions you've said yes to.

14             You said you've heard news about the January 6th

15   events and seen news about either Mr. Reffitt or other

16   individuals who were at the Capitol on January 6th.  Can you

17   describe that?

18             **PROSPECTIVE JUROR:**  I mean, throughout the news

19   media, that's how, you know, I knew about it.

20             **THE COURT:**  And is this close to January 6th or

21   have you continued to follow it to current day?

22             **PROSPECTIVE JUROR:**  Well, I mean, around January

23   6th and a couple weeks after it; that was about it.

24             **THE COURT:**  Have you followed stories more

25   recently?

1          **PROSPECTIVE JUROR:**  No, I haven't.

2          **THE COURT:**  And these are stories that you saw in

3     the newspaper or on television or both?

4          **PROSPECTIVE JUROR:**  On television.

5          **THE COURT:**  Anything about Mr. Reffitt himself?

6          **PROSPECTIVE JUROR:**  No.

7          **THE COURT:**  Anything about any other individual

8     you recall --

9          **PROSPECTIVE JUROR:**  No.

10          **THE COURT:**  -- by name?  Based on what you saw or

11     based on what you heard on the TV have you formed any

12     opinion about the guilt or innocence of those who are

13     involved in the Capitol?

14          **PROSPECTIVE JUROR:**  No.

15          **THE COURT:**  Despite what you've heard and seen in

16     the news, would you be able to come here, if you were

17     selected as a juror, and decide this case based solely on

18     the evidence as presented in the courtroom and the

19     instructions I give you?

20          **PROSPECTIVE JUROR:**  Yes.

21          **THE COURT:**  As you sit here now, do you have any

22     opinion at all as to Mr. Reffitt's guilt or innocence?

23          **PROSPECTIVE JUROR:**  Not at all.

24          **THE COURT:**  And you understand that he's presumed

25     innocent as he sits here?

1          **PROSPECTIVE JUROR:**  Yes.

2          **THE COURT:**  Would you have any problem following

3     that instruction?

4          **PROSPECTIVE JUROR:**  No.

5          **THE COURT:**  You also indicated that you, your

6     family members or close friends work in law enforcement.

7     Who might that be?

8          **PROSPECTIVE JUROR:**  My stepdaughter.

9          **THE COURT:**  What does she do?

10          **PROSPECTIVE JUROR:**  She's a security officer.

11          **THE COURT:**  Where does she work?

12          **PROSPECTIVE JUROR:**  She works at Admiral

13    Insurance.  Up on -- I think it's northwest.

14          **THE COURT:**  Is there anything about your

15    relationship and close association with her that would make

16    you favor one side or the other in this case?

17          **PROSPECTIVE JUROR:**  No.

18          **THE COURT:**  Would you weigh the credibility of

19    police officers, just like you would weigh the credibility

20    of any other witness?

21          **PROSPECTIVE JUROR:**  Yes.

22          **THE COURT:**  All right.  Ms. Berkhower?

23          **MR. NESTLER:**  No follow-up, Your Honor.

24          **THE COURT:**  Mr. Welch?

25          **MR. WELCH:**  No, thank you.

1          **THE COURT:**  All right.  Thank you, sir.

2          **PROSPECTIVE JUROR:**  Thank you.

3          (Prospective juror steps down.)

4          **THE COURT:**  Just curious what each side's position

5     is on his hardship, both his job and his diabetes?  Is he

6     someone that you all would be willing to move to the end of

7     the list?  I don't know that either present a basis,

8     necessarily, to strike for cause.  But I think we could take

9     breaks.

10          **MS. BERKOWER:**  Your Honor, I think we had another

11     juror who had a similar medical issue.  It seems like breaks

12     would be appropriate, as it was for her, for this juror.  So

13     in our view --

14          **THE COURT:**  But it's that as well as the job.  And

15     the job you feel the same?

16          **MS. BERKOWER:**  Yes, Your Honor.

17          **THE COURT:**  So don't move him to the bottom?

18          **MS. BERKOWER:**  We would request we not move him.

19          **THE COURT:**  All right.  All right.  So he'll stay

20     in the pool.

21          All right.  The next juror is 0193, has answered

22     yes to 4, 18, 19 and 20.

23          **COURTROOM DEPUTY:**  Your Honor, juror number 0193.

24          (Prospective juror steps up.)

25          **THE COURT:**  Good afternoon, sir.  Thank you for

1   your patience.  If you feel comfortable taking off your

2   mask, please do.

3            So you answered yes to the question that you have

4   seen or heard news either about Mr. Reffitt or about other

5   individuals who were at the Capitol on January 6th; is that

6   right?

7            **PROSPECTIVE JUROR:**  Yes.

8            **THE COURT:**  And can you describe what it is that

9   you've seen or heard?

10           **PROSPECTIVE JUROR:**  I mean, just kind of casual

11  absorbing of things that have happened.  I don't really pay

12  attention to much news at all.  But I think some things have

13  been unavoidable, just given kind of how ubiquitous they've

14  been.

15           **THE COURT:**  I'm sorry.  I missed that last part.

16           **PROSPECTIVE JUROR:**  I think it's kind of hard to

17  completely avoid things.  It's been ubiquitous for the last

18  year or so.

19           **THE COURT:**  Right.  So you are following the

20  January 6th events, what you see in the headlines; is that

21  fair to say?  Are you tracking it more carefully?

22           **PROSPECTIVE JUROR:**  Less actively than that.  I

23  try pretty hard to avoid news.

24           **THE COURT:**  All right.  To your knowledge have you

25  seen anything or heard anything about Mr. Reffitt?

1    PROSPECTIVE JUROR:  No.

2    THE COURT:  Based on what you've seen or heard,

3  have you formed any opinion about the guilt of the people

4  involved in the events at the Capitol on January 6th?

5    PROSPECTIVE JUROR:  I mean, I don't think I can

6  actively say, Yes.  I mean, I don't know.

7    THE COURT:  Well, let me ask you this:  To the

8  extent you have any opinion at all about those events, would

9  you be -- do you think you would be able to put that opinion

10  or those views aside and act as a fair and impartial juror

11  in this case and consider only the evidence that's presented

12  in court in deciding whether Mr. Reffitt is innocent or

13  guilty of the crimes charged?

14    PROSPECTIVE JUROR:  I believe so.

15    THE COURT:  All right.  You realize what you've

16  seen or heard may not be accurate?

17    PROSPECTIVE JUROR:  Uh-huh.

18    THE COURT:  Certainly not evidence in this case?

19    PROSPECTIVE JUROR:  Yeah.

20    THE COURT:  You appreciate that?

21    PROSPECTIVE JUROR:  Yeah.

22    THE COURT:  All right.

23    You've also indicated that you or your family

24  members or close friends work in law enforcement.

25    PROSPECTIVE JUROR:  You said that prosecution was

1   involved in that?

2           **THE COURT:**  Yes.

3           **PROSPECTIVE JUROR:**  I have a friend who interned

4   several times in law school through a prosecution's office.

5   I guess that was my definition of that.

6           **THE COURT:**  Okay.  How long ago was that?

7           **PROSPECTIVE JUROR:**  The last couple summers.

8           **THE COURT:**  Is this a close friend?

9           **PROSPECTIVE JUROR:**  Yeah.

10          **THE COURT:**  Is he or she now at the prosecutor's

11  office?

12          **PROSPECTIVE JUROR:**  No, not currently.  He is

13  finishing up law school right now.

14          **THE COURT:**  Did you have conversations with him

15  about his work there?

16          **PROSPECTIVE JUROR:**  Not really.

17          **THE COURT:**  Is there anything about your

18  relationship with him that would prevent you from being fair

19  to both sides in this case?

20          **PROSPECTIVE JUROR:**  No.

21          **THE COURT:**  You also mentioned you or a family

22  member or close friend is a lawyer, student or works in a

23  legal office.  Is that the same friend?

24          **PROSPECTIVE JUROR:**  Well, my wife is also a

25  lawyer.

1        **THE COURT:**  What kind of lawyer is she?

2        **PROSPECTIVE JUROR:**  She does mostly does cyber

3    security and data privacy work.

4        **THE COURT:**  All right.  You are not a lawyer

5    yourself?

6        **PROSPECTIVE JUROR:**  No.

7        **THE COURT:**  Do you talk about the law with your

8    wife?

9        **PROSPECTIVE JUROR:**  I mean, yes, it's come up but

10    not regularly.

11        **THE COURT:**  I'm just wondering whether you would

12    have any problem following the legal instructions that I

13    give you in this case.  Is there anything about your

14    conversations with your friend or your wife that would

15    impede your ability to do that?

16        **PROSPECTIVE JUROR:**  I don't believe so.

17        **THE COURT:**  All right.  Finally, you answered, yes

18    to the question that you or someone you know well has been

19    arrested, charged or convicted of a crime or been a victim

20    or a witness to a crime.  And if you would prefer to answer

21    this over the telephone headset, we can do that.

22        **PROSPECTIVE JUROR:**  I mean, I have a few

23    misdemeanors on my record.  So, yes, but that's it.

24        **THE COURT:**  Okay.  Is there anything about the way

25    you were treated?  Were you prosecuted for those?  You were

1    prosecuted for those misdemeanors?

2          **PROSPECTIVE JUROR:**  Yes.

3          **THE COURT:**  Is there anything about the way you

4    were treated in that process, either by the police or by the

5    prosecutors, that would make it hard for you to give both

6    sides a fair trial in this case?

7          **PROSPECTIVE JUROR:**  I don't believe so.  They were

8    young, dumb mistakes.  I would like to think I've grown a

9    little bit since then.

10         **THE COURT:**  All right.  Nothing further.

11   Ms. Berkower?

12         **MS. BERKOWER:**  Good afternoon.

13         **PROSPECTIVE JUROR:**  Hi.

14         **MS. BERKOWER:**  Just a few follow-up questions.

15   You said you try to avoid the news.

16         **PROSPECTIVE JUROR:**  Yeah.

17         **MS. BERKOWER:**  Can I ask why?

18         **PROSPECTIVE JUROR:**  There's some research done

19   that not paying attention to the news increases happiness.

20   And I kind of abide by that pretty strongly.  I've just

21   never been one for current events.

22         **MS. BERKOWER:**  And you said you have a few young,

23   dumb mistakes that were misdemeanors.  Could you say what

24   those are?

25         **PROSPECTIVE JUROR:**  One was, I believe, petty

1  theft, and the other one was just a fist fight gone wrong.

2  I think it was a misdemeanor assault.

3        **MS. BERKOWER:**  And were those here in D.C.?

4        **PROSPECTIVE JUROR:**  No, Virginia and Maryland.

5        **MS. BERKOWER:**  And how long ago were those?

6        **PROSPECTIVE JUROR:**  Ten years?  Eleven?  One ten

7  and one eleven.

8        **MS. BERKOWER:**  Okay.  Thank you.

9        **THE COURT:**  Mr. Welch?

10        **MR. WELCH:**  No questions.  Thank you.

11        **THE COURT:**  All right.  Thank you, sir.

12        (Prospective juror steps down.)

13        **THE COURT:**  All right.  This next juror, 1459, has

14  not answered yes to any question.

15        **COURTROOM DEPUTY:**  Your Honor, juror number 1459.

16        (Prospective juror steps up.)

17        **THE COURT:**  Good afternoon, sir.

18        **PROSPECTIVE JUROR:**  Good afternoon.

19        **THE COURT:**  Thank you for your patience.  If you

20  feel comfortable taking off your mask, would you please?  So

21  you didn't answer yes to any of my questions.

22        **PROSPECTIVE JUROR:**  Yeah.

23        **THE COURT:**  Have you not heard anything in the

24  news about the events at the Capitol on January 6th of 2021?

25        **PROSPECTIVE JUROR:**  Yeah, I just didn't really pay

1    attention to it.

2              **THE COURT:**  So you saw it in the news, you just

3    didn't read it carefully.  Was that on the TV or in the

4    newspaper?

5              **PROSPECTIVE JUROR:**  TV, basically or mostly.

6              **THE COURT:**  All right.  Try to keep your voice up

7    so the court reporter can take down what you are saying.

8              **PROSPECTIVE JUROR:**  It was TV mostly.

9              **THE COURT:**  All right.  And was that close to

10   January 6th of 2021 or more recently or both?

11             **PROSPECTIVE JUROR:**  January -- it was closer to

12   January 2021.

13             **THE COURT:**  All right.  Were you in D.C. on that

14   date?

15             **PROSPECTIVE JUROR:**  Yes.

16             **THE COURT:**  Were you anywhere near the Capitol?

17             **PROSPECTIVE JUROR:**  No.

18             **THE COURT:**  What did you see on TV?

19             **PROSPECTIVE JUROR:**  Just chaos.  There was a lot

20   going on.

21             **THE COURT:**  Have you followed what's happened

22   since then in the news?

23             **PROSPECTIVE JUROR:**  No.

24             **THE COURT:**  Based on what you saw and what you've

25   heard since January 6th, have you formed any opinions about

1    the guilt or innocence of those who were involved in the

2    Capitol events on January 6th?

3              **PROSPECTIVE JUROR:**  No, ma'am.

4              **THE COURT:**  Would you be able to put aside what

5    you've seen and heard and decide this case if you were

6    picked as a juror, based only on what you hear here in the

7    courtroom?

8              **PROSPECTIVE JUROR:**  Yes.

9              **THE COURT:**  As you sit here, you have no opinion

10   on Mr. Reffitt's guilt or innocence?

11             **PROSPECTIVE JUROR:**  No, ma'am.

12             **THE COURT:**  Do you recognize him at all?

13             **PROSPECTIVE JUROR:**  No.

14             **THE COURT:**  All right.  Ms. Berkower?

15             **MS. BERKOWER:**  Good afternoon.

16             **PROSPECTIVE JUROR:**  Good afternoon.

17             **MS. BERKOWER:**  May I ask how long have you lived

18   in D.C.?

19             **PROSPECTIVE JUROR:**  How long?  Probably since

20   elementary school.

21             **MS. BERKOWER:**  So quite a while?

22             **PROSPECTIVE JUROR:**  Yes.

23             **MS. BERKOWER:**  And are you working?

24             **PROSPECTIVE JUROR:**  Yes.

25             **MS. BERKOWER:**  What is your job?

1          **PROSPECTIVE JUROR:**  I work as a CSA at Walgreens.

2          **MS. BERKOWER:**  And is that in D.C.?

3          **PROSPECTIVE JUROR:**  Yes.

4          **MS. BERKOWER:**  What is a CSA?

5          **PROSPECTIVE JUROR:**  Customer service associate.

6          **MS. BERKOWER:**  Okay.  Sorry.  Do you manage other

7     people there?

8          **PROSPECTIVE JUROR:**  No, I'm not the manager.  I am

9     just a cashier.

10          **MS. BERKOWER:**  Okay.  Thank you.

11          **PROSPECTIVE JUROR:**  You are welcome.

12          **LEFT2:**  No questions.

13          **THE COURT:**  All right.  Thank you, sir.

14          **PROSPECTIVE JUROR:**  You're welcome.

15          (Prospective juror steps down.)

16          **THE COURT:**  All right.  Next juror, 0543, answered

17     yes to the mask question and 1, 2, 3, 4, 18, 19, 20, 24.

18          **COURTROOM DEPUTY:**  Your Honor, juror number 0543.

19          (Prospective juror steps up.)

20          **THE COURT:**  Good afternoon.  You may have a seat.

21          Thank you for your patience.  Sorry it's taking so

22     long.

23          **PROSPECTIVE JUROR:**  That's okay.  Thank you.

24          **THE COURT:**  All right.  So you've answered yes to

25     a number of questions.  The first being that you either live

1      or work at or near the U.S. Capitol.  Which is it?

2                  PROSPECTIVE JUROR:  I do both.  I live in Adams

3      Morgan, about a couple miles away.  And I work over in

4      Anacostia.

5                  THE COURT:  All right.  And what do you do?

6                  PROSPECTIVE JUROR:  I work for the Coast Guard.

7                  THE COURT:  All right.  Were you inconvenienced on

8      January 6th by the events at the Capitol?

9                  PROSPECTIVE JUROR:  No, not really.

10                 THE COURT:  You said you or someone you know have

11     a direct or indirect connection to the Capitol events?

12                 PROSPECTIVE JUROR:  Yeah.  It was a friend of a

13     friend from high school.  Her parents had been there.  But

14     it was just through hearsay, so that's all I knew.

15                 THE COURT:  You have to keep your voice up so that

16     the court reporter --

17                 PROSPECTIVE JUROR:  I'm sorry.  It was a friend of

18     a friend from high school.  Her parents were there.  Through

19     hearsay I knew that.

20                 THE COURT:  Through hearsay.

21                 PROSPECTIVE JUROR:  Yes, ma'am.

22                 THE COURT:  Were they arrested in connection with

23     the January 6th events?

24                 PROSPECTIVE JUROR:  I don't believe so.  I'm not

25     sure though.

1          **THE COURT:**  All right.  Did you hear any details

2     through your friend or through her parents?

3          **PROSPECTIVE JUROR:**  No.

4          **THE COURT:**  Did you have any other connection --

5          **COURTROOM DEPUTY:**  No.

6          **THE COURT:**  -- to the Capitol events?

7          All right.  You also heard news about the January

8     6th Capitol events, and you've heard news about either

9     Mr. Reffitt or others who were at the Capitol on January

10    6th.  Can you describe, generally --

11         **PROSPECTIVE JUROR:**  Just general news, just from

12    having the TV on during the actual events.  But nothing

13    substantial, in general, and I've never heard of the

14    gentleman for this case.

15         **THE COURT:**  All right.  Have you followed the news

16    relating to the Capitol events --

17         **PROSPECTIVE JUROR:**  Not really, no.

18         **THE COURT:**  -- since then?

19         Based on what you have seen or heard, have you

20    formed any opinion about the guilt or innocence of those who

21    were involved in the Capitol events?

22         **PROSPECTIVE JUROR:**  No, ma'am.

23         **THE COURT:**  Do you feel that despite what you've

24    seen and heard, you could come to this courtroom and decide

25    this case only based on the evidence you hear in this

1  courtroom and the instructions I provide?

2           **PROSPECTIVE JUROR:**  Yes, ma'am.

3           **THE COURT:**  Do you think you could put aside out

4  of your mind what you've seen and heard already?

5           **PROSPECTIVE JUROR:**  Yes, ma'am.

6           **THE COURT:**  You say that you, your family members

7  or close friends work in law enforcement.  Is that you at

8  the Coast Guard or are there others?

9           **PROSPECTIVE JUROR:**  There's others.  So I work at

10  the Coast Guard.  My dad is retired FBI.  And then my

11  stepmother works for Customs and Border Protection.

12           **THE COURT:**  All right.  If you were to serve as a

13  juror in this case, you'd likely hear from FBI agents as

14  witnesses in this case.  Do you think, because your dad is a

15  former FBI agent, that you would give their testimony

16  greater weight than you would give any other witness in the

17  case?

18           **PROSPECTIVE JUROR:**  I don't believe so.  No,

19  ma'am.

20           **THE COURT:**  All right.  Would you judge the

21  testimony of a police officer or agent, just like you would

22  any other witnesses?

23           **PROSPECTIVE JUROR:**  Yes, I would based on

24  expertise alone on the other side's witness or FBI or police

25  officer.

1          **THE COURT:**  All right.  And how -- given that

2   you're an employee of the federal government and you have

3   some family members who are also employees of the federal

4   government, would you be more inclined to favor the federal

5   government, the prosecution in this case, simply by virtue

6   of your job?

7          **PROSPECTIVE JUROR:**  No.  I feel like I wasn't --

8   my branch of work doesn't really correlate to any of this.

9   I feel like I can keep that extremely separate.

10          **THE COURT:**  Right.

11          You also said that either you, a family member or

12   close friend is a lawyer, law student or works in a legal

13   office.

14          **PROSPECTIVE JUROR:**  Yeah.  My dad has a law

15   degree.  He went to law school prior to being in the FBI.

16          **THE COURT:**  What did he do for the FBI?

17          **PROSPECTIVE JUROR:**  He was a major case

18   specialist.

19          **THE COURT:**  All right.  Do you talk about his

20   cases with him?

21          **PROSPECTIVE JUROR:**  Not regularly.  Just one, a

22   long time ago, the sniper case he was working on.  But that

23   was about the only case I really talked to him about.

24          **THE COURT:**  The what case?

25          **PROSPECTIVE JUROR:**  The sniper case.  The D.C.

1    sniper.

2           **THE COURT:**  Oh, okay.  Was there anything, based

3    on what you've heard from him or any other lawyer that would

4    make you concerned that you couldn't follow the instructions

5    I give you in this case?

6           **PROSPECTIVE JUROR:**  No.

7           **THE COURT:**  So you also answered yes to the

8    question about you or someone you know well having been

9    arrested, charged, convicted of a crime or been a victim or

10   a witness to a crime.

11          **PROSPECTIVE JUROR:**  Yeah.

12          **THE COURT:**  Is that a question you feel

13   comfortable answering in public?

14          **PROSPECTIVE JUROR:**  Yes.  My brother was arrested

15   for a DUI about seven or eight years ago.

16          **THE COURT:**  Was there anything about the way the

17   police handled that that would make you --

18          **PROSPECTIVE JUROR:**  No.

19          **THE COURT:**  -- biased in any way?

20          **PROSPECTIVE JUROR:**  No.

21          **THE COURT:**  And then you did answer that you are

22   not comfortable with the attorneys or me not wearing a mask,

23   but you have a question mark by that.

24          **PROSPECTIVE JUROR:**  Yeah.  I misunderstood the

25   question.  I am comfortable with that; that is why I marked

1   it.

2          **THE COURT:**  Oh, you are comfortable with us not

3   having our mask on?

4          **PROSPECTIVE JUROR:**  Yes, ma'am.

5          **THE COURT:**  All right.  Then I am going to take

6   mine off.

7          **PROSPECTIVE JUROR:**  That's why I circled it.

8          **THE COURT:**  And you are welcome to take yours off

9   too, if you feel better.

10         **PROSPECTIVE JUROR:**  Yeah.  Thanks.

11         **THE COURT:**  All right.  All right.

12         That's it.  Ms. Berkower?

13         **MS. BERKOWER:**  No follow-up, Your Honor.

14         **THE COURT:**  Mr. Welch?

15         **MR. WELCH:**  No questions.  Thank you.

16         **THE COURT:**  All right.  Thank you very much.

17         **PROSPECTIVE JUROR:**  Thank you.

18         (Prospective juror steps down.)

19         **THE COURT:**  All right.  The next juror is 0514.

20  That juror answered yes to 1, 3, 4, 5, 6, 15, 18 and 27.

21         **COURTROOM DEPUTY:**  Your Honor, juror number 0514.

22         (Prospective juror steps up.)

23         **THE COURT:**  Good afternoon.  Thank you for your

24  patience.

25         **PROSPECTIVE JUROR:**  Thank you.

1          **THE COURT:**  If you feel comfortable taking your

2     mask off, please do.

3          All right.  You've answered yes to the question

4     that you live or work near the U.S. Capitol.  Which is it?

5          **PROSPECTIVE JUROR:**  I live near the U.S. Capitol,

6     about 10 minutes walking distance.

7          **THE COURT:**  All right.  Were you there at your

8     home on January 6th of 2021?

9          **PROSPECTIVE JUROR:**  Yes.

10          **THE COURT:**  Did you go outside and see the Capitol

11    events?

12          **PROSPECTIVE JUROR:**  Yes.

13          **THE COURT:**  You did.  You walked to the Capitol?

14          **PROSPECTIVE JUROR:**  Yes, I walked near the

15    Capitol.

16          **THE COURT:**  And where were you standing?

17          **PROSPECTIVE JUROR:**  Like across the street.

18          **THE COURT:**  On the east side or the west side?

19          **PROSPECTIVE JUROR:**  On the --

20          **THE COURT:**  Supreme Court side or the monument

21    side?

22          **PROSPECTIVE JUROR:**  Monument side.

23          **THE COURT:**  Okay.  What did you see?

24          **PROSPECTIVE JUROR:**  I saw a whole bunch of

25    activity.  A lot of people.  Police activity.

1            **THE COURT:**  What time were you there?  Do you

2     remember?

3            **PROSPECTIVE JUROR:**  I can't remember.  I would say

4     mid-afternoon probably.

5            **THE COURT:**  When you arrived, had the rioters

6     already breached the Capitol?

7            **PROSPECTIVE JUROR:**  Yes.

8            **THE COURT:**  Do you recognize Mr. Reffitt here in

9     the courtroom?

10           **PROSPECTIVE JUROR:**  No.

11           **THE COURT:**  Did you see anyone get hurt that day?

12           **PROSPECTIVE JUROR:**  No.

13           **THE COURT:**  Were you scared for your own safety?

14           **PROSPECTIVE JUROR:**  No.

15           **THE COURT:**  You also indicated that you've heard

16    news about the January 6th events and news about particular

17    individuals.  Are any of those individuals Mr. Reffitt?

18           **PROSPECTIVE JUROR:**  No.

19           **THE COURT:**  What have you heard about particular

20    individuals?

21           **PROSPECTIVE JUROR:**  I follow close attention to

22    the news.  I know the individuals who -- you know, I don't

23    know them by name, necessarily.  Obviously, you know, I read

24    stories about folks who have breached the Capitol.

25           **THE COURT:**  I'm curious.  Are you just reading

1    headlines or are you searching for information about the

2    Capitol events?

3              **PROSPECTIVE JUROR:**  I read headlines and the

4    stories.

5              **THE COURT:**  Is this in the newspaper?  On the TV?

6    On the internet?

7              **PROSPECTIVE JUROR:**  Everywhere.

8              **THE COURT:**  Okay.  Do you listen to any podcasts

9    or get Tweets about the January 6th events?

10             **PROSPECTIVE JUROR:**  No podcast but Tweets, yes.  I

11   use Twitter to consume news a lot.

12             **THE COURT:**  What kind of Tweets do you receive?

13   From what sources?

14             **PROSPECTIVE JUROR:**  Mostly news sources and

15   reporters that I follow.  A lot of reporters who cover

16   January 6th.

17             **THE COURT:**  Can you tell us who, exactly?

18             **PROSPECTIVE JUROR:**  It's a long list.  I can't

19   name them all.

20             **THE COURT:**  And these are reporters who

21   specifically covered January 6th events or have a broader

22   news feed?

23             **PROSPECTIVE JUROR:**  These are reporters who are

24   generally national security reporters, Justice reporters,

25   political/national news reporters, folks that -- some of

1          these folks I know from my work.

2                    **THE COURT:**  And despite the fact that you receive

3          Tweets from folks who cover the Capitol events, you haven't

4          read or seen anything about Mr. Reffitt?

5                    **PROSPECTIVE JUROR:**  Not that I can recall.

6                    **THE COURT:**  What about today?  Did you see

7          anything before you came to court today?

8                    **PROSPECTIVE JUROR:**  No.

9                    **THE COURT:**  Did you read the paper today?

10                   **PROSPECTIVE JUROR:**  I read the news in the morning

11         on my phone and a few other outlets.

12                   **THE COURT:**  All right.  You indicated that you do

13         have such strong feelings or opinions about the events at

14         the Capitol on January 6th that it would be difficult for

15         you to put them aside and serve as a fair and impartial

16         juror in this case.

17                   **PROSPECTIVE JUROR:**  Yes.

18                   **THE COURT:**  Is that true?

19                   **PROSPECTIVE JUROR:**  That is true.

20                   **THE COURT:**  So our goal here, as I explained this

21         morning, is to try to find a neutral set of jurors.  There

22         are many people who've heard and seen news reports about the

23         Capitol and have opinions about it, but we don't want anyone

24         to serve on the jury whose views are so formed that they

25         come into the courtroom leaning in favor of one side or the

1    other.  Is that how you feel you are as you sit here now?

2              **PROSPECTIVE JUROR:**  Yes, I do feel that biased in

3    a way.

4              **THE COURT:**  And you don't feel like you could put

5    your bias aside and decide this case based on the evidence

6    presented in the courtroom and the instructions I give you?

7              **PROSPECTIVE JUROR:**  No.  I feel that as much as I

8    would try, I don't think I could overcome that bias.

9              **THE COURT:**  And you also said you have an opinion

10   about Mr. Reffitt's guilt or innocence?

11             **PROSPECTIVE JUROR:**  Yes.

12             **THE COURT:**  And what does that stem from?

13             **PROSPECTIVE JUROR:**  From my following of the

14   events of January 6th, my background working in government

15   and national security, and knowledge of just the justice

16   system.

17             **THE COURT:**  And what is your background in

18   national security?

19             **PROSPECTIVE JUROR:**  I used to be a spokesperson

20   for the Department of Homeland Security.

21             **THE COURT:**  And so based on that prior role, you

22   feel -- are you saying predisposed towards the government's

23   side of the case?

24             **PROSPECTIVE JUROR:**  I would say that.

25             **THE COURT:**  You also indicated you'd struggle to

1    follow my instruction to avoid all media and research?

2              **PROSPECTIVE JUROR:**  Yes.

3              **THE COURT:**  Would you struggle to follow my other

4    instructions --

5              **PROSPECTIVE JUROR:**  No.

6              **THE COURT:**  -- such as the defendant's presumed

7    innocent?

8              **PROSPECTIVE JUROR:**  No.

9              **THE COURT:**  You wouldn't struggle to do that?

10             **PROSPECTIVE JUROR:**  No.

11             **THE COURT:**  But yet you do feel you have some

12   biases you bring into the courtroom.

13             **PROSPECTIVE JUROR:**  Yes.  I think I have inherent

14   biases I don't think I could overcome, as much as I'd try

15   to.

16             **THE COURT:**  All right.  In terms of any other

17   family members, close friends who work in law enforcement,

18   you answered yes to that.  Was that from your own

19   experience?

20             **PROSPECTIVE JUROR:**  It was from my own experience

21   but also, I would say, from my experience I do know a lot of

22   people in law enforcement.

23             **THE COURT:**  Finally, in the catch-all you said

24   there is some other reason that makes it difficult for you

25   sit fairly and impartially as a juror in this case.  Can you

1    say what that is?

2              **PROSPECTIVE JUROR:**  I have very strong political

3    views.  I think I have very strong political views about the

4    events that happened on January 6th that would make it very

5    difficult for me to be unbiased.

6              **THE COURT:**  Despite the instructions I would give

7    you --

8              **PROSPECTIVE JUROR:**  Yes.

9              **THE COURT:**  -- you think you would struggle to

10   apply those fairly and impartially?

11             **PROSPECTIVE JUROR:**  Yes.

12             **THE COURT:**  All right.  Thank you for your candor.

13   Ms. Berkower?

14             **MS. BERKOWER:**  Good afternoon.

15             You said you have a background working in

16   government and national security.  What is your current

17   position?

18             **PROSPECTIVE JUROR:**  I am head of communications at

19   a defense firm.

20             **MS. BERKOWER:**  A defense firm?

21             **PROSPECTIVE JUROR:**  Yes.

22             **MS. BERKOWER:**  And what do you mean by a defense

23   firm?

24             **PROSPECTIVE JUROR:**  We are a tech company that

25   specializes in national defense contracts.  So we work

1    exclusively with the DOD.

2              **MS. BERKOWER:**  Got it.

3              And you said that you walked over and watched

4    events at the Capitol on January 6th?

5              **PROSPECTIVE JUROR:**  [NODDED HEAD]

6              **MS. BERKOWER:**  What made you go over there?

7              **PROSPECTIVE JUROR:**  I saw it on the news, and it

8    was so close to my apartment, I wanted to go see what was

9    going on.

10             **MS. BERKOWER:**  Now I know you said you have strong

11   feelings about the events of that day; is that right?

12             **PROSPECTIVE JUROR:**  Yes.

13             **MS. BERKOWER:**  And you understand the judge will

14   order you to set them aside --

15             **PROSPECTIVE JUROR:**  Yes.

16             **MS. BERKOWER:**  -- right?  Are you saying you won't

17   follow that order?

18             **PROSPECTIVE JUROR:**  I'm saying I would try to but

19   I don't know that I could.

20             **MS. BERKOWER:**  Would you keep an open mind to the

21   evidence you hear in the court?

22             **PROSPECTIVE JUROR:**  Yes.

23             **MS. BERKOWER:**  Would you judge the defendant just

24   on the evidence about him specifically?

25             **PROSPECTIVE JUROR:**  Yes.

1          **MS. BERKOWER:**  You understand the government has

2   to prove the charges in the case beyond a reasonable doubt

3   in order for the jury to convict him.  Right?

4          **PROSPECTIVE JUROR:**  I understand.

5          **MS. BERKOWER:**  If the government didn't present

6   evidence that proved the defendant's guilt individually,

7   beyond a reasonable doubt, would you vote to acquit him?

8          **PROSPECTIVE JUROR:**  Yes.

9          **MS. BERKOWER:**  All right.

10          And -- thank you.

11          **PROSPECTIVE JUROR:**  Thank you.

12          **THE COURT:**  Mr. Welch?

13          **MR. WELCH:**  No questions for the venireperson, but

14   I have a question for the Court.

15          **THE COURT:**  All right.  Thank you.  Thank you,

16   sir.  You are excused.

17          (Prospective juror steps down.)

18          **MR. WELCH:**  Your Honor, I move for cause.  The

19   venireman says he feels biased.  As much as he would try, he

20   cannot follow your instructions.  He can't overcome his

21   bias, as much as he would try, because he has such strong

22   feelings about what happened on January 6th, and such strong

23   political feelings.

24          **THE COURT:**  Ms. Berkower?

25          **MS. BERKOWER:**  Your Honor, this juror, when push

1    came to shove, said he would only convict this defendant if

2    the government proved its case beyond a reasonable doubt.

3    And he understands that the evidence has to be about this

4    specific defendant, regardless of -- and if he were ordered

5    to set aside his opinions, he believed he could do it.  So

6    we would submit he should not be struck.

7            **THE COURT:**  But Ms. Berkower, I think I disagree

8    with you about how we should be looking at this.  I don't

9    think we should be push come to shove to get someone to say,

10   Yeah, they would follow my instructions.

11           Like the juror about ten back, he said, I feel

12   biased.  I'd try really hard to follow your instructions.  I

13   don't think any juror is going to sit here and say, I would

14   blatantly disregard an order of the Court.  But he said

15   multiple times he had biases based on what he had read and

16   seen, and he also firsthand was on the west side of the

17   Capitol, which concerns the Court as well.  So I don't know

18   to what extent he has, you know, factual information that

19   will be in the back of his head, as he listens to the

20   evidence.

21           I think he said multiple times that he would try

22   as much as he could, but he didn't know.  He was very

23   biased, and felt like he could not be a fair and impartial

24   juror.  So I just don't think we want to be pushing people

25   to give the answer that they follow my instructions; that's

1     really not the standard I think we ought to be applying.

2             So I will strike him for cause.  I think we are

3     going to stop for the jurors.  Can you please apologize?  We

4     got to all but eight or so.

5             **COURTROOM DEPUTY:**  Yes, Your Honor.

6             **THE COURT:**  All right.  Thank you.

7             **COURTROOM DEPUTY:**  You're welcome.

8             **THE COURT:**  All right.  So I do know that the

9     marshals are under time constraints.  But I do want to

10    address, with Mr. Reffitt present, the PowerPoint of the

11    government.  And I guess I'm asking Mr. Hopkins.  Time got

12    away from me.  How much time do we have?

13            **COURTROOM DEPUTY:**  I will ask the marshals.

14            **THE COURT:**  Do you want to ask them?

15            I'm sorry.  I just got distracted.

16            So, folks, the marshals are waiting.  I just --

17    the clock got away.  So I think we are going to have to take

18    up the issue with the demonstrative exhibit tomorrow.

19            I will say, as I said this morning, I'm inclined

20    to let at least the photographs -- I'm not sure about the

21    video.  I know the courts -- some courts have drawn lines

22    and not allowed video testimony in openings.

23            I will try to take a look, if the government can

24    direct me to the portion of the video, I will try to take a

25    look at that tonight.  If you can tell me where it is in the

1    eight-minute clip.

2             The other thing that I think is not -- is perhaps

3    unduly prejudicial, even knowing that it is going to come

4    in.  I don't think we need the four-letter words.  I think

5    you all can do asterisks for that.  I know it will come but

6    I don't think you need to inflame the jury at the outset

7    with the four-letter words that are in the statements.

8             I don't have a problem with the statements.  I

9    don't have a problem with the photographs.  I want to see

10   the clip.  And I'm kind of leaning against it, so just to

11   warn you all, to the extent that changes your opening.

12            We have -- is anyone counting how many we've

13   qualified?

14            **MR. NESTLER:**  Twenty-five, Your Honor.

15            **THE COURT:**  Twenty-five?

16            **MR. NESTLER:**  Yeah.

17            **THE COURT:**  All right.  So I would hope we would

18   get to openings tomorrow.  And I know that the government

19   has an issue with witnesses.  I think it is very unlikely we

20   get beyond the start of the first witness.  Ms. Berkower,

21   you said that some were on duty, right, tomorrow evening?

22            **MS. BERKOWER:**  [NODDED HEAD]

23            **THE COURT:**  I would just be ready to go with

24   openings.  And I don't know if we'll get to the first

25   witness, but if you could have that witness available.  Is

1    there a certain time by which it would be helpful to stop

2    tomorrow?

3          **MR. NESTLER:**  In terms of having the witness here?

4          **THE COURT:**  Yeah.  I know that you said they have

5    other obligations tomorrow night?  Is that one of the

6    witnesses?

7          **MR. NESTLER:**  It would be helpful to know by

8    mid-day where we are.  I guess I'm also -- that will go to

9    how many jurors are called.  We still think 36 is the right

10    number, but that is also a different question.

11          **THE COURT:**  Yeah.  I thought it was too, but I

12    think the issue is -- we can stay and talk about why I think

13    it's 40, if you all want.  But I think we need to let

14    Mr. Reffitt go now.

15          So, Mr. Reffitt, we will see you back in the

16    morning.  And, Mr. Welch, if you want to talk through --

17    Mr. Reffitt, we are basically just trying to figure out how

18    many jurors we have to qualify to have enough for all of the

19    strikes.

20          **THE DEFENDANT:**  Okay.

21          **COURTROOM DEPUTY:**  Your Honor, I need to ask.  I

22    heard someone say 25?  I have 24.  I know what the

23    difference probably is the juror with the resi-- the issue

24    with the residence.  I didn't count her.

25          **THE COURT:**  We also want to address that first

1   thing in the morning.  All right?

2                    **COURTROOM DEPUTY:**  Okay.

3                    **THE COURT:**  And to the extent you have any clear

4   law on that, please share it with me tonight or early in the

5   morning.  Okay?

6                    All right.  Well, I think we can have this

7   conversation about -- we will wait for Mr. Reffitt to be

8   present tomorrow in terms of the number of strikes we need.

9   But I think we should let him go.  And I'm hesitant to have

10  conversation without him present.

11                   All right.  Anything else before we adjourn?

12                   [No response]

13                   All right.  Thank you, all.

14                   **COURTROOM DEPUTY:**  All rise.

15                   (Proceedings concluded at 5:07 p.m.)

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court**

4    **Reporter,** certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the

6    above-entitled matter.

7

8

9

10

11    **February 29, 2022**              **/s/**
                **DATE**                    **Lorraine T. Herman**
12

13

14

15

16

17

18

19

20

21

22

23

24

25