## United States District Court for the District of Columbia

United States of America              *

     v.                           *           No. 1:21-cr-00032-DLF-1

Guy Wesley Reffitt                  *

## Reply in Support of Post-trial Motions

Defendant has moved for acquittal, for a new trial or in the alternative judgment on Count 3(a), and to arrest judgment on Count Two.  Doc's 128–130; *see* Fed. R. Crim. P. 29(c), 33, 34.

Twice the Court warned the government that proving obstruction in this case required proof that the defendant committed an assault, not vague terms like stopping and delaying the vote or interfering with police.  In addition, the Indictment did not allege any facts in support of Count Two.

Mr. Reffitt maintains: i) that the evidence is insufficient to sustain a conviction on Counts One, Two, Three, Four, and Five; ii) that a new trial or in the alternative judgment on Count 3(a) is in the interest of justice; and iii) that the Court does not have jurisdiction regarding Count Two of the Indictment.

## I.    The Court Should Grant Acquittal, Because the Evidence Is Insufficient to Sustain a Conviction.

A defendant may move for judgment of acquittal, or renew such a motion, within 14 days after a verdict.  Fed. R. Crim. P. 29(c).

In reviewing the sufficiency of evidence for a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any ***rational*** (emphasis added) trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002).

### A.    No Evidence the Defendant Assaulted, Attempted, or Aided and Abetted Assaulting Anyone.

The Court said to the government, "[a]t a minimum, you need to prove the attempt or the aiding and abetting the assaults, or you're not going to prove the obstruction." Tr. Feb. 18, 2022 at 10:19–21.

The Court also said,

> Assault, you know, batteries, all of that works. What doesn't work are these vague, you know, terms like stopping and delaying the vote or interfering with police officers, you know, without that — interfere by shouting. I think the government needs to be crisp with its theory. And so long as it is, it will go to the jury, but if it's not, it won't.

Tr. Feb. 24, 2022 at 43:4–11.

According to the Capitol Police, Guy Reffitt never put his hand on anyone. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. Guy Reffitt never threw anything at anyone. *Ibid*. He never hit anyone with anything. *Ibid*. He never assaulted anyone. *Ibid*. The Capitol Police video corroborated this. Exhibit 205.

Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was told to get back. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed. *Ibid*. Guy Reffitt never tried to assault anyone, and he did not help anyone else commit an assault. *Ibid*. He did not threaten harm, and he was not aggressive. Tr. Mar. 7, 2022 at 1477:4–5.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349. Sergeant DesCamp testified that Mr. Reffitt was incapacitated. *Ibid*. The Capitol Police video corroborated the Capitol Police Officers' testimony. Exhibit 205.

Even the government conceded, it "has not charged the defendant with assaulting anybody. Let that be clear." Tr. Mar. 7, 2022 p.m. at 1273–1305. Nor did the government cite any evidence in its response that the defendant assaulted, attempted, or aided and abetted assaulting anyone. Doc. 132.

3

**B.     The Court Should Grant Acquittal on Count Two, i) Because the Charge Fails to State an Offense, ii) Because the Defendant's Conduct Did Not "Obstruct, Influence, and Impede" a Proceeding within the Meaning of the Statute, and iii) Because the Term "Corruptly," as Applied Is Unconstitutionally Vague.**

Defendant maintains that in order to prove obstruction of an official proceeding (18 U.S.C. § 1512(c)(2)), the government must prove beyond a reasonable doubt:

1)  that the defendant acted knowingly;

2)  that the defendant obstructed, influenced, or impeded, or attempted to obstruct, influence or impede an official proceeding by impairing the integrity and availability of non-object information to be used in the official proceeding;

3)  that the defendant acted corruptly to obstruct, influence, or impede the due administration of justice, that is, the defendant acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate, and that he influenced another to violate their legal duty; and

4)  that the defendant's alleged actions had a relationship in time, causation, or logic with the proceeding such that it was foreseeable that defendant's conduct would interfere with the proceeding.   In other words, the government must prove to you beyond a reasonable doubt that obstruction of an official proceeding was the natural and probable outcome of defendant's conduct.

4

Doc's 38, 55, 74, 89, 100; *see United States v. Ermoian*, 752 F.3d 1165, 1171–1172 (9th Cir. 2013); *United States v. Ahrensfield*, 698 F. 3d 1310 (10th Cir. 2012); *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991); *United States v. North*, 910 F.2d 843, 882, 285 U.S. App. D.C. 343 (D.C. Cir. 1990) (a "corrupt" intent means "the intent to obtain an improper advantage for oneself or someone else…"); *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) ("To interpret 'corruptly' [in obstruction statute] as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth' in this statute because of the chilling effect on protected activities … Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'").

### 1.     Count Two Fails to State an Offense.

Context, structure, and scope of the statute suggest that subsection (c)(2) has a narrow focus. 18 U.S.C. § 1512; *see United States v. Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72 at 20–22 (Mar. 7, 2022). The historical development of the statute suggests that subsection (c)(2) operates as a catchall to subsection (c)(1). *Miller* at 23–25. Legislative history supports a narrow reading of subsection (c)(2). *Id.* at 26–28.

Subsection (c)(2) has a serious ambiguity. *Id.* at 28. Courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute, …." *Id.*, *quoting United States v. Aguilar*, 515 U.S. 593, 600 (1995). They have "construe[d]

penal laws strictly and resolve[d] ambiguities in favor of the defendant, …." *Miller* at 28, *quoting United States v. Nasir,* 17 F.4th 459, 472 (3d Cir. 2021) (*en banc*) (Bibas, J., concurring) (*citing Liparota v. United States*, 471 U.S. 419, 427 (1985)).

> **2.  No Evidence the Defendant's Conduct "Obstructed, Influenced, and Impeded" any Proceeding Much Less One within the Meaning of the Statute.**

> **a)  The House and Senate Had Adjourned.**

No rational juror would find that the defendant obstructed, influenced, and impeded any proceeding, because the government stipulated:

> … the two Houses met together at approximately 1:00 p.m. in the House of Representatives chamber to begin the joint session.  Vice President Mike Pence was in the Capitol building and presiding over the joint session.  At approximately 1:15 p.m., the House and Senate ***adjourned*** (emphasis added) to their separate chambers for up to two hours to resolve a particular objection.

Exhibit 702; Tr. Mar. 4, 2022 a.m. at 1058:1–7.  Despite the Court saying, "let me remind you that a stipulation of fact is something you should consider as undisputed evidence[,]" the government elicited testimony to dispute that the House and Senate adjourned.  Tr. Mar. 4, 2022 a.m. at 1075.

The government stipulated that the joint session began at approximately 1:00 p.m. and adjourned approximately 15 minutes later "to resolve a particular objection[,]" which had nothing to do with Mr. Reffitt.  Exhibit 702.  The government also stipulated that the timestamps on the Capitol police video recordings (Exhibit 205) are accurate, and the video footage was not altered or edited in any way.  Exhibit

701.

The timestamps in Exhibit 205 and 507 prove that the defendant's interaction with the Capitol police was over while Vice President Pence was still presiding in the Senate, and Speaker Pelosi was still presiding in the House.  The timestamps in Exhibit 205 and 221 prove that the defendant's interaction with the Capitol police was over before Vice President Pence was seen in the stairwell with Agent Wade.

### b)      No Impairment of Information.

No rational juror would find that the defendant impaired, attempted to impair, or helped anyone else impair the integrity and availability of non-object information (*see Ermoian* 752 F.3d at 1171–1172), because the record does not reflect any evidence of that.  *See Jackson* at 319; *Wahl* at 375.  To the contrary, the record reflects Guy Reffitt did not go in the Capitol.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349; *see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221.  He did not break anything, and he did not take anything.  *Ibid*.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Sergeant Des Camp testified that Mr. Reffitt was incapacitated. *Ibid*.  The Capitol Police video corroborated the Capitol Police Officers' testimony. Exhibit 205.

No rational juror would find that the defendant acted corruptly to obstruct,

influence, or impede the due administration of justice (*see Ahrensfield*, 698 F. 3d 1310), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375. To the contrary, the record reflects that the joint session began at approximately 1:00 p.m. and adjourned approximately 15 minutes later. Exhibit 702. The timestamps in Exhibit 205 and 507 prove that the defendant's interaction with the Capitol police was over while Vice President Pence was still presiding in the Senate, and Speaker Pelosi was still presiding in the House. The timestamps in Exhibit 205 and 221 prove that the defendant's interaction with the Capitol police was over before Vice President Pence was seen in the stairwell with Agent Wade.

### 3.    The Term "Corruptly," as Applied Is Unconstitutionally Vague.

No rational juror would find that the defendant acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate, and that he influenced another to violate their legal duty (*see Poindexter*, 951 F.2d 369; *North*, 910 F.2d at 882; *Reeves*, 752 F.2d at 1001), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375.

Nor would a rational juror find that that the defendant took some action with respect to a document, record, other object, or non-object information, in order to corruptly obstruct, impede or influence an official proceeding (*See Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72), because the record does not reflect any evidence of that. *See Jackson* at 319; *Wahl* at 375. To the contrary, Guy Reffitt did not go in the

Capitol. Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349; *see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221. He did not break anything, and he did not take anything. *Ibid*.

> **C.**    **The Court Should Grant Acquittal on Count Four, Because the Defendant's Conduct Did Not "Obstruct, Impede or Interfere with an Officer."**

In order to prove obstructing officers during a civil disorder (18 U.S.C. § 231(a)(3)), the government must prove beyond a reasonable doubt:

1) that the defendant knowingly committed an act or attempted to commit an act;

2) that in committing or attempting to commit that act, the defendant intended to obstruct, impede or interfere with one or more law enforcement officers;

3) that at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

4) that the civil disorder in any way or degree obstructed, delayed or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally-protected function.

Doc. 119 at 32; Tr. Mar. 7, 2022 p.m. at 1431.

No rational juror would find that the defendant knowingly committed an act or attempted to commit an act; *see Jackson* at 319; *Wahl* at 375.  To the contrary, according to the Capitol Police, Guy Reffitt never put his hand on anyone, never threw anything at anyone, never hit anyone with anything, never assaulted anyone, never tried to assault anyone, and he did not help anyone else commit an assault.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Guy Reffitt did not go in the Capitol.  *Ibid*.; *see also* Tr. Mar. 4, 2022 a.m. at 1053–1094; Exhibits 507 and 221.  He did not break anything, and he did not take anything.  *Ibid*.  He did not threaten harm, and he was not aggressive.  Tr. Mar. 7, 2022 at 1273–1305.

The government stipulated that the Capitol police video (Exhibit 205), which corroborates all of this, was not altered or edited in any way.  Exhibit 701.

No rational juror would find that the defendant intended to obstruct, impede or interfere with one or more law enforcement officers.  To the contrary, Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was told to get back.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed.  *Ibid*.  Guy Reffitt never tried to assault anyone, and he did not help anyone else commit an assault.  *Ibid*.  He did not threaten harm, and he was not aggressive.  Tr. Mar. 7, 2022 at 1273–1305.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–

1305, 1322–1349.  Sergeant DesCamp testified that Mr. Reffitt was incapacitated. *Ibid*.  The Capitol Police video corroborated the Capitol Police Officers' testimony. Exhibit 205.

According to the Capitol Police, Guy Reffitt never disarmed an officer, never tried to disarm an officer, and he did not help anyone else disarm an officer.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Guy Reffitt never interfered with an arrest.  *Ibid*.  He never tried to interfere with an arrest, and he did not help anyone else interfere with an arrest.  *Ibid*.  The government stipulated that the Capitol police video (Exhibit 205), which corroborates all of this, was not altered or edited in any way.  Exhibit 701.

The government did not cite any evidence in its response that the defendant assaulted, attempted, or aided and abetted assaulting anyone.  Doc. 132.  Nor did the government cite any evidence in its response that the defendant disarmed an officer, attempted, or aided and abetted disarming an officer.  *Ibid*.  Likewise, the government did not cite any evidence that the defendant interfered with an arrest, attempted, or aided and abetted interfering with an arrest.  *Ibid*.

## II.   The Court Should Enter Judgment on Count 3(a), Because There Was Proof Beyond a Reasonable Doubt of That, But the Evidence Was Insufficient for the Other Counts.

The evidence showed that the defendant remained in a restricted area.  Officer Kerkhoff, Sergeant DesCamp, and Sergeant Flood each testified that Mr. Reffitt was

11

told to get back.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  They each testified, Mr. Reffitt was hit with pepper balls, weighted plastic impact projectiles, and he was pepper sprayed.  *Ibid*.  Guy Reffitt never tried to assault anyone, and he did not help anyone else commit an assault.  *Ibid*.  He did not threaten harm, and he was not aggressive.  Tr. Mar. 7, 2022 at 1273–1305.

As soon as Mr. Reffitt was pepper sprayed, that was the end of it, and he sat down on the banister railing.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  Sergeant Des Camp testified that Mr. Reffitt was incapacitated. *Ibid*.

The Capitol Police video corroborated the Capitol Police Officers' testimony. Exhibit 205.  Inspector Moore testified about the Capitol Police video recording system and the safeguards that prevent altering or editing.  Tr. Mar. 2, 2022 a.m. at 797:2–799:8.  The timestamps on the recordings are accurate, and the Capitol Police video was not altered or edited in any way.  *Ibid*.  The government also stipulated that "the timestamps on the recordings are accurate, and the video footage was not altered or edited in any way."  Exhibit 701.

## A.     Count One.

No rational juror would credit Rocky Hardie's claim that he and the defendant brought firearms to Washington.  Tr. Mar. 3, 2022 a.m. at 1095–1159; *see Jackson* at 319; *Wahl* at 375.  Mr. Hardie only said that after the government gave him

immunity, which the government reserved the right to void.  Exhibit 405.  He seemed to have trouble remembering, and when he did not know what to say, he asked the government for examples.  Tr. Mar. 3, 2022 a.m. at 1095–1159.  Even he said Mr. Reffitt uses hyperbole, embellishes, and dramatizes.  *Ibid*.

Jackson Reffitt did not say the defendant brought firearms to Washington.  Tr. Mar. 3, 2022 p.m. at 973–974.  Jackson said that he saw his father's gun case at home in Texas, which was two days later, and "I do not know where he got it from.  I believe he had it next to the front door after taking it out of the car…."  *Id*. at 974:15–17.

None of the Capitol Police Officers testified that the defendant had a gun.  Tr. Mar. 2, 2022 at 602–735; Tr. Mar. 7, 2022 at 1273–1305, 1322–1349.  The Capitol Police video, for which there are safeguards to prevent altering and editing, does not show a gun.  Exhibit 205.

Nor did Agent Hightower say that the defendant had a gun.  Agent Hightower, who was not even at the Capitol on January 6, 2021, claimed he could see a particular holster in Exhibits 202 and 202.1.  Tr. Mar. 4, 2022 at 1218–1261.  The Court instructed the jury that

> A firearm includes any weapon, which is designed to or may be readily converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.  A frame or receiver is a part of the firearm.  ***A holster is neither a frame nor is it a receiver***. (emphasis added).

Tr. Mar. 7, 2022 p.m. at 1422:16–20.

13

Unlike the Capitol Police video, for which there was both testimony (Tr. Mar. 3, 2022 a.m. at 797:12–799:8) and a stipulation (Exhibit 701) that they had not been altered or edited, there were no safeguards to prevent altering and editing Exhibits 200, 202, and 202.1.  There was no evidence about the accuracy of other videos (Exhibits 200 (News2Share video), 201 (Reuters video),  202 (Emily Molli news video), Ex. 203 (cell phone video).  Nor was there any evidence that they were not altered or edited in any way.  To the contrary, Agent Hightower testified that Exhibits 202 and 202.1 were "prepared by the government." Tr. Mar. 4, 2022 at 1253:8–9, 13.  He could not remember how he acquired Exhibit 200.  Tr. Mar. 4, 2022 at 1254:22.

Agent Ryan said that he bought Exhibit 55, because "the FBI did not seize Mr. Reffitt's holster *for whatever reason*…."  (emphasis added)  Tr. Mar. 7, 2022 a.m. at 1316:19–20.

**B.      Count Two.**

*See* I.B.2. *supra* at 6–8.

**C.      Count Three.**

*See* II.A. *supra* at 12–14.

**D.      Count Four.**

*See* I.C. *supra* at 9–11.

### E.      Count Five.

No rational juror would credit Jackson Reffitt's claim that his and Peyton Reffitt's lives were threatened.  Tr. Mar. 3, 2022 p.m. at 886–1033; *see Jackson* at 319; *Wahl* at 375.

First, Jackson Reffitt claimed he told Agent Hightower about it the same day. Tr. Mar. 3, 2022 p.m. at 886–1033.  However, Agent Hightower said the priority of the investigation would have increased if lives were threatened, because he said life-threatening emergencies receive priority.  Tr. Mar. 4, 2022 p.m. at 1222–1223, 1255–1256.  Instead, Jackson Reffitt went back to his dad's house, and the FBI came five days later.  Tr. Mar. 3, 2022 p.m. at 886–1033.

Second, Jackson Reffitt's story has changed from i) he did not believe his dad would ever hurt him, to ii) he took the threats seriously, and then to iii) he's pretty sure about what his dad said.  *Ibid.*

Third, hyping his story on CNN, Good Morning America and on his GoFundMe page has made Jackson Reffitt over $158,000.00.  *Ibid.*

## III.    The Court Should Arrest Judgment on Count Two, Because It Does Not Allege Any Facts in Support of the Charge.

The Court has already found that "[i]n contrast to the indictment at issue in *Sandlin*, **the Indictment in this case does not allege any facts in support of the § 1512(c)(2) charge**." (emphasis added)  Min. Ord., Dec. 11, 2021.

The indictment must contain "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  When it does not, the defendant has not received fair notice of the charges against him, and the government has not properly presented the felony charge to the grand jury.  *See e.g., United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).  Accordingly, without any facts alleged in the Indictment in support of Count Two (Doc's 4, 25, 34), the defendant has not received fair notice of the charge, and the government has not properly presented the felony charge to the grand jury.

A defendant cannot be prosecuted for a felony without either a grand jury indictment or a waiver of that right.  U.S. Const. amend. V; Fed. R. Crim. P. (7)(a) & (b); *see Gaither v. United States*, 413 F. 2d 1061 (D.C. Cir. 1969).  A defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Stirone v. United States,* 361 U.S. 212, 217 (1960).  Deprivation of "the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury ... is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Ibid.*  The government's citations do not dispute this right.  3 Fed. Prac. & Proc. Crim. § 601 ("Grounds for Arresting Judgment") (4th ed. 2021); *United States v. Mitchell*, 389 F. Supp. 917, 920 (D.D.C. 1975), *aff'd sub nom. United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (*citing Stirone,* but finding no variance).  The government did not even address *Gaither* in its response.

"[A]n indictment cannot be amended except by resubmission to the grand

jury[.]" *Russell v. United States*, 369 U.S. 749, 770 (1962).  Neither the prosecutor, nor the court may make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment, because that "would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Ibid*.

The court must arrest judgment if the court does not have jurisdiction of the charged offense.  Fed. R. Crim. P. 34(a).

## Points and Authorities

*Gaither v. United States*, 413 F. 2d 1061 (D.C. Cir. 1969).
*Jackson v. Virginia*, 443 U.S. 307 (1979).
*Liparota v. United States*, 471 U.S. 419 (1985).
*Russell v. United States*, 369 U.S. 749, 770 (1962).
*Stirone v. United States,* 361 U.S. 212 (1960).
*United States v. Ahrensfield*, 698 F.3d 1310 (10th Cir. 2012).
*United States v. Aguilar*, 515 U.S. 593 (1995).
*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013).
*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976).
*United States v. Miller,* DCD No. 1:21-cr-00119-CJN, Doc. 72 (Mar. 7, 2022).
*United States v. Mitchell*, 389 F. Supp. 917 (D.D.C. 1975).
*United States v. Nasir,* 17 F.4th 459 (3d Cir. 2021).
*United States v. North*, 910 F.2d 843 (D.C. Cir. 1990).
*United States v. Reeves*, 752 F.2d 995 (5th Cir. 1985).
*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).
*United States v. Wahl*, 290 F.3d 370 (D.C. Cir. 2002).
*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999).
U.S. Const. amend. V.
18 U.S.C. § 231(a).
18 U.S.C. § 1512.
Fed. R. Crim. P. 7.
Fed. R. Crim. P. 29(c).

Fed. R. Crim. P. 33.
Fed. R. Crim. P. 34.
3 Fed. Prac. & Proc. Crim. § 601.

/s/ *William L. Welch*, III

William L. Welch, III
D.C. Bar No. 447886
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Guy Reffitt
(Appointed by this Court)

## Certificate of Service

I certify that on this 12th day of April 2022 a copy of the foregoing Reply in
Support of Post-trial Motions was delivered electronically to Mr. Jeffrey S. Nestler
(jeffrey.nestler@usdoj.gov) and Ms. Risa Berkower (risa.berkower@usdoj.gov), Office
of the United States Attorney, 555 Fourth Street, NW, Washington, DC 20530.

/s/ *William L. Welch*, III

William L. Welch, III

18