UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-32 (DLF) |
| : | |
| GUY WESLEY REFFITT, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Guy Wesley Reffitt's motion (ECF 179), which seeks release pending appeal given the D.C. Circuit's recent decision in *United States v. Brock*, No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024). Reffitt cannot overcome the high barrier for release pending appeal required by 18 U.S.C. § 3143(b). Although *Brock* resolved some of Reffitt's appellate challenges in his favor, Reffitt cannot show (1) by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk, or (2) that the application of *Brock* to his case likely will reduce his sentence to a term of imprisonment that will expire before his appeal is decided. Reffitt's motion should be denied.

## BACKGROUND

**A.    Reffitt Participated in the January 6, 2021, Attack on the U.S. Capitol, Was Charged and Convicted on Five Counts, and Sentenced to 87 Months' Imprisonment.**

Reffitt, a member of a Texas-based militia group, participated in the January 6, 2021, attack on the United States Capitol. On that day, he stood on the National Mall wearing a tactical helmet and bulletproof vest, armed with a handgun, and carrying a radio, megaphone, and police-style zip ties (Trial Tr. 3/4/22 at 1130, 1135-37). On his way to the Capitol, he urged the gathered crowd to take the building by force:

> We're all going to drag them motherfuckers out kicking and screaming, I don't give a shit. I just want to see Pelosi's head hit every fucking stair on the way out. Fuck yeah. And Mitch McConnell too. Fuck 'em all. They fucked us too many goddamn years for too fucking long. It's time to take our country back. I think everybody's on the same damn wavelength. And I think we have the numbers to make it happen. (Trial Exhibit 1B20.2.1 at 16:03-16:33.)

Reffitt then led a violent mob that overwhelmed officers standing guard outside the Senate side of the Capitol (Trial Tr. 3/2/22 at 705). Rioters breached the Capitol itself shortly after (*id.* at 760-61). Due to the incursion, legislators were evacuated, the certification of the Electoral College vote was suspended, and Congress was unable to complete the formal certification process until approximately 3:40 a.m. the following morning (Trial Tr. 3/4/22 at 1058-59).

Reffitt later explained that the attack on the Capitol was just the "beginning," and continued to strategize with his fellow militia members to prepare for more violence (Trial Tr. 3/3/22 at 837-38, 996-97). After the militia group's leader was taken in for questioning, Reffitt threatened to harm his two teenage children if they reported him, telling them that "traitors get shot" and that he would put a "bullet" through his daughter's phone (*id.* at 1003-04).

Reffitt was arrested on January 19, 2021. The Court ordered Reffitt detained pretrial because his release would "pose[ ] a serious risk of danger to the American community and the democratic process" (ECF 14 at 4; *see also* 5/13/21 Minute Order).

On September 15, 2021, a federal grand jury returned a second superseding indictment charging Reffitt with five counts: transporting a firearm in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2) (Count One); obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two); entering and remaining in a restricted area while carrying a dangerous weapon, in violation of 18 U.S.C. §§ 1752 (a)(1) & (b)(1)(A) (Count Three); interfering with law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Four); and obstruction of justice by threatening physical force to hinder

communication concerning the commission of a federal offense, in violation of 18 U.S.C. § 1512(a)(2)(C) (Count Five) (ECF 34). On March 8, 2022, a jury convicted Reffitt on all five counts (ECF 123).

At sentencing, Count Two (obstruction of an official proceeding) drove the sentence because Count Two produced the highest guidelines range (Sent'g Tr. at 67-68).[1] Relevant here, the Court held that the eight-point and three-point enhancements under U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) applied to Reffitt's conduct (*id.* at 35-39). Even if the enhancements did not apply, this Court recognized that it could vary upward "under 3553(a) . . . in a commensurate amount based on these enhancements" (*id.* at 36-37). Thus, the Court calculated Count Two's offense level as follows (*see id.* at 19, 35-69):

| Base Offense Level | U.S.S.G. § 2J1.2(a) | 14 |
|---|---|---|
| Special Offense Characteristic: Physical Injury or Property Damage to Obstruct the Administration of Justice | U.S.S.G. § 2J1.2(b)(1)(B) | +8 |
| Special Offense Characteristic: Substantial Interference with the Administration of Justice | U.S.S.G. § 2J1.2(b)(2) | +3 |
| Special Offense Characteristic: Extensive Scope, Planning, or Preparation | U.S.S.G. § 2J1.2(b)(3)(C) | +2 |
| Obstruction of Justice | U.S.S.G. § 3C1.1, cmt. n.4(D) | +2 |
| | | **Total: 29** |

---

[1] Counts One, Three, and Five grouped with Count Two ("Group One") (*see* Sent'g Tr. at 140-42). Count Four formed a separate group with a total offense level of 13 (*see* ECF 179, Motion for Release at 2 n.1). Court Four did not affect the total offense level because under U.S.S.G. §3D1.4(c), any group "that is 9 or more levels less serious than the group with the highest offense level" is "disregard[ed]."

Given a total offense level of 29 and criminal history category of I, Reffitt's Guidelines range was 87 to 108 months (Sent'g Tr. at 68). The Court rejected Reffitt's arguments that the Guidelines, particularly § 2J1.2(b)(1)(B), overstated the severity of the offense (ECF 157 at 25; Sent'g Tr. at 24-25, 134). Thus, the Court imposed a within-Guidelines sentence of 87 months' incarceration on Counts Two, Three, and Five, to run concurrently with a sentence of 60 months' incarceration on Counts One and Four (ECF 170).

Reffitt timely noticed an appeal (ECF 173). On appeal, he challenges his conviction on Count Two, and the Court's application of three sentencing enhancements: the eight-level enhancement under § 2J1.2(b)(1)(B); the three-level enhancement under § 2J1.2(b)(2); and the two-level enhancement for extensive scope, planning, or preparation under § 2J1.2(b)(3)(C). On January 18, 2024, the D.C. Circuit granted Reffitt's motion to hold the case in abeyance pending the D.C. Circuit's decision in *Brock*, and the Supreme Court's decision in *Fischer v. United States*, No. 23-5572 (U.S.).

### B. The *Brock* Decision.

On March 1, 2024, the D.C. Circuit issued its decision in *Brock*. The Court held that § 2J1.2(b)(2)'s three-point enhancement for "substantial interference with the administration of justice" does not apply to interference with the Congress's certification of electoral college votes. *See id*. at *8. *Brock* did not consider the eight-level enhancement in § 2J1.2(b)(1)(B), which applies if an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." Nonetheless, the government acknowledges that the same reasoning would apply.[2]

---

[2] At this stage, the government is reviewing its appellate options in response to *Brock*.

**LEGAL STANDARD**

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the defendant meets a two-part test:

1. "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and

2. that the appeal "is not for the purpose of delay and raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B); *see also United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) ("[T]he provision requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?").

If the Court finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). The defendant bears the burden to make the required showing under § 3143(b)(1). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

**ARGUMENT**

Reffitt's motion for release pending appeal, based on *Brock*, fails to overcome the high barrier to release under § 3143(b)(1). Although the government does not dispute that, in light of *Brock*, Reffitt's challenge to the application of U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) poses a substantial question, as required under the second prong of § 3143(b)(1)(B), Reffitt does not meet

5

his burden with regard to the other § 3143(b)(1) requirements. Specifically, Reffitt fails to establish by clear and convincing evidence that he is unlikely to flee or pose a danger to the safety of any other person or the community if released. Moreover, there is no likelihood that the inapplicability of §§ 2J1.2(b)(1)(B) and (b)(2) would result in a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. For each of these reasons, Reffitt's motion should be denied.

**I.        Reffitt Fails to Show that He Is Not a Flight Risk or Dangerous.**

First, Reffitt fails to show that he is not a flight risk or a danger to the community. This is a required showing for release, regardless of the nature of any appeal. Here, Reffitt advocated for violence and the overthrow of the government, brought a gun to the Capitol, urged the mob to overtake the Capitol and "drag them motherfuckers out kicking and screaming" (Trial Ex. 1B20.2.1 at 16:03-16:33), and even threatened to harm his own children if they reported him. Indeed, this Court previously found that Reffitt posed a serious risk of danger to the community (ECF 14 at 4 (ordering Reffitt detained pretrial because his "release poses a serious risk of danger to the American community and the democratic process")).

Against these facts, Reffitt's counsel proffers (at 4) that Reffitt has since "been able to reflect on his actions surrounding January 6, 2021 and appreciate the wrongfulness of his conduct." But as this Court noted at sentencing, Reffitt had been incarcerated for over 18 months at the time of sentencing, with "a lot of time to think," and he still offered only a half-hearted, last-minute expression of remorse and acknowledgment of wrongdoing (Sent'g Tr. at 154-57). As recently as September 2023, Reffitt reported that he accepts "blame" for what he did, but did not regret going to the Capitol on January 6. *See* Dan Rosenzweig-Ziff, *Jan. 6 shattered her family. Now they're*

6

*trying to forgive.*, *The Washington Post* (Sept. 9, 2023).[3] Furthermore, we are now entering a presidential election year, and during the last such election cycle, Reffitt encouraged and anticipated violence and mob action to challenge the peaceful transfer of power. He offers no reason to believe he would not engage in such conduct again.

Reffitt also does not attempt to show that he is not a flight risk. More than half of his 87-month sentence remains to be served. As discussed below, *Brock* does not guarantee Reffitt a reduced sentence. Even if this Court were inclined to impose a reduced sentence within a new Guidelines range (likely, 41 to 51 months), Reffitt would still be facing significant additional time in prison. With this time of imprisonment remaining, and with knowledge of the reality of prison life, Reffitt may be more likely to flee. Indeed, he would not be the first January 6 defendant to flee, abscond, or fail to appear while facing a hefty charge or sentence. *See, e.g.*, *United States v. Worrell*, 21-cr-292 (RCL), ECF 295 (after being detained pending trial and then released, defendant absconded before sentencing); *United States v. Bru*, 21-cr-352 (JEB), ECF 66, June 26-July 6, 2023 Minute Entries; *United States v. Burlew*, 21-cr-647 (RDM), Nov. 30, 2023, Dec. 8, 2023 Minute Entries; *United States v. Olivia Pollock*, 21-cr-447-5 (CJN), ECF 208, Mar. 6, 2023, May 19, 2023, Aug. 7, 2023 Minute Entries; *United States v. Hutchinson*, 21-cr-447-2 (CJN), April 6, 2023, May 19, 2023, Aug. 7, 2023 Minute Entries; *United States v. Giustino*, 23-cr-16 (JEB), Sept. 29, 2023 Minute Entry; *United States v. Dennison*, 23-cr-32 (TNM), June 5, 2023 Minute Entry; *United States v. Shawndale and Chilcoat*, 22-cr-299, Sept. 5, 2023, Sept. 9, 2023, Oct. 5, 2023, Oct. 6, 2023, Oct. 13, 2023 Minute Entries.

In short, under 18 U.S.C. § 3143(b), *Reffitt* must show by clear and convincing evidence that he would not be a flight risk or danger to the community if released, notwithstanding his past

---

[3] https://www.washingtonpost.com/politics/interactive/2023/jan-6-reffitt-family-repair-relationships/.

actions and ready willingness to join the January 6 riot and encourage violence. He has failed to meet his burden.

## II. Reffitt Has Not Shown Likelihood of a Reduced Sentence that Would Expire Before His Appeal is Resolved.

Separately, however, this Court should not order release because Reffitt also fails to satisfy the second prong of the test. He has not shown a likelihood of a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of the appeal process. *See* 18 U.S.C. § 3143(b)(1)(B)(iv).

Reffitt incorrectly assumes that a lower Guidelines range will automatically result in a reduced sentence. However, *Brock*'s ruling does not undercut the severity of Reffitt's crime, and this Court should consider the uniquely horrifying events of January 6 factor in imposing a new sentence. If anything, assaulting the Capitol and promoting violence in an attempt to stop Congress from certifying a presidential election is *far more serious* than interfering with a routine court proceeding. *See Brock*, 2024 WL 875795, at *15 ("interference with one stage of the electoral college vote-counting process . . . no doubt endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work"). Yet, the Guidelines punish more severely a defendant who violently and substantially obstructed a routine court proceeding, compared to a defendant who violently and substantially obstructed the democratic transfer of power inherent to the U.S. Constitution. While the D.C. Circuit resolved *Brock* on a technical linguistics interpretation of a Guidelines enhancement, even *Brock* acknowledged the mismatch between those who violently interfere with a court proceeding as opposed to the certification. *Id.* ("Maybe. But that is a policy argument the government can present to the [Sentencing] Commission."). To address this anomaly, the Court should depart or vary upward at any resentencing in this case.

Additionally, even a within-Guidelines sentence (with no additional departures added) does not entitle Reffitt to release pending appeal. Reffitt incorrectly states (at 2-3) that his new offense level would be 19, making his advisory Guidelines range 30-37 months. To be sure, without the §§ 2J1.2(b)(1)(B) and (b)(2) enhancements, Count Two's offense level decreases from 29 to 18. But Count Two would no longer drive the sentence. Instead, Count Five (obstruction by threatening physical force to hinder communication concerning a federal offense) would drive the sentence because Count Five now produces the highest Guidelines range. Count Five's offense level is 22, as follows:

| Base Offense Level | 14 | U.S.S.G. § 2J1.2(a) |
|---|---|---|
| Special Offense Characteristic: Causing or Threatening Injury | +8 | U.S.S.G. § 2J1.2(b)(1)(B)[4] |
| | **Total: 22** | |

With a criminal history category of I, Reffitt's likely Guidelines range would be 41 to 51 months. Because Reffitt has served only 38 months, a sentence at the top of his new Guidelines range would extend beyond the expected duration of his appeal, and *no* sentence within his Guidelines range would entitle him to release now.

---

[4] The government submitted this Guidelines calculation for Count Five at Reffitt's sentencing (ECF 158 at 24). Unlike in Count Two, the "administration of justice" in Count Five does not refer to the "congressional function of certifying electoral college votes." *Brock*, 2024 WL 875795, at *8. Rather, Count Five involves Reffitt's obstruction of the criminal investigation into his conduct surrounding January 6, which led to the charges against Reffitt in this case. *See id.* ("administration of justice" in Section 2J1.2 "refers to judicial, quasi-judicial, and adjunct investigative proceedings"). That is, on January 11, 2021, Reffitt told his children that if they turned him in to the FBI, they would be traitors, and traitors get shot (Trial Tr. 3/3/22 at 1003-04). He also told his daughter that if she recorded him, he would put a bullet through her phone (*id.*). His son understood these statements as threats that Reffitt would harm his children if they reported him to the FBI (*id.*). In fact, Reffitt's son had already reported Reffitt's Capitol siege conduct to the FBI; later, on January 11, his son reported Reffitt's threats to the FBI. Accordingly, U.S.S.G. § 2J1.2(b)(1)(B) applies to Count Five. Reffitt has never suggested otherwise.

### A. This Court Should Depart or Vary Upward at Any Resentencing.

At any resentencing—after the D.C. Circuit decides Reffitt's appeal and issues the mandate[5]—the Court would determine Reffitt's Guidelines range and then consider any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c) and § 1B1.1, cmt. (background). The Guidelines apply to a "heartland of typical cases." *Koon v. United States*, 518 U.S. 81, 94-95 (1996). A "departure" is based on "the framework set out in the Guidelines," while a "variance" is imposed "outside the guidelines framework" based on the 18 U.S.C. § 3553(a) factors taken as a whole. *United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018) (cleaned up).

#### 1. Upward Departure

Specific departure statements reflect Commission guidance on what makes a case "atypical" and when departures are "encouraged." *Koon*, 518 U.S. at 94-95. One such circumstance is when an offense results in "a significant disruption of a governmental function." U.S.S.G. § 5K2.7. A departure under this Guideline is warranted in "unusual" circumstances where the Guidelines do not reflect the appropriate punishment for the offense. *Id.* After *Brock*, the +3 and +8 enhancements do not apply, and the Court must address a situation where the Guidelines do not account for significant aspects of Reffitt's offense conduct or reflect the appropriate punishment. Nor do the Guidelines even account for the unique circumstances of this case—Reffitt's penchant for violence and his assistance in disrupting the peaceful transfer of power. In these circumstances, "the court may increase the sentence above the authorized guideline range to

---

[5] "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *see, e.g., United States v. Hallford*, 816 F.3d 850, 855 n.4 (D.C. Cir. 2016) (quoting same). "The district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997).

[1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." U.S.S.G. § 5K2.7.

Although by its own terms § 5K2.7 "ordinarily" does not provide for an upward departure when the offense involves obstruction of justice, the obstruction of the Electoral College certification on January 6, 2021, is the type of unusual circumstance that the Sentencing Commission could not have anticipated and that warrants an upward departure. As the commentary explains, departure under § 5K2.7 is appropriate if the disruption of a governmental function is "substantial," meaning "substantially in excess" of the disruption ordinarily involved in an obstruction offense. *See* § 5K2.0 cmt. 3(B)(ii). Those who obstructed the certification proceedings on January 6 targeted the peaceful transfer of power, one of the fundamental and foundational principles of our democracy. They were part of a mob that injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. Defendants like Reffitt "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *Brock*, 2024 WL 875795, at *15. It was an unprecedented day in American history. Surely few, if any, disruptions of governmental functions have been more "substantial," and it was a disruption far "in excess of . . . that which ordinarily is involved in" an obstruction offense (such as impeding a single judicial proceeding). § 5K2.0(a)(3); *id.* cmt. 3(B)(ii). But, following *Brock*, the seriousness of the crimes committed by defendants like Reffitt is not adequately captured by the applicable Guideline, § 2J1.2. This Court should accordingly depart upward at any resentencing. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer

11

numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours").[6]

### 2.     Upward Variance

An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308-09 (D.C. Cir. 2018) (cleaned up). At any resentencing, an upward variance would now be warranted to account for the § 3553(a) sentencing factors—specifically, the unique nature, circumstances, and seriousness of the offense, Reffitt's characteristics, and the need to avoid unwarranted sentencing disparities.

As discussed throughout this memorandum, Reffitt's obstruction of justice on January 6 was a serious offense that attacked the fundamentals of American democracy. As Judge McFadden stated in a pre-*Brock* sentencing hearing:

> Regardless of whether the 'administration of justice' language actually applies to this situation, *I have no doubt that the Commission would have intended for this to apply to substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding*. . . . [Y]ou and your fellow rioters

---

[6] At any resentencing, the government may argue that additional departure provisions apply. For example, given the dangerous circumstances created by the riot, the Court could depart under § 5K2.14 in addition to, or as an alternative to, departing under § 5K2.7. Section 5K2.14 provides for a departure if "national security, public health, or safety was significantly endangered." Because the assault on the Capitol endangered the safety of the public, police, and elected officials in a way not already captured by Reffitt's Guidelines range, a departure would be appropriate. *Cf. United States v. Calloway*, No. 21-3057, 2024 WL 925790, at *3 (D.C. Cir. Mar. 5, 2024) (affirming departure under § 5K2.14 where district court found that the defendant "created a serious risk that multiple individuals could have been killed or injured").

In addition, departures under U.S.S.G. § 5K2.0 (circumstances not adequately considered), § 3A1.4 n.4 (terrorism), § 3D1.4, bkgd. cmt. (inadequate grouping), and § 5K2.6 (weapons) may apply. Although the Court declined to apply those provisions at Reffitt's sentencing, the government may seek to invoke those departure provisions at any resentencing. *See United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013) (where remand order for resentencing contains no express instructions, the district court may consider "such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result"; but "the district court generally does not have authority to resentence a defendant de novo" (citation and internal quotation marks omitted)).

were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources.

*United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87 (emphasis added); *see also United States v. Fonticoba*, 21-cr-368 (TJK), Sent'g Tr. 1/11/24 at 66-67 (stating that, even if the defendant's § 1512 conviction were invalidated, a *significant* upward variance would be warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself") (emphasis added); *see also United States v. Bender, et al.*, 21-cr-508 (BAH), Memorandum Opinion (March 6, 2024), ECF 161 at 3 n.1. For this reason, despite finding that the +3 and +8 enhancements did not apply (anticipating the holding of *Brock*), Judge McFadden has often varied upward when sentencing defendants in cases where 1512(c)(2) is the lead charge. *See, e.g.*, *Hale-Cusanelli*, Sent'g Tr. 9/22/22 at 86-87; *United States v. Seefried*, 21-cr-287 (TNM), Sent'g Tr. 10/24/22 at 53-54; *United States v. Speed*, 22-cr-244 (TNM), Sent'g Tr. 5/8/23 at 39-42.

Indeed, in sentencing Reffitt, this Court suggested that, if the +3 and +8 enhancements did not apply, it would, "under 3553(a), enhance [Reffitt's] sentence in a commensurate amount based on these enhancements" (Sent'g Tr. at 36-37). *See also id.* at 37 (this Court explaining to defense counsel: "I can get there either way. I'm just making the point that even if I were to buy your argument [that the § 2J1.2 enhancements did not apply], which I am not, . . . you still face the same problem under 3553(a). So you can still make the overstatement of the offense argument with the guideline applying, just like you would be arguing with me on why an eight-level enhancement shouldn't apply under 3553(a).").

As this Court explained, Reffitt was sentenced to 87 months' imprisonment because his purpose on January 6 was to "literally overthrow[ ] the elected officials, remov[e] them, and com[e] down here for the constitutionalist judges to install a new government" (Sent'g Tr. at 163).

13

"As he said repeatedly on tape, his goal was to drag the corrupt legislators out of the Capitol and to bring . . . 'the people's house down'" (*id.* at 166). On January 6, Reffitt "carried a firearm on Capitol grounds," which "substantially heightened the risk of serious injury to law enforcement officers . . . as well as everyone else who was present that day" *(id.* at 164-65). He urged the crowd to take the Capitol by force (Trial Ex. 1B20.2.2 at 16:03-16:33), and led a violent mob that eventually overwhelmed officers standing guard outside the Senate side of the Capitol (Trial Tr. 3/2/22 at 705). And at his sentencing more than 18 months later, Reffitt offered only a half-hearted, last-minute expression of remorse and acknowledgment of wrongdoing (Sent'g Tr. at 154-57). Thus, an upward variance is necessary to account for Reffitt's characteristics, and the unique nature, circumstances, and seriousness of his offense.

The need to avoid unwarranted disparities also supports an upward variance. A defendant who threatens violence to disrupt the certification of the electoral college vote causes a harm every bit as great—if not greater—than a defendant who engages in the same conduct in a quasi-judicial or judicial setting. Under *Brock*, two defendants engaging in substantially similar conduct will have Guidelines that diverge by *11* levels. As Judge McFadden noted, the Commission could not have intended such an unwarranted disparity.

Thus, at any resentencing, this Court may depart or vary upward to impose a significant sentence. Reffitt's assumption that he would receive a significantly reduced sentence simply because the +3 and +8 enhancements no longer apply is not enough to carry his burden under 18 U.S.C. § 3143(b)(1)(B)(iv).

    **B.**  **A Within-Guidelines Sentence Does Not Entitle Reffitt to Release.**

Even if the Court declined to depart or vary upward, Reffitt is still not entitled to release. He has served approximately 38 months of his sentence. His new Guidelines range is likely 41-51 months, and the severity of his conduct warrants a sentence at the top of that range (51 months)—

14

13 months more than he has served. It is likely his appeal will be decided well within that time. Although the appeal is currently stayed pending the Supreme Court's decision in *Fischer*, the government anticipates the Supreme Court will issue its decision in June 2024, before its summer recess. Once that occurs, Reffitt's appeal may proceed expeditiously. It has been fully briefed, the relevant transcripts have been ordered and completed, and the relevant portions of the record have been filed with the D.C. Circuit. Thus, many of the steps that cause appellate delays have already been completed.[7] Even if supplemental briefing is required post-*Fischer*, Reffitt's appeal should be resolved well within the remaining time of a high-end Guidelines sentence.

Finally, even if this Court declined to sentence Reffitt at the high end of his new Guidelines range, he is not entitled to release now. Section 3143(b) directs the Court to order the defendant released only once he has served the time he is likely to serve upon resentencing. 18 U.S.C. § 3143(b)(1)(B) ("[I]n the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*." (emphasis added)). Reffitt has been in custody for approximately 38 months. Thus, a sentence anywhere within a Guidelines range of 41 to 51 months would not entitle Reffitt to release now.[8]

---

[7] For the year ending September 30, 2023, the median time interval from the filing of a notice of appeal to disposition in the D.C. Circuit was 10.9 months. *See* U.S. Courts Caseload Statistics Data, Table B-4, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf.

[8] Reffitt also challenges on appeal his §1512(c)(2) conviction based on the issues raised in *Fischer*. Although he does not argue it as a basis for release, the government notes that Reffitt's challenge to his § 1512(c)(2) conviction does not entitle him to release for the same reasons his *Brock*-based arguments fail. First, Reffitt has failed to show that he is not dangerous or a flight risk. Second, Reffitt cannot show that his *Fischer*-based argument is likely to result in reversal on *all counts*, or a reduced sentence as required by § 3143(b)(1)(B)(iv). As explained, the government anticipates that *Fischer* will be decided in June 2024. Even without the § 1512(c)(2) count driving Reffitt's sentence, Reffitt likely faces a Guidelines range of 41-51 months, and in any event, this Court should depart or vary upward given the severity of Reffitt's conduct. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in

Reffitt has failed to carry his heavy burden to rebut the presumption of detention at this stage. *See* 18 U.S.C. § 3143(b). His motion for release pending appeal should be denied.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny the defendant's motion for release pending appeal.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     */s/ Risa Berkower*
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
601 D St. N.W.
Washington, D.C. 20530
Phone: 202-252-7277

---

calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").