UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GUY WESLEY REFFITT,<br><br>*Defendant.* | No. 21-cr-32 (DLF) |

## MEMORANDUM OPINION & ORDER

A jury convicted Guy Wesley Reffitt on five counts arising from the January 6, 2021 riot at the U.S. Capitol. At sentencing, Reffitt argued, among other things, that the eight-level enhancement under Guideline § 2J1.2(b)(1)(B) and the three-level enhancement under Guideline § 2J1.2(b)(2) did not apply to the calculation of his Sentencing Guidelines offense level because he did not "obstruct" nor cause "substantial interference with the administration of justice," as the enhancements respectively require. The Court rejected this argument and sentenced Reffitt to 87 months' imprisonment. On appeal, Reffitt challenges this ruling. After Reffitt filed his appeal, the D.C. Circuit decided in *United States v. Brock* that Guideline § 2J1.2(b)(2)'s "administration of justice" enhancement "does not apply to interference with the legislative process of certifying electoral votes." 94 F.4th 39, 42 (D.C. Cir. 2024). Following *Brock*, Reffitt filed a Motion for Release Pending Appeal. Dkt. 179. For the reasons that follow, the Court will deny the motion.

I.  **BACKGROUND**

The Court recounts here only the most relevant facts to Reffitt's motion for release pending appeal. The Court's Memorandum Opinion of May 4, 2022 provides a more comprehensive discussion of the record. *See* Mem. Op. of May 4, 2022, Dkt. 148.

Reffitt was arrested and ordered detained shortly after the January 6, 2021 riot at the U.S. Capitol.  *See* Order of Detention Pending Trial at 3–4, Dkt. 14.  Reffitt moved to revoke his pretrial-detention order, but this Court denied the motion.  *See* Min. Order of May 13, 2021.  In reaching this decision, the Court concluded that the government proved by clear and convincing evidence that Reffitt posed "a threat of future dangerousness" based on several factors: namely, Reffitt's plans to conduct "recon and then come back with weapons hot," "attempt[s] to push past Capitol police stationed on the Capitol steps," preparation "to fight" on January 6 with "tactical gear and weapons," and efforts "to recruit new members to his m[i]litia."  Tr. of May 13, 2021 Mot. Hearing & Status Conference at 31–33, Dkt. 84.  After January 6, Reffitt threatened "at least one member of his family" if that family member reported him to law enforcement, and to avoid being "taken down again" in "his next battle," he also "purchased bear spray and a riot shield."  *Id.* at 33.

On March 8, 2022, a jury convicted Reffitt on five counts: (1) transporting a firearm in furtherance of a civil disorder in violation of 18 U.S.C. § 231(a)(2); (2) obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2); (3) entering or remaining in a restricted building or grounds with a firearm in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A); (4) obstructing officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3); and (5) obstruction of justice by threatening physical force to hinder communication concerning the commission of a federal offense in violation of 18 U.S.C. § 1512(a)(2)(C).  *See* Verdict Form, Dkt. 123.

At sentencing, the parties disputed whether two Guidelines enhancements applied to the offense level associated with Count 2.  First, Guideline § 2J1.2(b)(1)(B) imposes an 8-point enhancement if the defendant's "offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice."  Second, Guideline § 2J1.2(b)(2) requires a 3-point increase if the defendant's "offense resulted in

substantial interference with the administration of justice." Reffitt contended that neither enhancement applied because Congress's counting of electoral votes on January 6, 2021 did not constitute "the administration of justice." *See* Second Revised Final Presentence Investigation Report at 33. At sentencing, the Court acknowledged that the enhancements do not "include the phrase 'official proceeding of Congress'" as in 18 U.S.C. § 1512(c)(2)'s text, but nevertheless, it concluded that both enhancements apply to the "type of offense prosecuted under Section 1512(c)(2)." Sentencing Tr. at 38:2–4. The Court further suggested that even if neither enhancement applied, the Court could, under the 18 U.S.C. § 3553(a) factors, "enhance [Reffitt's] sentence in a commensurate amount . . . get[ting] to the same place." *Id.* at 36:25–37:3.

After applying the grouping rules, the Court determined that Count 2 produced the highest total offense level. As such, Reffitt's Guidelines range was calculated as follows:

| Base Offense Level for Count 2 | § 2J1.2(a) | 14 |
| --- | --- | --- |
| Threat to Obstruct the Administration of Justice | § 2J1.2(b)(1)(B) | +8 |
| Substantial Interference with the Administration of Justice | § 2J1.2(b)(2) | +3 |
| Extensive in Scope, Planning, or Preparation | § 2J1.2(b)(3)(C) | +2 |
| Obstruction of Justice | § 3C1.1 | +2 |
| **Total Offense Level** | | **29** |

With a criminal-history category of I, Reffitt's corresponding Guidelines range was 87 to 108 months' imprisonment. *See* Sentencing Tr. 68:7–9, 14–16. The Court sentenced Reffitt to 87 months' imprisonment and three years' supervised release. *See id.* at 176:12–13, 22–23.

Reffitt appealed to challenge, among other things, the Court's application of Guidelines § 2J1.2(b)(1)(B) and § 2J1.2(b)(2). The D.C. Circuit stayed his appeal pending the Supreme

Court's decision in *Fischer v. United States*, No. 23-5572, concerning the application of 18 U.S.C. § 1512(c)(2), and the D.C. Circuit's decision in *United States v. Brock*, No. 23-3045, concerning the application of Guidelines §§ 2J1.2(b)(1)(B), (b)(2). *See* Order, *United States v. Reffitt*, No. 22-3056 (D.C. Cir. Jan. 18, 2024). On March 1, 2024, the D.C. Circuit issued its decision in *Brock*, holding that "for purposes of Sentencing Guideline 2J1.2, the phrase 'administration of justice' does not encompass Congress's role in the electoral certification process." 94 F.4th at 51. Rather, "'administration of justice' refers to judicial, quasi-judicial, and adjunct investigative proceedings." *Id.* Applying that definition, the D.C. Circuit concluded that the district court "erred in applying [Guideline] § 2J1.2(b)(2)'s three-level sentencing enhancement to [a] Section 1512(c)(2) conviction." *Id.* at 59.

The next day, Reffitt filed his motion for release pending appeal. *See* Mot. for Release Pending Appeal, Dkt. 179. He argues that under *Brock* this Court's application of Guidelines §§ 2J1.2(b)(1)(B) and (b)(2) to his Count 2 offense was erroneous. *See id.* at 3. As such, his revised total offense level should be 19, and his corresponding Guidelines range should be 30 to 37 months' imprisonment—less than the 38 months he has already served. *See id.* at 2–3. Although acknowledging "this Court's prior pretrial finding that he was a danger to the community under the Bail Reform Act," Reffitt argues that he "has been able to reflect on his actions . . . and appreciate the wrongfulness of his conduct." *Id.* at 4. The Court could thus, in his view, "fashion conditions of release to protect the safety of the community pending his likely resentencing" after the Supreme Court decides *Fischer*. *Id.* The government opposes Reffitt's motion.

**II.   LEGAL STANDARDS**

18 U.S.C. § 3143(b) provides that "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" "shall . . . be detained," unless

4

the defendant satisfies two requirements. *See United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007) (noting that the defendant "bears the burden of rebutting this presumption"). First, the defendant must show "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). Second, the defendant must also show, as relevant here, his "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* § 3143(b)(1)(B); *see United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). If the defendant satisfies these requirements, the Court "shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B).

### III. ANALYSIS

The Court will deny Reffitt's motion for three independent reasons.

First, Reffitt has failed to show "by clear and convincing evidence" that he "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(1)(A). Under the Bail Reform Act of 1984, pretrial detention based on a defendant's dangerousness requires the government to prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(f). In other words, before trial, there is a presumption of release. But after a defendant has been convicted and sentenced to a term of imprisonment, the presumption flips in favor of custody, and it falls to the defendant to present "clear and convincing evidence" that he "is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id.* § 3143(b)(1)(A).

Reffitt fails to make such a showing. His motion lacks any mention of his risk of flight, and as to the risk of danger, Reffitt states only that he "has been able to reflect on his actions surrounding January 6, 2021 and appreciate the wrongfulness of his conduct." Mot. for Release Pending Appeal at 4. This representation, standing alone, is insufficient to rebut the presumption of custody, and Reffitt provides no new facts to mitigate the evidence presented at trial of his "danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(1)(A). Specifically, Reffitt "carried a gun on Capitol grounds that he trespassed on," "refused to abide the lawful commands of law enforcement officers," "stored an AK-47 in a D.C. parking lot," "possessed an unlicensed and unlawful silencer in his home," and made violent threats to his children if they reported him to law enforcement. Sentencing Tr. 174:22–175:8. His motion does little, if anything, to assuage the Court that Reffitt's dangerous conduct on January 6 is behind him. Further, the Court remains skeptical that even now Reffitt "appreciate[s] the wrongfulness of his conduct." Mot. for Release Pending Appeal at 4. As recently as September 2023, he told a *Washington Post* reporter that "he does not regret going to the Capitol that day." Dan Rosenzweig-Ziff, *Jan. 6 Shattered Her Family. Now They're Trying to Forgive*, Wash. Post (Sept. 9, 2023 at 7:00 AM), https://www.washingtonpost.com/politics/interactive/2023/jan-6-reffitt-family-repair-relationships [https://perma.cc/B524-CX2Q]. For these reasons, Reffitt has failed to rebut the presumption of detention that applies after sentencing.

Second, contrary to Reffitt's assertion, *see* Mot. for Release Pending Appeal at 2–3, his revised Guidelines range would not be "less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). In calculating a defendant's Guidelines range, the Court must first "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions" "for

6

each count." Guideline § 1B1.1(a)(1)–(4). Then, the Court "[a]ppl[ies] Part D of Chapter Three to group the various counts and adjust[s] the offense level accordingly." *Id.* § 1B1.1(a)(4).

As relevant here, the Court focuses on the Guideline calculations for Counts 2 and 5.[1] Following *Brock*, the offense level for Count 2 (obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2)) drops from 29 to 18 because the enhancements under Guidelines §§ 2J1.2(b)(1)(B) and (b)(2) no longer apply:

| Base Offense Level for Count 2 | § 2J1.2(a) | 14 |
|---|---|---|
| Extensive in Scope, Planning, or Preparation | § 2J1.2(b)(3)(C) | +2 |
| Obstruction of Justice | § 3C1.1 | +2 |
| **Count 2 Offense Level** | | **18** |

Although Count 2 previously drove Reffitt's total offense level, the Court's inquiry does not end there. Indeed, a jury also convicted Reffitt of Count 5 (obstruction of justice by threatening physical force to hinder communication in violation of 18 U.S.C. § 1512(a)(2)(C)). Before *Brock*, Count 5 was subject to the § 2J1.2(b)(1)(B) enhancement, so the Court must determine whether that enhancement still applies post-*Brock*.

Like Count 2, Count 5 has a base offense level of 14. *See* Guideline § 2J1.2(a). But unlike Count 2, Count 5 is still buoyed by an 8-point enhancement under Guideline § 2J1.2(b)(1)(B) because Count 5's offense conduct includes Reffitt telling his children that "[i]f you turn me in, you are traitor[s]. Traitors get shot." Mar. 3, 2022 Trial Tr. at 1003:7–8, Dkt. 141. "Later in the conversation," Reffitt also "snapped" at his daughter and told her she "better not be recording this

---

[1] The Court focuses on Count 2's offense level because the offense levels for Counts 1 and 3 are driven by a cross-reference to Count 2. *See* Guideline §§ 2K2.1(c)(1)(A), 2X1.1(a). The Court does not focus on Count 4 here because its offense level of 13 is lower than Count 2's and Count 5's. Second Revised Final PSR ¶ 61.

or I will put a bullet in your phone." *Id.* at 1004:21–23. Reffitt's son testified at trial that he interpreted his father's statements and actions as threats, *see id.* at 1008:5, and the guilty verdict as to Count 5 reflects that the jury credited this testimony. Thus, even under *Brock*'s holding that the "administration of justice" under Guideline § 2J1.2(b) is limited to "judicial, quasi-judicial, and adjunct investigative proceedings," Count 5—which was based on Reffitt's threats to his children "to obstruct" the FBI's criminal investigation into January 6 (rather than Reffitt's obstruction of a Congressional proceeding)—is plainly covered by § 2J1.2(b)(1)(B). *Brock*, 94 F.4th at 51. Because the 8-level enhancement in Guideline § 2J1.2(b)(1)(B) continues to apply to Count 5, even post-*Brock*, the Count 5 offense level is calculated as follows:

| Base Offense Level for Count 5 | § 2J1.2(a) | 14 |
|---|---|---|
| Threat to Obstruct the Administration of Justice | § 2J1.2(b)(1)(B) | +8 |
| **Count 5 Offense Level** | | **22** |

As discussed at sentencing, Counts 1, 2, 3, and 5 group under Guideline § 3D1.2 as closely related counts.[2] Sentencing Tr. at 141–42. To calculate the total offense level, the Court looks to the count with the highest offense level in the group. *See* Guideline § 3C1.1 n.8; *id.* §§ 3D1.2, 3D1.3(a). After *Brock*, that is now Count 5 (22), not Count 2 (18). Contrary to Reffitt's contention, *see* Mot. for Release Pending Appeal at 2–3, his revised total offense level is thus 22, and this corresponds to a revised Guidelines range of 41 to 51 months' imprisonment. As a result, Reffitt is not entitled to release pending appeal. His reduced Guidelines range is not "less than the total

---

[2] Count 4 "cannot be grouped with the other Counts as it represents a separate and distinct harm." Second Revised Final PSR ¶¶ 43, 61. Per Guideline § 3D1.4(c), the Court must "[d]isregard" Count 4 for total-offense-calculation purposes because Count 4, with an offense level of 13, is "9 or more levels less serious than the Group with the highest offense level," *i.e.*, the group with Counts 1, 2, 3, and 5 corresponding to an offense level of 22.

of the time already served" (38 months) "plus the expected duration of the appeal process" (approximately 3 months, *i.e.*, until the Supreme Court decides *Fischer*). 18 U.S.C. § 3143(b)(1)(B)(iv). And at any resentencing, the Court anticipates sentencing Reffitt above the Guidelines range for the below stated reasons. *Id*.

Finally, even after *Brock*, the Court could arrive at the same sentence of 87 months' imprisonment by applying the § 3553(a) factors. "[U]pon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider . . . such new arguments or new facts as are made newly relevant by the court of appeals," including the application of an "upward variance." *United States v. Miller*, 35 F.4th 807, 815 (D.C. Cir. 2022). At Reffitt's sentencing, the Court observed that even if the enhancements under Guideline § 2J1.2(b)(1)(B) and § 2J1.2(b)(2) did not apply, it could "under [the section] 3553(a) [factors] enhance [Reffitt's] sentence in a commensurate amount." Sentencing Tr. 36:25–37:1.

Despite *Brock*, the Court continues to believe that an upward variance could be justified in this case. To start, Reffitt's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018). In resentencing Reffitt, the Court retains broad discretion to consider all "information concerning the background, character, and conduct" of the defendant, 18 U.S.C. § 3661, including "uncharged or even acquitted conduct," *United States v. Norman*, 926 F.3d 804, 811 (D.C. Cir. 2019). *See Williams v. New York*, 337 U.S. 241, 246 (1949) (noting sentencing courts retain "wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law"). Taking into account the entire record, including relevant conduct, the Court concludes that Reffitt's revised Guidelines range of 41 to 51 months does not adequately capture the full scope of his

9

culpable conduct, which the Court previously categorized as "in a class of [its] own." Sentencing Tr. 163:11; *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007) ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply."). What makes Reffitt's conduct (as captured by Count 5) more egregious than that of a typical obstruction defendant is that he threatened the physical safety of his own children. Moreover, Reffitt sought to conceal a much grander "stated purpose" than a typical defendant: "literally overthrowing . . . elected officials, removing them, and coming down here for the constitutionalist judges to install a new government." Sentencing Tr. at 163:14–16. He attempted to cover up carrying a firearm on Capitol grounds, plotting with fellow Texas Three Percenters, and storing an AK-47 and silencer. *See id.* 164–65, 175. Given "the nature and circumstances of the offense and the history and characteristics of the defendant," the Court does not believe the Guidelines range of 41 to 51 months for obstructive threats adequately captures the gravity of Reffitt's conduct related to the January 6 riot. 18 U.S.C. § 3553(a)(1).

Further, as the government points out, *see* Opp'n at 14, Dkt. 181, an upward variance is "need[ed] to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6). Following *Brock*, obstructive conduct is subject to a potential 11-point Guidelines swing depending on whether it interfered with, on one hand, a "judicial, quasi-judicial, and adjunct investigative proceedings," or on the other hand, any other type of formal proceeding. *Brock*, 94 F.4th at 51. This disparity—though tracking the Guidelines' text—does not reflect the importance and solemnity of the Congressional proceeding to certify the electoral vote count, nor does it reflect the gravity of Reffitt's obstructive conduct. Indeed, as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill

"judicial, quasi-judicial, and adjunct investigative proceedings." *Id.*; *see, e.g.*, Sentencing Tr. at 86:01–07, *United States v. Hale-Cusanelli*, No. 21-cr-37, Dkt. 120 ("Regardless of whether the 'administration of justice' language actually applies to this situation, I have no doubt that the Commission would have intended for this to apply to substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding."); *United States v. Roche*, No. 22-cr-86, 2024 WL 1328459, at 5 n.5 (D.D.C. Mar. 28, 2024). Here, the Court believes that an upward variance would be further justified to avoid disparities between Reffitt's sentence and those of defendants who interfered with "what we classically think of as administration of justice." Sentencing Tr. at 36:9. In other words, Reffitt's sentence should reflect that he risked greater danger to others' physical safety and the rule of law than a run-of-the-mill defendant subject to the § 2J1.2(b) enhancements.

Although the Court remains inclined to vary upward above the top of Reffitt's Guidelines range—*i.e.*, above 51 months' imprisonment—it will refrain from issuing an indicative sentencing ruling at this juncture. Any such decision would be premature because the parties have not filed briefs for a full resentencing, and the Court has determined that Reffitt's revised post-*Brock* Guidelines range is not "less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv).

\* \* \*

For the foregoing reasons, the Court concludes that Reffitt has failed to demonstrate his entitlement to release pending appeal under 18 U.S.C. § 3143(b). Accordingly, it is

**ORDERED** that the Motion for Release Pending Appeal, Dkt. 179, is **DENIED**.

**SO ORDERED.**

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

April 10, 2024