**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | **)** | |
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | |
| | **)** | **Case No. 1:21-cr-00032 (DLF)** |
| **GUY WESLEY REFFITT** | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
REMOVE THE DISCOVERY PROTECTIVE ORDER, OR IN THE
ALTERNATIVE, TO MODIFY THE PROTECTIVE ORDER**

There is currently no basis for the Court to rescind or modify the protective order governing discovery.  The defendant was convicted of various criminal offenses related to his participation in the events of January 6, 2021, but subsequently received a full Presidential pardon on January 20, 2025.  The defendant now seeks removal or modification of the discovery protective order for his prior case.  However, as the Presidential pardon terminates the defendant's case, there are no active proceedings and no ongoing discovery obligations, and the defendant therefore has no basis to request any further action from this Court.  Further, the Court's order continues to protect vital interests in public safety and security, as the discovery includes information impacting the privacy of third parties, the safety of law-enforcement personnel, and sensitive security information about the U.S. Capitol.  The defendant's motion (ECF No. 210) should be denied.

**BACKGROUND**

The captioned defendant, Guy Reffitt, was among the numerous defendants charged with offenses arising out of the events of January 6, 2021, who were granted "full, complete, and unconditional pardon[s]" by President Donald J. Trump. *See* Executive Order, Granting Pardons and Commutations of Sentences for Certain Offenses Relating to the Events at or near the United States Capitol on January 6, 2021 (Jan. 20, 2025).  This Court dismissed Mr. Reffit's case on

February 4, 2025.

During the pendency of Mr. Reffitt's prosecution, the government produced a "staggering" amount of discovery. *United States v. Cudd*, 534 F. Supp. 3d 48, 51 (D.D.C. 2021).  The discovery was subject to a protective order agreed to by Mr. Reffitt through his counsel, and signed by this Court on April 1, 2021. (ECF No. 16).  The protective order "governs materials provided by the United States at any stage of discovery during this case and which the United States has identified as 'Sensitive' or 'Highly Sensitive' pursuant to this Order" (*id.*).  Materials designated as sensitive or highly sensitive "include but are not limited to":

    a.  Personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, e-mail addresses, driver's license numbers, and similar unique identifying information;

    b.  Information regarding the government's confidential sources;

    c.  Information that may jeopardize witness security;

    d.  Contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case;

    e.  Medical or mental health records;

    f.  Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges;

    g.  Surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds;

    h.  Repair estimates from the Architect of the Capitol;

    i.  Materials designated as 'security information' pursuant to 2 U.S.C. § 1979 [by the Capitol Police[1]];

---

[1] "Security information" is information that "(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol

2

j.  Tax returns or tax information. (ECF 16 at 2-3).

The protective order included various rules for the handling of sensitive and highly sensitive materials, including limitations on use, dissemination, and reproduction (ECF 16 at 2-3). For example, the order provides that "Defendant and the legal defense team may use Sensitive and Highly Sensitive discovery materials solely in connection with the defense of this case and any other case connected to the events at the United States Capitol on January 6, 2021, including any post-conviction or appellate litigation," and that "[n]o Sensitive or Highly Sensitive materials, or the information contained therein, may be disclosed to any person other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (*id.*).

On June 1, 2026, Mr. Reffitt filed a pro se motion to modify the discovery protective order, which was later resubmitted on June 4, 2026. (ECF Nos. 209, 210).  In the motion, Mr. Reffitt does not seek public dissemination of sensitive information, but notes that continued blanket restriction is broader than necessary and requests "access to and lawful use of discovery materials relating to his own care for review of the record, preparation of related legal filings, consultation with counsel or prospective counsel, and use in matters reasonably related to this case and its consequences, including related civil claims."  (ECF No. 210 at 1-2).

---

buildings and grounds; and (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response." 2 U.S.C. § 1979(a).

**ARGUMENT**

### I.    Modification of the Protective Order is Unnecessary Because There is No Further Discovery to be Provided

"Preserving the defendant's ability to defend himself effectively at trial is the underlying purpose of the criminal discovery rules." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).  Given the Presidential pardon and dismissal of his case with prejudice, Mr. Reffitt has no further need to defend himself in this criminal proceeding.   Rule 16 and *Brady* disclosure obligations only pertain to pending criminal charges. *See, e.g.*, Fed. R. Crim. P. 16(a)(1)(E)(ii) (requiring the disclosure of documents and objects if "the government intends to use the item in its case-in-chief at trial" (emphasis added)); Fed. R. Crim. P. 16(c) (regarding the continuing duty to disclose "additional evidence or material before or during trial" (emphasis added)); *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017) ("Evidence is 'material'" and therefore the nondisclosure of that evidence can be the basis of a *Brady* violation, "if there is a 'reasonable probability' that the result of the trial would have been different had the evidence been admitted and used appropriately"). *United States v. Solomon*, 828 F. App'x 86, 88 n.3 (3d Cir. 2020) (ordering return of materials produced in discovery where defendant "no longer has any legitimate need for these materials because his trial and direct appeal have concluded").  Hence, there is no need for the Court to modify the protective order to allow Mr. Reffitt access to discovery or any other materials in connection with this now-dismissed case.  The request for modification should be denied.

### II.    There is Good Cause to Maintain the Protective Order

Under Federal Rule of Criminal Procedure 16(d)(1), the Court may "deny, restrict, or defer" discovery, or enter any appropriate protective order, for good cause. The good-cause inquiry

4

is flexible and fact-specific, and the Court has broad discretion to tailor protections to the circumstances. A party seeking to maintain a protective order in response to a motion to modify continues to bear the burden of demonstrating good cause that the protective order is required. Where the discovery contains sensitive law enforcement information, details of security protocols, or identifying information of private individuals, courts afford significant weight to the government's assessment of risks associated with disclosure. *See United States v. Dixon,* 355 F. Supp. 3d 1 (D.D.C. 2019) (police body-worn camera footage that included identifying details of victims and civilian witnesses).

Here, although Mr. Reffitt's convictions were later dismissed following a presidential pardon, the Protective Order continues to serve essential functions: safeguarding the privacy of third parties, ensuring the safety of law-enforcement personnel, and protecting sensitive security information about the U.S. Capitol. And Mr. Reffitt offers nothing—not even a proffer—to suggest that there has been a change in circumstances.

Discovery subject to the Court's protective order includes highly sensitive material documenting the events of January 6, 2021. The materials include extensive video and audio recordings from inside and around the Capitol; images and identifying information of private individuals, bystanders, and law-enforcement officers; documentation reflecting law-enforcement response strategies and deployments; recordings and images depicting security mechanisms and Capitol layouts not known to the public; and information that, if disseminated, could reveal vulnerabilities in the Capitol's defenses. Law-enforcement officers whose images, voices, or identifying information appear in these materials have expressed concern about retaliation or harassment. The recorded materials also capture internal Capitol spaces, access points, and tactical responses that remain sensitive. The Protective Order was carefully crafted to allow Mr. Reffitt

full access needed to prepare his defense while preventing the dissemination of sensitive materials. None of the underlying reasons for the Protective Order have changed.

"In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Cudd*, 534 F. Supp. 3d at 52. Here, the materials include reports of tips; case materials relevant to other subjects, including uncharged individuals; and personally identifiable information (PII) for defendants, witnesses, and victims. *See, e.g., Dixon*, 355 F. Supp. 3d at 5 (considering in the assessment of good cause the need to protect identities of witnesses and prevent disclosure of personal identifying information). Moreover, unrestricted dissemination raises national security concerns, including the exposure of security vulnerabilities at the Capitol. "It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case." *United States v. Concord Mgmt. & Consult. LLC*, 404 F. Supp. 3d 67, 75 (D.D.C. 2019). Indeed, Mr. Reffitt does not challenge that there was good cause for the district court to impose a disclosure restriction on sensitive discovery materials, and disclaims that he is seeking dissemination of sensitive material. (ECF No. 210 at 2).

Moreover, Mr. Reffitt cannot identify any prejudice from the continuation of the protective order. The criminal proceeding against him has been terminated. Any interest he may have in making non-litigation use of protected materials is outweighed by the government's national security and public safety interests. To the extent Mr. Reffitt seeks to pursue civil proceedings against the government, the protective order does not preclude him from using materials that have

subsequently become public.[2] And, should Mr. Reffit pursue a civil case, the remedy would be through utilization of the civil discovery process to the extent it is invoked and subject to an appropriate protective order entered in those potential proceedings.

As to the public interest factor, the potential harm identified above outweighs any public interest in disclosure. *See Cudd*, 534 F. Supp. 3d at 52-56 (finding good cause for disclosure restriction where government established that "disclosure of the materials in question would pose a hazard to others" because January 6 discovery materials were "very likely to contain sensitive information" including "personal identifying information, data relating to persons unrelated to the alleged criminal conduct, and medical and financial records").  As there was good cause during the proceedings to protect sensitive discovery materials from unauthorized dissemination, the termination of the case against Mr. Reffitt does not impact that good cause.  Indeed, "[w]here the district court does protect material during discovery it is common to provide, as the [court] did here, for post-protection including the return or destruction of protected material," because "the lubricating effects of the protect order on pre-trial discovery would be lost if the order expired at the end of the case or were subject to ready alteration." *Poliquin v Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993).

---

[2] The protective order explicitly does not apply to any material which has otherwise become part of a public court record. (ECF No. 16 at 5).

**CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motion to lift or modify

the Protective Order entered on April 1, 2021.

                                  Respectfully submitted,

                                    JEANNINE FERRIS PIRRO
                                    United States Attorney

                    By */s/   S. Babu Kaza*
                                    S. Babu Kaza (D.C. Bar No. 1033670)
                                    Assistant United States Attorney
                                    Fraud, Public Corruption, & Civil Rights Section
                                    601 D Street, NW
                                    Washington, D.C.  20530
                                    Tel: 202.803.1652
                                    Sridhar.Babu.Kaza@usdoj.gov

July 30, 2026

8